**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(A) SCHEDULING A COMBINED HEARING TO
CONSIDER APPROVAL OF THE DISCLOSURE
STATEMENT AND CONFIRMATION OF THE PLAN;
(B) ESTABLISHING THE VOTING RECORD
DATE, VOTING DEADLINE, AND OTHER DATES;
(C) APPROVING PROCEDURES FOR SOLICITING, RECEIVING,
AND TABULATING VOTES ON THE PLAN AND FOR FILING
OBJECTIONS TO THE DISCLOSURE STATEMENT OR THE PLAN;
(D) APPROVING THE MANNER AND FORMS OF NOTICE AND
OTHER RELATED DOCUMENTS; (E) APPROVING EQUITY
RIGHTS OFFERING DOCUMENTS; (F) CONDITIONALLY WAIVING
REQUIREMENT OF FILING SCHEDULES AND STATEMENTS AND OF
CONVENING SECTION 341 MEETING OF CREDITORS;
AND (G) GRANTING RELATED RELIEF**

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC
(N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter
(US), LLC (9802).  The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

The debtors in possession (collectively, the "***Debtors***") in the above-captioned cases (the "***Chapter 11 Cases***") hereby file this motion (this "***Motion***") and respectfully state as follows:

**RELIEF REQUESTED**

1.      By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Proposed Order***"), (a) scheduling a combined hearing the ("***Combined Hearing***") for September 6, 2024 (or as soon thereafter as the Court has availability), at which the Court will consider approval of the Disclosure Statement and confirmation of the Plan (each as defined below); (b) establishing the voting record date, voting deadline and other related dates; (c) approving procedures for soliciting, receiving and tabulating votes on the Plan and for filing objections to the Disclosure Statement or the Plan; (d) approving the manner and forms of notice and other related documents; (e) approving the equity rights offering documents; (f) conditionally, if the Plan is confirmed within 75 days of the date hereof (the "***Petition Date***"), waiving the requirements to (i) hold the Creditors' Meeting (as defined below) and (ii) file schedules of assets and liabilities, statements of financial affairs and 2015.3 Reports (as defined below); and (g) granting related relief.

2.      In connection with the foregoing, the Debtors request that the Court approve (subject to the availability of the Court's calendar) the following schedule of proposed dates related to relief requested in the Motion (the "***Proposed Confirmation Schedule***"), which dates comply with the milestones contained in the Debtors' Restructuring Support Agreement (as defined below):

## Proposed Confirmation Schedule [2]

| Event | Date/Deadline | Notes |
|---|---|---|
| Voting Record Date | July 22, 2024 | N/A |
| Commencement of Prepetition Solicitation | July 24, 2024 | N/A |
| Petition Date | July 25, 2024 | N/A |
| Commencement of Equity Rights Offering | July 26, 2024 (or as soon as reasonably practicable after entry of the Proposed Order) | N/A |
| Deadline to Publish Notice of Combined Hearing | July 31, 2024 (or as soon as reasonably practicable after entry of the Proposed Order) | Combined Hearing *less* 37 days.[3] |
| Initial Plan Supplement Deadline | August 16, 2024 | 5 days prior to Voting Deadline and 7 days prior to Objection Deadline. |
| Voting Deadline | August 21, 2024 at 5:00 p.m. prevailing Eastern Time | Commencement of Prepetition Solicitation *plus* 28 days.[4] |
| Objection Deadline for Combined Hearing | August 23, 2024 at 4:00 p.m. prevailing Eastern Time | At least 28 days after commencement of Prepetition Solicitation. [5] |
| Equity Rights Offering Termination | August 27, 2024 | N/A |
| Confirmation Brief and Reply Deadline | September 3, 2024 | N/A |
| Combined Hearing | September 6, 2024 | Petition Date *plus* 43 days.[6] |

---

[2]   To the extent of any conflict between the dates in this Proposed Confirmation Schedule and those in the Proposed Order, the dates in the Proposed Order shall control. All dates are subject to continued review and discussion with the Claims and Noticing Agent.

[3]   See Prepack Guidelines Section X(A).

[4]   The Prepack Guidelines provide that the following voting periods will be approved as reasonable: (a) twenty-one days for Publicly Traded Securities (as defined in the Prepack Guidelines); (b) fourteen days for securities that are not Publicly Traded Securities and for debt or borrowed money which is not evidenced by a Publicly Traded Security; and (c) twenty-one days for all other claims and interests, in each case, as of the commencement of mailing. *See* Prepack Guidelines Section IX(A).

[5]   *See* Prepack Guidelines Section X(A)

[6]   *See* Prepack Guidelines Section III(A)(1)(vi).

3.      Below is a list of attachments and exhibits referenced in the Motion:

| Attachment / Exhibit | Exhibit |
|---|---|
| Proposed Order | **Exhibit A** to this Motion |
| Combined Notice | Exhibit 1 to the Proposed Order |
| Form of Ballot for Class 3 (First Lien Claims) | Exhibit 2 to the Proposed Order |
| Forms of Ballots for Class 4 (Unsecured Notes Claims) | Exhibits 3-A and 3-B to the Proposed Order |
| Cover Letter | Exhibit 4 to the Proposed Order |
| Unimpaired Claims Notice | Exhibit 5 to the Proposed Order |
| Notice of Non-Voting Status | Exhibit 6 to the Proposed Order |
| Equity Rights Offering Documents | Exhibit 7 to the Proposed Order |

## JURISDICTION AND VENUE

4.      The United States Bankruptcy Court for the Southern District of New York (this "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

6.      The statutory and legal predicates for the relief requested herein are sections 105, 1125, and 1126 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), Bankruptcy Rules 2002, 3003, 3017, 3018, and 3020, rules 3017-1, 3018-1, 3018-2, and 3020-1 of the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***") and the *Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States*

*Bankruptcy Court for the Southern District of New York*, as amended, effective February 1, 2024

(as adopted by General Order M-621) (the "***Prepack Guidelines***").

## BACKGROUND

7.      The Debtors comprise a leading online education technology company providing

over eighty million people worldwide with access to high-quality education, including graduate,

undergraduate, and non-degree programs.  Through a comprehensive platform, the Debtors enable

non-profit universities and colleges to offer a wide range of online courses and programs.  These

span diverse fields such as artificial intelligence, data science, business, healthcare, and education,

with over 4,600 programs accessible on the Debtors' platform, edX.org, which provides learners

with essential information on admissions, enrollment requirements, application processes,

curriculum, tuition, and completion times.  By consolidating a vast array of educational offerings

on a single platform, the Debtors offer flexible and affordable pathways for achieving professional

and educational goals.  Although operations are predominantly remote, the majority of the

Debtors' revenue flows into New York, where the Debtors hold their primary bank accounts, and

where they collaborate with prestigious institutions of higher education (many of which are located

here in New York City, including New York University, Columbia University, and Fordham

University), enhancing their reach and impact within the city and state.

8.      On the Petition Date, the Debtors filed voluntary petitions in this Court

commencing these Chapter 11 Cases.  The Debtors continue to manage and operate their

businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No

trustee or examiner has been requested, and no committee has been appointed in these Chapter 11

Cases.

9.      The factual background regarding the Debtors, including their business operations,

their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is

set forth in detail in the *Declaration of Matthew Norden, Chief Legal Officer and Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions* (the "**Norden Declaration**") and the *Declaration of William Kocovski in Support of Chapter 11 Petitions and First Day Motions* (the "**Kocovski Declaration**" and, together with the Norden Declaration, the "**First Day Declarations**") filed contemporaneously herewith, which are fully incorporated herein by reference.[7]

10.     These Chapter 11 Cases are "prepackaged" cases commenced for the purpose of implementing an agreed restructuring of the Debtors' debt.  Prior to the Petition Date, the Debtors entered into the Restructuring Support Agreement, dated as of July 24, 2024 (as may be amended, modified or supplemented, the "**Restructuring Support Agreement**") with certain creditors including (a) an ad hoc group of certain holders (the "**Ad Hoc Noteholder Group**") of 2.25% convertible senior notes due May 1, 2025, issued under that certain Indenture, dated as of April 23, 2020 (the "**2025 Notes**") and 4.50% senior unsecured convertible notes due February 1, 2030, issued under that certain Indenture, dated as of January 11, 2023 (the "**2030 Notes**" and, together with the 2025 Notes, the "**Notes**") represented by Weil, Gotshal & Manges LLP, (b) Greenvale Capital LLP ("**Greenvale**" and, together with the Ad Hoc Noteholder Group, the "**Consenting Noteholders**") as holder of the Notes represented by Schulte Roth & Zabel LLP, and (c) an ad hoc group of certain First Lien Lenders (the "**First Lien Ad Hoc Group**" and, together with the Consenting Noteholders, the "**Consenting Stakeholders**") represented by Milbank LLP.  As of July 24, 2024, the Consenting Stakeholders held approximately 82% of the Debtors' first lien funded debt, 86.9% of the 2025 Notes, and 95.2% of the 2030 Notes.

---

[7]   Capitalized terms used but not defined herein shall have the respective meaning ascribed to such terms in the First Day Declarations or the Plan (as defined herein).

11.     On the Petition Date, the Debtors filed a plan of reorganization reflecting the terms of the Restructuring Support Agreement (as may be amended, modified or supplemented, the "***Plan***") in addition to a disclosure statement with respect to the Plan (as may be amended, modified or supplemented, the "***Disclosure Statement***").  The Plan contemplates that all Allowed General Unsecured Claims (as defined in the Plan) will be paid in full or will otherwise be unimpaired.[8]

## THE PLAN[9]

12.     In late 2023, the Debtors, certain Holders of Unsecured Notes, and certain Holders of First Lien Claims began a dialogue regarding a potential comprehensive restructuring transaction.  After extensive negotiations, the Debtors reached an agreement and executed the Restructuring Support Agreement with their key stakeholders, including Holders of approximately 82% of First Lien Claims and approximately 89.2% of Unsecured Notes Claims.  The Debtors commenced a twenty-eight (28) day solicitation period of the Plan on July 24, 2024, which will end on August 21, 2024.  Although voting is not yet complete, as of the Petition Date, Holders of approximately 82% of First Lien Claims and approximately 89.2% of Unsecured Notes Claims have already agreed to vote to accept the Plan by executing the Restructuring Support Agreement.

13.     The Restructuring Support Agreement contemplates that the Debtors will pursue the Plan that would (if confirmed) reduce 2U's total principal debt obligations by approximately $486.3 million—from approximately $944.8 million to approximately $458.5 million.

---

[8]    Contemporaneously with filing this Motion, the Debtors are filing a motion to seek this Court's authorization to reject certain unexpired commercial real property leases.

[9]    Capitalized terms used, but not defined in this summary of the Plan have the meanings ascribed to them in the Plan.

14.     The Restructuring Support Agreement further contemplates that these Chapter 11 Cases will be funded via a $64 million new money multi-draw financing facility (the "***DIP Facility***") and the consensual use of cash collateral.  The DIP Facility is being provided by certain Consenting Noteholders.  The Restructuring Support Agreement also contemplates that the Debtors will offer all Holders of Unsecured Notes the right to purchase New Common Interests in an aggregate amount of not less than $46.5 million (the "***Equity Rights Offering***").  The Equity Rights Offering will be available to all Holders of Allowed Unsecured Notes Claims, and certain Consenting Noteholders will backstop the portion of the Equity Rights Offering that is not subscribed for by Holders of Allowed Unsecured Notes (other than the Ad Hoc Noteholder Group and Greenvale).

15.     Importantly, the Restructuring Support Agreement provides that other general unsecured claims will be unimpaired.  The Debtors' workforce will continue to be paid in the ordinary course of business, as will certain creditors (including contractors, vendors, and the Partner Institutions).  Accordingly, 2U's operations will remain unaffected throughout these Chapter 11 Cases and beyond, which will enable 2U to continue to provide its Partner Institutions and students the same level of world-class support that they have come to expect.

16.     The Restructuring Support Agreement sets forth certain achievable Milestones (as defined in the Restructuring Support Agreement), including with respect to the solicitation, confirmation, and consummation of the Plan, that were designed to ensure an expeditious confirmation process and swift emergence from chapter 11.  The proposed case timetable included herein will enable the Debtors to meet those Milestones and thereby further the goals of facilitating an expeditious and highly consensual process that the Milestones are designed to achieve.  Thus, this Court's authorization of the dates and deadlines proposed herein is critical to preserving the

Restructuring Support Agreement and maintaining support for the Plan, which maximizes the value of the estates for all of the Debtors' stakeholders.

17.    In accordance with Bankruptcy Code sections 1122 and 1123, the Plan contemplates classifying Holders of Claims and Interests into various Classes for all purposes, including with respect to voting on the Plan, as follows:

**SUMMARY OF STATUS AND VOTING RIGHTS**

| Class | Claim/Equity Interest | Status | Voting Rights | Projected Plan Recovery |
|-------|----------------------|--------|---------------|------------------------|
| 1 | Other Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | First Lien Claims | Impaired | Entitled to Vote | 100% |
| 4 | Unsecured Notes Claims | Impaired | Entitled to Vote | 37.7%[10] |
| 5 | General Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 6 | Intercompany Claims | Unimpaired or Impaired | Deemed to Accept or Deemed to Reject | N/A |
| 7 | Intercompany Interests | Unimpaired or Impaired | Deemed to Accept or Deemed to Reject | N/A |
| 8 | Existing Equity Interests | Impaired | Deemed to Reject | 0% |
| 9 | Subordinated Claims | Impaired | Deemed to Reject | 0% |

18.    Based on the foregoing and as discussed in greater detail below, (a) the Debtors are soliciting votes to accept or reject the Plan only from Holders of Claims in Class 3 and Class 4,

---

[10]    Plan recovery for Unsecured Notes Claims includes (a) recovery attributable to the direct distribution of New Common Equity 33.9%; plus (b) recovery attributable to the value of Rights in the Equity Rights Offering 3.8%.

(the "***Voting Classes***"); and (b) the Debtors are <u>not</u> soliciting votes from Holders of Claims or

Interests in Classes 1, 2, 5, 6, 7, 8 and 9 (collectively, the "***Non-Voting Classes***").

19.    As described in further detail below, the Plan also contemplates the Equity Rights

Offering, pursuant to which eligible Holders of Unsecured Notes Claims in Class 4 will be entitled

to receive rights to purchase New Common Interests to be issued pursuant to the Plan, in

accordance with the Equity Rights Offering Procedures (as defined below).

20.    By this Motion, the Debtors request authority to proceed with confirmation on the

timeline set forth herein, which will allow the Debtors to swiftly and responsibly emerge from

bankruptcy and ensure that the Debtors' operations obtain the other benefits contemplated by the

Restructuring Support Agreement.    Moreover, under the Restructuring Support Agreement,

holders of approximately 82% of First Lien Claims and approximately 89.2% of Unsecured Notes

Claims have agreed to support the Plan.  As a result of the substantial support for the Plan garnered

by the Restructuring Support Agreement and the importance of emerging from chapter 11

expeditiously, the Debtors submit that the proposed confirmation timeline is in the best interests

of the Debtors, their estates, and all stakeholders, and should be approved.

## **<u>PREPETITION SOLICITATION</u>**

21.    The Debtors commenced solicitation of votes on the Plan from Holders of Claims

in the Voting Classes before the Petition Date in accordance with the procedures outlined herein

(the "***Solicitation Procedures***"), the Bankruptcy Code, the Bankruptcy Rules, the Prepack

Guidelines and all other applicable rules, laws and regulations.  On July 24, 2024, the Debtors

caused their proposed claims and noticing agent, Epiq Corporate Restructuring, LLC (the "***Claims

and Noticing Agent***"), to distribute certain materials in connection with voting on the Plan (the

"***Solicitation Packages***") to Holders of Claims in the Voting Classes and entitled to vote to accept

or reject the Plan as of the Voting Record Date.  The Solicitation Packages included the following materials:

(a) the Combined Notice (as defined below), which the Debtors hereby request this Court to approve;

(b) the Disclosure Statement;

(c) the Plan (which may be furnished in the Solicitation Package as Exhibit A to the Disclosure Statement);

(d) the Proposed Order (without exhibits attached);

(e) the Cover Letter from the Debtors explaining the solicitation process and urging Holders of Claims in the Voting Classes to vote to accept the Plan (each as defined below); and

(f) a Class 3 Ballot or Class 4 Ballot (each as defined below), as applicable, in substantially the forms attached to the Proposed Order (with instructions and opt-out forms attached thereto).

22.    The materials included in the Solicitation Packages clearly disclose the Debtors' expectation and intention to: (a) commence these Chapter 11 Cases; and (b) request that the Bankruptcy Court approve the Solicitation Procedures, as set forth in the Disclosure Statement, including approval of certain key dates as outlined below.

23.    Members of the Voting Classes that received a Solicitation Package were directed to follow the instructions contained on the Ballot (and described in the Disclosure Statement) to complete and submit their Ballots and cast their votes.  Each Holder in a Voting Class was explicitly informed in the Disclosure Statement and on the applicable Ballot that such Holder needed to submit its Ballot so that it was actually received by the Claims and Noticing Agent on or before the Voting Deadline to be counted.  Pursuant to the Restructuring Support Agreement, Holders representing (a) 82% of all outstanding First Lien Loan Claims, and (b) 89.2% of all outstanding Unsecured Notes Claims, have committed to vote in favor of the Plan.  The Solicitation Package (excluding Ballots) was made available at no charge to all members of the public on the

public website maintained by the Claims and Noticing Agent.  The contents of the Solicitation

Packages and the Solicitation Procedures are described further in Sections C and D herein.

## BASIS FOR RELIEF

## A.    APPROVALS RELATING TO THE DISCLOSURE STATEMENT

### I.    Approval of Notice of Combined Hearing

24.    Bankruptcy Rule 3017(a) provides, in pertinent part:

> After a disclosure statement is filed in accordance with Rule 3016(b), the
> court shall hold a hearing on at least 28 days' notice to the debtor, creditors,
> equity security holders and other parties in interest as provided in Rule 2002
> to consider the disclosure statement and any objections or modifications
> thereto.  The plan and the disclosure statement shall be mailed with the
> notice of the hearing only to the debtor, any trustee or committee appointed
> under the Code, the Securities and Exchange Commission, and any party in
> interest who requests in writing a copy of the statement or plan.

Fed. R. Bankr. P. 3017(a).  Furthermore, the Prepack Guidelines require notice to be mailed "at

least twenty-eight (28) days prior to the scheduled hearing date on confirmation of the plan and

adequacy of the disclosure . . ."  Prepack Guidelines Part X.D.

25.    In accordance with section 1128(a) of the Bankruptcy Code, Bankruptcy Rule

3017(a) and the Prepack Guidelines, the Debtors request that this Court establish a date and time

for the Combined Hearing on approval of the Disclosure Statement and confirmation of the Plan

as **10:00 a.m. prevailing Eastern Time on September 6, 2024** (or as soon as reasonably

practicable thereafter) (the "***Combined Hearing***").

26.    Bankruptcy Rules 2002(b) and 2002(d) require notice by mail to all of a debtor's

creditors and shareholders informing them of the time set for filing objections to, and the hearing

to consider the approval of a disclosure statement.  In addition, Part X.A. of the Prepack Guidelines

requires that notice of the filing of a plan and disclosure statement and of the hearing to consider

compliance with disclosure requirements and confirmation of the plan must be given to all parties

in interest.  Pursuant to Bankruptcy Rules 2002(b) and 2002(d) and Part X.A. of the Prepack Guidelines, on or about the date of this Motion, the Debtors mailed or will mail a copy of a notice, substantially in the form of <u>Exhibit 1</u> attached to the Proposed Order, that gives (a) notice of the commencement of the Chapter 11 Cases; (b) instructions regarding the Combined Hearing and how to obtain a copy of the Solicitation Package (other than a Ballot) free of charge; and (c) detailed directions for filing objections to approval of the Disclosure Statement or confirmation of the Plan, (the "***Combined Notice***"), by first class mail to (i) all known holders of claims against the Debtors; (ii) all known equity security holders of the Debtors; and (iii) the parties listed in <u>paragraph 27</u> below.

27.    The Debtors also served a copy of this Motion, the Combined Notice, the Disclosure Statement, and the Plan (attached as <u>Exhibit A</u> to the Disclosure Statement) on the following parties: (a) the United States Trustee for Region 2; (b) Milbank LLP as counsel to the Ad Hoc First Lien Lender Group; (c) the administrative agent and collateral agent under the first lien credit agreement; (d) Weil, Gotshal & Manges LLP as counsel to the Ad Hoc Noteholder Group; (e) Schulte Roth & Zabel LLP as counsel to Greenvale; (f) the indenture trustees for the Notes; (g) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (h) the United States Attorney's Office for the Southern District of New York; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; and (k) all parties entitled to notice pursuant to Local Rule 9013-1(b).  The Debtors submit that, under the circumstances, no other or further notice is required.  Moreover, copies of such documents are available in accordance with <u>paragraph 65</u> below.

28.    The Combined Notice provides that objections or responses to approval of the Disclosure Statement or confirmation of the Plan, if any, are to: (a) be made in writing; (b) conform

to the Bankruptcy Rules, the Local Rules, and the Prepack Guidelines; (c) state with particularity the legal and factual basis for the objection; and (d) be filed with the Bankruptcy Court (contemporaneously with a proof of service), and be served so as to be **actually received** by each of the following parties (the "***Notice Parties***") on or before 4:00 p.m. prevailing Eastern Time on **September 3, 2024** (the "***Objection Deadline***"):

    i.    2U, INC., 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202, Attn: Paul S. Lalljie (plalljie@2u.com), Matthew Norden (mnorden@2u.com), and Lillian Brownstein (lbrownstein@2u.com);

    ii.    Proposed counsel to the Debtors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020, Attn: George A. Davis (george.davis@lw.com); George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Randall Weber-Levine (randall.weber-levine@lw.com) and Scott Yousey (scott.yousey@lw.com);

    iii.    Counsel to the Ad Hoc First Lien Lender Group, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Albert A. Pisa (apisa@milbank.com), Tyson Lomazow (tlomazow@milbank.com), and Abigail Debold (adebold@milbank.com));

    iv.    Counsel to the Ad Hoc Noteholder Group, Weil, Gotshal & Manges LLP, 767 5th Ave, New York, New York 10153, Attn: Matt Barr (matt.barr@weil.com), David Griffiths (david.griffiths@weil.com), and F. Gavin Andrews (f.gavin.andrews@weil.com);

    v.    Counsel to Greenvale, Schulte, Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Kristine Manoukian (kristine.manoukian@srz.com), Kelly Knight (kelly.knight@srz.com), and Reuben E. Dizengoff (reuben.dizengoff@srz.com);

    vi.    United States Trustee, U.S. Department of Justice, Office of the U.S. Trustee, 1 Bowling Green, Room 534, New York, NY 10004, Attn: Rachael E. Siegel (rachael.e.siegel@usdoj.gov), Daniel Rudewicz (daniel.rudewicz@usdoj.gov), and Brian Masumoto (brian.masumoto@usdoj.gov); and

    vii.    Counsel to any statutory committee if appointed.

29.    Requiring that objections to approval of the Disclosure Statement or confirmation of the Plan be filed by the Objection Deadline will afford this Court and the Debtors sufficient

time to consider objections before the Combined Hearing.  The Debtors submit that the foregoing

notice and objection procedures provide adequate notice of the Combined Hearing and,

accordingly, request that this Court deem such notice as having been adequate pursuant to

Bankruptcy Rule 3017.

## II.    The Disclosure Statement Should be Approved as Containing "Adequate Information"

30.    Bankruptcy Code sections 1125(g) and 1126(b) permit prepetition solicitation of

votes on a plan of reorganization provided that solicited persons receive "adequate information"

within the meaning of section 1125(a) of the Bankruptcy Code.  The Debtors will request that, at

the Combined Hearing, this Court find that the Disclosure Statement contains adequate

information as defined in section 1125 of the Bankruptcy Code. Section 1125(a) of the Bankruptcy

Code defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is reasonably
> practicable in light of the nature and history of the debtor and the condition
> of the debtor's books and records, including a discussion of the potential
> material Federal tax consequences of the plan to the debtor, any successor
> to the debtor, and a hypothetical investor typical of the holders of claims or
> interests in the case, that would enable such a hypothetical investor of the
> relevant class to make an informed judgment about the plan. . . .

11 U.S.C. § 1125(a)(1).  The Debtors submit that the Disclosure Statement contains adequate

information within the meaning of section 1125(a) of the Bankruptcy Code.

31.    The primary purpose of a disclosure statement is to provide all material information

that creditors and interest holders affected by a proposed plan need to make an informed decision

whether to vote for the plan.  *See, e.g.*, *Century Glove, Inc. v. First Am. Bank of New York*, 860

F.2d 94, 100 (3rd Cir. 1988) ("§ 1125 seeks to guarantee a minimum amount of information to the

creditor asked for its vote"); *In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir.  1985); *In re*

*Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001); *In re Unichem Corp.*, 72 B.R.

95, 97 (Bankr. N.D. Ill. 1987). Congress intended that such informed judgments would be needed

both to negotiate the terms of and to vote on a plan of reorganization. *Century Glove*, 860 F.2d at

100.

32.     In evaluating whether a disclosure statement provides "adequate information,"

courts adhere to Bankruptcy Code section 1125's instruction that making this determination is a

flexible exercise based on the facts and circumstances of each case.   11 U.S.C. § 1125(a)(1)

("'adequate information' means information of a kind, and in sufficient detail, as far as is

reasonably practicable in light of the nature and history of the debtor and the condition of the

debtor's books and records"); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.3d

414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate

information will be determined by the facts and circumstances of each case"); *First Am. Bank of

New York v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of

disclosure for a particular debtor will be determined based on how much information is available

from outside sources); S. Rep. No. 95- 989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787,

5907 ("[T]he information required will necessarily be governed by the circumstances of the case").

33.     Courts, including those within the Second Circuit, have stated that what constitutes

"adequate information" is based on the facts and circumstances of each case, but that the focus is

on whether sufficient information is provided to enable holders of claims and interests entitled to

vote on a chapter 11 plan to make an informed decision on whether to accept or reject a plan  *See,

e.g.*, *Momentum Mfg. Corp. v. Employee Creditors Committee (In re Momentum Mfg. Corp.)*, 25

F.3d 1132, 1136 (2d Cir. 1994); *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 600 (Bankr.

S.D.N.Y. 2006) (explaining that "an adequate disclosure determination requires a bankruptcy court

to find not just that there is enough information there, but also that what is said is not misleading");

*Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court"); *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court"); *In re River Village Associates*, 181 B.R. 795, 804 (E.D. Pa. 1995) (same).

34.     The Disclosure Statement is the product of the Debtors' extensive review and analysis of their businesses, assets and liabilities, the circumstances leading to the Chapter 11 Cases and the Debtors' negotiations with key stakeholders and other significant events leading to the filing of these Chapter 11 Cases. In addition, the Disclosure Statement reflects the Debtors' thorough analysis of the Plan, including the distributions to Holders of Claims and Interests contemplated thereunder, the effect of the Plan on Holders of Claims and Interests and the resultant restructuring of the Debtors' estates if the Plan is confirmed and consummated. In performing this analysis, the Debtors sought and received the input of their advisors, executives and key management personnel, their major stakeholders and such stakeholders' respective advisors.

35.     Specifically, the Disclosure Statement contains the pertinent information necessary for the Holders of Claims entitled to vote on the Plan to make informed decisions about whether to vote to accept or reject the Plan, including, among other things, the following key sections and information contained therein:

a.     Executive Summary: statement of the purpose and effect of the Plan, overview of the solicitation and voting procedures and confirmation and consummation of the Plan, including an overview of the classes of Claims and Interests and their respective treatment under the Plan, important dates with respect to voting on and objecting to the confirmation of the Plan and a summary of certain effects of confirmation of the Plan;

b.      Background to the Chapter 11 Cases:  an overview of the Debtors' business operations, their corporate history and capital structure, the Debtors' prepetition indebtedness and certain events leading to the commencement of these Chapter 11 Cases;

c.      Notable Prepetition Events: the events leading to the filing of these Chapter 11 Cases, including prepetition restructuring efforts and engagement with stakeholders, the Restructuring Support Agreement, the Plan, and DIP financing, and the proposed timeline and milestones of these Chapter 11 Cases;

d.      Anticipated Events During the Chapter 11 Cases:  a description of the commencement of these Chapter 11 Cases, the discussion of first day relief the Debtors intend to request from this Court, and the post-emergence capital structure and operations;

e.      Summary of the Plan: the classification and treatment of Claims and Interests under the Plan, acceptance and rejection of the Plan, means for implementation of the Plan, treatment of executory contracts and unexpired leases under the Plan, provisions governing distributions, the procedures for resolving contingent, unliquidated and disputed Claims, conditions precedent to confirmation and consummation of the Plan, release, discharge, injunction and related provisions and the binding nature of the Plan, and the Debtors' financial projections, relevant to a creditor's decision to accept or reject the Plan;

f.      Confirmation and Consummation Procedures:  procedures for soliciting votes to accept or reject the Plan, confirmation procedures, statutory requirements for confirmation of the Plan, and consummation of the Plan;

g.      Plan-Related Risk Factors:  certain risk factors that may affect the Plan, the value of any securities to be issued under the Plan and the Debtors' businesses as well as certain risks associated with forward-looking statements and overall disclaimer as to the information provided by and set forth in the Disclosure Statement;

h.      Alternatives to Confirmation and Consummation of the Plan:  liquidation under chapter 7 of the Bankruptcy Code or the filing of alternative plans of reorganization;

i.      Securities Law Matters: exemption of the Debtors' securities from federal securities laws per section 1145 of the Bankruptcy Code.

j.      Certain U.S. Federal Income Tax Consequences of the Plan:  certain U.S. federal income tax law consequences of the Plan with respect to the Debtors and Holders of Allowed Claims or Interests; and

k.      Recommendation:  the Debtors' recommendation that Holders of Claims entitled to vote on the Plan vote to accept the Plan.

36.     Based on the foregoing, the Debtors submit that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to holders of Impaired Claims entitled to vote to accept or reject the Plan. *See In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (same).

### III.    Conditional Approval of Disclosure Statement

37.     The Debtors commenced prepetition solicitation from eligible Holders of Claims in Classes 3 and 4 by distributing Solicitation Packages prior to the Petition Date in accordance with Sections 1125 and 1126 of the Bankruptcy Code. *See* 11 U.S.C. § 1125(g) ("[A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable non-bankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable non-bankruptcy law."). Although the Debtors do not believe that the Disclosure Statement must be conditionally approved, the Debtors, out of an abundance of caution, request that the Court conditionally approve the Disclosure Statement if the Court deems it necessary to do so.

### IV.    Combined Hearing and Objections

38.     Pursuant to Bankruptcy Rule 3020(b)(2), a court shall rule on confirmation of a plan after notice and a hearing.  In accordance with Bankruptcy Rule 3020(b)(2), therefore, the Debtors request that this Court enter an order setting September 6, 2024 (or as soon thereafter as possible) as the date for the Combined Hearing to consider both approval of the Disclosure Statement and confirmation of the Plan.

39.     The Debtors request that this Court order that Objections, if any, must (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, (d) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection, and (e) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than the Objection Deadline by the undersigned counsel and the other Notice Parties.

## B.      ESTABLISHMENT OF VOTING RECORD DATE

40.     Bankruptcy Rule 3018(a) provides that the "date the order approving the disclosure statement is entered or on another date fixed by the court, for cause, after notice and a hearing" is the record date for determining the "holders of stocks, bonds, debentures, notes and other securities" entitled to receive ballots and materials necessary for voting on the plan as specified in Bankruptcy Rule 3017(d).

41.     The Debtors believe that it would be efficient and practical to have the same Voting Record Date for the holders of all Claims entitled to vote.  Accordingly, the Debtors request that this Court exercise its authority under Bankruptcy Rule 3017(d) to fix July 22, 2024, as the voting record date with respect to all Claims entitled to vote on the Plan (the "***Voting Record Date***").  The Debtors will use the Voting Record Date for determining which Entities are entitled to, as applicable, receive Solicitation Packages, vote to accept or reject the Plan, and receive notice of the Combined Hearing.

C.    **APPROVAL OF SOLICITATION PROCEDURES**

42.    As described further herein, the Debtors have sent or propose to send certain documents, in the forms attached as exhibits to the Proposed Order, to various stakeholders as follows:

    a.    Classes 1, 2 and 5 are unimpaired, and will receive the Combined Notice and the Unimpaired Claims Notice (as defined below);

    b.    Classes 3 and 4, the Voting Classes, have received Ballots,[11] the Cover Letter (as defined below), and the Plan and the Disclosure Statement as part of the prepetition solicitation;

    c.    Classes 8 and 9 are both deemed to reject the Plan and will receive the Combined Notice; the Notice of Non-Voting Status (as defined below) and Opt-Out Forms; and

    d.    Parties to certain of the Debtors' executory contracts and unexpired leases will receive the Combined Notice.

43.    Because the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors did not, and will not, provide the Holders in Class 6 (Intercompany Claims) or Class 7 (Intercompany Interests) with notices or Ballots.

    I.    **Duties of Claims and Noticing Agent**

44.    The Claims and Noticing Agent has assisted and will continue to assist the Debtors in, among other things, (a) mailing Combined Notices to Holders of Claims in Non-Voting Classes and other non-voting parties entitled to notice, (b) distributing Solicitation Packages by e-mail and mail, (c) soliciting votes on the Plan, (d) receiving, tabulating, and reporting on Ballots cast for or against the Plan, (e) responding to inquiries from creditors and stakeholders relating to the Plan, the Disclosure Statement, the Ballots, and (f) if necessary, contacting creditors regarding the Plan and their Ballots. Subject to an order of this Court approving such retention, the Debtors have

---

[11]    The term "Ballots/Opt-Out Forms" as defined in the Plan shall have the same meaning as the stand-alone terms "Ballot" and "Opt-Out Form," as applicable, used in the forms attached to the Order.

retained Epiq Corporate Restructuring, LLC as the Claims and Noticing Agent to assist them with the solicitation and voting process in the Chapter 11 Cases.

## II.    Ballots and Opt-Out Forms

45.    The Debtors request this Court to approve the (a) ballots and opt-out forms for voting on the Plan and opting out of the releases contained in the Plan in substantially the forms attached to the Proposed Order as Exhibit 2 (the "*Class 3 Ballot*"), Exhibit 3-A (the "*Class 4 Master Ballot*") and Exhibit 3-B (the "*Class 4 Beneficial Ballot*" and together with the Class 4 Master Ballot and the Class 3 Ballot, each a "*Ballot*" and collectively, the "*Ballots*") and (b) cover letter for members of the Voting Classes in substantially the form attached as Exhibit 4 to the Proposed Order (the "*Cover Letter*").  The Debtors request approval of the (a) Class 3 Ballot and Cover Letter for use in soliciting votes from Holders of First Lien Claims; and (b) Class 4 Ballots and Cover Letter for use in soliciting votes from Holders of Unsecured Notes Claims Holders. Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Form No. 314, only to "creditors and equity security holders entitled to vote on the plan."  Fed R. Bankr. P. 3017(d).  Prior to the Petition Date, the Debtors distributed to Holders of Claims in the Voting Classes the applicable Ballot and Cover Letter in the forms annexed to the Proposed Order as Exhibits 2, 3-A and 3-B; and Exhibit 4, respectively, as well as copies of the Plan and Disclosure Statement.  The form for the Ballot is based on Official Form No. 314 and complies with the form of ballot attached to the Prepack Guidelines, but has been modified to address the particular aspects of these Chapter 11 Cases and include certain additional information that the Debtors believe to be relevant and appropriate for such class of Claims.

46.    All Ballots were accompanied by pre-addressed, return envelopes addressed to the Claims and Noticing Agent.

47.    <u>Existing Equity Interests and Subordinated Claims</u>.  Classes 8 (Existing Equity Interests) and 9 (Subordinated Claims) do not retain or receive any property under the Plan on account of such Claims and Interests, and are, therefore, deemed to reject the Plan.  *See* 11 U.S.C. § 1126(g).  Therefore, the Debtors will not send Solicitation Packages to Holders of such Claims and Interests.  Rather, in lieu thereof, and in accordance with Bankruptcy Rule 3017(d), to ensure such parties receive notice of the Combined Hearing, the Debtors will distribute (a) the Combined Notice; (b) a notice, substantially in the form attached to the Proposed Order as <u>Exhibit 6</u> (the "***Notice of Non-Voting Status***"); and (c) a form for indicating their election to opt-out of the releases contained in the Plan (an "***Opt-Out Form***"), in substantially the form attached to the Notice of Non-Voting Status.  The Debtors believe that this satisfies the requirements of Bankruptcy Rule 3017(d) with respect to the Holders of such Claims.

48.    <u>Unimpaired Claims Notice</u>.  Under the Plan, certain Claims and Interests are "unimpaired" as defined in Bankruptcy Code section 1124.  Under Bankruptcy Code section 1126(f), the Holders of Unimpaired Claims and Interests are conclusively presumed to have accepted the Plan, and therefore solicitation of votes with respect to such Unimpaired Claims and Interests is not required.  Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 5 (General Unsecured Claims), are Unimpaired, and thus are conclusively presumed to accept the Plan; hence solicitation of votes with respect to such Classes of Claims and Interests is not required.  *See* 11 U.S.C. § 1126(f).  Accordingly, such Classes of Claims and Interests will not receive Solicitation Packages or Ballots.  Rather, in lieu thereof and in accordance with Bankruptcy Rule 3017(d), the Debtors will distribute to the Holders of such Unimpaired Claims and Interests the Combined Notice and a notice, substantially in the form attached to the Proposed Order as <u>Exhibit 5</u> (the "***Unimpaired Claims Notice***"), that gives (a) notice of the filing

of the Plan; (b) notice that such party has been identified as the Holder of an Unimpaired Claim or Interest; (c) instructions regarding the Combined Hearing and how to obtain a copy of the Solicitation Package (other than Ballots) free of charge; and (d) detailed directions for filing objections to the Disclosure Statement or confirmation of the Plan.

49.    <u>Other Non-Voting Classes</u>.    Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) are impaired/unimpaired.  The Intercompany Claims and Intercompany Interests shall be, at the option of the Debtors, either reinstated or canceled and released, with no distribution made on account of such Intercompany Claims or Intercompany Interests.  However, because the Holders of such Claims and Interests are Affiliates of the Debtors, Holders of such Claims and Interests will be conclusively deemed to have either accepted or rejected the Plan. Therefore, the Debtors will not send Ballots or Solicitation Packages to Holders of such Claims and Interests and are requesting a waiver from any requirement to deliver a notice with respect to the Holders of such Claims and Interests because the Holders of such Claims and Interests are Affiliates of the Debtors.

50.    <u>Contract/Lease Parties</u>.    Parties to certain of the Debtors' executory contracts and unexpired leases may not have scheduled Claims or Claims based upon filed Proofs of Claim pending the disposition of their contracts or leases by assumption or rejection.  To ensure that such parties nevertheless receive notice of the Combined Hearing, they will receive the Combined Notice, which will include information on the treatment of executory contracts and unexpired leases in the Plan.

### III.    Content and General Transmittal of Solicitation Packages; Notice of Combined Hearing

51.    Bankruptcy Rule 3017(d) specifies the materials to be distributed to all impaired creditors and equity security holders following approval of a disclosure statement.  Pursuant to this

Bankruptcy Rule, the Debtors have transmitted or caused to be transmitted on July 24, 2024 (the "***Commencement of Prepetition Solicitation***"), to the persons listed below in <u>paragraph 52</u>, subject to the limitations contained therein and elsewhere in this Motion, by (a) e-mail and (b) United States mail, first-class postage prepaid, personal service, or overnight delivery, a Solicitation Package containing the following:

 (a) the Combined Notice, which the Debtors hereby request this Court to approve;

 (b) the Disclosure Statement;

 (c) the Plan (which may be furnished in the Solicitation Package as Exhibit A to the Disclosure Statement);

 (d) the Proposed Order (without exhibits attached);

 (e) the Cover Letter from the Debtors explaining the solicitation process and urging Holders of Claims in the Voting Classes to vote to accept the Plan;

 (f) a Class 3 Ballot or Class 4 Ballot, as applicable, in substantially the forms attached to the Proposed Order (with instructions attached thereto).

52. In addition, the Debtors will file the Plan Supplement with this Court on or before August 16, 2024 (the "***Initial Plan Supplement Deadline***"), which is seven (7) days before the Objection Deadline; *provided*, that if the Objection Deadline is extended, the Debtors propose to file the Plan Supplement by the date that is seven (7) days before such extended Objection Deadline. Copies of the Plan Supplement will be available in accordance with the procedures set forth in <u>paragraph 65</u> below. Moreover, the Debtors will provide copies of the Solicitation Package (other than Ballots) and the Plan Supplement to: (a) the United States Trustee for Region 2; (b) Milbank LLP as counsel to the Ad Hoc First Lien Lender Group; (c) the administrative agent and collateral agent under the first lien credit agreement; (d) Weil, Gotshal & Manges LLP as counsel to the Ad Hoc Noteholder Group; (e) Schulte Roth & Zabel LLP as counsel to Greenvale; (f) the indenture trustees for the Notes; (g) the United States Attorney's Office for the Southern District

of New York; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; and (j) all parties entitled to notice pursuant to Bankruptcy Rule 2002.

53.     The Debtors have also provided the Solicitation Packages (including the Ballots) to Holders of Claims in Classes 3 and 4 in accordance with <u>paragraphs 45-46</u> above.  The Debtors will not provide the Solicitation Packages to Holders of Claims or Interests in the Non-Voting Classes and instead will provide them solely with packages in accordance with <u>paragraphs 47-50</u> above.

54.     <u>Supplemental Notice of Combined Hearing</u>.  Additionally, to ensure proper notice of the Combined Hearing, the Debtors propose to send the Combined Notice to parties in interest listed on the Debtors' creditor matrix as soon as practicable following entry of the Proposed Order. Moreover, Bankruptcy Rule 2002(l) permits this Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice."  Fed. R. Bankr. P. 2002(l).  Due to the potentially large number of parties in interest in these Chapter 11 Cases, the Debtors propose to publish the Combined Notice on July 31, 2024, which will provide adequate notice of the Combined Hearing, in the national edition of *The Wall Street Journal* and the global edition of the *Financial Times*, or another similar newspaper or publication, as the Debtors deem appropriate.  This complies with the twenty-eight (28) day notice requirement set forth in Rules 3017(a) and 2002(b).  Additionally, the Debtors request that they be authorized (but not required) to publish the Combined Notice in such trade or other local publications of general circulation as the Debtors shall determine.  The Debtors believe that publication of this notice will give sufficient notice of the Combined Hearing to persons who do not otherwise receive notice by mail as provided for in the Proposed Order, as part of the Solicitation Package or otherwise.

55.     The Debtors submit that they have shown good cause for implementing the proposed notice and service procedures as set forth herein and requests that they be approved by this Court.

56.     Because sending Solicitation Packages and other notices to outdated or otherwise improper addresses results in needless expense, the Debtors request authority not to give notice or service of any kind upon any person or entity to whom the Debtors mailed the Combined Notice and had such notice returned by the United States Postal Service marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or any similar reason, unless the Debtors have been informed in writing by such person of that person's new address.

## IV.    Electronic Voting

57.     In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website to be maintained by the Claims and Noticing Agent.  Entities entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the online balloting portal (which allows a Holder to submit an electronic signature). Instructions for electronic, online transmission of Ballots are set forth on the form of Ballot. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballots/Opt-Out Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

## D.    Voting Deadline and Procedures for Vote Tabulation

58.     Bankruptcy Rule 3017(c) requires this Court to fix a time within which holders of claims may vote to accept or reject the Plan.  In addition, Part IX.A of the Prepack Guidelines

requires, "[f]or securities which are not Publicly Traded Securities and for debt for borrowed money which is not evidenced by a Public Traded Security, a fourteen (14) day voting period, measured from the date of commencement of mailing." Pursuant to Parts III.A(1)(iv) and B(i) of the Prepack Guidelines, the Debtors caused the Commencement of Solicitation and shall continue to accept but not solicit ballots until the proposed voting deadline. As such, pursuant to the Bankruptcy Rules and the Prepack Guidelines, the Debtors request this Court to enter an order setting 5:00 p.m. Prevailing Eastern Time on August 21, 2024 (the "***Voting Deadline***") as the last date and time by which Ballots accepting or rejecting the Plan must be received by the Claims and Noticing Agent in order to be counted, subject to the Debtors' ability to extend the Voting Deadline as they deem appropriate. Accordingly, since the Debtors distributed Solicitation Packages on or before the Commencement of Prepetition Solicitation, creditors will have twenty-eight (28) days to have their Ballots returned to the Claims and Noticing Agent.

59. To avoid uncertainty, provide guidance to the Debtors and the Claims and Noticing Agent, and avoid the potential for inconsistent results, the Debtors request that this Court, pursuant to Bankruptcy Code section 105(a), establish the guidelines set forth below for tabulating the vote to accept or reject the Plan.

60. <u>Votes Counted</u>. The Debtors propose that any timely received Ballots/Opt-Out Form that contains sufficient information to permit the identification of the claimant and the amount of the Claim and is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan. The vote amounts for Holders of (a) Class 3 First Lien Claims are based on the Voting Record Date information provided by the First Lien Agent, and (b) Class 4 Unsecured Notes Claims are based on the Voting Record Date information provided by DTC.

61.    <u>Votes Not Counted</u>.  The Debtors further propose that the following Ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

a.    Any Ballot received after the Voting Deadline unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

b.    Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

c.    Any Ballot cast by a person or entity that does not hold a Claim in a Voting Class;

d.    Any Ballot cast for a Claim not listed on the Schedules (if any), or scheduled at zero, in an unknown amount, or, as unliquidated, contingent, or disputed, and for which no Proof of Claim was timely filed;

e.    Any Ballot that is properly completed, executed and timely filed, but (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, or (c) partially accepts and partially rejects the Plan;

f.    Any Ballot submitted by facsimile, telecopy or electronic mail;

g.    Any unsigned Ballot, provided that any Ballot submitted through E-Ballot will be deemed to contain a valid signature;

h.    Any Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Claims and Noticing Agent) or the Debtors' financial or legal advisors; or

i.    Any Ballot not cast in accordance with the procedures approved in the Proposed Order.

Additionally, the Debtors propose that any duplicate Ballots will only be counted once.

62.    The Debtors further propose that, subject to any contrary order of this Court and except as otherwise set forth herein, they may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the vote tabulation certification prepared by the Claims and Noticing Agent.

63.    <u>Changing Votes</u>.  Notwithstanding Bankruptcy Rule 3018(a), whenever two or more Ballots are cast which attempt to vote the same Claim prior to the Voting Deadline, the last Ballot received prior to the Voting Deadline will be deemed to reflect the voter's intent and thus

to supersede any prior Ballots, *provided*, *however*, that where an ambiguity exists as to which Ballot was the latest mailed, the Claims and Noticing Agent reserves the right to contact the creditor and tabulate the vote according to such voter's stated intent. This procedure is without prejudice to the Debtors' rights to object to the validity of the superseding Ballot(s) on any basis permitted by law and, if the objection is sustained, to count the first Ballot for all purposes. This procedure of counting the last Ballot is consistent with the practice under various state and federal corporate and securities laws.

64.     No Vote Splitting; Effect. The Debtors propose that this Court clarify that claim splitting is not permitted and order that creditors who vote must vote all of their Claims within a particular Class to either accept or reject the Plan. In addition, if a Holder of a Claim submits Ballots on account of multiple Claims within the Voting Class, the Claims and Noticing Agent will tabulate such votes in the aggregate amount and as one (1) vote for numerosity purposes.

65.     Copies and Review of Documents. Copies of the Plan and Disclosure Statement (including after the Initial Plan Supplement Deadline, the Plan Supplement) and all pleadings and orders of the Bankruptcy Court are publicly available, for a fee via PACER at: www.nysb.uscourts.gov, or free of charge from the Claims and Noticing Agent by visiting the Debtors' restructuring website at https://dm.epiq11.com/2U. Such documents and pleadings may also be obtained by: (a) calling the Debtors' restructuring hotline at 877-525-5725 (U.S.) or +1 360-803-4441 (international); and/or (b) writing to 2U, Inc. *et al.*, c/o Epiq Corporate Restructuring, 10300 SW Allen Blvd, Beaverton, Oregon, 97005, or by email to tabulation@epiqglobal.com with "2U" in the subject line.

**E.    Approval of the Equity Rights Offering, the Equity Rights Offering Documents and the Commencement of the Equity Rights Offering**

66.    In connection with the Plan, the Debtors intend, upon approval by this Court of the Equity Rights Offering Procedures and the Equity Rights Offering subscription form (the "***Subscription Form***"),  substantially in the forms annexed as Exhibit 7 to the Proposed Order (collectively, the "***Equity Rights Offering Documents***"),[12] to commence a rights offering to all Holders of Allowed Class 4 Unsecured Notes Claims, pursuant to which, subject to the terms and conditions set forth in the Plan and the Equity Rights Offering Procedures, each Holder of an Allowed Class 4 Unsecured Notes Claims (each such Holder, an "***Equity Rights Offering Participant***") is entitled to subscribe for its pro rata share of New Common Interests to be issued for an aggregate purchase price in an amount equal to $46.5 million (the "***Equity Rights Offering Amount***") at a 30% discount to the Stipulated Equity Value (as defined in the Plan) (the "***Plan Discount***"), pursuant to the Plan.

67.    In order to validly exercise its right to participate in the Equity Rights Offering, each Equity Rights Offering Participant must: (a) submit its Convertibles Notes via DTC's ATOP on or prior to 5:00 p.m. (prevailing Eastern Time) on August 27, 2024  (the "***Equity Rights Offering Termination Time***"); (b) provide and deliver the relevant registration details and other required information listed in the Subscription Form to the Subscription Agent's portal, on or prior to one Business Day after the Equity Rights Offering Termination Time; and (c) no later than the Equity Rights Offering Termination Time, pay, or arrange for the payment of the applicable Purchase Price to the Subscription Agent by wire transfer only of immediately available funds in accordance with the principal amount of Convertible Notes tendered via DTC's ATOP.  The

---

[12]   Capitalized terms used in this Section E but not defined herein shall have the meanings given to them in the Equity Rights Offering Documents.

proposed duration of the Equity Rights Offering will afford Holders of Allowed Class 4 Unsecured Notes Claims twenty-two (22) business days to participate in the Equity Rights Offering, which the Debtors' submit is reasonable under the circumstances.

68.     The offering and issuance of the Subscription Rights (as defined in the Equity Rights Offering Term Sheet attached as Annex 3 to the Plan) and the New Common Interests shall be exempt from the registration requirements of Section 5 of the Securities Act pursuant to Section 1145 of the Bankruptcy Code to the maximum extent available by law or, if section 1145 is not available, then otherwise exempt from registration in reliance on Section 4(a)(2) of the Securities Act, as set forth in the Equity Rights Offering Documents.  Any New Common Interests issued pursuant to Section 4(a)(2) of the Securities Act shall be subject to applicable transfer restrictions under the Securities Act.  The Debtors propose to commence the Equity Rights Offering by email within two (2) business days of the entry of the Proposed Order or as soon as reasonably practicable thereafter, to all known Holders of Allowed Unsecured Notes.  If the Equity Rights Offering commences on July 26, 2024, then the Equity Rights Offering Termination Time will occur on August 27, 2024, at 5:00 p.m. (prevailing Eastern Time).  The proposed duration of the Equity Rights Offering will afford Holders of Allowed Class 4 Unsecured Claims twenty-two (22) Business Days to participate in the Equity Rights Offering, which the Debtors submit is reasonable under the circumstances.

69.     In many chapter 11 cases in which rights offerings are conducted, the rights offering is commenced after the bankruptcy court has approved the adequacy of the information contained in the debtors' disclosure statement.  Such a process is consistent with the principles underlying section 1145 of the Bankruptcy Code, *i.e.*, that a filing with the Securities and Exchange Commission in connection with the offer and sale of a security, in compliance with applicable

securities laws, should not be required in chapter 11 cases, where the bankruptcy court has ruled

that the contents of the offering document (the disclosure statement) contains "adequate

information" as defined in section 1125(a)(1) of the Bankruptcy Code.  In this case, the Debtors

will seek approval to consummate the Equity Rights Offering at the Combined Hearing, and thus

the Equity Rights Offering will not be consummated—and the Equity Rights Offering Shares will

not be issued—until after the Court approves the adequacy of the Disclosure Statement.  This

ensures that all creditors entitled to participate in the Equity Rights Offering will have received

adequate information before they make their investment.

70.      In light of the foregoing, the Debtors respectfully submit that the Court's approval

of the Equity Rights Offering, the Equity Rights Offering Documents and authorization to

commence the Equity Rights Offering is in the best interests of the Debtors' estate, creditors, and

other parties in interest.

**F.      Extension and Conditional Waivers of the 341 Meeting and the Filing of the Schedules, SOFAs and 2015.3 Reports**

71.      The Debtors respectfully submit that the circumstances of these Chapter 11 Cases

merit a conditional waiver of the requirements that (a) the U.S. Trustee convene a meeting of

creditors pursuant to section 341(e) of the Bankruptcy Code (the "***Creditors Meeting***"), and (b)

the Debtors file Schedules of Assets and Liabilities (the "***Schedules***"), Statements of Financial

Affairs (the "***SOFAs***"), and the initial reports of financial information in respect of entities which

their chapter 11 estates hold a controlling interest, as set forth in Bankruptcy Rule 2015.3

(the "***2015.3 Reports***") in each case, if the Plan is confirmed within seventy-five days of the

Petition Date. This relief is appropriate because, among other things, the Debtors commenced

solicitation of votes on the Plan prepetition with solicitation to be completed shortly.  Additionally,

although voting is not yet complete, as of the Petition Date, Holders of approximately 82% of First

Lien Claims and approximately 89.2% of Unsecured Notes Claims have already agreed to vote to accept the Plan by executing the Restructuring Support Agreement.

72.    Although section 341(a) of the Bankruptcy Code typically requires the U.S. Trustee to convene and preside over a meeting of the Debtors' creditors, this requirement can be waived under the circumstances present here.  Specifically, section 341(e) provides:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

73.    Furthermore, Part VII of the Prepack Guidelines provides that if a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code has not yet been convened prior to the date upon which the plan is confirmed, the meeting will not be convened if the order confirming the plan contains a provision waiving the convening of such meeting.

74.    Given that the Debtors commenced solicitation of votes on the Plan prepetition, and in light of the Plan's anticipated strong acceptance by creditors in the Voting Class, there is cause for this Court to conditionally waive the requirement that the U.S. Trustee convene the Creditors' Meeting.  Accordingly, the Debtors request that this Court order that the Creditors' Meeting need not be convened if the Debtors obtain confirmation of the Plan within seventy-five days of the Petition Date, subject to the Debtors' right to seek extensions in consultation with the U.S. Trustee.

75.    The Debtors also request that the requirement to file Schedules, SOFAs and 2015.3 Reports be waived in the event that the Plan is confirmed within seventy-five days of the Petition Date.  This Court has authority to grant an extension "for cause" pursuant to Bankruptcy Rules 1007(c) and 9006(b).  Bankruptcy Rule 9006(b)(1) provides this Court with authority to extend the period of time to file the Schedules, SOFAs and 2015.3 Reports "for cause."  Fed. R. Bankr. P. 9006(b)(1).  Additionally, Bankruptcy Rule 2015.3(d) provides this Court with the ability, after

notice and a hearing, to modify the reporting requirements for cause, including that a debtor is "not able, after a good faith effort, to comply with those reporting requirements, or that the information . . . is publicly available." Fed. R. Bankr. P. 2015.3(d).

76.    Here, cause exists to further extend the deadline because requiring the Debtors to file Schedules, SOFAs and 2015.3 Reports would distract the Debtors' management and advisors from the work of ensuring a smooth and swift transition into and out of these chapter 11 cases through confirmation and consummation of the Plan.  Given the prepackaged nature of these chapter 11 cases, and the fact that approximately Holders of approximately 82% of First Lien Claims and 89.2% of Unsecured Notes Claims have signed the Restructuring Support Agreement with additional support expected to be forthcoming, the Schedules, SOFAs and 2015.3 Reports would also be of limited utility to most parties in interest.  Any benefit of requiring the Debtors to prepare the Schedules, SOFAs and 2015.3 Reports would be minimal at best and would be significantly outweighed by the substantial expenditure of time and resources the Debtors will be required to devote to the preparation and filing of these documents.  For these reasons, this Court should only require that the Debtors file Schedules, SOFAs and 2015.3 Reports if the Plan is not confirmed within seventy-five days of the Petition Date, subject to the Debtors' right to seek extensions in consultation with the U.S. Trustee.

77.    Courts have frequently conditionally waived the requirements for the U.S. Trustee to convene a Creditors' Meeting and for a debtor to file Schedules, SOFAs and 2015.3 Reports in other prepackaged chapter 11 cases.  *See, e.g.*, *In re Pacificco Inc.,* No. 23-10470 (PB) (Bankr. S.D.N.Y. Mar. 31, 2023) (granting a contingent seventy-five-day extension to convene a Creditors' Meeting and to file Schedules, 2015.3 Reports, and SOFAs); *In re Lumileds Holding B.V.*, No, 22-11155 (LGB) (Bankr. S.D.N.Y. Sept. 2, 2022) (granting a contingent seventy-five-day extension

to convene a Creditors' Meeting and a contingent ten day extension to file Schedules, 2015.3 Reports, and SOFAs); *In re Lakeland Tours, LLC*, No. 20-11647 (JLG) (Bankr. S.D.N.Y. Aug. 1, 2020) (granting a contingent seventy-five-day extension to convene a Creditors' Meeting and a contingent thirty-two-day extension to file Schedules, 2015.3 Reports, and SOFAs); *In re Jason Indus. Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. July 2, 2020) (granting a contingent seventy-five-day extension to convene a Creditors' Meeting and a contingent twenty-eight-day extension to file Schedules, 2015.3 Reports, and SOFAs); *In re Deluxe Entm't Servs. Grp. Inc.*, No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 9, 2019) (granting a contingent seventy-five-day extension to convene a Creditors' Meeting and a contingent forty day extension to file Schedules, 2015.3 Reports, and SOFAs); *In re Hornbeck Offshore Servs., Inc.*, No. 20-32679 (DRJ) (Bankr. S.D. Tex. May 20, 2020) (granting a contingent fifty-day extension to convene a Creditors' Meeting and file Schedules, 2015.3 Reports, and SOFAs); *In re Clover Techs. Grp., LLC*, No. 19 12680 (KBO) (Bankr. D. Del. Dec. 19, 2019) (granting a contingent seventy-five-day extension to convene a Creditors' Meeting and file Schedules and SOFAs); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (same). For the reasons discussed above, similar relief is appropriate in these chapter 11 cases.

78.     The Debtors ask that the requested relief be granted without prejudice to the Debtors' ability to seek further extensions or modifications of the requirement for the U.S. Trustee to convene a Creditors' Meeting and for the Debtors to file Schedules, SOFAs and 2015.3 Reports. The Debtors also request that this Court authorize the Debtors to further extend the deadline to convene a Creditors' Meeting and file Schedules, SOFAs and 2015.3 Reports without filing a supplemental motion, and without further order from this Court, provided that the Debtors obtain the advance consent of the U.S. Trustee.

**G.      The Relief Requested Herein Complies with the Prepack Guidelines**

79.      The Prepack Guidelines require that a debtor request in the Scheduling Motion (as defined in the Prepack Guidelines) that the Court deem the debtors' prepetition noticing and ballot agent retroactively to be the Clerk of the Court's agent for purposes of (a) all prepetition notices and balloting and (b) prospectively as noticing, ballot, and claims agent, pursuant to section 156(C) of the Bankruptcy Code and rule 2002(a)-(b) of the Bankruptcy Rules.  *See* Prepack Guidelines, Part III.A(1)(ii).  The Debtors have separately requested the foregoing relief pursuant to the *Debtor's Application for Entry of an Order (A) Authorizing and Approving the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent and (B) Granting Related Relief*, filed contemporaneously herewith.

80.      Further, pursuant to Part III.C.(1) of the Prepack Guidelines, the Court may treat a chapter 11 case as a prepackaged chapter 11 case notwithstanding that the debtor proposes to confirm the plan pursuant to section 1129(b) of the Bankruptcy Code as to of claims or interests.  Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, the plan will be confirmed, at the debtors' request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.  At the Combined Hearing, the Debtors will seek relief to confirm the Plan under section 1129(b) of the Bankruptcy Code, to the extent applicable, in view of the deemed rejection by Classes 8 and 9.

81.      Part III.A(1)(ix) of the Prepack Guidelines requires the Debtors to disclose in the Scheduling Motion whether the Debtors intend to seek a declaration in the confirmation order under sections 1125(e) and/or 1145 of the Bankruptcy Code.  Section 1125(e) of the Bankruptcy Code provides that "[a] person that solicits acceptance or rejection of a plan, in good faith and in

compliance with the applicable provisions of this title . . . is not liable" on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan. 11 U.S.C. § 1125(e). The Debtors intend to request at the Combined Hearing that this Court grant all of the protections provided under section 1125(e) of the Bankruptcy Code to all parties engaged in the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of securities offered and sold under the Plan and the Equity Rights Offering.

82.    Further, Section 1145(a)(1) of the Bankruptcy Code provides:

> Except with respect to an entity that is an underwriter as defined in subsection (b) of this section, section 5 of the Securities Act of 1933 and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security do not apply to (1) the offer or sale under a plan of a security of a debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under the plan (A) in exchange for a claim against, an interest in, or a claim for an administrative expense in the case concerning, the debtor or such affiliate; or (B) principally in such exchange and partly for cash or property.

11 U.S.C. § 1145(a)(1).

83.    As described in the Disclosure Statement, the Plan contemplates the offer, issuance, sale and distribution of New Common Interests in the Reorganized Parent and rights to participate in the Equity Rights Offering (and New Common Interests in the reorganized Debtors issuable upon exercise of such rights) to Holders of Allowed Class 4 Unsecured Notes Claims in exchange for each Allowed Class 4 Unsecured Notes Claim. As further described in the Disclosure Statement, the Debtors believe, and intend to ask this Court at the Combined Hearing to find, that such offer, issuance, sale and distribution of the New Common Interests and the rights in the Equity Rights Offering (including the New Common Interests issuable upon exercise of such rights) will be exempted from registration under section 5 of the Securities Act of 1933 and under any

applicable state or local law pursuant to section 1145(a) of the Bankruptcy Code, except with respect to an entity that is an underwriter as defined in section 1145(b) of the Bankruptcy Code.

84.    The Prepack Guidelines additionally require that debtors disclose whether they will be seeking entry of (a) an order setting a claims bar date or (b) a Due Process Order (as defined in the Prepack Guidelines).  *See* Prepack Guidelines Part III.A(1)(viii).  The Debtors do not seek to set a general bar date; however, pursuant to Article IV.C of the Plan, any Person or Entity seeking to assert a Rejection Damages Claim must file a Proof of Claim for such Rejection Damages Claim with the Voting and Claims Agent within thirty (30) days of the effective date of the rejection of the applicable Executory Contract or Unexpired Lease, subject to the terms of the Plan.

85.    The Debtors submit that this Motion sufficiently complies with the Prepack Guidelines and request that this Court treat these Chapter 11 Cases as prepackaged chapter 11 cases pursuant to Part III of the Prepack Guidelines and accordingly grant the relief requested herein.

## RESERVATION OF RIGHTS

86.    Nothing in this Motion shall be deemed:  (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) satisfied pursuant to the Motion is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved); (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security

interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  If this Court enters any order granting the relief sought herein, any payment made pursuant to such order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## MOTION PRACTICE

87.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## NOTICE

88.    Notice of this Motion will be given to:  (a) the United States Trustee for Region 2; (b) Milbank LLP as counsel to the First Lien Ad Hoc Group; (c) the administrative agent and collateral agent under the first lien credit agreement; (d) Weil, Gotshal & Manges LLP as counsel to the Ad Hoc Noteholder Group; (e) Schulte Roth & Zabel LLP as counsel to Greenvale; (f) the indenture trustees for the Notes; (g) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (h) the United States Attorney's Office for the Southern District of New York; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; and (k) all parties entitled to notice pursuant to Local Rule 9013-1(b).  The Debtors submit that, under the circumstances, no other or further notice is required.

89.    A copy of this Motion is available from (a) this Court's website, www.nysb.uscourts.gov, and (b) the website maintained by the Debtors' Claims and Noticing Agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/2U.

## NO PRIOR MOTION

90.     The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other court.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that this Court enter the Proposed Order

granting the relief requested in this Motion and such other and further relief as may be just and

proper.

<div align="center">

**LATHAM & WATKINS LLP**

</div>

Dated:   July 25, 2024
       New York, New York

By:   */s/ George A. Davis*
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  george.davis@lw.com
       george.klidonas@lw.com
       anu.yerramalli@lw.com
       randall.weber-levine@lw.com
       scott.yousey@lw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

### ORDER (A) SCHEDULING A COMBINED HEARING TO CONSIDER APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN; (B) ESTABLISHING THE VOTING RECORD DATE, VOTING DEADLINE, AND OTHER DATES; (C) APPROVING PROCEDURES FOR SOLICITING, RECEIVING, AND TABULATING VOTES ON THE PLAN AND FOR FILING OBJECTIONS TO THE DISCLOSURE STATEMENT OR THE PLAN; (D) APPROVING THE MANNER AND FORMS OF NOTICE AND OTHER RELATED DOCUMENTS; (E) APPROVING EQUITY RIGHTS OFFERING DOCUMENTS; (F) CONDITIONALLY WAIVING REQUIREMENT OF FILING SCHEDULES AND STATEMENTS AND OF CONVENING SECTION 341 MEETING OF CREDITORS; AND (G) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtors for entry of an order, pursuant to 11 U.S.C. §§ 105(a), 1125, and 1126 and Rules 2002, 3003, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure, (a) scheduling a combined hearing at which the Court will consider approval of the Disclosure Statement and confirmation of the Plan; (b) establishing the voting record date, voting deadline and other related dates; (c) approving procedures for soliciting, receiving and tabulating votes on the Plan and for filing objections to the Disclosure Statement or the Plan; (d) approving the manner and forms of notice and other related documents; (e) approving

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the equity rights offering documents; (f) conditionally, if the Plan is confirmed within 75 days of the Petition Date, waiving the requirements to (i) hold the Creditors' Meeting and (ii) file schedules of assets and liabilities, statements of financial affairs and 2015.3 Reports; and (g) granting related relief; and this Court having reviewed the Motion and the First Day Declarations; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and a hearing having been held to consider the relief requested in the Motion (the "***Hearing***"); and upon the First Day Declarations and the record of the Hearing and all the proceedings before this Court; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED in its entirety as set forth herein.

2.      The Debtors are authorized to continue their prepetition solicitation in respect of the Plan, as set forth in the Motion, which commenced on July 24, 2024.  To the extent the Debtors received any acceptances or rejections prior to the Petition Date, the Debtors may count such ballots.

A.      **Combined Hearing and Objections**

3.      Pursuant to Bankruptcy Rule 3020(b)(2), the hearing to consider adequacy of the Disclosure Statement and confirmation of the Plan (the "***Combined Hearing***") shall be on September 6, 2024, at 10:00 a.m. prevailing Eastern Time.

4.      The Proposed Confirmation Schedule set forth in the Motion (and copied below) is hereby approved, except as may be modified herein.

| Event | Date/Deadline |
|-------|---------------|
| Voting Record Date | July 22, 2024 |
| Commencement of Prepetition Solicitation | July 24, 2024 |
| Petition Date | July 25, 2024 |
| Commencement of Equity Rights Offering | July 26, 2024 |
| Deadline to Publish Notice of Combined Hearing | July 31, 2024 (or as soon as reasonably practicable after entry of the Proposed Order) |
| Initial Plan Supplement Deadline | August 16, 2024 |
| Voting Deadline | August 21, 2024 at 5:00 p.m. prevailing Eastern Time |
| Objection Deadline for Combined Hearing | August 23, 2024 at 4:00 p.m. prevailing Eastern Time |
| Equity Rights Offering Termination | August 27, 2024 |
| Confirmation Brief and Reply Deadline | September 3, 2024 |
| Combined Hearing | September 6, 2024 |

5.      Pursuant to Bankruptcy Rule 3020(b)(1), the deadline (the "***Objection Deadline***") for filing and serving objections to the Disclosure Statement or confirmation of the Plan ("***Objections***") shall be August 23, 2024 at 4:00 p.m. prevailing Eastern Time.

6.      The Objections, if any, shall (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objector and the nature and amount of any Claim or interest asserted by the objector against or in the Debtors, (d) state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection, and (e) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so as to be **actually** **received** by each of the following parties (the "*Notice Parties*") on or before the Objection Deadline:

i.      2U, INC., 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202, Attn: Paul S. Lalljie (plalljie@2u.com), Matthew Norden (mnorden@2u.com), and Lillian Brownstein (lbrownstein@2u.com);

ii.     Proposed counsel to the Debtors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020, Attn: George A. Davis (george.davis@lw.com); George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Randall Weber-Levine (randall.weber-levine@lw.com) and Scott Yousey (scott.yousey@lw.com);

iii.    Counsel to the Ad Hoc First Lien Lender Group, Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Albert A. Pisa (apisa@milbank.com), Tyson Lomazow (tlomazow@milbank.com), and Abigail Debold (adebold@milbank.com));

iv.     Counsel to the Ad Hoc Noteholder Group, Weil, Gotshal & Manges LLP, 767 5th Ave, New York, New York 10153, Attn: Matt Barr (matt.barr@weil.com), David Griffiths (david.griffiths@weil.com), and F. Gavin Andrews (f.gavin.andrews@weil.com);

v.      Counsel to Greenvale, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Kristine Manoukian (kristine.manoukian@srz.com), Kelly Knight (kelly.knight@srz.com), and Reuben E. Dizengoff (reuben.dizengoff@srz.com));

vi.     the Office of the U.S. Trustee, 1 Bowling Green, Room 534, New York, NY 10004 (Attn: Rachael E. Siegel (rachael.e.siegel@usdoj.gov), Daniel Rudewicz (daniel.rudewicz@usdoj.gov), and Brian Masumoto (brian.masumoto@usdoj.gov)); and

vii.    Counsel to any statutory committee if appointed.

7.      Any brief in support of confirmation of the Plan and reply to any objections shall be filed on or before September 3, 2024.  To the extent applicable, Local Rule 9006-1 is hereby waived in its entirety.

**B.      Establishment of Voting Record Date**

8.      Pursuant to Bankruptcy Rule 3017(d), July 22, 2024, shall be the voting record date (the "***Voting Record Date***") with respect to all Claims.  The Debtors shall use the Voting Record Date for determining which Entities are entitled to, as applicable, receive Solicitation Packages, vote to accept or reject the Plan and receive notice of the Combined Hearing.

**C.      Approval of Notices and Solicitation Procedures**

**I.      Duties of Claims and Noticing Agent**

9.      The Claims and Noticing Agent shall continue to assist the Debtors in, among other things, (a) mailing Combined Notices to Holders of Claims in Non-Voting Classes and other non-voting parties entitled to notice, (b) distributing Solicitation Packages by e-mail and mail, (c) soliciting votes on the Plan, (d) receiving, tabulating, and reporting on Ballots cast for or against the Plan by Holders of Claims against the Debtors, (e) responding to inquiries from creditors and stakeholders relating to the Plan, the Disclosure Statement, the Ballots and (f) if necessary, contacting Holders of Claims and Interests regarding the Plan and their Ballots.

10.     The Claims and Noticing Agent is also authorized to accept Ballots via electronic online transmission solely through a customized online balloting portal on the Debtors' case website. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

## II.    Notices and Ballots

11.    The Combined Notice attached hereto as **Exhibit 1** complies with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Prepack Guidelines and is hereby approved and deemed to be sufficient and appropriate under the circumstances.

12.    Service of the Combined Notice as set forth in the Motion and herein is sufficient notice of the Petition Date, the Combined Hearing, the Objection Deadline, and procedures for objecting to approval of the Disclosure Statement and to Confirmation of the Plan, and satisfies Bankruptcy Rule 3017 and Part X.D of the Prepack Guidelines.

13.    The forms of Ballots[3] which have been used in connection with solicitation of votes on, and confirmation of, the Plan (a) are sufficiently consistent with Official Form No. 314 and the forms attached to the Prepack Guidelines, (b) adequately address the particular needs of these Chapter 11 Cases and (c) are each appropriate for the applicable Class of Claims entitled under the Plan to vote to accept or reject the Plan, and are hereby approved in full.

14.    Pursuant to Part III.B(i) of the Prepack Guidelines, the Debtors are authorized to continue to accept Ballots distributed prior to the Petition Date until the Voting Deadline, and are further authorized to count such Ballots as votes to accept or reject the Plan.

15.    Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 5 (General Unsecured Claims), are Unimpaired and, thus, the Holders of such Unimpaired Claims are conclusively presumed to accept the Plan pursuant to Bankruptcy Code section 1126(f), and the Debtors are not required to solicit their vote with respect to such Unimpaired Claims.

---

[3]    The term "Ballots/Opt-Out Forms" as defined in the Plan shall have the same meaning as the stand-alone terms "Ballot" and "Opt-Out Form," as applicable, used in the forms attached to this Order.

16.     The Debtors shall not be obligated to deliver Solicitation Packages or Ballots to Holders of Unimpaired Claims and Interests.  Rather, in lieu thereof and in accordance with Bankruptcy Rule 3017(d), the Debtors shall mail to the Holders of such Unimpaired Claims and Interests (a) the Combined Notice; and (b) a notice, substantially in the form of **Exhibit 5** attached hereto (the "***Unimpaired Claims Notice***").

17.     Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) shall be, at the option of the Debtors, either reinstated or canceled and released, with no distribution made on account of such Intercompany Claims or Intercompany Interests.  The Holders of such Claims and Interests will be conclusively presumed to have accepted the Plan or conclusively deemed to have rejected the Plan.  Because the Holders of such Claims and Interests are Affiliates of the Debtors, the Debtors shall not be obligated to deliver Solicitation Packages or Ballots to Holders of Intercompany Claims or Intercompany Interests and any requirement to deliver a notice with respect to the Holders of such Claims and Interests under Bankruptcy Rule 3017(d) shall be waived.

18.     Class 8 (Existing Equity Interests) and Class 9 (Subordinated Claims) do not retain or receive any property under the Plan on account of their Claims or Interests, and are, therefore, deemed to reject the Plan pursuant to Bankruptcy Code section 1126(g).  The Debtors shall not be obligated to deliver Solicitation Packages or Ballots to Holders of Claims or Interests in Class 8 or Class 9.  In accordance with Bankruptcy Rule 3017(d), the Debtors shall mail to the Holders of such Claims and Interests (a) the Combined Notice, (b) a notice, substantially in the form of **Exhibit 6** attached hereto (the "***Notice of Non-Voting Status***"); and (c) an Opt-Out Form in the form attached to the Notice of Non-Voting Status.

19.    The Debtors shall not be required to deliver Ballots or Solicitation Packages to counterparties to the Debtors' executory contracts and unexpired leases who do not have scheduled Claims or Claims based upon filed Proofs of Claim.  Rather, in lieu thereof, and in accordance with Bankruptcy Rule 3017(d), the Debtors shall mail to the counterparties to the Debtors' executory contracts and unexpired leases the Combined Notice.

20.    Subject to entry of the Combined Order, the Unimpaired Claims Notice, the Notice of Non-Voting Status, and the Opt-Out Form attached to the Notice of Non-Voting Status, are conditionally approved.

### III.    Content and General Transmittal of Solicitation Packages; Notice of Combined Hearing

21.    The Debtors shall file the Plan Supplement with this Court on or before August 16, 2024 (the "***Initial Plan Supplement Deadline***"), and may amend or supplement the Plan Supplement as necessary thereafter.  If the Objection Deadline is extended, the Debtors shall be authorized to file the Plan Supplement by the date that is seven (7) days prior to such extended Objection Deadline, as applicable.

22.    To the extent that section 1125(b) of the Bankruptcy Code requires the Debtors' prepetition solicitation of acceptances for the Plan to be pursuant to an approved disclosure statement in order to continue on a postpetition basis, the Court conditionally approves the Disclosure Statement as having adequate information as required by section 1125 of the Bankruptcy Code without prejudice to any party in interest objecting to approval of the Disclosure Statement at the Combined Hearing.

23.    Subject to entry of the Combined Order, the Solicitation Package used to solicit votes to accept or reject the Plan as set forth in the Motion is conditionally approved.

24.     The Debtors shall provide copies of the Solicitation Package (other than a Ballot) and the Plan Supplement to: (a) the United States Trustee for Region 2; (b) Milbank LLP as counsel to the Ad Hoc First Lien Lender Group; (c) the administrative agent and collateral agent under the first lien credit agreement; (d) Weil, Gotshal & Manges LLP as counsel to the Ad Hoc Noteholder Group; (e) Schulte Roth & Zabel LLP as counsel to Greenvale; (f) the indenture trustees for the Notes; (g) the United States Attorney's Office for the Southern District of New York; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; and (j) those parties that have requested notice pursuant to Bankruptcy Rule 2002, as of the date of mailing the Solicitation Package or filing the Plan Supplement (as applicable).

25.     In addition to mailing the Combined Notice to all parties that received the Combined Notice (other than parties to whom notice is not required pursuant to paragraph 28 of this Order), the Debtors shall mail the Combined Notice to all parties in interest listed on the Debtors' creditor matrix as soon as practicable after entry of this Order.

26.     The Debtors shall publish the Combined Notice on July 31, 2024, or as soon as reasonably practicable following entry of this Order, in the national edition of *The Wall Street Journal* and the global edition of the *Financial Times*, or another similar newspaper or publication, as the Debtors deem appropriate, and shall be authorized (but not required) to publish the Combined Notice in such trade or other local publications of general circulation as the Debtors shall determine.  The Debtors are authorized to make reasonable payments necessary for such publication.

27.     Publication of the Combined Notice as described herein shall constitute sufficient notice of the Combined Hearing to persons who do not otherwise receive notice by mail as provided for in this Order.

## IV.    Exceptions to Solicitation Requirements

28.    Notwithstanding anything in this Order to the contrary, the Debtors shall not be required to send Solicitation Packages, Ballots, individual solicitation materials, or other notices to any person or entity to whom the Debtors mailed the Combined Notice and had such notice returned by the United States Postal Service marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or any similar reason, unless the Debtors have been informed in writing by such person of that person's new address.

29.    In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors are authorized to accept Ballots via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website to be maintained by the Claims and Noticing Agent.  Entities entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the online balloting portal (which allows a Holder to submit an electronic signature).  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

### D.    Voting Deadline and Procedures for Vote Tabulation

30.    5:00 p.m. Prevailing Eastern Time on August 21, 2024 (the "***Voting Deadline***") is the last date and time by which Ballots for accepting or rejecting the Plan, and opting out of the Third-Party Release, must be received by the Claims and Noticing Agent in order to be counted; *provided*, that the Debtors may extend the Voting Deadline as they deem appropriate.

31.    Any timely received Ballot that contains sufficient information to permit the identification of the claimant and is cast as an acceptance or rejection of the Plan shall be counted and shall be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan, and

the vote amounts for Holders of Class 3 First Lien Claims and Holders of Class 4 Unsecured Notes Claims shall be based on the amount of each eligible Holder's Claims as of the Voting Record Date.

32.     The following Ballots shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

a.      Any Ballot received after the Voting Deadline unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

b.      Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

c.      Any Ballot cast by a person or entity that does not hold a Claim in a Voting Class;

d.      Any Ballot cast for a Claim not listed on the Schedules (if any), or scheduled at zero, in an unknown amount, or, as unliquidated, contingent, or disputed, and for which no Proof of Claim was timely filed;

e.      Any Ballot that is properly completed, executed and timely filed, but (i) does not indicate an acceptance or rejection of the Plan, (ii) indicates both an acceptance and rejection of the Plan, or (iii) partially accepts and partially rejects the Plan;

f.      Any Ballot submitted by facsimile, telecopy or electronic mail;

g.      Any unsigned Ballot, provided that any Ballot submitted through E-Ballot will be deemed to contain a valid signature;

h.      Any Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Claims and Noticing Agent) or the Debtors' financial or legal advisors; or

i.      Any Ballot not cast in accordance with the procedures approved in this Order.

33.     Any duplicate Ballots will only be counted once.

34.     Subject to any contrary order of the Court and except as otherwise set forth herein, the Debtors may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the vote tabulation certification prepared by the Claims and Noticing Agent.

35.     Notwithstanding Bankruptcy Rule 3018(a), whenever two or more Ballots are cast which attempt to vote the same Claim prior to the Voting Deadline, the last Ballot received by the Claims and Noticing Agent prior to the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede any prior Ballots, *provided*, *however*, that where an ambiguity exists as to which Ballot was the latest mailed, the Claims and Noticing Agent reserves the right to contact the creditor and tabulate the vote according to such voter's stated intent.  This procedure is without prejudice to the Debtors' rights to object to the validity of the superseding Ballots on any basis permitted by law and, if the objection is sustained, to count the first Ballot for all purposes.

36.     Claims splitting is not permitted and creditors who vote must vote all of their Claims within a particular class to either accept or reject the Plan.  If Claimants submit Ballots on account of multiple Claims within the Voting Class, the Claims and Noticing Agent shall tabulate such votes in the aggregate amount and as one (1) vote for numerosity purposes.

**E.     The Equity Rights Offering, the Equity Rights Offering Documents and the Commencement of the Equity Rights Offering**

37.     The Equity Rights Offering Documents attached hereto as **Exhibit 7** are approved and the Debtors are authorized to commence the Equity Rights Offering in accordance with and as described in the Equity Rights Offering Documents, the Plan and the Disclosure Statement.

**F.     Extension and Conditional Waivers of the 341 Meeting and the Filing of the Schedules, SOFAs and 2015.3 Reports**

38.     The U.S. Trustee need not and shall not convene a meeting of creditors pursuant to section 341(e) of the Bankruptcy Code unless the Plan is not confirmed within seventy-five (75) days following the Petition Date, without prejudice to the Debtors' right to request further extensions thereof.

39.     Cause exists to waive the requirement that the Debtors file the Schedules, SOFAs and 2015.3 Reports if the Plan is confirmed within seventy-five (75) days of the Petition Date, without prejudice to the Debtors' rights to request further extensions thereof; provided that such deadline to file the Schedules, SOFAs and 2015.3 Reports may be further extended, without further motion by the Debtors, upon further order from this Court submitted on certification of counsel, filed on the docket and served on the Notice Parties, with prior consent of the U.S. Trustee (which consent may be by email); provided, further, that this relief is without prejudice to the Debtors' rights to request further extensions thereof by motion (including if the Debtors and the U.S. Trustee are unable to reach agreement pursuant to the preceding proviso).

**VI.     Compliance with Prepack Guidelines**

40.     The Motion complies with Part III of the Prepack Guidelines.  Notwithstanding the fact that the Debtors may seek to confirm the Plan pursuant to 11 U.S.C. § 1129(b), these Chapter 11 Cases shall be treated as Prepackaged Chapter 11 Cases (as defined in the Prepack Guidelines) pursuant to Part III.C of the Prepack Guidelines.

**V.     Miscellaneous**

41.     The service of Solicitation Packages and other notices and documents described herein in the time and manner set forth in this Order constitutes adequate and sufficient notice of the Combined Hearing and no further notice is necessary.

42.     Nothing in the Motion or this Order, or the relief granted herein (including any actions taken or payments made by the Debtors), shall be deemed as (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in

13

the Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or

otherwise) satisfied pursuant to the Motion is valid (and all rights to contest the extent, validity, or

perfection or seek avoidance of all such liens are expressly reserved); (f) a request or authorization

to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the

Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any

lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver

of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or

causes of action which may exist against any entity under the Bankruptcy Code or any other

applicable law.  Nothing contained in this Order shall be deemed to increase, reclassify, elevate to

an administrative expense status, or otherwise affect any claim to the extent it is not paid.

43.    Notwithstanding any applicable Bankruptcy Rules, the terms and conditions of this

Order shall be immediately effective and enforceable upon its entirety.

44.    The Debtors and the Claims and Noticing Agent are authorized and empowered to

take all actions necessary or appropriate to implement the relief granted in this Order.

45.    This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.

46.    Copies of the Plan and Disclosure Statement (including after the Initial Plan

Supplement Deadline, the Plan Supplement) and all pleadings and orders of the Bankruptcy Court

are publicly available, for a fee via PACER at: www.nysb.uscourts.gov, or free of charge from the

Claims and Noticing Agent by visiting the Debtors' restructuring website at

https://dm.epiq11.com/2U.  Such documents and pleadings may also be obtained by: (a) calling

the Debtors' restructuring hotline at 877-525-5725 (U.S.) or +1 360-803-4441 (international);

and/or (b) writing to 2U, Inc. *et al.*, c/o Epiq Corporate Restructuring, 10300 SW Allen Blvd,

Beaverton, Oregon, 97005,  or by email to tabulation@epiqglobal.com with "2U" in the subject

line.

New York, New York
Dated:_____, 2024

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT 1</u>**

**Combined Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

**NOTICE OF (A) COMMENCEMENT OF CHAPTER 11 CASES;**
**(B) COMBINED HEARING ON DISCLOSURE STATEMENT,**
**CONFIRMATION OF JOINT PREPACKAGED CHAPTER 11 PLAN,**
**AND RELATED MATTERS; AND (C) OBJECTION DEADLINES AND**
**SUMMARY OF DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**

> YOU ARE RECEIVING THIS NOTICE BECAUSE YOUR RIGHTS MAY BE
> AFFECTED BY THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF 2U, INC.
> AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE
> (THE "***PLAN***"). THEREFORE, YOU SHOULD READ THIS NOTICE CAREFULLY AND
> DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU
> MAY WISH TO CONSULT ONE.

To:    **All Holders of Claims Against, and Holders of Equity Interests in, 2U, Inc. and Its
Affiliate Debtors and Debtors in Possession and All Other Parties-in-Interest in the
Above-Captioned Chapter 11 Cases**

**PLEASE TAKE NOTICE THAT** on July 25, 2024 (the "***Petition Date***"), 2U, Inc. and
its affiliate debtors and debtors in possession in the above-captioned chapter 11 cases (collectively,
the "***Debtors***") filed voluntary petitions for relief under chapter 11 of the United States Code (the
"***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of New York
(the "***Bankruptcy Court***").

On July 24 2024, the Debtors commenced solicitation of votes to accept the Plan from
Holders of First Lien Claims (Class 3) and Beneficial Holders of Unsecured Notes Claims (Class
4), each Beneficial Holder of record as of July 22, 2024 (the "***Voting Record Date***") via physical
and/or electronic mail. Only Beneficial Holders of Claims in Class 3 and Class 4 are entitled to
vote to accept or reject the Plan, as set forth in the *Disclosure Statement for the Joint Prepackaged
Plan of Reorganization of 2U, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy
Code* (the "***Disclosure Statement***").[2] All other Classes of Claims and Equity Interests are either
deemed to accept or reject the Plan and, therefore, are not entitled to vote.

The hearing to consider approval of the Disclosure Statement and confirmation of the Plan
(the "***Combined Hearing***") will begin on **September 6, 2024, at 10:00 A.M. prevailing Eastern**

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC
(N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter
(US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

[2]    Capitalized terms used but not otherwise defined herein will have the meanings set forth in the Plan or Disclosure
Statement, as applicable.

**Time**, in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom [ ● ], New York, New York 10004-1408, before the Honorable [ ● ], United States Bankruptcy Judge.  The Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order.  Moreover, the Plan may be modified or amended, if necessary, pursuant to Bankruptcy Code Section 1127, prior to, during or as a result of the Combined Hearing, without further notice to parties in interest.

## Critical Information Regarding Voting on the Plan

On the Petition Date, the Debtors also filed the Plan and proposed Disclosure Statement pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code.  Copies of the Plan and the Disclosure Statement can be viewed or downloaded at no charge by visiting the website maintained by the Debtors' claims and noticing Agent, Epiq Corporate Restructuring, LLC (the "***Claims and Noticing Agent***" or "***Epiq***"), at https://dm.epiq11.com/2U.  Copies of the Plan and Disclosure Statement may also be obtained by: (a) calling the Claims and Noticing Agent at 877-525-5725 (Toll Free U.S.) or +1 360-803-4441 (International) or (b) emailing tabulation@epiqglobal.com with reference to "2U" in the subject line.  You may also visit the Debtors' restructuring website at https://dm.epiq11.com/2U.  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee at www.nysb.uscourts.gov or free of charge at https://dm.epiq11.com/2U.

In accordance with Bankruptcy Code sections 1122 and 1123, the Plan contemplates classifying Holders of Claims and Interests into various Classes for all purposes, including with respect to voting on the Plan, as follows:

### Summary of Claim Status and Voting Rights

| Class | Claim/Equity Interest | Status | Voting Rights | Opt-Out Rights[3] |
|-------|----------------------|--------|---------------|-------------------|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept | N/A |
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept | N/A |
| 3 | First Lien Claims | Impaired | Entitled to Vote | Opt-Out Included with Ballot |
| 4 | Unsecured Notes Claims | Impaired | Entitled to Vote | Opt-Out Included with Ballot |
| 5 | General Unsecured Claims | Unimpaired | Presumed to Accept | N/A |
| 6 | Intercompany Claims | Unimpaired or Impaired | Presumed to Accept or Deemed to Reject | N/A |
| 7 | Intercompany Interests | Unimpaired or Impaired | Presumed to Accept or Deemed to Reject | N/A |
| 8 | Existing Equity Interests | Impaired | Deemed to Reject | Receives Opt-Out Form |

---

[3]   For the avoidance of doubt, the right to opt out of the Third-Party Release, and the validity thereof, shall remain subject to the terms of the Plan and the Restructuring Support Agreement.

**Summary of Claim Status and Voting Rights**

| Class | Claim/Equity Interest | Status | Voting Rights | Opt-Out Rights[3] |
|-------|----------------------|--------|---------------|-------------------|
| 9 | Subordinated Claims | Impaired | Deemed to Reject | Receives Opt-Out Form |

<u>Voting Record Date</u>.  The Voting Record Date is July 22, 2024.  The Voting Record Date is the date by which it is determined which Holders of Claims in Class 3 and Class 4 are entitled to vote on the Plan.

<u>Voting Deadline</u>.  The deadline for voting on the Plan is **August 21, 2024, at 5:00 P.M. prevailing Eastern Time** (the "***Voting Deadline***"), unless extended by the Debtors.  If you hold a First Lien Loan Claim in Class 3 or Unsecured Notes Claim in Class 4 as of the Voting Record Date, you are entitled to (i) vote to accept or reject the Plan and (ii) opt out of the Third-Party Release provided under the Plan; you should have received a Ballot and corresponding voting instructions.  For your vote to be counted, you must: (a) follow such voting instructions carefully, (b) complete <u>all</u> the required information on the Ballot, <u>and</u> (c) sign, date and return your Ballot to your nominee or the Claims and Noticing Agent, as applicable, so that it is **actually received** by the Claims and Noticing Agent according to and as set forth in detail in the voting instructions on or before the Voting Deadline.  *A failure to follow such instructions may disqualify your vote.*

**<u>Critical Information Regarding Objecting to the Plan and Disclosure Statement</u>**

> **<u>ARTICLE IX</u> OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS.  YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE IT MAY AFFECT YOUR RIGHTS.**

<u>Objection Deadline</u>.  The deadline for filing objections to the adequacy of the Disclosure Statement or confirmation of the Plan is **August 23, 2024, at 4:00 p.m. prevailing Eastern Time** (the "***Objection Deadline***").

<u>Objections</u>:  Any objection to the adequacy of the Disclosure Statement or the confirmation of the Plan must:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York; (c) state the name and address of the objecting party and the amount and nature of the claim or interest of such entity; (d) state with particularity the basis and nature of any objection to the Plan or Disclosure Statement and, if practicable, a proposed modification to the Plan that would resolve such objection; and (e) be filed with the Bankruptcy Court (contemporaneously with a proof of service), and be served upon the parties identified below (the "***Notice Parties***") so as to be **actually received** by each of them on or before the Objection Deadline.

> OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

**<u>Notice Parties</u>**

(a)    2U, Inc., 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202, Attn: Paul S. Lalljie (plalljie@2u.com), Matthew Norden (mnorden@2u.com), and Lillian Brownstein (lbrownstein@2u.com);

(b)     Proposed counsel to the Debtors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020, Attn: George A. Davis (george.davis@lw.com); George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Randall Weber-Levine (randall.weber-levine@lw.com) and Scott Yousey (scott.yousey@lw.com);

(c)     Counsel to the Ad Hoc First Lien Lender Group, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn: Albert A. Pisa (apisa@milbank.com), Tyson Lomazow (tlomazow@milbank.com), and Abigail Debold (adebold@milbank.com);

(d)     Counsel to the Ad Hoc Noteholder Group, Weil, Gotshal & Manges LLP, 767 5th Ave, New York, New York 10153, Attn: Matt Barr (matt.barr@weil.com), David Griffiths (david.griffiths@weil.com), and F. Gavin Andrews (f.gavin.andrews@weil.com);

(e)     Counsel to Greenvale, Schulte, Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Kristine Manoukian (kristine.manoukian@srz.com), Kelly Knight (Kelly.knight@srz.com), and Reuben E. Dizengoff (reuben.dizengoff@srz.com);

(f)     United States Trustee, U.S. Department of Justice, Office of the U.S. Trustee, 1 Bowling Green, Room 534, New York, NY 10004, Attn: Rachael E. Siegel (rachael.e.siegel@usdoj.gov), Daniel Rudewicz (daniel.rudewicz@usdoj.gov), and Brian Masumoto (brian.masumoto@usdoj.gov); and

(g)     Counsel to any statutory committee if appointed.

## Summary of the Plan[4]

The Debtors commenced solicitation of votes to accept the Plan before the Petition Date. The following chart summarizes the treatment of each class of Claims and Equity Interests under the Plan.

---

[4]     The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. For a more detailed description of the Plan, please refer to the Disclosure Statement. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

4

**Treatment of Claims and Equity Interests Under the Plan**

| Unclassified Non-Voting Claims | | |
|---|---|---|
| Class | Claim/Equity Interest | Plan Treatment |
| n/a | General Administrative Claims | Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (iv) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; or (v) at such time and upon such terms as set forth in an order of the Bankruptcy Court. |
| n/a | DIP Claims | In full and final satisfaction, settlement, release, and discharge of each Allowed DIP Claim, on the Effective Date, each Holder of such Allowed DIP Claim shall receive either (i) payment in full in Cash or (ii) such other treatment as to which the Debtors and the Holder of such Allowed DIP Claim will have agreed upon in writing, with the consent of the Required Consenting Noteholders and the Debtors.  Any unused DIP Commitments shall be deemed terminated, and the DIP Liens will be deemed discharged, released, and terminated for all purposes without further action of or by any Person or Entity. |

**Treatment of Claims and Equity Interests Under the Plan**

| n/a | Priority Tax Claims | Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. Nothing in the foregoing or otherwise in the Plan shall prejudice the Debtors' or the Reorganized Debtors' rights and defenses regarding any asserted Priority Tax Claim. |
|---|---|---|

| *Classified Claims and Equity Interests* | | |
|---|---|---|
| <u>Class</u> | <u>Claim/Equity Interest</u> | <u>Plan Treatment</u> |
| 1 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment of its Allowed Other Secured Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed Other Secured Claim, on the Effective Date, each Holder of such Allowed Other Secured Claim shall receive, at the Debtors' option and subject to the consent of the Required Consenting Creditors (with such consent to not be unreasonably withheld), either (i) payment in full in Cash, (ii) delivery of the collateral securing such Allowed Other Secured Claim, (iii) Reinstatement of such Allowed Other Secured Claim, or (iv) such other treatment rendering such Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. |
| 2 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment of such Allowed Other Priority Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed Other Priority Claim, on the Effective Date, each Holder of such Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code. |
| 3 | First Lien Claims | Except to the extent that a Holder of an Allowed First Lien Claim agrees to less favorable treatment of its Allowed First Lien Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed First Lien Claim, on the Effective Date, each Holder of such Allowed First Lien Claim shall receive its Pro Rata share of the Amended and Restated Loans. |

| | *Classified Claims and Equity Interests* | |
|---|---|---|
| <u>Class</u> | <u>Claim/Equity Interest</u> | <u>Plan Treatment</u> |
| 4 | Unsecured Notes Claims | Except to the extent that a Holder of an Allowed Unsecured Notes Claim agrees to less favorable treatment of its Allowed Unsecured Notes Claim, in full and final satisfaction, settlement, release, and discharge of such Allowed Unsecured Notes Claim, on the Effective Date, each Holder of such Allowed Unsecured Notes Claim shall receive (i) the right to participate in the Equity Rights Offering in accordance with the Equity Rights Offering Procedures, and (ii) its Pro Rata share of the New Common Interests (subject to dilution on account of the New Common Interests issued pursuant to (A) the MIP and (B) the Equity Rights Offering). |
| 5 | General Unsecured Claims | The legal, equitable, and contractual rights of the Holders of Allowed General Unsecured Claims are unaltered by this Plan. Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on and after the Effective Date, the Reorganized Debtors shall continue to pay each Holder of an Allowed General Unsecured Claim in the ordinary course of business; *provided* that each Landlord Claim shall be subject to the cap set forth in section 502(b)(6) of the Bankruptcy Code. |
| 6 | Intercompany Claims | On the Effective Date, Intercompany Claims shall be, at the option of the applicable Debtor and subject to the consent of the Required Consenting Creditors (with such consent to not be unreasonably withheld), either: (i) Reinstated; or (ii) set off, settled, distributed, contributed, merged, canceled, or released, in each case, in the discretion of the Debtors. |
| 7 | Intercompany Interests | On the Effective Date, Intercompany Interests shall be, at the option of the applicable Debtor and subject to the consent of the Required Consenting Creditors (with such consent to not be unreasonably withheld), either:   (i) Reinstated; or (ii) set off, settled, distributed, contributed, merged, canceled, or released, in each case, in the discretion of the Debtors and subject to the consent of the Required Consenting Creditors (with such consent to not be unreasonably withheld). |
| 8 | Existing Equity Interests | On the Effective Date, all Existing Equity Interests will be canceled, released, and extinguished and will be of no further force and effect.  No Holders of such Existing Equity Interests will receive any property or distribution under this Plan. |
| 9 | Subordinated Claims | On the Effective Date, all Subordinated Claims will be canceled, released, and extinguished and will be of no further force and effect.  No Holders of such Subordinated Claims will receive any property or distribution under this Plan. |

## <u>Non-Voting Status of Holders of Certain Claims and Equity Interests</u>

As set forth above, certain Holders of Claims and Equity Interests are ***not*** entitled to vote on the Plan.  As a result, such parties did not receive any ballots to vote on the Plan.  The

holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 5 (General Unsecured Claims) are Unimpaired under the Plan because such Allowed Claims will be paid in full or otherwise receive such treatment that renders such Claims unimpaired pursuant to the Bankruptcy Code.  Pursuant to section 1126(f) of the Bankruptcy Code, Holders of Unimpaired Claims are conclusively presumed to have accepted the Plan and thus are not entitled to vote.

Finally, because the Holders of Claims or Interests in Class 8 (Existing Equity Interests) and Class 9 (Subordinated Claims) are Impaired (that is, among other things, Holders of Equity Interests in Class 8 will have their Interests canceled, released, and extinguished, and Holders of Claims in Class 9 will receive no distributions on account of their Class 9 Claims under the Plan), these Holders are also not entitled to vote because they are deemed to reject the Plan.

---

**NOTWITHSTANDING THEIR NON-VOTING STATUS, HOLDERS OF INTERESTS OR CLAIMS IN CLASSES 8 AND 9, RESPECTIVELY, WILL RECEIVE AN OPT-OUT FORM (THE "*OPT-OUT FORM*") SOLELY FOR THE PURPOSE OF ALLOWING THEM TO AFFIRMATIVELY OPT OUT, AND NOT BE SUBJECT TO, THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE IX</u> OF THE PLAN.  ACCORDINGLY, IF YOU HOLD AN INTEREST OR CLAIM IN CLASSES 8 AND 9, RESPECTIVELY, AND YOU DO NOT WANT TO BE BOUND BY THE THIRD-PARTY RELEASE AND WISH TO OPT OUT OF THIS PLAN PROVISION, THEN  YOU MUST EITHER (A) AFFIRMATIVELY INDICATE YOUR ELECTION TO OPT OUT ON YOUR OPT-OUT FORM BY CHECKING THE BOX AND SUBMIT IT TO EPIQ IN ACCORDANCE WITH THE INSTRUCTIONS ON YOUR OPT-OUT FORM SO THAT IT IS <u>ACTUALLY</u> <u>RECEIVED</u> ON OR BEFORE <u>AUGUST 21, 2024, AT 5:00 P.M. PREVAILING EASTERN TIME,</u> OR (B) FILE AN OBJECTION TO THE PLAN BEFORE THE OBJECTION DEADLINE SET FORTH ABOVE.**

---

The relevant defined terms and full text of the release, exculpation, and injunction provisions contained in the Plan are set forth below.

<u>**Release, Exculpation, and Injunction Provisions in the Plan**</u>

PLEASE BE ADVISED THAT <u>ARTICLE IX</u> OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THE THIRD-PARTY RELEASE DISCUSSED ABOVE, AS FOLLOWS:

**Relevant Definitions**

"*Exculpated Parties*" means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Consenting Stakeholders; (iv) the Agents/Trustees; (v) the DIP Lenders; and (vi) with respect to the foregoing clauses (i) through (v), each such Entity's or Person's Related Parties.

"*Released Parties*" means, collectively, each of, and in each case in its capacity as such: (i) each Debtor; (ii) each Reorganized Debtor; (iii) each Non-Debtor Affiliate; (iv) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers and proxyholders; (v) the Agents/Trustees; (vi) the Consenting Stakeholders; (vii) the DIP Lenders; (viii) if applicable, each Consenting Stakeholder in its capacity as a Holder of Existing Equity Interests; (ix) each of the Releasing Parties; and (x) with respect to each of the foregoing (i) through (ix), each such Entities' (a) Related Parties and (b) their current and former Affiliates' Related Parties; *provided*, that in each case, an Entity shall not be a Released Party if it: (y) elects to opt out of the Releases; or (z) timely Files with the Bankruptcy Court on the docket of these Chapter 11 Cases an objection to the Releases that is not resolved before Confirmation.

"***Releasing Parties***" means, collectively, each of, and in each case in its capacity as such: (i) each Debtor; (ii) each Reorganized Debtor; (iii) each Non-Debtor Affiliate; (iv) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers and proxyholders; (v) the Agents/Trustees; (vi) the Consenting Stakeholders; (vii) the DIP Lenders; (viii) if applicable, each Consenting Stakeholder in its capacity as a Holder of Existing Equity Interests; (ix) each other Holder of Claims or Interests that is entitled to vote on this Plan and either (a) votes to accept this Plan, (b) abstains from voting on this Plan and does not elect to opt out of the Releases, or (c) votes to reject this Plan and does not elect to opt out of the Releases; (x) each other Holder of Claims or Interests that is deemed to reject this Plan and does not elect to opt out of the Releases; and (xi) with respect to each of the foregoing (i) through (x), each such Entities' current and former Affiliates, and such Entities' and their current and former Affiliates' Related Parties; *provided*, that, for the avoidance of doubt, an Entity described in clauses (ix) through (xi) above shall not be a Releasing Party if it: (y) elects to opt out of the Releases; or (z) timely Files with the Bankruptcy Court on the docket of these Chapter 11 Cases an objection to the Releases that is not resolved before Confirmation; *provided further*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder, or Holder of Claims or Interests that is entitled vote on this Plan and votes to accept this Plan, will be void *ab initio*.

A.    **Article IX.B.  <u>Releases by the Debtors</u>**

**EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE COMBINED ORDER, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, IS AND IS DEEMED TO BE, FOREVER AND UNCONDITIONALLY RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED BY EACH DEBTOR, REORGANIZED DEBTOR, AND THEIR ESTATES FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (I) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES (INCLUDING ANY DIVIDENDS OR OTHER DISTRIBUTIONS); (II) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES; (III) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS; (IV) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY;**

(V) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS; (VI) INTERCOMPANY TRANSACTIONS; (VII) THE RESTRUCTURING SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THESE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION; (VIII) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE RESTRUCTURING TERM SHEET, THE DIP DOCUMENTS, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN; (IX) THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT; OR (X) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (X) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THIS PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THIS PLAN; (Y) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION; OR (Z) ANY CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THIS PLAN; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (III) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

B.    **Article IX.C.**  *Releases by Holders of Claims and Interests*

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE COMBINED ORDER, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY

**CONFIRMED, EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, HAS AND IS DEEMED TO HAVE, FOREVER AND UNCONDITIONALLY, RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR, AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (I) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES (INCLUDING ANY DIVIDENDS OR OTHER DISTRIBUTIONS); (II) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES; (III) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS; (IV) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY; (V) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS; (VI) INTERCOMPANY TRANSACTIONS; (VII) THE RESTRUCTURING SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THESE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION; (VIII) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE RESTRUCTURING TERM SHEET, THE DIP DOCUMENTS, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN; (IX) THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT; OR (X) ANY OTHER ACT, OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (X) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THIS PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THIS PLAN;  (Y) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION; OR (Z) ANY CAUSES OF ACTION ARISING FROM AN ACT**

11

OR OMISSION DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (I) CONSENSUAL; (II) ESSENTIAL TO THE CONFIRMATION OF THIS PLAN; (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THIS PLAN; (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (VI) FAIR, EQUITABLE, AND REASONABLE; (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

C.    **Article IX.E.** _Exculpation_

EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY CLAIMS OR CAUSES OF ACTION ARISING PRIOR TO OR ON THE EFFECTIVE DATE FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONFIRMATION OR CONSUMMATION OF THIS PLAN, THE DISCLOSURE STATEMENT, THE DEFINITIVE DOCUMENTS, THE DIP DOCUMENTS, OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THIS PLAN OR ANY OTHER POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THIS PLAN; PROVIDED, THAT THE FOREGOING PROVISIONS OF THIS EXCULPATION SHALL NOT (X) OPERATE TO WAIVE OR RELEASE THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, CREDIT DOCUMENTS, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT AND (Y) APPLY TO THE EXCULPATED PARTIES FOR ACTS OR OMISSIONS DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD; PROVIDED, FURTHER, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL

**CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS OR INACTIONS;**

**THE EXCULPATED PARTIES HAVE, AND UPON CONSUMMATION OF THIS PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THIS PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THIS PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THIS PLAN.**

**THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON OR ENTITY.**

**D.      Article IX.G. _Injunction_**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE COMBINED ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THIS PLAN OR THE COMBINED ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THESE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

## Assumption of Executory Contracts and Unexpired Leases

---

**The rights and obligations of parties to Executory Contracts and/or Unexpired Leases may be affected by the Plan and the Combined Order.  Please review the Plan carefully and discuss it with your attorney.  If you do not have an attorney, you may wish to consult one.**

---

Please be advised that the Plan provides that the Combined Order shall constitute a Bankruptcy Court order approving the assumption, the assumption and assignment, or the rejection, as applicable, of each Executory Contract and Unexpired Lease under section 365 and 1123 of the Bankruptcy Code. Under the Plan and the Combined Order, except otherwise provided therein or in the Plan Supplement, each Executory Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Plan Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code except any Executory Contract or Unexpired Lease (i) identified on the Schedule of Rejected Executory Contracts and Unexpired Leases (which shall initially be Filed with the Bankruptcy Court) as an Executory Contract or Unexpired Lease to be rejected, (ii) that is the subject of a separate motion or notice to reject pending as of the Effective Date, or (iii) that previously expired or terminated pursuant to its own terms (disregarding any terms the effect of which is invalidated by the Bankruptcy Code). The Combined Order will constitute an order of the Bankruptcy Court approving the above described assumptions and assignments, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date; *provided* that, on the occurrence of the Effective Date, the Restructuring Support Agreement will terminate in accordance with its terms. Each Executory Contract and Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order, and not assigned to a third party on or prior to the Effective Date, shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.

Under the Plan, except as otherwise provided therein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Further, except as otherwise set forth in the Plan, to the extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

In accordance with the Plan, any monetary default under an Executory Contract or Unexpired Lease to be assumed pursuant to this Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree. In the event of a dispute regarding (a) the amount of any Cure Claim; (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (c) any other matter pertaining to assumption, the Bankruptcy Court shall hear such dispute prior to the assumption becoming effective; provided that the Debtors or the Reorganized Debtors may settle any such dispute and shall pay any agreed upon cure amount without any further notice to any party or any action, order, or approval; provided, further, that notwithstanding anything to the contrary herein, the Reorganized Debtors reserve the right to reject any Executory Contract or Unexpired Lease previously designated for assumption within forty

five (45) days after the entry of a Final Order resolving an objection to assumption.  **Objections to the proposed treatment of Executory Contracts and Unexpired Leases under the Plan, including with respect to the foregoing procedures for disputes relating to curing defaults and the provision of adequate assurance, must be filed before the Objection Deadline as set forth above.**

On or before August 16, 2024, or such other date as ordered by the Bankruptcy Court, the Debtors will file as part of the Plan Supplement a schedule of Executory Contracts and Unexpired Leases, if any, to be rejected on the Plan Effective Date.  Unless otherwise provided in the Plan or the Combined Order, any Allowed Claim arising from the rejection of an Executory Contract or Unexpired Lease will be treated as a Class 5 General Unsecured Claim in accordance with the Plan.

## Section 341 Hearing

Section 341 of the Bankruptcy Code provides that the United States Trustee, a U.S. Justice Department Official, convene and preside at a meeting of the Debtors' creditors (the "***Section 341(a) Meeting***") within a reasonable time following the commencement of a bankruptcy case under Chapter 11.  Pursuant to the order scheduling the Combined Hearing [Docket No. [_]], the Bankruptcy Court has authorized adjourning the 341(a) Meeting, provided that the Plan is confirmed within seventy five (75) days of the Petition Date.  If the Plan is not confirmed at that time, the United States Trustee may schedule and convene the section 341(a) Meeting, and the Debtors may request a further adjournment if necessary.

If the Section 341(a) Meeting is scheduled, be convened, the Debtors will serve on the parties on whom it served this notice and any other parties entitled to notice pursuant to the Bankruptcy Rules, and post on the website at https://dm.epiq11.com/2U not less than twenty-one (21) days before the date scheduled for such meeting, a notice of, among other things, the date, time, and place of the Section 341(a) Meeting.

**EXHIBIT 2**

**Ballot for Holders of
Class 3 First Lien Claims**

**IMPORTANT:** *NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT. THE DEBTORS (AS DEFINED HEREIN) INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PREPACKAGED PLAN OF REORGANIZATION BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT. THIS BALLOT IS A COMPONENT OF THE PREPETITION SOLICITATION OF YOUR VOTE ON THE PREPACKAGED PLAN OF REORGANIZATION DESCRIBED BELOW AND IN THE ACCOMPANYING DISCLOSURE STATEMENT. THE VOTING DEADLINE IS 5:00 P.M. PREVAILING EASTERN TIME ON AUGUST 21, 2024.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

**BALLOT FOR VOTING ON THE**
**JOINT PREPACKAGED PLAN OF**
**REORGANIZATION OF 2U, INC. AND ITS DEBTOR AFFILIATES**
**TO BE FILED UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

**BALLOT FOR: VOTING CLASS 3 FIRST LIEN CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE DEBTORS' PROPOSED CLAIMS AND NOTICING AGENT, EPIQ CORPORATE RESTRUCTURING, (THE "*CLAIMS AND NOTICING AGENT*" OR "*EPIQ*") ON OR BEFORE <u>AUGUST 21, 2024 AT 5:00 P.M.</u> PREVAILING EASTERN TIME (THE "*VOTING DEADLINE*"), UNLESS EXTENDED BY THE DEBTORS.**

**If you have any questions regarding this Ballot, the voting procedures or any of the solicitation materials you have received, or you need to obtain additional solicitation materials, please contact the Debtors' proposed claims and noticing agent, Epiq Corporate Restructuring, LLC (the "*Claims and Noticing Agent*" or "*Epiq*"), by: (a) calling +1-646-362-6336 or (b) emailing tabulation@epiqglobal.com with reference to "2U" in the subject line. You may also visit the Debtors' restructuring website at <u>https://dm.epiq11.com/2U</u>. You may also obtain copies of any pleadings filed in these chapter 11 cases (once the cases have been filed) for a fee via at <u>www.nysb.uscourts.gov</u> or free of charge at <u>https://dm.epiq11.com/2U</u>.**

**Confirmation of the Plan is expressly conditioned upon approval of the Bankruptcy Court of releases as described below and located in Article IX.C of the Plan, which, if approved by the Bankruptcy Court, would permanently enjoin holders of certain claims against non-debtor third parties from asserting such claims against such non-debtor third parties. Such releases, if approved, will bind affected holders of claims and interests in the manner described in Item 3 of this Ballot.**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, ON BEHALF OF THE DEBTORS OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.**

---

2U, Inc., and certain of its affiliates (the "***Debtors***") provided you this ballot (the "***Ballot***") in connection with the *Joint Prepackaged Plan of Reorganization of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (as may be amended from time to time, the "***Plan***") because our records indicate that you are a holder (a "***Holder***") of a First Lien Revolving Loan Claim or a First Lien Term Loan Claim (each a "***First Lien Claim***") as of July 22, 2024 (the "***Voting Record Date***"). Accordingly, as provided in <u>Item 2</u> below, you have a right to (a) vote to accept or reject the Plan and (b) opt-out of the Third-Party Release on account of your Class 3 First Lien Claim. *A failure to follow the Ballot Instructions may disqualify your vote.*

Your rights as a Holder of a First Lien Claim are described in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (as may be amended from time to time, the "***Disclosure Statement*** and

the Plan[2] attached as <u>Exhibit A</u> to the Disclosure Statement provided to you with this Ballot (collectively, with a pre-addressed, postage pre-paid return envelope, the "***Solicitation Package***"). Before you vote, please review the Disclosure Statement carefully, including the voting procedures explained in Section I.C.  If you need to obtain additional solicitation materials, including copies of the Plan and Disclosure Statement, or if you have any questions regarding this Ballot, you may contact the Debtors' Claims and Noticing Agent by: (a) calling +1-646-362-6336 or (b) emailing tabulation@epiqglobal.com with reference to "2U" in the subject line.  After the filing of the chapter 11 cases, you may also visit the Debtors' restructuring website at <u>https://dm.epiq11.com/2U</u>.  You may also obtain copies of any pleadings filed in these chapter 11 cases (once the cases have been filed) for a fee via at <u>www.nysb.uscourts.gov</u> or free of charge at https://dm.epiq11.com/2u.

This Ballot may not be used for any purpose other than (a) for casting votes to accept or reject the Plan and (b) opting out of the Third-Party Release on account of your Class 3 First Lien Claim.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Claims and Noticing Agent <u>immediately</u> at the email address or appropriate telephone number set forth above.

**You should carefully and thoroughly review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan, the classification and treatment of your Claim under the Plan.  Your First Lien Claim has been placed in the Class of First Lien Claims under the Plan.  If you hold Claims other than First Lien Term Loan Claims that are entitled to vote on the Plan (specifically Unsecured Notes Clams), you will receive a separate Ballot with respect to such Claims.**

The Debtors intend to commence voluntary cases under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"). The Plan can thereafter be confirmed by the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***") and thereby made binding on you if: (a) it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Claims and Noticing Agent by the Voting Deadline.

Your receipt of this Ballot does not signify that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 3 First Lien Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

AS DESCRIBED MORE FULLY IN THE DISCLOSURE STATEMENT, IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASES SET FORTH IN ARTICLE IX.C.  IF YOU EITHER ABSTAIN FROM VOTING AND DO NOT CHECK THE OPT-OUT BOX IN ITEM 3 BELOW OR VOTE TO REJECT THE PLAN AND DO NOT CHECK THE OPT-OUT BOX IN ITEM 3 BELOW, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASES SET FORTH IN ARTICLE IX.C OF THE PLAN.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.  THE PLAN'S THIRD PARTY RELEASES, EXCULPATION AND INJUNCTION PROVISIONS ARE ATTACHED FOR YOUR CONVENIENCE AT EXHIBIT A HERETO.**

**Item 1.  Principal Amount of Class 3 First Lien Claim.**

The undersigned hereby certifies that, as of the Voting Record Date (the close of business on July 22, 2024), the undersigned was the Holder of a Class 3 First Lien Claim against the Debtors in the following aggregate unpaid principal amount (insert unpaid amount in box below if not already completed):

$\$_____$

**Item 2.  Vote on Plan.**

The Holder of the First Lien Claim against the Debtors set forth in Item 1 above votes to (please check one box below):

☐    **ACCEPT** (vote FOR) the Plan          ☐    **REJECT** (vote AGAINST) the Plan

Any Ballot that is executed by the Holder of a Claim, but that indicates both an acceptance and a rejection of the Plan, or does not indicate either an acceptance or rejection of the Plan, will not be counted.

## THE DEBTORS RECOMMEND THAT
## YOU VOTE TO ACCEPT THE PLAN.

**Item 3.  Opt-Out Election.**

Article **IX.C** of the Plan provides for a release by Holders of Claims and Interests (the "*Third Party Releases*") a copy of which is included on Exhibit A of this Ballot.

**If you have voted to accept the Plan, you may not validly opt out of the Third-Party Release set forth in Article IX of the Plan.  Any Ballot containing a vote to accept the Plan and an**

**election to opt out of the Third-Party Release will be treated as a Ballot voting to accept the Plan and agreeing to the Third-Party Release.**

**If you have voted to reject the Plan, you have the option to elect not to grant the Third-Party Release. If you wish to elect not to grant the Third-Party Release, then you must check the box below. If you submit your Ballot with this box checked (and without a vote to accept the Plan), then you will be deemed not to consent to the Third-Party Release. If you fail to return this Ballot (or return this Ballot without this box checked), you will be deemed to have consented to the Third-Party Release.**

**PLEASE BE ADVISED THAT IF YOU (A) RETURN THIS BALLOT AND DO NOT CHECK THE BOX BELOW, (B) FAIL TO RETURN THIS BALLOT, OR (C) CHECK THE BOX BELOW BUT ALSO VOTE TO ACCEPT THE PLAN, THEN YOU ELECT TO GRANT THE THIRD-PARTY RELEASE IN EACH AND EVERY CAPACITY IN WHICH YOU HOLD A CLAIM AGAINST, OR EQUITY INTEREST IN, ANY OF THE DEBTORS. YOU MUST AFFIRMATIVELY CHECK THE BOX BELOW (AND NOT HAVE VOTED TO ACCEPT THE PLAN) IN ORDER TO OPT OUT OF THE THIRD-PARTY RELEASE.**

☐ **OPT-OUT ELECTION**:  **By checking this box, the Holder of the Class 3 First Lien Claim set forth in Item 1 elects solely to opt out of the Plan's Third Party Releases in Article IX.C of the Plan.**

**Item 4**.  **Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

1.  that as of the Voting Record Date, the undersigned is the Holder of, or an authorized signatory for the Holder of, the First Lien Claim being voted, and, in either case, has the full power and authority to vote to accept or reject the Plan with respect to the Claim identified in Item 1 above;

2.  that the undersigned has received a copy of the Disclosure Statement and the other documents comprising the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

3.  that the undersigned has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package materials;

4.  that the undersigned has cast the same vote with respect to all Class 3 First Lien Claims held by the same Holder;

5.  that no other Ballots with respect to the amount of the First Lien Claim identified in Item 1 above have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots are hereby revoked;

6.  that it understands that it will be voting other claims that are not Class 3 First Lien Notes Claims, if any, on a separate Ballot; and

7.    that it acknowledges and agrees that the Debtors may make conforming changes to the Plan as may be reasonably necessary, subject to section 1127 of the Bankruptcy Code, and in accordance with the terms and conditions set forth in the Restructuring Support Agreement; provided that the Debtors will not resolicit acceptances or rejections of the Plan in the event of such conforming changes unless otherwise required to do so by the Bankruptcy Court.

**Item 5.  Holder Information and Signatures.**

BALLOT INFORMATION — COMPLETE THIS SECTION

Name of Holder:    _____
                                        (print or type)

Signature:    _____

Signatory Name
(if other than the Holder):    _____

Title (if corporation or
partnership):    _____

Address:    _____

    _____

    _____

Email Address:    _____

Telephone Number:    _____

Date Completed:    _____

**PLEASE COMPLETE AND SUBMIT THIS BALLOT
IN THE ENVELOPE PROVIDED OR BY ONE OF THE FOLLOWING METHODS:**

**E-BALLOT PORTAL:**

**Epiq's E-Ballot Portal, available at https://epiqworkflow.com/cases/2UBallot**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

**Each E-Ballot ID# is to be used solely for voting only that Claim described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.**

6

*OR*

**EMAIL DELIVERY:**

Send PDF copies of the completed Ballot(s) to tabulation@epiqglobal.com,
with a reference to "2U Ballots" in the subject line
*OR*

**REGULAR MAIL, OVERNIGHT COURIER, OR HAND-DELIVERY:**

**2U Inc. Ballot Processing**
**c/o Epiq Corporate Restructuring, LLC**
**10300 SW Allen Blvd.**
**Beaverton, OR 97005**

---

**THIS BALLOT MUST BE ACTUALLY RECEIVED
BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE:
AUGUST 21, 2024, AT 5:00 PM PREVAILING EASTERN TIME.**

**BALLOTS SENT BY FACSIMILE OR ANY ELECTRONIC MEANS
OTHER THAN BY ELECTRONIC MAIL OR USING THE VOTING
AND CLAIMS AGENT'S "E-BALLOT" PORTAL IN ACCORDANCE
WITH THE BALLOT INSTRUCTIONS WILL NOT BE ACCEPTED.**

| Class 3 First Lien Claims |
|---|

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.   The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as Exhibit A to the Disclosure Statement. Capitalized terms used in the Ballot or in these instructions (the "***Ballot Instructions***") but not otherwise defined therein or herein shall have the meaning set forth in the Plan or Disclosure Statement, as applicable, copies of which also accompany the Ballot. If you have questions regarding your Ballot or these Ballot Instructions, please contact the Claims and Noticing Agent by: (a) calling +1-646-362-6336 or (b) emailing tabulation@epiqglobal.com with reference to "2U" in the subject line.

2.   To ensure that your Ballot is counted toward confirmation of the Plan, you ***must either***: (a) complete and submit this hard copy Ballot via regular mail, overnight courier, or hand delivery; (b) vote through the Debtors' "E-Ballot" portal at https://epiqworkflow.com/cases/2UBallot; or (c) send PDF copies of the completed Ballot(s) to tabulation@epiqglobal.com, with a reference to "2U Ballots" in the subject line.

     (a)   **Use of Hard Copy Ballot**. To ensure that your vote (and, if applicable, opt-out election) is counted, you <u>must</u> complete the Ballot and take the following steps: (a) make sure that the information required by <u>Item 1</u> above has been inserted (if you do not know the amount of your Claim, please contact the Claims and Noticing Agent); (b) in the appropriate box provided in <u>Item 2</u> above clearly indicate your decision either to accept or reject the Plan; (c) only if applicable, indicate your opt-out election in the box provided in <u>Item 3</u> above; (d) provide the information required by <u>Item 4</u> above; <u>and</u> (e) sign, date, and return by regular mail, overnight courier, or hand delivery an original of your Ballot to the address set forth on the enclosed pre-addressed envelope, or return PDF copies of the completed Ballot(s) to tabulation@epiqglobal.com, with a reference to "2U Ballots" in the subject line.

     (b)   **Use of "E-Ballot" Portal.** To ensure that your electronic Ballot is counted, please follow the instructions on the "E-Ballot" portal "E-Ballot" portal at https://epiqworkflow.com/cases/2UBallot. You will need to enter your unique E-Ballot identification number indicated above.

3.   Casting a Ballot by using the Claims and Noticing Agent's "E-Ballot" portal or email as directed above are the only manner in which Class 3 Ballots will be accepted via electronic means. **Ballots will not be accepted if they are sent by electronic means other than by email or using the "E-Ballot" portal as instructed herein.**

4.   The method of delivery of Ballots to the Claims and Noticing Agent is at the election and risk of each Holder of a Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Claims and Noticing Agent **actually receives** the originally executed Ballot.

5.   If multiple Ballots are received from the same Holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last Ballot timely received will supersede and revoke any earlier received Ballots.

1

6. You must vote all of your Claims within Class 3 either to accept or reject the Plan and may <u>not</u> split your vote. Further, if a Holder has multiple Claims within Class 3, the Debtors may, in their discretion, aggregate the Claims of any particular Holder within Class 3 for the purpose of counting votes.

7. This Ballot is not a letter of transmittal and may not be used for any purpose other than to (a) vote to accept or reject the Plan and (b) as provided in Item 3 of this Ballot, solely with respect to holders of Claims that have either abstained from voting or elected to reject the Plan, elect to opt out of the Plan's Third Party Releases. Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with a Ballot.

8. This Ballot does <u>not</u> constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

9. If you hold Claims in more than one Class under the Plan, or in multiple accounts, you will receive instructions for each different Class or account. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you receive.

10. <u>Please be sure to sign and date your Ballot</u>. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

11. The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (b) any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan; (c) any Ballot that is properly completed, executed and timely filed, but (i) does not indicate an acceptance or rejection of the Plan, (ii) indicates both an acceptance and rejection of the Plan, or (iii) partially accepts and partially rejects the Plan; (d) any Ballot submitted by facsimile, or any electronic means other than by email or using the Claims and Noticing Agent's "E-Ballot" portal; (e) any Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Claims and Noticing Agent), any indenture trustee, or the Debtors' financial or legal advisors; and/or (f) any Ballot not cast in accordance with the procedures described herein and in the Disclosure Statement.

<div align="center">

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY!</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT,
THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE
CALL THE CLAIMS AND NOTICING AGENT AT:
+1-646-362-6336**

</div>

**IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS 5:00 P.M. PREVAILING EASTERN TIME ON AUGUST 21, 2024, THEN YOUR VOTE TRANSMITTED HEREBY WILL <u>NOT</u> BE COUNTED.**

NO PERSON HAS BEEN AUTHORIZED BY THE DEBTORS TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, ON BEHALF OF THE DEBTORS, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

**PLEASE BE ADVISED THAT unless you (a) vote to reject the Plan or abstain from voting to accept or reject the Plan AND (b) affirmatively opt out of the Third-Party Release, you shall be deemed to have consented to the Third-Party Release contained in <u>Article IX</u> of the Plan.  The full text of the release provisions contained in the Plan are provided in <u>Exhibit A</u> of this Ballot.**

## Exhibit A

### Third Party Releases

**Article IX.B.  *Releases by the Debtors***

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE COMBINED ORDER, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, IS AND IS DEEMED TO BE, FOREVER AND UNCONDITIONALLY RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED BY EACH DEBTOR, REORGANIZED DEBTOR, AND THEIR ESTATES FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (I) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES (INCLUDING ANY DIVIDENDS OR OTHER DISTRIBUTIONS); (II) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES; (III) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS; (IV) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY; (V) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS; (VI) INTERCOMPANY TRANSACTIONS; (VII) THE RESTRUCTURING SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THESE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION; (VIII) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE RESTRUCTURING TERM SHEET, THE DIP DOCUMENTS, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN; (IX) THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT; OR (X) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE

RELEASES SET FORTH ABOVE DO NOT RELEASE (X) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THIS PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THIS PLAN; (Y) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION; OR (Z) ANY CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS:  (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THIS PLAN; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (III) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

Article IX.C.  *Releases by Holders of Claims and Interests*

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE COMBINED ORDER, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, HAS AND IS DEEMED TO HAVE, FOREVER AND UNCONDITIONALLY, RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR, AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (I) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF

THE DEBTORS OR THE NON-DEBTOR AFFILIATES (INCLUDING ANY DIVIDENDS OR OTHER DISTRIBUTIONS); (II) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES; (III) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS; (IV) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY; (V) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS; (VI) INTERCOMPANY TRANSACTIONS; (VII) THE RESTRUCTURING SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THESE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION; (VIII) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE RESTRUCTURING TERM SHEET, THE DIP DOCUMENTS, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN; (IX) THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT; OR (X) ANY OTHER ACT, OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (X) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THIS PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THIS PLAN;  (Y) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION; OR (Z) ANY CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (I) CONSENSUAL; (II) ESSENTIAL TO THE CONFIRMATION OF THIS PLAN; (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THIS PLAN; (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (VI) FAIR, EQUITABLE, AND

6

REASONABLE; (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

**Article IX.E.**  *Exculpation*

EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY CLAIMS OR CAUSES OF ACTION ARISING PRIOR TO OR ON THE EFFECTIVE DATE FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONFIRMATION OR CONSUMMATION OF THIS PLAN, THE DISCLOSURE STATEMENT, THE DEFINITIVE DOCUMENTS, THE DIP DOCUMENTS, OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THIS PLAN OR ANY OTHER POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THIS PLAN; PROVIDED, THAT THE FOREGOING PROVISIONS OF THIS EXCULPATION SHALL NOT (X) OPERATE TO WAIVE OR RELEASE THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, CREDIT DOCUMENTS, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT AND (Y) APPLY TO THE EXCULPATED PARTIES FOR ACTS OR OMISSIONS DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD; PROVIDED, FURTHER, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS OR INACTIONS;

THE EXCULPATED PARTIES HAVE, AND UPON CONSUMMATION OF THIS PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THIS PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THIS PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THIS PLAN.

THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON OR ENTITY.

**Article IX.G.** *Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE COMBINED ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THIS PLAN OR THE COMBINED ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THESE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

### Relevant Definitions Related to Release and Exculpation Provision:

"*Exculpated Parties*" means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Consenting Stakeholders; (iv) the Agents/Trustees; (v) the DIP Lenders; and (vi) with respect to the foregoing clauses (i) through (v), each such Entity's or Person's Related Parties.

"*Released Parties*" means, collectively, each of, and in each case in its capacity as such: (i) each Debtor; (ii) each Reorganized Debtor; (iii) each Non-Debtor Affiliate; (iv) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers and proxyholders; (v) the Agents/Trustees; (vi) the Consenting Stakeholders; (vii) the DIP Lenders; (viii) if applicable, each Consenting Stakeholder in its capacity as a Holder of Existing Equity Interests; (ix) each of the Releasing Parties; and (x) with respect to each of the foregoing (i) through (ix), each such Entities' (a) Related Parties and (b) their current and former Affiliates' Related Parties; *provided*, that in each case, an Entity shall not be a Released Party if it: (y) elects to opt out of the Releases; or (z) timely Files with the Bankruptcy Court on the docket of these Chapter 11 Cases an objection to the Releases that is not resolved before Confirmation.

"*Releasing Parties*" means, collectively, each of, and in each case in its capacity as such: (i) each Debtor; (ii) each Reorganized Debtor; (iii) each Non-Debtor Affiliate; (iv) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers and proxyholders; (v) the Agents/Trustees; (vi) the Consenting Stakeholders; (vii) the DIP Lenders; (viii) if applicable, each Consenting Stakeholder in its capacity as a Holder of Existing Equity Interests; (ix) each other Holder of Claims or Interests that is entitled to vote on this Plan and either (a) votes to accept

this Plan, (b) abstains from voting on this Plan and does not elect to opt out of the Releases, or (c) votes to reject this Plan and does not elect to opt out of the Releases; (x) each other Holder of Claims or Interests that is deemed to reject this Plan and does not elect to opt out of the Releases; and (xi) with respect to each of the foregoing (i) through (x), each such Entities' current and former Affiliates, and such Entities' and their current and former Affiliates' Related Parties; *provided*, that, for the avoidance of doubt, an Entity described in clauses (ix) through (xi) above shall not be a Releasing Party if it: (y) elects to opt out of the Releases; or (z) timely Files with the Bankruptcy Court on the docket of these Chapter 11 Cases an objection to the Releases that is not resolved before Confirmation; *provided further*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder, or Holder of Claims or Interests that is entitled vote on this Plan and votes to accept this Plan, will be void *ab initio*.

**EXHIBIT 3-A**

**Master Ballot for**
**Holders of Class 4 Unsecured Notes Claims**

*IMPORTANT: NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT. THE DEBTORS (AS DEFINED HEREIN) INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PREPACKAGED PLAN OF REORGANIZATION BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT. THIS BALLOT IS A COMPONENT OF THE PREPETITION SOLICITATION OF YOUR VOTE ON THE PREPACKAGED PLAN OF REORGANIZATION DESCRIBED BELOW AND IN THE ACCOMPANYING DISCLOSURE STATEMENT. THE VOTING DEADLINE IS 5:00 P.M. PREVAILING EASTERN TIME ON AUGUST 21, 2024. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, ON BEHALF OF THE DEBTORS OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

## MASTER BALLOT FOR VOTING ON THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF 2U, INC. AND ITS DEBTOR AFFILIATES TO BE FILED UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## MASTER BALLOT FOR: VOTING CLASS 4 UNSECURED NOTES CLAIMS

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

---

**PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY <u>BEFORE</u> COMPLETING THIS MASTER BALLOT.**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED AND RETURNED SO THAT IT IS <u>ACTUALLY</u> <u>RECEIVED</u> BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE AUGUST 21, 2024, BEFORE 5:00 P.M. PREVAILING EASTERN TIME (THE "*VOTING DEADLINE*").  IF YOUR MASTER BALLOT IS NOT RECEIVED ON OR BEFORE THE VOTING DEADLINE THE VOTES REPRESENTED BY YOUR MASTER BALLOT WILL NOT BE COUNTED.**

**If you have any questions regarding this Master Ballot, the voting procedures or any of the solicitation materials you have received, or you need to obtain additional solicitation materials, please contact the Debtors' proposed claims and noticing agent, Epiq Corporate Restructuring, LLC (the "*Claims and Noticing Agent*" or "*Epiq*"), by: (a)  calling +1 646-362-6336 or (b) emailing tabulation@epiqglobal.com with reference to "2U" in the subject line.  You may also visit the Debtors' restructuring website at <u>https://dm.epiq11.com/2U</u>.  You may also obtain copies of any pleadings filed in these chapter 11 cases (once the cases have been filed) for a fee via at <u>www.nysb.uscourts.gov</u> or free of charge at <u>https://dm.epiq11.com/2U</u>.**

---

2U, Inc., and certain of its affiliates (the "***Debtors***") have provided you this master holder ballot (the "***Master Ballot***") in connection with the *Joint Prepackaged Plan of Reorganization of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, the "***Plan***") because the Debtors' records indicate that you are a broker, bank, dealer or other financial institution or agent that holds securities "in street name" (each a "***Nominee***") on behalf of one or more beneficial owner(s) (each, a "***Beneficial Owner***") of Unsecured Notes Claims as of the close of business on July 22, 2024 (the "***Voting Record Date***").  Accordingly, as provided in <u>Item 2</u> below, you have a right and/or obligation to convey (a) your vote and/or the votes of your Beneficial Owner clients to accept or reject the Plan and (b) communicate your or your Beneficial Owner clients' decision whether to elect to opt out of the Third-Party Release, on account of your and/or such Beneficial Owner clients' Class 4 Unsecured Notes Claim.  *A failure to follow the Ballot Instructions may disqualify your vote.*  Under the Plan, an "Unsecured Notes Claims" is any Claim on account of 2.25% Convertible Senior Notes due 2025 or 4.50% Senior Unsecured Convertible Notes due 2030 issued by 2U, Inc.

The rights of a Holder of a Unsecured Notes Claim are described in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented or otherwise modified from time to time, the "***Disclosure Statement***") and the Plan[2] attached as <u>Exhibit A</u> to the Disclosure Statement provided to you. Before you transmit such votes, please review the Disclosure Statement carefully, including the voting procedures explained in Section I.C. You have also received individual ballots (for use of the Beneficial Owners "***Beneficial Ballots***") and

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

solicitation packages (including the Plan, Disclosure Statement and certain other materials) to be distributed to all Beneficial Owners holding their Unsecured Notes Claims through you in accordance with the instructions below (collectively, with a pre-addressed, postage pre-paid return envelope, the "***Solicitation Package***").

This Master Ballot may not be used for any purpose other than (a) submitting votes with respect to the Plan and (b) as provided in Item 3 of this Master Ballot, communicating your Beneficial Owner's decision as to whether to elect to opt out of the Third Party Releases. If you believe you have received this Master Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Claims and Noticing Agent <u>immediately</u> at the email address or appropriate telephone number set forth above.

You must use this Master Ballot to convey the votes to accept or reject the Plan on behalf of all of your Beneficial Owners of Unsecured Notes Claims that cast votes through you.

You should immediately distribute the Beneficial Ballots and the Solicitation Packages to all your Beneficial Owners and take any action required to enable each such Beneficial Owner to vote timely the Unsecured Notes Claim(s) that it holds. No vote returned to you by any of your Beneficial Owners shall be counted for purposes of accepting or rejecting the Plan until you either (a) properly complete and deliver to the Claims and Noticing Agent a Master Ballot that reflects the votes of such Beneficial Owners by 5:00 P.M., Prevailing Eastern Time, on August 21, 2024 or (b) otherwise validate the Beneficial Ballots in a manner acceptable to the Claims and Noticing Agent.

You may follow the customary procedures you use for forwarding voting information to your Beneficial Owner clients, including sending the Solicitation Packages by e-mail or providing an electronic link to the contents of the Solicitation Packages, in lieu of sending paper copies. You may also follow your customary procedures for collecting votes from your Beneficial Owner clients including via telephone, e-mail, voter information form, or otherwise in addition to (or in lieu of) a completed Beneficial Ballot.

In lieu of submitting your Beneficial Owner clients' votes through a Master Ballot, you may provide those Beneficial Owners with appropriate instructions for completing and returning a pre-validated Beneficial Ballot.

The Debtors intend to commence voluntary cases under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"). The Plan can thereafter be confirmed by the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***") and thereby made binding on your Beneficial Owner if: (a) it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on your Beneficial Owner whether or not you vote or if you vote to reject the Plan.  To have the votes of your Beneficial

3

Owners counted, you must complete, sign, and return this Master Ballot to the Claims and Noticing Agent by the Voting Deadline.

## **Item 1**.  **Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date (July 22, 2024), the undersigned (please check appropriate box):

☐        Is the Nominee for the Beneficial Owners of the aggregate principal amount of Unsecured Notes Claims indicated in Item 2 below; or

☐        Is acting under a power of attorney and/or agency agreement (a copy of which will be provided upon request) granted by the Nominee, or the Beneficial Owner of the aggregate principal amount of Unsecured Notes Claims listed in Item 2 below; or

☐        Has been granted a proxy (an original of which is attached hereto) from the Nominee, or the Beneficial Owner of the aggregate principal amount of Unsecured Notes Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Unsecured Notes Claims described in Item 2 below.

## **Item 2**.  **Votes on the Plan Cast by Beneficial Owners.**

The undersigned certifies that the information provided below (including any information provided on additional sheets attached hereto) is a true and accurate schedule of the Beneficial Owners of Unsecured Notes Claims as identified by their respective customer name or account number, that have delivered duly completed and executed Beneficial Ballots (or otherwise conveyed his/her/its vote pursuant to customary procedures) to the undersigned.  Any Beneficial Ballot or other conveyance of such vote that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

(Please complete the information requested below.  Attach additional sheets if necessary.)

Check one (and only one) box on Exhibit A hereto indicating the CUSIP/ISIN of the Unsecured Notes Claims being voted through this Master Ballot. **You must use a different Master Ballot for each CUSIP/ISIN**.

| Customer Account Number for Each Beneficial Owner of the Unsecured Notes Claims | Principal Amount of Unsecured Notes Claims voted per Item 2 of Beneficial Ballot: | | OPT-OUT of Third Party Release per Item 3 of Beneficial Ballot |
|---|---|---|---|
| | To **ACCEPT** the Plan | To **REJECT** the Plan | |
| 1. | | | |
| 2. | | | |
| 3. | | | |

4

| | | | |
|---|---|---|---|
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| **TOTALS** | | | |

## Item 3.  The Plan Releases.

Important Information Solely Regarding the Plan's Third Party Release:

**As described more fully in the Disclosure Statement, if a Beneficial Owner voted to accept the Plan, they shall be deemed to have consented to the Third Party Release contained in Article IX.C of the Plan (the "*Third Party Releases*").  A Beneficial Owner that either votes to reject the Plan or abstains from voting on the Plan has the option to opt out of the Plan's Third Party Releases by having the Nominee check the opt-out election box contained in this Master Ballot.**

**If the Nominee validly submits this Master Ballot on a timely basis with the opt-out box checked for a Beneficial Owner that either voted to reject the Plan or abstained from voting on the Plan, then the Beneficial Owner will be deemed not to consent to the Plan's Third Party Releases set forth in Article IX.C of the Plan.**

## Item 4.  Additional Ballots Submitted by Beneficial Holders.

The undersigned certifies that the information provided below (including any information on additional sheets attached hereto) is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 4 of each individual ballot received from a Beneficial Owner of Unsecured Notes Claims.

(Please complete the information requested below.  Attach additional sheets if necessary.)

| **Your** Customer Account Number and/or Customer Name For Each Beneficial Owner that Completed Item 4 of the Beneficial Ballot | **INFORMATION TO BE TRANSCRIBED FROM ITEM 4 OF BENEFICIAL OWNERS' INDIVIDUAL BALLOTS REGARDING UNSECURED NOTES CLAIMS** | | | |
|---|---|---|---|---|
| | Account Number of Other Unsecured Notes Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Unsecured Notes Claims Voted | CUSIP Number of Other Unsecured Notes Claims Voted, |
| 1. | | | | |
| 2. | | | | |

| 3. | | | | |
|----|----|----|----|----|
| 4. | | | | |
| 5. | | | | |

## **Item 5**.  **Certifications.**

By signing this Master Ballot, the undersigned certifies:

1.   that the undersigned has received and delivered (or has otherwise made available) a copy of the Plan and the Disclosure Statement (together with the Solicitation Package) to each Beneficial Owner whose vote is reflected on this Master Ballot, and that by executing its Beneficial Ballot, such Beneficial Owner has acknowledged that the solicitation is being made pursuant to the terms and conditions set forth therein;

2.   that the undersigned has received a completed and signed Beneficial Ballot from each Beneficial Owner listed in Item 2 of the Master Ballot, or has received the vote through other customary and accepted means;

3.   that the undersigned is the Nominee or agent of the Nominee for the Beneficial Owner of the securities being voted, or holds the securities "in street name" for itself (*i.e.*, is both the Nominee and Beneficial Owner);

4.   that the undersigned has been authorized by each of its Beneficial Owners, whose votes are included on this Master Ballot, to vote on the Plan;

5.   that the undersigned has properly disclosed: (a) the number of Beneficial Owners whose Beneficial Ballots are reflected on this Master Ballot; (b) the respective amounts of each such Beneficial Owner's Unsecured Notes Claims voted; (c) each such Beneficial Owner's respective vote concerning the Plan; (d) each such Beneficial Owner's election regarding the Third Party Releases; (e) each such Beneficial Owner's certification as to its Unsecured Notes Claims voted; and (f) the customer account or other identification number for each such Beneficial Owner;

6.   that each such Beneficial Owner has certified to the undersigned that it is eligible to vote on the Plan; and

8.   that it will maintain the Beneficial Ballots returned by its Beneficial Owners (whether properly completed or defective) for at least one year after the Voting Deadline and provide copies of such Beneficial Ballots to the Bankruptcy Court and the Debtors as the case may be, if so ordered.

## **Item 6**.  **Nominee Information and Signature.**

BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION

_____

Name of Nominee and/or
DTC Participant:

DTC Participant Number
(if applicable):            _____

Signature:                 _____

Signatory Name:            _____

Title:                     _____

Address:                   _____

Email Address:             _____

Telephone Number:          _____

Date Completed:            _____


**PLEASE COMPLETE AND SUBMIT THIS MASTER BALLOT BY ONE OF THE FOLLOWING METHODS:**

<u>**E-MAIL:**</u>

**Tabulation@epiqglobal.com with a reference to "2U Master Ballot" in the subject line.**

***NOTE: For Master Ballots submitted via electronic mail, the received date and time in the Claims and Noticing Agent's inbox will be used as a timestamp for receipt.***


***OR***

<u>**OVERNIGHT COURIER OR HAND-DELIVERY:**</u>

**2U Inc. Ballot Processing**
**c/o Epiq Corporate Restructuring, LLC**
**10300 SW Allen Blvd.**
**Beaverton, OR 97005**


**Nominees that cast a Master Ballot via electronic mail should NOT also submit a paper Master Ballot.**

<div style="border: 1px solid black; padding: 10px;">

**THIS MASTER BALLOT MUST BE <u>ACTUALLY</u> <u>RECEIVED</u>
BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE:**

**August 21, 2024, AT 5:00 P.M. PREVAILING EASTERN TIME.**

</div>

<div style="border: 1px solid black; padding: 10px;">

**THE DEBTORS ARE SEEKING CONFIRMATION OF THE PLAN AS PART OF A
PREPACKAGED CHAPTER 11 CASE, AS DESCRIBED IN THE PREPACKAGED
CHAPTER 11 CASE GUIDELINES OF THE UNITED STATES BANKRUPTCY
COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (LOCAL RULE 3018-2).
THE ACCEPTANCES AND REJECTIONS OF THE PLAN SET FORTH HEREIN
THEREFORE WILL BE SUBJECT TO 11 U.S.C. § 1126(b) AND SUCH GUIDELINES.
HOWEVER, IT IS IMPERATIVE THAT ALL DEADLINES SET FORTH HEREIN BE
OBSERVED PENDING ANY FURTHER DETERMINATIONS BY THE COURT
PRESIDING OVER SUCH CASE.**

</div>

<div style="border: 1px solid black; padding: 10px;">

**Class 4 Unsecured Notes Claims**

</div>

**<u>INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT</u>**

1. You should immediately distribute to all Beneficial Owners of Unsecured Notes Claims for whom you hold such Unsecured Notes Claims in "street name" (or otherwise make available through your customary methods) the Beneficial Ballots and the Solicitation Packages to all Beneficial Owners of Unsecured Notes Claims holding through you and take any action required to enable each such Beneficial Owner to vote timely the Unsecured Notes Claim(s) that it holds. No vote returned to you by a Beneficial Owner shall be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Claims and Noticing Agent, by the Voting Deadline, which is 5:00 p.m. Prevailing Eastern Time, on August 21, 2024, a Master Ballot that reflects the votes of all such Beneficial Owners or otherwise validate each Beneficial Ballot in a manner acceptable to the Claims and Noticing Agent.

2. You must: (a) compile on the Master Ballot the votes and other relevant information of each Beneficial Owner returning a properly executed Beneficial Ballot to you using the customer name or account number assigned by you to each such Beneficial Owner; (b) execute the Master Ballot; (c) transmit the Master Ballot to the Claims and Noticing Agent by the Voting Deadline; and (d) retain all Beneficial Ballots in your files for a period of one year after the Voting Deadline. You may be ordered to produce the Beneficial Ballots (or alternative, customarily-accepted communication for conveying votes) to the Bankruptcy Court or the Debtors as, applicable.

8

3.    In place of including your Beneficial Owner client's vote on this Master Ballot, you may "pre-validate" the individual Beneficial Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Owner of the Notes Claim for voting within five Business Days after the receipt of the Solicitation Package, with the Beneficial Owner then returning the individual Beneficial Ballot directly to the Claims and Noticing Agent according to instructions in the Beneficial Ballot. A Nominee "pre-validates" a Beneficial Ballot by signing the Beneficial Ballot and including their DTC participant number; applying a medallion guarantee to the Ballot or attaching an authorized signatory list, certifying the Beneficial Owner's voting amount as of the Voting Record Date, indicating the account number of the Beneficial Owner and the principal amount of Notes Claims held by the Nominee for such Beneficial Owner; and then forwarding the pre-validated Beneficial Ballot together with the Solicitation Package to the Beneficial Owner. The Beneficial Owner then completes the remaining information requested on the Beneficial Ballot and returns the Beneficial Ballot directly to the Claims and Noticing Agent. A list of the Beneficial Owners to whom "pre-validated" Beneficial Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date.

4.    Any Master Ballot received by the Claims and Noticing Agent after the Voting Deadline will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. Except as otherwise provided herein, delivery will be deemed made only when the Claims and Noticing Agent actually receives the properly executed Master Ballot. In all cases, Holders should allow sufficient time to assure timely delivery. No Master Ballot should be sent to the Debtors or their respective financial or legal advisors. The method of delivery of this Master Ballot to the Claims and Noticing Agent is at your election and risk.

5.    Multiple Master Ballots may be completed and delivered to the Claims and Noticing Agent. Votes reflected by multiple Master Ballots will be counted except to the extent that they are duplicative of votes cast on other Master Ballots. If two or more Master Ballots are inconsistent, the latest-received properly executed valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot. If more than one Master Ballot is submitted and the later Master Ballot(s) supplement(s) rather than supersede(s) the earlier Master Ballot(s), please mark the subsequent Master Ballot(s) with the words "Additional Vote" or such other language as you customarily use to indicate an additional vote that is not meant to revoke an earlier vote.

6.    This Master Ballot is not a letter of transmittal and may not be used for any purpose other than to collect votes to accept or reject the Plan or to communicate decisions to elect to opt out of the Third Party Releases. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims or Interests, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with this Master Ballot.

7.    This Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

9

8.      To ensure that the votes reflected on the Master Ballot are counted, you must: (a) complete your Master Ballot in accordance with these instructions; (b) clearly indicate the decisions either to accept or reject the Plan and other items expressed by your Beneficial Owners in the boxes provided in Items 2 – 4 of their individual ballots; and (c) execute and return your Master Ballot in accordance with the instructions herein.

9.      Please be sure to sign and date this Master Ballot.  If you are acting under a power of attorney and/or agency agreement, you should indicate such capacity when signing and, if requested by the Claims and Noticing Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence of such appointment.  In addition, please provide your name and mailing address.

10.     The following votes cast through a Master Ballot shall not be counted in determining the acceptance or rejection of the Plan: (a) any votes cast through a Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any votes cast through a Master Ballot not actually received by the Claims and Noticing Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any votes cast through an unsigned Master Ballot; (d) any votes cast through a Master Ballot that does not contain an original signature (for the avoidance of doubt, signatures contained in Master Ballots and pre-validated Beneficial Ballots submitted by electronic mail will be deemed to be original so as to be immediately legally effective); (e) any vote for an individual Beneficial Owner that partially rejects and partially accepts the Plan; (f) any vote not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; and (g) any votes cast through a Master Ballot superseded by a later, timely submitted valid ballot.

11.     If you believe you have received the wrong Ballot or any information thereon is incorrect, you should contact the Claims and Noticing Agent immediately at 877-525-5725 (Toll Free U.S.) or +1 360-803-4441 (International) or by sending an electronic mail message to tabulation@epiqglobal.com with reference to "2U" in the subject line.  Please do not direct any inquiries to the Bankruptcy Court.

12.     Please note that Item 2 of the Master Ballot requests that you transcribe information from each Beneficial Ballot returned to you or attach a schedule in the indicated format providing information for each individual Beneficial Owner of the Unsecured Notes giving rise to Unsecured Notes Claims on whose behalf you are executing this Master Ballot.  To identify such Beneficial Owners without disclosing their names, you may use the customer account number assigned by you to each such Beneficial Owner.  If a single customer has more than one account with the identical registration, only list that customer once in the schedule requested by Item 2.  The total principal amount of all accounts voted by a single customer should be listed in a single schedule entry, so that each line will represent a different Beneficial Owner.

13.     Please note that Item 4 of the Master Ballot requests that you provide information or attach a schedule to the Master Ballot in the indicated format by transcribing any information provided in Item 4 of each Beneficial Ballot you received.  Please also include your customer name or account number for each entry in Item 4 of the Master Ballot.

14.     The following additional rules shall apply to Master Ballots:

a.  Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities holding the Class 4 Unsecured Notes Claims as of the Voting Record Date, as evidenced by the record and depository listings;

b.  Votes submitted by a Nominee, whether pursuant to a Master Ballot, or pre-validated Beneficial Holder Ballot provided by the Nominee to the Beneficial Holder, will not be counted in excess of the record principal amount of the Class 4 Unsecured Notes Claims held by such Nominee;

c.  To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballot, the Claims and Noticing Agent will attempt to reconcile discrepancies with the Nominee;

d.  To the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballot are not reconcilable prior to the preparation of the vote certification, the Claims and Noticing Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the over-vote, but only to the extent of the Nominee's amount of Class 4 Unsecured Notes Claims; and

e.  For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Claims and Noticing Agent may be asked to adjust such principal amount to reflect the claim amount.

15.  No fees or commissions or other remuneration will be payable to any broker, bank, dealer or other person in connection with this solicitation. Upon written request, however, the Debtors will reimburse you for customary mailing and handling expenses incurred by you in forwarding Solicitation Packages to your client(s).

**PLEASE NOTE:**

This Master Ballot is not a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan or to communicate decisions to elect to opt out of the Third Party Releases. Holders should not surrender, at this time, certificates representing their securities. The Claims and Noticing Agent will not accept delivery of any such certificates surrendered together with this Master Ballot. Surrender of securities for exchange may only be made by you, and will only be accepted pursuant to a letter of transmittal which will be furnished to you by the Debtor following confirmation of the Plan by the United States Bankruptcy Court.

No Ballot or Master Ballot shall constitute or be deemed a proof of claim or equity interest or an assertion of a claim or equity interest.

You must retain the Unsecured Notes Claims Ballots that you have received and processed on this Master Ballot until such time as an order has been entered by the United States Bankruptcy Court confirming the Plan.

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTOR, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE ENCLOSED DOCUMENTS.**

**PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT BY CALLING +1 646-362-6336 OR EMAILING TABULATION@EPIQGLOBAL.COM WITH REFERENCE TO "2U" IN THE SUBJECT LINE.**

**IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> RECEIVE THIS MASTER BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS 5:00 P.M. PREVAILING EASTERN TIME ON AUGUST 21, 2024, THEN THE VOTES TRANSMITTED HEREBY WILL <u>NOT</u> BE COUNTED.**

NO PERSON HAS BEEN AUTHORIZED BY THE DEBTORS TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, ON BEHALF OF THE DEBTORS, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

**PLEASE BE ADVISED THAT unless a Beneficial Owner (a) votes to reject the Plan or abstains from voting to accept or reject the Plan AND (b) affirmatively opts out of the Third-Party Release, the Beneficial Owner shall be deemed to have consented to the Third-Party Release contained in <u>Article IX </u> of the Plan.**

## Exhibit A

**Please check one (and only one) box below to indicate the Plan Class and CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on an exhibit thereto). If you check more than one box, you risk having the votes submitted through this Master Ballot invalidated.**

| Class 4 (Unsecured Notes Claims) | | |
|---|---|---|
| ☐ | 2.25% Convertible Senior Notes due May 1, 2025 | CUSIP 90214JAB7<br>ISIN US90214JAB70 |
| ☐ | 4.50% Senior Unsecured Convertible Notes due February 1, 2030 | CUSIP 90214JAD3<br>ISIN US90214JAD37 |

**EXHIBIT 3-B**

**Beneficial Holder Ballot for
Holders of Class 4 Unsecured Notes Claims**

***IMPORTANT**: NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT.  THE DEBTORS (AS DEFINED HEREIN) INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PREPACKAGED PLAN OF REORGANIZATION BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT.  THIS BALLOT IS A COMPONENT OF THE PREPETITION SOLICITATION OF YOUR VOTE ON THE PREPACKAGED PLAN OF REORGANIZATION DESCRIBED BELOW AND IN THE ACCOMPANYING DISCLOSURE STATEMENT. THE VOTING DEADLINE IS 5:00 P.M. PREVAILING EASTERN TIME ON AUGUST 21, 2024.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

**BENEFICIAL BALLOT FOR VOTING
ON THE JOINT PREPACKAGED PLAN OF
REORGANIZATION OF 2U, INC. AND ITS DEBTOR
AFFILIATES TO BE FILED UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

**BENEFICIAL OWNER BALLOT FOR: VOTING CLASS 4 UNSECURED NOTES
CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY
<u>BEFORE</u> SUBMITTING YOUR VOTE.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN
ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM YOUR NOMINEE
SO THAT THE MASTER BALLOT OR PRE-VALIDATED BALLOT REFLECTING
YOUR VOTE IS ACTUALLY RECEIVED BY THE DEBTORS' PROPOSED CLAIMS
AND NOTICING AGENT, EPIQ CORPORATE RESTRUCTURING, LLC (THE
"*CLAIMS AND NOTICING AGENT*" OR "*EPIQ*") ON OR BEFORE AUGUST 21, 2024
AT 5:00 P.M. PREVAILING EASTERN TIME (THE "*VOTING DEADLINE*"),
UNLESS EXTENDED BY THE DEBTORS.**

**PLEASE SUBMIT YOUR BENEFICIAL BALLOT PROMPTLY IN THE ENVELOPE
PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS
PROVIDED BY YOUR NOMINEE, WHICH MAY INCLUDE (I) SUBMITTING THIS
BENEFICIAL BALLOT OR (II) CONVEYING YOUR VOTE VIA E-MAIL,
TELEPHONE, INTERNET APPLICATION, FACSIMILE, VOTER INFORMATION
FORM, OR OTHER ACCEPTED AND CUSTOMARY MEANS OF DELIVERING
SUCH INFORMATION TO YOUR NOMINEE.  PLEASE ALLOW SUFFICIENT
TIME FOR ALL STEPS.**

---

**If you have any questions regarding this beneficial owner ballot, including (among other
things) the deadline for and procedures to follow for submitting your vote, please contact
your nominee. For further information regarding the debtors' restructuring, please visit
the debtors' dedicated solicitation website at https://dm.epiq11.com/2u.**

**Confirmation of the Plan is expressly conditioned upon approval of the Bankruptcy
Court of releases as described below and located in Article IX.C of the Plan, which, if
approved by the Bankruptcy Court, would permanently enjoin holders of certain claims
against non-debtor third parties from asserting such claims against such non-debtor
third parties.  Such releases, if approved, will bind affected holders of claims and
interests in the manner described in Item 3 of this Ballot.**

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR
ADVICE, OR TO MAKE ANY REPRESENTATION, ON BEHALF OF THE
DEBTORS OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED
WITH THIS BALLOT.**

---

2U, Inc., and certain of its affiliates (the "*Debtors*") have provided you this Beneficial
Ballot (the "*Beneficial Ballot*") in connection with the *Joint Prepackaged Plan of Reorganization
of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (as may be
amended, supplemented, or otherwise modified from time to time, the "*Plan*") because your
nominee's records indicate that you are a Holder of Unsecured Notes Claims as of the close of

business on July 22, 2024 (the "*Voting Record Date*"). Accordingly, as provided in Item 2 below, you have a right and/or obligation to (a) vote to accept or reject the Plan and/or (b) opt-out of the Third-Party Release on account of your Class 4 Unsecured Notes Claim. *A failure to follow the Ballot Instructions may disqualify your vote.* Under the Plan, an "Unsecured Notes Claims" is any Claim on account of 2.25% Convertible Senior Notes due 2025 or 4.50% Senior Unsecured Convertible Notes due 2030 issued by 2U, Inc.

Your rights are described in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (as may be amended from time to time, the "*Disclosure Statement*") and the Plan[2] attached as Exhibit A to the Disclosure Statement provided to you with this Beneficial Ballot (collectively, with a pre-addressed, postage pre-paid return envelope, if applicable, the "*Solicitation Package*"). Before you vote, please review the Disclosure Statement carefully, including the voting procedures explained in Section I.C. If you need to obtain additional solicitation materials, including copies of the Plan and Disclosure Statement, or if you have any questions regarding this Beneficial Ballot, you may contact the Claims and Noticing Agent by: (a) calling +1 646-362-6336 or (b) emailing tabulation@epiqglobal.com with reference to "2U" in the subject line. After the filing of the chapter 11 cases, you may also visit the Debtors' restructuring website at https://dm.epiq11.com/2U. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee at www.nysb.uscourts.gov or free of charge at https://dm.epiq11.com/2U.

This Beneficial Ballot may not be used for any purpose other than (a) for casting votes to accept or reject the Plan and (b) opting out of the Third-Party Release on account of your Unsecured Notes Claim. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Claims and Noticing Agent immediately at the email address or appropriate telephone number set forth above.

**You should carefully and thoroughly review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 4 Unsecured Notes Claims under the Plan. If you hold Claims other than Unsecured Notes Claims, you may receive a ballot and/or voting instructions for each Class in which you are entitled to vote and for different Claims you hold within such classes.**

The Debtors intend to commence voluntary cases under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"). The Plan can thereafter be confirmed by the United States Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*") and thereby made binding on you if: (a) it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan; *provided* that, if you abstain from voting or vote to reject the Plan, and in either case, check the box in Item 3 to opt out of the Third Party Release, the Third Party Release shall not be binding on you.  To have the votes of your Beneficial Ballot counted, you must complete, sign, and return this Beneficial Ballot to your Nominee by the Voting Deadline.

Your receipt of this Beneficial Ballot does not signify that your Claim(s) has been or will be Allowed.  This Beneficial Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 4 Unsecured Notes Claims.  You must provide all of the information requested by this Beneficial Ballot.  Failure to do so may result in the disqualification of your vote.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

AS DESCRIBED MORE FULLY IN THE DISCLOSURE STATEMENT, IF YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASES SET FORTH IN ARTICLE IX.C.  IF YOU EITHER ABSTAIN FROM VOTING AND DO NOT CHECK THE OPT-OUT BOX IN ITEM 3 BELOW OR VOTE TO REJECT THE PLAN AND DO NOT CHECK THE OPT-OUT BOX IN ITEM 3 BELOW, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASES SET FORTH IN ARTICLE IX.C OF THE PLAN.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.  THE PLAN'S THIRD PARTY RELEASES, EXCULPATION AND INJUNCTION PROVISIONS ARE ATTACHED FOR YOUR CONVENIENCE AT EXHIBIT B HERETO.**

---

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM YOUR NOMINEE SO THAT THE MASTER BALLOT OR PRE-VALIDATED BALLOT REFLECTING YOUR VOTE IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT PRIOR TO THE VOTING DEADLINE.**

---

**Item 1.  Principal Amount of Class 4 Unsecured Notes Claim.**

The undersigned hereby certifies that, as of the Voting Record Date (the close of business on July 22, 2024), the undersigned was the beneficial owner (the "***Beneficial Owner***") of an Unsecured Notes Claim against the Debtors in the following aggregate unpaid principal amount set forth below and through the CUSIP on Exhibit A attached hereto.  If your Unsecured Notes Claims are held by a Nominee on your behalf and you do not know the amount of your Claim, please contact your nominee immediately.

$_____

**Item 2.  Vote on Plan.**

The Beneficial Owner of the Unsecured Notes Claim against the Debtors set forth in Item 1 above votes to (please check *only* one box below):

☐  **ACCEPT** (vote FOR) the Plan          ☐  **REJECT** (vote AGAINST) the Plan

Any Ballot that is executed by the Beneficial Owner of a Claim, but that indicates both an acceptance and a rejection of the Plan, or does not indicate either an acceptance or rejection of the Plan, will not be counted.

**THE DEBTORS RECOMMEND THAT
YOU VOTE TO ACCEPT THE PLAN.**

**Item 3**. **Opt-Out Election.**

Article **IX.C** of the Plan provides for a release by Holders of Claims and Interests (the "***Third Party Releases***") a copy of which is included on Exhibit B of this Beneficial Ballot.

**If you have voted to accept the Plan, you may not validly opt out of the Third-Party Release set forth in** <u>**Article IX**</u> **of the Plan. Any Beneficial Ballot containing a vote to accept the Plan and an election to opt out of the Third-Party Release will be treated as a Beneficial Ballot voting to accept the Plan and agreeing to the Third-Party Release.**

**If you have voted to reject the Plan, you have the option to elect not to grant the Third-Party Release. If you wish to elect not to grant the Third-Party Release, then you must check the box below. If you submit your Beneficial Ballot with this box checked (and without a vote to accept the Plan), then you will be deemed not to consent to the Third-Party Release. If you fail to return this Beneficial Ballot (or return this Beneficial Ballot without this box checked), you will be deemed to have consented to the Third-Party Release.**

**PLEASE BE ADVISED THAT IF YOU (A) RETURN THIS BENEFICIAL BALLOT AND DO NOT CHECK THE BOX BELOW, (B) FAIL TO RETURN THIS BENEFICIAL BALLOT, OR (C) CHECK THE BOX BELOW BUT ALSO VOTE TO ACCEPT THE PLAN, THEN YOU ELECT TO GRANT THE THIRD-PARTY RELEASE IN EACH AND EVERY CAPACITY IN WHICH YOU HOLD A CLAIM AGAINST, OR EQUITY INTEREST IN, ANY OF THE DEBTORS. YOU MUST AFFIRMATIVELY CHECK THE BOX BELOW (AND NOT HAVE VOTED TO ACCEPT THE PLAN) IN ORDER TO OPT OUT OF THE THIRD-PARTY RELEASE.**

> ☐ **OPT-OUT ELECTION**: **By checking this box, the Holder of the Class 4 Unsecured Notes Claim set forth in Item 1 elects solely to opt out of the Plan's Third Party Releases in Article IX.C of the Plan.**

**Item 4**. **Certifications as to Additional Claims Held**

*ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER UNSECURED NOTES CLAIMS ON A BALLOT OTHER THAN THIS BENEFICIAL BALLOT.*

By completing and returning this Beneficial Ballot, the undersigned Beneficial Owner certifies that either: (a) it has not submitted any other Beneficial Ballots in respect of any Unsecured Notes Claims held in other accounts or other record names, or (b) it has provided the information specified in the following table for all other Unsecured Notes Claims for which additional Beneficial Ballots have been submitted on its behalf, each of which indicates the same vote to accept or reject the Plan, as applicable (please use additional sheets of paper if necessary):

| | Account Number of Other Unsecured Notes Claims Voted | Name of Record Holder or Nominee | Principal Amount of Other Unsecured Notes Claims Voted | CUSIP Number of Other Unsecured Notes Claims Voted, |
|---|---|---|---|---|
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |

## Item 5. Certifications.

By signing this Beneficial Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors:

1. that as of the Voting Record Date either the undersigned is the: (a) the Beneficial Owner of Unsecured Notes Claims set forth in item 1; or (b) an authorized signatory for a Beneficial Owner of Unsecured Notes Claims being voted on, and, in either case, has the full power and authority to vote to accept or reject the Plan with respect to the Claims identified in Item 1 above;

2. that the undersigned has received a copy of the Disclosure Statement and the other documents comprising the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

3. that the undersigned has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package materials;

4. that the undersigned has cast the same vote with respect to all Unsecured Notes Claims held by the same Beneficial Owner;

5. that no other Beneficial Ballots with respect to the amount of the Unsecured Notes Claims identified in Item 1 above have been cast or, if any other Beneficial Ballots have been cast with respect to such Claims, then any such earlier Beneficial Ballots are hereby revoked; and

6. that it acknowledges and agrees that the Debtors may make conforming changes to the Plan as may be reasonably necessary, subject to section 1127 of the Bankruptcy Code, and in accordance with the terms and conditions set forth in the Restructuring Support Agreement; provided that the Debtors will not resolicit acceptances or rejections of the Plan in the event of such conforming changes unless otherwise required to do so by the Bankruptcy Court.

## Item 6. Holder Information and Signatures.

BENEFICIAL BALLOT INFORMATION — COMPLETE THIS SECTION

Name: _____

(print or type)

Signature: _____

Signatory Name (if other than
the Holder): _____

Name of Institution: _____

Address: _____

Email Address: _____

Telephone Number: _____

Date Completed: _____

---

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN
ACCORDANCE WITH THE INSTRUCTIONS RECEIVED FROM YOUR
NOMINEE SO THAT THE MASTER BALLOT OR PRE-VALIDATED BALLOT
REFLECTING YOUR VOTE IS ACTUALLY RECEIVED BY THE CLAIMS AND
NOTICING AGENT ON OR BEFORE THE VOTING DEADLINE, WHICH IS
<u>AUGUST 21, 2024, AT 5:00 PM PREVAILING EASTERN TIME</u>.**

**<u>PLEASE ACT PROMPTLY</u>**

| Class 4 Unsecured Notes Claims |
|---|

### INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL BALLOT

1.  The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Beneficial Ballot or in these instructions (the "***Ballot Instructions***") but not otherwise defined therein or herein shall have the meaning set forth in the Plan or Disclosure Statement, as applicable, copies of which also accompany the Ballot.  For further information regarding the debtors' restructuring after the filing of the chapter 11 cases, please visit the debtors' dedicated solicitation website at https://dm.epiq11.com/2u. If you have any questions regarding this Beneficial Ballot, including (among other things) the deadline for and procedures to follow for submitting your vote, please contact your nominee; or you may contact the Claims and Noticing Agent by (a) calling +1 646-362-6336 or (b) emailing tabulation@epiqglobal.com with reference to "2U" in the subject line.

2.  If it is your Nominee's customary practice to collect your vote via e-mail, telephone, voter information form, or other means in lieu of this Beneficial Ballot, you may follow your Nominee's instructions regarding the submission of your vote.  For the avoidance of doubt, if your Nominee does not instruct you to submit a paper Beneficial Ballot to the Nominee for the purposes of collecting your vote, you are not required to do so.

3.  To ensure your vote is counted toward confirmation of the Plan, whether submitted via Master Ballot or pre-validated Beneficial Ballot, please read the following information carefully so that you understand where your Beneficial Ballot must be sent in order for it to be received before the Voting Deadline.  Please follow the instructions of your Nominee.

    (a)  **Voting through a Nominee**: You must submit your vote via this Beneficial Ballot (or as otherwise instructed by your Nominee) to your Nominee with sufficient time to permit your Nominee to receive your vote, incorporate your vote on a Master Ballot, and deliver the Master Ballot to the Claims and Noticing Agent so that it is **actually received** by the Claims and Noticing Agent on or before the Voting Deadline.

    (b)  **If your Nominee pre-validates your Beneficial Ballot**.  If your Nominee provides you with a pre-validated Beneficial Ballot, you must submit any pre-validated Beneficial Ballot directly to the Claims and Noticing Agent so that it is **actually received** by the Claims and Noticing Agent on or before the Voting Deadline.  A Nominee pre-validates a Beneficial Ballot by (i) inserting the amount of your Unsecured Notes Claim as of the Voting Record Date in Item 1, (ii) adding the Nominee's DTC participant number and a medallion guarantee stamp or authorized signatory list confirming the amount of your Unsecured Notes Claim as of the Voting Record Date, and (iii) instructing you to submit your pre-validated Beneficial Ballot directly to the Claims and Noticing Agent on or before the Voting Deadline.

(c) **If you are a Nominee and hold Unsecured Notes Claims for your own account**, you may convey your vote on a Master Ballot or a pre-validated Beneficial Ballot.

3. Any vote received by the Claims and Noticing Agent after the Voting Deadline will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court, as applicable. In all cases, you should allow sufficient time to coordinate with your Nominee to assure timely delivery. No Beneficial Ballot should be sent to the Debtors or their respective financial or legal advisors.

4. If the Claims and Noticing Agent receives multiple votes on account of the same Claims, the vote included on the last properly executed, valid Master Ballot or pre-validated Beneficial Ballot timely received will supersede and revoke any earlier received votes.

5. This Beneficial Ballot is not a letter of transmittal and may not be used for any purpose other than to (a) vote to accept or reject the Plan and (b) as provided in Item 3 of this Beneficial Ballot, solely with respect to holders of Claims that have either abstained from voting or elected to reject the Plan, elect to opt out of the Plan's Third Party Releases. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims or Interests, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with this Beneficial Ballot.

6. This Beneficial Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

7. If you hold Claims in more than one Class under the Plan, or in multiple accounts, you will receive instructions for each different Class or account. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you receive.

8. Please be sure to sign and date this Beneficial Ballot. If you are signing this Beneficial Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Claims and Noticing Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.

9. The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any vote cast by an entity that does not hold Unsecured Notes Claims as of the Voting Record Date; (b) any Ballot not actually received by the Claims and Noticing Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned Ballot (for the avoidance of doubt, signatures contained in Master Ballots submitted by electronic mail will be deemed to be legally effective); (d) any vote sent to any party other than the Nominee (*e.g.*, the Debtors, the any official committee, or the Court) or, in the case of a pre-validated Beneficial Ballot, the Claims and Noticing Agent; (e) any vote superseded by another timely valid vote; (f) any inconsistent or duplicate votes that are simultaneously cast with respect to the same Unsecured Notes Claim; (g) any vote (or group of votes from a single creditor) that partially rejects and partially accepts the Plan will not be counted; (h) any Beneficial Ballot not marked to accept or reject the Plan; or (i) any Beneficial Ballot marked both to accept and reject the Plan.

**PLEASE SUBMIT YOUR VOTE PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL BALLOT, INCLUDING (AMONG OTHER THINGS) THE DEADLINE FOR AND PROCEDURES TO FOLLOW FOR SUBMITTING YOUR VOTE, PLEASE CONTACT YOUR NOMINEE. OR YOU MAY CONTACT THE CLAIMS AND NOTICING AGENT BY (A) CALLING +1 646-362-6336 OR (B) EMAILING TABULATION@EPIQGLOBAL.COM WITH REFERENCE TO "2U" IN THE SUBJECT LINE.**

**FOR FURTHER INFORMATION REGARDING THE DEBTORS' RESTRUCTURING, PLEASE VISIT THE DEBTORS' DEDICATED SOLICITATION WEBSITE AT HTTPS://DM.EPIQ11.COM/2U.**

---

**YOUR VOTE, WHETHER SUBMITTED BY YOUR NOMINEE ON A MASTER BALLOT OR VIA PRE-VALIDATED BENEFICIAL BALLOT, MUST BE _ACTUALLY RECEIVED_ BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE THE VOTING DEADLINE, WHICH IS 5:00 P.M. PREVAILING EASTERN TIME ON AUGUST 21, 2024.**

---

NO PERSON HAS BEEN AUTHORIZED BY THE DEBTORS TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, ON BEHALF OF THE DEBTORS, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

**PLEASE BE ADVISED THAT UNLESS YOU (A) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN AND (B) AFFIRMATIVELY OPT OUT OF THE THIRD-PARTY RELEASE, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE IX OF THE PLAN.  THE FULL TEXT OF THE RELEASE PROVISIONS CONTAINED IN THE PLAN ARE PROVIDED IN ITEM 3 OF THIS BALLOT.**

**Exhibit A**

**Your Nominee may have checked a box below to indicate the CUSIP/ISIN to which this Beneficial Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Beneficial Ballot.**

| Class 4 (Unsecured Notes Claims) | | |
|---|---|---|
| ☐ | 2.25% Convertible Senior Notes due May 1, 2025 | CUSIP 90214JAB7<br>ISIN US90214JAB70 |
| ☐ | 4.50% Senior Unsecured Convertible Notes due February 1, 2030 | CUSIP 90214JAD3<br>ISIN US90214JAD37 |

**Exhibit B**

**Third Party Releases**

Article IX.B.  *Releases by the Debtors*

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE
COMBINED ORDER, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY
CODE, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE
CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH
RELEASED PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE
SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER
ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION,
DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE
FOREGOING ENTITIES, IS AND IS DEEMED TO BE, FOREVER AND
UNCONDITIONALLY RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED
BY EACH DEBTOR, REORGANIZED DEBTOR, AND THEIR ESTATES FROM ANY
AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN,
INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF
OF THE DEBTORS, THEIR ESTATES, OR THE REORGANIZED DEBTORS THAT
SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN
RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE
HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER
ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN
WHOLE OR IN PART, (I) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF
THE DEBTORS OR THE NON-DEBTOR AFFILIATES (INCLUDING ANY DIVIDENDS
OR OTHER DISTRIBUTIONS); (II) THE PURCHASE, SALE, OR RESCISSION OF ANY
SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES; (III) THE
SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES,
ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS
TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE
NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING
TRANSACTIONS; (IV) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS
BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY;
(V) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT
RESTRUCTURING EFFORTS; (VI) INTERCOMPANY TRANSACTIONS; (VII) THE
RESTRUCTURING SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS,
THESE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION;
(VIII) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR
DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE
RESTRUCTURING SUPPORT AGREEMENT, THE RESTRUCTURING TERM SHEET,
THE DIP DOCUMENTS, THE DEFINITIVE DOCUMENTS, OR THE
RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR
DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN; (IX) THE
DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED
AGREEMENT; OR (X) ANY OTHER ACT OR OMISSION, TRANSACTION,
AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO ANY OF THE

FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (X) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THIS PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THIS PLAN; (Y) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION; OR (Z) ANY CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS:  (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THIS PLAN; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (III) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

**Article IX.C.**  _**Releases by Holders of Claims and Interests**_

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE COMBINED ORDER, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, HAS AND IS DEEMED TO HAVE, FOREVER AND UNCONDITIONALLY, RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR, AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO

ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (I) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES (INCLUDING ANY DIVIDENDS OR OTHER DISTRIBUTIONS); (II) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES; (III) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS; (IV) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY; (V) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS; (VI) INTERCOMPANY TRANSACTIONS; (VII) THE RESTRUCTURING SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THESE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION; (VIII) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE RESTRUCTURING TERM SHEET, THE DIP DOCUMENTS, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN; (IX) THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT; OR (X) ANY OTHER ACT, OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (X) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THIS PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THIS PLAN; (Y) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION; OR (Z) ANY CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (I) CONSENSUAL; (II) ESSENTIAL TO THE CONFIRMATION OF THIS PLAN; (III) GIVEN IN EXCHANGE FOR THE GOOD AND

VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THIS PLAN; (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (VI) FAIR, EQUITABLE, AND REASONABLE; (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

**Article IX.E.** _Exculpation_

EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY CLAIMS OR CAUSES OF ACTION ARISING PRIOR TO OR ON THE EFFECTIVE DATE FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONFIRMATION OR CONSUMMATION OF THIS PLAN, THE DISCLOSURE STATEMENT, THE DEFINITIVE DOCUMENTS, THE DIP DOCUMENTS, OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THIS PLAN OR ANY OTHER POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THIS PLAN; PROVIDED, THAT THE FOREGOING PROVISIONS OF THIS EXCULPATION SHALL NOT (X) OPERATE TO WAIVE OR RELEASE THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, CREDIT DOCUMENTS, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT AND (Y) APPLY TO THE EXCULPATED PARTIES FOR ACTS OR OMISSIONS DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD; PROVIDED, FURTHER, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS OR INACTIONS;

THE EXCULPATED PARTIES HAVE, AND UPON CONSUMMATION OF THIS PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THIS PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF

ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THIS PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THIS PLAN.

THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON OR ENTITY.

**Article IX.G.** *Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE COMBINED ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THIS PLAN OR THE COMBINED ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THESE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

**Relevant Definitions Related to Release and Exculpation Provision:**

"***Exculpated Parties***" means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Consenting Stakeholders; (iv) the Agents/Trustees; (v) the DIP Lenders; and (vi) with respect to the foregoing clauses (i) through (v), each such Entity's or Person's Related Parties.

"***Released Parties***" means, collectively, each of, and in each case in its capacity as such: (i) each Debtor; (ii) each Reorganized Debtor; (iii) each Non-Debtor Affiliate; (iv) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers and proxyholders; (v) the Agents/Trustees; (vi) the Consenting Stakeholders; (vii) the DIP Lenders; (viii) if applicable, each Consenting Stakeholder in its capacity as a Holder of Existing Equity Interests; (ix) each of the Releasing Parties; and (x) with respect to each of the foregoing (i) through (ix), each such

5

Entities' (a) Related Parties and (b) their current and former Affiliates' Related Parties; *provided*, that in each case, an Entity shall not be a Released Party if it: (y) elects to opt out of the Releases; or (z) timely Files with the Bankruptcy Court on the docket of these Chapter 11 Cases an objection to the Releases that is not resolved before Confirmation.

"***Releasing Parties***" means, collectively, each of, and in each case in its capacity as such: (i) each Debtor; (ii) each Reorganized Debtor; (iii) each Non-Debtor Affiliate; (iv) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers and proxyholders; (v) the Agents/Trustees; (vi) the Consenting Stakeholders; (vii) the DIP Lenders; (viii) if applicable, each Consenting Stakeholder in its capacity as a Holder of Existing Equity Interests; (ix) each other Holder of Claims or Interests that is entitled to vote on this Plan and either (a) votes to accept this Plan, (b) abstains from voting on this Plan and does not elect to opt out of the Releases, or (c) votes to reject this Plan and does not elect to opt out of the Releases; (x) each other Holder of Claims or Interests that is deemed to reject this Plan and does not elect to opt out of the Releases; and (xi) with respect to each of the foregoing (i) through (x), each such Entities' current and former Affiliates, and such Entities' and their current and former Affiliates' Related Parties; *provided*, that, for the avoidance of doubt, an Entity described in clauses (ix) through (xi) above shall not be a Releasing Party if it: (y) elects to opt out of the Releases; or (z) timely Files with the Bankruptcy Court on the docket of these Chapter 11 Cases an objection to the Releases that is not resolved before Confirmation; *provided further*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder, or Holder of Claims or Interests that is entitled vote on this Plan and votes to accept this Plan, will be void *ab initio*.

## EXHIBIT 4

**Cover Letter for Holders of
Class 3 First Lien Claims and Class 4 Unsecured Notes Claims**

July 24, 2024

**To:    All Holders of First Lien Claims in Class 3 and All Holders of Unsecured Notes Claims in Class 4:**

You are receiving this letter and the enclosed materials because our records indicate that you are a beneficial holder of a First Lien Claim or an Unsecured Notes Claim (a "***Holder***" or "***Voting Holder***") in Class 3 or Class 4 as set forth in the proposed Plan (as defined below) for 2U, Inc. and certain of its affiliates (collectively, the "***Debtors***").  The Debtors expect to commence cases under chapter 11 of the Bankruptcy Code imminently, and they are now soliciting acceptances of the Plan from Holders of Class 3 and Class 4 Claims.  As a Voting Holder, you are entitled to, among other things, vote to accept or reject the Plan.  *Therefore, you should read this letter and the enclosed materials carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

The following enclosed materials that accompany this letter include:

(a)    the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated as of July 24, 2024 (the "***Disclosure Statement***");

(b)    the *Joint Prepackaged Plan of Reorganization of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*, dated as of July 24, 2024 (the "***Plan***"),[1] which is contained in your solicitation package as <u>Exhibit A</u> to the Disclosure Statement;

(c)    a ballot (a "***Ballot***") and instructions to return your Ballot to either the Claims and Noticing Agent (as defined herein) or your nominee, if applicable, and a return envelope, if applicable;

(d)    the proposed Combined Notice (as defined in the Disclosure Statement); and

(e)    the proposed *Order (A) Scheduling a Combined Hearing to Consider Approval of the Disclosure Statement and Confirmation of the Plan; (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates; (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Disclosure Statement or the Plan; (D) Approving the Manner and Forms of Notice and Other Related Documents; (E) Approving Equity Rights Offering Documents; (F) Conditionally Waiving Requirement of Filing Schedules and Statements and of Convening Section 341 Meeting of Creditors;  And (G) Granting Related Relief (E) the Proposed Order (a) Scheduling a Combined Hearing to Consider Approval of the Disclosure Statement and Confirmation of the Plan; (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates; (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Disclosure Statement or the Plan; (D) Approving the Manner and Forms of Notice and Other Related Documents; (E) Approving Equity Rights Offering Documents; (F) Conditionally Waiving Requirement of Filing Schedules and Statements and of Convening Section 341 Meeting of Creditors;  and (G) Granting Related Relief* (the "***Proposed Disclosure Statement Order***").

As detailed in the Disclosure Statement and Plan, if the chapter 11 cases are commenced, the Plan is confirmed, and the Effective Date occurs, then on the Effective Date or as soon as reasonably practicable thereafter:

---

[1]    Capitalized terms used but not defined herein have the meanings set forth in the Disclosure Statement or the Plan, as applicable.

1

| Class 3 First Lien Claims | Except to the extent that a Holder of an Allowed First Lien Claim agrees to less favorable treatment of its Allowed First Lien Claim, in full and final satisfaction, settlement, release, and discharge of each Allowed First Lien Claim, on the Effective Date, each Holder of such Allowed First Lien Claim shall receive its Pro Rata share of the Amended and Restated Loans. |
|---|---|
| Class 4 Unsecured Notes Claims | Except to the extent that a Holder of an Allowed Unsecured Notes Claim agrees to less favorable treatment of its Allowed Unsecured Notes Claim, in full and final satisfaction, settlement, release, and discharge of such Allowed Unsecured Notes Claim, on the Effective Date, each Holder of such Allowed Unsecured Notes Claim shall receive (i) the right to participate in the Equity Rights Offering in accordance with the Equity Rights Offering Procedures, and (ii) its Pro Rata share of the New Common Interests (subject to dilution on account of the New Common Interests issued pursuant to (A) the MIP and (B) the Equity Rights Offering). |

The Debtors have considered all of their alternatives and have determined that the deleveraging transactions proposed in the Plan represent the best path to maximizing value for all stakeholders.

---

**THE DEBTORS STRONGLY URGE YOU TO VOTE FOR THE PLAN.**

**THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS AND RECOMMEND THAT ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.**

---

**Holders of more than a majority of the First Lien Claims and Unsecured Notes Claims support the Restructuring Support Agreement, which is the culmination of multi-party, arm's-length negotiations. Those Holders party to the Restructuring Support Agreement agree, following receipt of the Disclosure Statement, to vote for the Plan.**

**ONLY HOLDERS OF CLASS 3 OR CLASS 4 CLAIMS
MAY VOTE TO ACCEPT OR REJECT THE PLAN.**

You should carefully read the enclosed Plan and Disclosure Statement. You should also read the instructions attached to the enclosed Ballot for information related to completing and returning your Ballot. If you have questions about voting procedures, you may contact the proposed claims and noticing agent, Epiq Corporate Restructuring, LLC (the "***Claims and Noticing Agent***" or "***Epiq***"), by: (a) calling 877-525-5725 (Toll Free U.S.) or +1 360-803-4441 (International) or (b) emailing tabulation@epiqglobal.com with reference to "2U" in the subject line. Depending on your Class, you must return you Ballot in the following manner:

**Return of Ballots: Class 3**

If you are in **Class 3**, you may submit your vote via:

1. Epiq's e-Ballot portal, available at https://epiqworkflow.com/cases/2uballot using the unique e-ballot id# on your Ballot.

2. Regular mail, overnight courier, or hand delivery to:

<div align="center">

2U, Inc. Ballot Processing
C/o Epiq Corporate Restructuring, LLC
10300 SW Allen Blvd.
Beaverton, OR 97005

</div>

2

3.   Email delivery by:

Sending pdf copies of the completed ballot(s) to <u>tabulation@epiqglobal.com</u>, with a reference to "2U Ballots" in the subject line

Please choose only one method to return your ballot or consent form.

**Return of Ballots: Class 4**

If you are in **<u>Class 4</u>**, you may submit your vote in the envelope provided or otherwise in accordance with the instructions provided by your nominee, which may include (i) submitting your Ballot or (ii) conveying your vote via e-mail, telephone, internet application, facsimile, voter information form, or other accepted and customary means of delivering such information to your nominee.  Please allow sufficient time for all steps.

**<u>The voting deadline is 5:00 p.m. prevailing Eastern Time
on August 21, 2024</u>**

(unless the Debtors extend the voting deadline)

To be counted as a vote to accept or reject the plan, you must return your properly completed ballot to the Claims and Noticing Agent or your nominee, as applicable, so that your ballot or master ballot, as applicable, is <u>actually received</u> by the Claims and Noticing Agent on or before the voting deadline as set forth in the proposed disclosure statement order.

If you have any questions on the voting procedures, please contact the claims and noticing agent at:

tabulation@epiqglobal.com with a reference
to "*2U*" in the subject line

Or

877-525-5725 (Toll Free U.S.) or
+1 360-803-4441 (International)

Please follow the voting instructions set forth on your Ballot and complete, execute, and return your Ballot so that it is **<u>actually</u> <u>received</u>** by the Claims and Noticing Agent by the Voting Deadline.

**THE DEADLINE FOR THE RECEIPT OF BALLOTS IS <u>AUGUST 21, 2024</u>, AT 5:00 P.M. PREVAILING EASTERN TIME.**

Sincerely,

Matthew Norden
Chief Financial Officer and Chief Legal Officer
2U, Inc.

## **EXHIBIT 5**

**Unimpaired Claims Notice**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

<div align="center">

**NOTICE OF NON-VOTING STATUS TO**
**HOLDERS OF CLAIMS DEEMED TO ACCEPT THE PLAN**

</div>

**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") are soliciting votes with respect to the *Joint Prepackaged Plan of Reorganization of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as may be amended from time to time, the "***Plan***") as set forth in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. [ ● ]] (as may be amended from time to time, the "***Disclosure Statement***"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable. Copies of the Plan and the Disclosure Statement can be viewed or downloaded at no charge by visiting the website maintained by the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC (the "***Claims and Noticing Agent***" or "***Epiq***"), at https://dm.epiq11.com/2U. Copies of the Plan and Disclosure Statement may also be obtained by calling the Claims and Noticing Agent at 877-525-5725 (Toll Free U.S.) or +1 360-803-4441 (International) or emailing tabulation@epiqglobal.com and requesting copies. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee at www.nysb.uscourts.gov or at no charge at https://dm.epiq11.com/2U.

You are receiving this notice because our records indicate that you are a Holder of (a) an Other Secured Claim in Class 1, (b) an Other Priority Claim in Class 2, or (c) a General

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

Unsecured Claim in Class 5. Under the terms of the Plan, your Claim against the Debtors is Unimpaired because your Allowed Claim will be paid in full or receive such other treatment as required to render your Allowed Claim Unimpaired in accordance with the Bankruptcy Code. Thus you are deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

The hearing to consider approval of the Disclosure Statement and confirmation of Plan (the "**Combined Hearing**") will begin on **September 6, 2024, at 10:00 a.m. prevailing Eastern Time**, in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom [ ● ], New York, New York 10004-1408, before the Honorable [ ● ], United States Bankruptcy Judge. The Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Combined Hearing, without further notice to parties in interest.

## Critical Information Regarding Objecting to the Plan

Objection Deadline. The deadline for filing objections to the adequacy of the Disclosure Statement or confirmation of the Plan is **August 23, 2024, at 4:00 p.m. prevailing Eastern Time** (the "**Objection Deadline**").

Objections: Any objection to the adequacy of the Disclosure Statement or the confirmation of the Plan must: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York; (c) state with particularity the legal and factual basis for the objection; and (d) be filed with the Bankruptcy Court (contemporaneously with a proof of service), and be served upon the parties identified below (the "**Notice Parties**") so as to be **actually received** by each of them on or before the Objection Deadline.

> OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

## Notice Parties

(a)    2U, Inc., 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202, Attn: Paul S. Lalljie (plalljie@2u.com), Matthew Norden (mnorden@2u.com), and Lillian Brownstein (lbrownstein@2u.com);

(b)    Proposed counsel to the Debtors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020, Attn: George A. Davis (george.davis@lw.com); George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Randall Weber-Levine (randall.weber-levine@lw.com) and Scott Yousey (scott.yousey@lw.com);

(c)    Counsel to the Ad Hoc First Lien Lender Group, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn: Tyson Lomazow (tlomazow@milbank.com) and Albert A. Pisa (apisa@milbank.com);

(d)    Counsel to the Ad Hoc Noteholder Group, Weil, Gotshal & Manges LLP, 767 5th Ave, New York, New York 10153, Attn: Matt Barr

(matt.barr@weil.com), David Griffiths (david.griffiths@weil.com), and F. Gavin Andrews (f.gavin.andrews@weil.com);

(e)     Counsel to Greenvale, Schulte, Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Kristine Manoukian (kristine.manoukian@srz.com), Kelly Knight (kelly.knight@srz.com), and Reuben E. Dizengoff (reuben.dizengoff@srz.com));

(f)     United States Trustee, U.S. Department of Justice, Office of the U.S. Trustee, 1 Bowling Green, Room 534, New York, NY 10004, Attn: Rachael E. Siegel (rachael.e.siegel@usdoj.gov), Daniel Rudewicz (daniel.rudewicz@usdoj.gov), and Brian Masumoto (brian.masumoto@usdoj.gov); and

(g)     Counsel to any statutory committee if appointed.

## **Section 341 Hearing**

Section 341 of the Bankruptcy Code provides that the United States Trustee, a U.S. Justice Department Official, convene and preside at a meeting of the Debtors' creditors (the "***Section 341(a) Meeting***") within a reasonable time following the commencement of a bankruptcy case under Chapter 11.  Pursuant to the order scheduling the Combined Hearing [Docket No. [_]], the Bankruptcy Court has authorized adjourning the 341(a) Meeting, provided that the Plan is confirmed within seventy five (75) days of the Petition Date.  If the Plan is not confirmed at that time, the United States Trustee may schedule and convene the section 341(a) Meeting, and the Debtors may request a further adjournment if necessary.

If the Section 341(a) Meeting is scheduled, be convened, the Debtors will serve on the parties on whom it served this notice and any other parties entitled to notice pursuant to the Bankruptcy Rules, and post on the website at https://dm.epiq11.com/2U not less than twenty-one (21) days before the date scheduled for such meeting, a notice of, among other things, the date, time, and place of the Section 341(a) Meeting.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT THE NUMBER OR ADDRESS SPECIFIED ABOVE.**

---

**<u>EXHIBIT 6</u>**

**Notice of Non-Voting Status to
Holders of Impaired Claims and Interests Deemed to Reject the Plan and Opt-Out
Opportunity**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

**NOTICE OF (A) NON-VOTING STATUS TO**
**HOLDERS OF CLASS 8 EXISTING EQUITY INTERESTS**
**AND CLASS 9 SUBORDINATED CLAIMS IN 2U, INC. DEEMED TO**
**REJECT THE PLAN; AND (B) FORM TO OPT OUT OF THIRD-PARTY RELEASE**

> YOU ARE RECEIVING THIS NOTICE BECAUSE YOUR RIGHTS MAY BE
> AFFECTED BY THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF
> 2U, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE
> BANKRUPTCY CODE. THEREFORE, YOU SHOULD READ THIS NOTICE
> CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT
> HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") are soliciting votes with respect to the *Joint Prepackaged Plan of Reorganization of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*] [Docket No. [ ● ] (as may be amended from time to time, the "***Plan***") as set forth in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of 2U, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*] [Docket No. [ ● ] (as may be amended from time to time, the "***Disclosure Statement***"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

You are receiving this notice (this "**Opt-Out Notice**") because our records indicate that you are a holder of a Claim or an Interest with respect to the Debtors **who is not entitled to vote on the Plan.** Specifically, under the terms of the Plan, as a Holder of a Claim or an Interest (as currently asserted against the Debtors) under Classes 8 or 9 that is receiving no distribution under the Plan, you are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote on the Plan. Accordingly, the "opt-out" form (the "**Opt-Out Form**") affixed hereto is being provided to you solely for the purpose of allowing you to affirmatively opt out of the Third Party Release under Article IX of the Plan, if you so choose.

Your rights are described in the Disclosure Statement. Copies of the Plan and the Disclosure Statement may be obtained free of charge by contacting the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC (the "**Claims and Noticing Agent**" or "**Epiq**"), by: (a) calling the Debtors' restructuring hotline at calling 877-525-5725 (Toll Free U.S.); +1 360-803-4441 (International); (b) visiting the Debtors' restructuring website at https://dm.epiq11.com/2U; and/or writing to (i) 2U, Inc., c/o Epiq Ballot Processing, 10300 SW Allen Boulevard Beaverton, Oregon 97005; or (ii) emailing tabulation@epiqglobal.com with reference to "2U" in the subject line. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via at www.nysb.uscourts.gov or free of charge at https://dm.epiq11.com/2U.

You may elect not to grant the Third-Party Release contained in Article IX of the Plan. If you elect not to grant the Third-Party Release, please follow the instructions on the Opt-Out Form affixed hereto and return the form to the Claims and Noticing Agent in accordance with such instructions. Election to opt out is at your option. The deadline to submit a completed form to "opt out" of the Third Party Releases is **August 21, 2024, at 5:00 p.m. prevailing Eastern Time** (the "**Opt-Out Deadline**").

---

**EVEN THOUGH YOU ARE DEEMED TO REJECT THE PLAN, YOU WILL NEVERTHELESS BE DEEMED TO CONSENT TO THE THIRD-PARTY RELEASE UNLESS YOU (A) CLEARLY INDICATE YOUR DECISION TO OPT OUT OF SUCH RELEASE BY CHECKING THE BOX IN ITEM 1 OF THE OPT-OUT FORM AFFIXED TO THIS OPT-OUT NOTICE OR (B) FILE AN OBJECTION TO THE PLAN BEFORE THE OBJECTION DEADLINE AS SET FORTH BELOW.**

---

The hearing to consider approval of the Disclosure Statement and confirmation of Plan (the "**Combined Hearing**") will begin on **September 6, 2024, at 10:00 a.m. prevailing Eastern Time**, in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom [ ● ], New York, New York 10004-1408, before the Honorable [ ● ], United States Bankruptcy Judge. The Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Combined Hearing, without further notice to parties in interest.

### Critical Information Regarding Objecting to the Plan

Objection Deadline. The deadline for filing objections to the adequacy of the Disclosure Statement or confirmation of the Plan is **August 23, 2024, at 4:00 p.m. prevailing Eastern Time** (the "**Objection Deadline**").

Objections:  Any objection to the adequacy of the Disclosure Statement or the confirmation of the Plan must:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York; (c) state with particularity the legal and factual basis for the objection; and (d) be filed with the Bankruptcy Court (contemporaneously with a proof of service), and be served upon the parties identified below (the "*Notice Parties*") so as to be **actually received** by each of them on or before the Objection Deadline.

---

OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

---

### **Notice Parties**

(a)     2U, Inc., 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202, Attn: Paul S. Lalljie (plalljie@2u.com), Matthew Norden (mnorden@2u.com), and Lillian Brownstein (lbrownstein@2u.com);

(b)     Proposed counsel to the Debtors, Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020, Attn: George A. Davis (george.davis@lw.com); George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Randall Weber-Levine (randall.weber-levine@lw.com) and Scott Yousey (scott.yousey@lw.com);

(c)     Counsel to the Ad Hoc First Lien Lender Group, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn: Albert A. Pisa (apisa@milbank.com), Tyson Lomazow (tlomazow@milbank.com), and Abigail Debold (adebold@milbank.com);

(d)     Counsel to the Ad Hoc Noteholder Group, Weil, Gotshal & Manges LLP, 767 5th Ave, New York, New York 10153, Attn: Matt Barr (matt.barr@weil.com), David Griffiths (david.griffiths@weil.com), and F. Gavin Andrews (f.gavin.andrews@weil.com);

(e)     Counsel to Greenvale, Schulte, Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Attn: Kristine Manoukian (kristine.manoukian@srz.com), Kelly Knight (Kelly.knight@srz.com), and Reuben E. Dizengoff (reuben.dizengoff@srz.com);

(f)     United States Trustee, U.S. Department of Justice, Office of the U.S. Trustee, 1 Bowling Green, Room 534, New York, NY 10004, Attn: Rachael E. Siegel (rachael.e.siegel@usdoj.gov), Daniel Rudewicz (daniel.rudewicz@usdoj.gov), and Brian Masumoto (brian.masumoto@usdoj.gov); and

(g)     Counsel to any statutory committee if appointed.

**OPT-OUT FORM**

---

**Class 8 Existing Equity Interests and Class 9 Subordinated Claims**

---

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM CAREFULLY <u>BEFORE</u> COMPLETING THIS OPT-OUT FORM.

**UNLESS YOU (A) CHECK THE BOX ON THIS OPT-OUT FORM BELOW AND FOLLOW ALL INSTRUCTIONS, OR (B) FILE AN OBJECTION TO THE PLAN BEFORE THE OBJECTION DEADLINE AS SET FORTH IN THE OPT-OUT NOTICE, YOU WILL BE HELD TO FOREVER RELEASE THE RELEASED PARTIES IN ACCORDANCE WITH THE PLAN.**

THIS OPT-OUT FORM MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE <u>ACTUALLY</u> RECEIVED BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE August 21, 2024, AT 5:00 P.M. PREVAILING EASTERN TIME (THE "***OPT-OUT DEADLINE***").

---

As set forth in the Opt-Out Notice affixed hereto, you are receiving this Opt-Out Form because our records indicate that you are a Holder of a Claim against or an Interest in the Debtors under Classes 8 or 9. As a Holder of a Claim against or an Interest in the Debtors under Classes 8 or 9 that is receiving no distribution under the Plan, you are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote on the Plan. Accordingly, this Opt-Out Form is being provided to you solely for the purpose of allowing you to affirmatively opt out of the Third Party Release under <u>Article IX</u> of the Plan, if you so choose.

This Opt-Out Form may not be used for any purpose other than for opting out of the Third-Party Release contained in the Plan. If you believe you have received this Opt-Out Form in error, please contact the Claims and Noticing Agent <u>immediately</u> at the address or appropriate telephone number set forth at the end of this form.

Before completing this Opt-Out Form, please read and follow the enclosed "Instructions for Completing this Opt-Out Form" carefully to ensure that you complete, execute and return this Opt-Out Form properly.

**Item 1.  Optional Opt-Out Election.**

<u>Item 1</u> is to be completed only if you are <u>opting out</u> of the Third-Party Release contained in <u>Article IX</u> of the Plan.

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN THE PLAN**

<u>ARTICLE IX</u> OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, WHICH ARE SET FORTH BELOW. YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY, AS YOUR RIGHTS MIGHT BE AFFECTED.

**IF YOU SUBMIT YOUR OPT-OUT FORM WITHOUT THE OPT-OUT ELECTION BOX CHECKED, THEN YOU WILL BE DEEMED TO <u>CONSENT</u> TO THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE IX</u> OF THE PLAN. PLEASE BE**

**ADVISED THAT BY NOT CHECKING THE BOX BELOW YOU ELECT TO GRANT THE THIRD-PARTY RELEASE IN EACH AND EVERY CAPACITY IN WHICH YOU HOLD A CLAIM AGAINST, OR EQUITY INTEREST IN, ANY OF THE DEBTORS. YOU MUST AFFIRMATIVELY CHECK THE BOX BELOW TO OPT OUT OF THE THIRD-PARTY RELEASE. ALTERNATIVELY, YOU MAY FILE AN OBJECTION TO THE PLAN BEFORE THE OBJECTION DEADLINE AS SET FORTH IN THE OPT-OUT NOTICE ACCOMPANYING THIS FORM.**

**Release, Exculpation, and Injunction Provisions in the Plan**

PLEASE BE ADVISED THAT <u>ARTICLE IX</u> OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THE THIRD-PARTY RELEASE DISCUSSED ABOVE, AS FOLLOWS:

**Relevant Definitions**

"***Exculpated Parties***" means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Consenting Stakeholders; (iv) the Agents/Trustees; (v) the DIP Lenders; and (vi) with respect to the foregoing clauses (i) through (v), each such Entity's or Person's Related Parties.

"***Released Parties***" means, collectively, each of, and in each case in its capacity as such: (i) each Debtor; (ii) each Reorganized Debtor; (iii) each Non-Debtor Affiliate; (iv) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers and proxyholders; (v) the Agents/Trustees; (vi) the Consenting Stakeholders; (vii) the DIP Lenders; (viii) if applicable, each Consenting Stakeholder in its capacity as a Holder of Existing Equity Interests; (ix) each of the Releasing Parties; and (x) with respect to each of the foregoing (i) through (ix), each such Entities' (a) Related Parties and (b) their current and former Affiliates' Related Parties; *provided*, that in each case, an Entity shall not be a Released Party if it: (y) elects to opt out of the Releases; or (z) timely Files with the Bankruptcy Court on the docket of these Chapter 11 Cases an objection to the Releases that is not resolved before Confirmation.

"***Releasing Parties***" means, collectively, each of, and in each case in its capacity as such: (i) each Debtor; (ii) each Reorganized Debtor; (iii) each Non-Debtor Affiliate; (iv) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers and proxyholders; (v) the Agents/Trustees; (vi) the Consenting Stakeholders; (vii) the DIP Lenders; (viii) if applicable, each Consenting Stakeholder in its capacity as a Holder of Existing Equity Interests; (ix) each other Holder of Claims or Interests that is entitled to vote on this Plan and either (a) votes to accept this Plan, (b) abstains from voting on this Plan and does not elect to opt out of the Releases, or (c) votes to reject this Plan and does not elect to opt out of the Releases; (x) each other Holder of Claims or Interests that is deemed to reject this Plan and does not elect to opt out of the Releases; and (xi) with respect to each of the foregoing (i) through (x), each such Entities' current and former Affiliates, and such Entities' and their current and former Affiliates' Related Parties; *provided*, that, for the avoidance of doubt, an Entity described in clauses (ix) through (xi) above shall not be a Releasing Party if it: (y) elects to opt out of the Releases; or (z) timely Files with the Bankruptcy Court on the docket of these Chapter 11 Cases an objection to the Releases that is not resolved before Confirmation; *provided further*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder, or Holder of Claims or Interests that is entitled vote on this Plan and votes to accept this Plan, will be void *ab initio*.

A. **Article IX.B.  Releases by the Debtors**

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE COMBINED ORDER, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, IS AND IS DEEMED TO BE, FOREVER AND UNCONDITIONALLY RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED BY EACH DEBTOR, REORGANIZED DEBTOR, AND THEIR ESTATES FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (I) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES (INCLUDING ANY DIVIDENDS OR OTHER DISTRIBUTIONS); (II) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES; (III) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS; (IV) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY; (V) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS; (VI) INTERCOMPANY TRANSACTIONS; (VII) THE RESTRUCTURING SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THESE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION; (VIII) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE RESTRUCTURING TERM SHEET, THE DIP DOCUMENTS, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN; (IX) THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT; OR (X) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (X) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THIS PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, ANY DOCUMENT, INSTRUMENT, OR

AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THIS PLAN; (Y) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION; OR (Z) ANY CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THIS PLAN; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (III) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

B. **Article IX.C.**  *Releases by Holders of Claims and Interests*

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE COMBINED ORDER, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, HAS AND IS DEEMED TO HAVE, FOREVER AND UNCONDITIONALLY, RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR, AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (I) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES (INCLUDING ANY DIVIDENDS OR OTHER DISTRIBUTIONS); (II) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES; (III) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES,

**ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS; (IV) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY; (V) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS; (VI) INTERCOMPANY TRANSACTIONS; (VII) THE RESTRUCTURING SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THESE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION; (VIII) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE RESTRUCTURING TERM SHEET, THE DIP DOCUMENTS, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN; (IX) THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT; OR (X) ANY OTHER ACT, OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (X) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THIS PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THIS PLAN; (Y) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION; OR (Z) ANY CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD.**

**ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (I) CONSENSUAL; (II) ESSENTIAL TO THE CONFIRMATION OF THIS PLAN; (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THIS PLAN; (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (VI) FAIR, EQUITABLE, AND REASONABLE; (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

### C. Article IX.E. *Exculpation*

EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY CLAIMS OR CAUSES OF ACTION ARISING PRIOR TO OR ON THE EFFECTIVE DATE FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONFIRMATION OR CONSUMMATION OF THIS PLAN, THE DISCLOSURE STATEMENT, THE DEFINITIVE DOCUMENTS, THE DIP DOCUMENTS, OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THIS PLAN OR ANY OTHER POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THIS PLAN; PROVIDED, THAT THE FOREGOING PROVISIONS OF THIS EXCULPATION SHALL NOT (X) OPERATE TO WAIVE OR RELEASE THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, CREDIT DOCUMENTS, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT AND (Y) APPLY TO THE EXCULPATED PARTIES FOR ACTS OR OMISSIONS DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD; PROVIDED, FURTHER, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS OR INACTIONS;

THE EXCULPATED PARTIES HAVE, AND UPON CONSUMMATION OF THIS PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THIS PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THIS PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THIS PLAN.

THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON OR ENTITY.

### D. Article IX.G. *Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE COMBINED ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524

**AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THIS PLAN OR THE COMBINED ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THESE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

> ☐   **OPT-OUT ELECTION**:  The undersigned elects to opt out of the Third-Party Release contained in <u>Article IX</u> of the Plan.

<u>**Item 2**</u>.  **Certifications.**

By signing this Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

1.   that the undersigned is the Holder of, or the authorized signatory for the Holder of, either a Class 8 Existing Equity Interest or Class 9 Unsubordinated Claim related to the Debtors;

2.   that the undersigned has received a copy of the Opt-Out Notice, including instructions to access the Disclosure Statement, and that this Opt-Out Form is made pursuant to the terms and conditions set forth therein;

3.   that the undersigned has made the same election with respect to all Claims and/or Equity Interests held by the same Holder; <u>and</u>

4.   that no other Opt-Out Form with respect to any Claim and/or Equity Interest held the same Holder has been submitted or, if any other Opt-Out Form has been cast with respect to any Claim and/or Equity Interest held by the same Holder, such Opt-Out Form is hereby revoked and superseded by this Opt-Out Form.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Email: | |
| Today's Date: | |

**PLEASE COMPLETE AND SUBMIT THIS OPT-OUT FORM
IN THE ENVELOPE PROVIDED OR BY <u>ONE</u> OF THE FOLLOWING METHODS:**

---

*If by regular mail, overnight courier, or hand delivery:*

2U Inc. Ballot Processing
c/o Epiq Corporate Restructuring, LLC
10300 SW Allen Blvd.
Beaverton, OR 97005

---

*If by E-Ballot portal (electronic online submission):*

E-Ballot Portal, available at https://epiqworkflow.com/cases/2UOptOut

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-Out Form:**

**Unique E-ID#: _____**

**Opt-Out Forms submitted by facsimile or other means of electronic transmission will not be counted.**

**Each E-ID# is to be used solely for Opting Out only for the Claim described in <u>Item 1</u> of your form. Please complete and submit an Opt-In form for each E-ID# you receive, as applicable.**

**Opt-Out Forms submitted by facsimile or other means of electronic transmission will not be counted.**

---

**Holders who submit their Opt-Out Form using the Claims and Noticing Agent's "E-Ballot" portal should NOT also submit a paper Opt-Out Form.**

---

THIS OPT-OUT FORM MUST BE **<u>ACTUALLY</u> <u>RECEIVED</u>**
BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE:

**August 21, 2024, AT 5:00 P.M. PREVAILING EASTERN TIME.**

**OPT-OUT FORMS SENT BY FACSIMILE OR ANY ELECTRONIC MEANS OTHER THAN BY USING THE VOTING AND CLAIMS AGENT'S "E-BALLOT" PORTAL IN ACCORDANCE WITH THE OPT-OUT FORM INSTRUCTIONS WILL <u>NOT</u> BE ACCEPTED.**

---

| **Class 8 Existing Equity Interests and Class 9 Subordinated Claims** |
| --- |

### INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM

1.  Capitalized terms used in the Opt-Out Form or in these instructions (the "***Opt-Out Form Instructions***") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.  If you have questions regarding your Opt-Out Form or these Opt-Out Form Instructions, please contact the Claims and Noticing Agent by (a) calling 877-525-5725 (Toll Free U.S.); +1 360-803-4441 (International); or (b) emailing tabulation@epiqglobal.com with reference to "2U" in the subject line.

2.  To ensure that your Opt-Out Form is counted, you ***must either***: (a) complete and submit this hard copy Opt-Out Form via regular mail, overnight courier, or hand delivery or (b) vote through the Debtors' "E-Ballot" portal accessible at https://epiqworkflow.com/cases/2UOptOut.

3.  **Use of Hard Copy Opt-Out Form**. To ensure that your Opt-Out Form is counted, you must complete the Opt-Out Form and take the following steps:  (a) clearly indicate your decision to "opt out" of the Third-Party Release set forth in the Plan in Item 1; (b) make sure that the information required by Item 2 has been correctly inserted; and (c) sign, date, and return by regular mail, overnight courier, or hand delivery an original of your Opt-Out Form to the address set forth above.

4.  **Use of "E-Ballot" Portal**. To ensure that your electronic Opt-Out Form is counted, please follow the instructions on the "E-Ballot" portal of the Debtors' case administration website at https://epiqworkflow.com/cases/2UOptOut.

5.  Submitting an Opt-Out Form using the Claims and Noticing Agent's "E-Ballot" portal is the only manner in which Opt-Out Forms will be accepted via electronic means.  **Opt-Out Forms will not be accepted if they are sent by electronic means other than by using the "E-Ballot" portal.**

6.  If an Opt-Out Form is received after the Opt-Out Deadline, it will not be effective, unless the Debtors have granted an extension of the Opt-Out Deadline in writing with respect to such Opt-Out Form.  Additionally**,** the following Opt-Out Forms will **NOT** be counted:

    ➤ any Opt-Out Form that is illegible or contains insufficient information to permit the identification of the Holder of the applicable Existing Equity Interest or Subordinated Claim;

    ➤ any Opt-Out Form cast by or on behalf of an Entity that is not entitled to opt-out of the Third-Party Release;

    ➤ any Opt-Out Form sent to the Debtors, the Debtors' agents/representatives (other than the Claims and Noticing Agent), any indenture trustee or the debtors' financial or legal advisors;

    ➤ any Opt-Out Form transmitted by email, facsimile, or any electronic means other than using the Claims and Noticing Agent's "E-Ballot" portal;

> ➢ any unsigned Opt-Out Form; or

> ➢ any Opt-Out Form not completed in accordance with the procedures described herein and in the Disclosure.

7.  The method of delivery of Opt-Out Forms to the Claims and Noticing Agent is at the election and risk of each Holder of the Existing Equity Interest or Unsecured Claim. Except as otherwise provided herein, such delivery will be deemed made to the Claims and Noticing Agent only when the Claims and Noticing Agent **actually** **receives** the originally executed Opt-Out Form.

8.  If multiple Opt-Out Forms are received from the same Holder prior to the Opt-Out Deadline, the last Opt-Out Form timely received will supersede and revoke any earlier received Opt-Out Forms.

9.  The Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt out of the Third-Party Release. Accordingly, at this time, Holders of Existing Equity Interests or Unsecured Claims should not surrender certificates or instruments representing or evidencing their Existing Equity Interests or Unsecured Claims, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with an Opt-Out Form.

10. This Opt-Out Form does not constitute, and shall not be deemed to be, (a) a proof of Claim or (b) an assertion or admission of a Claim.

11. Please be sure to sign and date your Form. If you are signing an Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Opt-Out Form.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-OUT FORM OR THESE INSTRUCTIONS, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT: 877-525-5725 (TOLL FREE U.S.); +1 360-803-4441 (INTERNATIONAL).**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT ACTUALLY RECEIVE THIS OPT-OUT FORM ON OR BEFORE THE OPT-OUT DEADLINE, WHICH IS 5:00 P.M. PREVAILING EASTERN TIME ON AUGUST 21, 2024 THEN YOUR OPT-OUT TRANSMITTED HEREBY WILL NOT BE COUNTED.**

---

NO PERSON HAS BEEN AUTHORIZED BY THE DEBTORS TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, ON BEHALF OF THE DEBTORS, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

**PLEASE BE ADVISED THAT UNLESS YOU AFFIRMATIVELY OPT OUT OF THE THIRD-PARTY RELEASE BY (A) SUBMITTING THIS OPT-OUT FORM OR**

**(B) FILING AN OBJECTION TO THE PLAN BEFORE THE OBJECTION DEADLINE, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE CONTAINED IN <u>ARTICLE IX</u> OF THE PLAN.  THE FULL TEXT OF THE RELEASE PROVISIONS CONTAINED IN THE PLAN ARE PROVIDED IN <u>ITEM 2</u> OF THIS OPT-OUT FORM.**

# <u>EXHIBIT 7</u>

**Equity Rights Offering Documents**

## 2U, INC. (THE "COMPANY")
## EQUITY RIGHTS OFFERING PROCEDURES[1]

- **You may participate in this Equity Rights Offering (as defined below) only if you hold at least $1,000 in principal amount of Convertible Notes as of the Equity Rights Offering Termination Time (as defined below)**.

- **Each holder of Convertible Notes (the "Convertible Noteholders") are _not_ required to exercise any of their Subscription Rights, but they may if they wish to do so and they follow the required procedures.**

- **If you are a Convertible Noteholder and you exercise your Subscription Rights, you will have to PAY the Purchase Price (as defined below) for such exercise, as described further below.**

- **If the Equity Rights Offering is consummated, Convertible Noteholders who have timely, duly and validly exercised their applicable Subscription Rights, including payments therefor, will receive the corresponding number of Equity Rights Offering Shares (as defined below) that were purchased.**

- **Notwithstanding whether Convertible Noteholders have exercised any of their Subscription Rights, consummation of the Equity Rights Offering is subject to, among other things, the consent of the Required Consenting Noteholders and the confirmation of the Plan (as defined below).**

- **Additional information is provided in this document and in the Subscription Form enclosed herewith.**

**The Subscription Rights and the Equity Rights Offering Shares (other than the Equity Rights Offering Shares issued to the Equity Rights Offering Backstop Parties) are being distributed and issued by the Company without registration under the Securities Act of 1933, as amended (the "Securities Act"), as a result of Section 1145 of the Bankruptcy Code to the maximum extent available by law or, if Section 1145 is not available, then otherwise pursuant to another exemption from registration under the Securities Act and any other applicable securities laws. The Equity Rights Offering Shares issued to the Equity Rights Offering Backstop Parties are being distributed and issued by the Company without registration pursuant to Section 4(a)(2) of the Securities Act and/or the safe harbor of Regulation D promulgated thereunder or such other exemption as may be available from any applicable registration requirements. None of the Subscription Rights or the Equity Rights Offering Shares have been, nor is it anticipated that they will be, registered**

---

[1] Capitalized terms used and not defined herein shall have the meaning assigned to them in the *Joint Prepackaged Plan of Reorganization of 2U, Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, the "**Plan**"). In the event of any conflict, inconsistency or discrepancy between statements contained herein and any statements in the Plan, the Plan will govern and control for all purposes.

under the Securities Act or any state or local law requiring registration for offer and sale of a security.

The Subscription Rights are not detachable or transferable. Any purported transfer shall be void and without effect, and neither the transferor nor the purported transferee will receive any Equity Rights Offering Shares otherwise purchasable on account of such transferred Subscription Rights.

Only Convertible Noteholders (including the Equity Rights Offering Backstop Parties) that hold Convertible Notes as of the Equity Rights Offering Termination Time are permitted to participate in this Equity Rights Offering.

Each Equity Rights Offering Share issued upon exercise of a Subscription Right (other than the Equity Rights Offering Shares issued to the Equity Rights Offering Backstop Parties) may, unless issued to an entity that is an "underwriter" as that term is defined for purposes of Section 1145 of the Bankruptcy Code, be resold in reliance on Section 1145 of the Bankruptcy Code and pursuant to Section 4(a)(1) of the Securities Act and shall not be restricted securities under the Securities Act.

Equity Rights Offering Shares issued to the Equity Rights Offering Backstop Parties in reliance upon the exemption provided by Section 4(a)(2) of the Securities Act and/or Regulation D promulgated thereunder shall be imprinted or otherwise associated with a legend in substantially the following form:

"THE SECURITIES REPRESENTED HEREBY WERE ORIGINALLY ISSUED ON [ISSUANCE DATE], HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR ANY APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN AVAILABLE EXEMPTION FROM REGISTRATION THEREUNDER."

The Disclosure Statement (as defined below) has previously been distributed in connection with the Debtors' solicitation of votes to accept or reject the Plan and that document sets forth important information, including risk factors, that should be carefully read and considered by each Convertible Noteholder prior to making a decision to participate in the Equity Rights Offering. Epiq Corporate Restructuring, LLC is the subscription agent for the Equity Rights Offering (the "Subscription Agent"). You may request copies of the Disclosure Statement and Plan by (i) calling the Subscription Agent at 877-525-5725 (Toll Free U.S.) or +1 360-803-4441 (International) or (ii) emailing tabulation@epiqglobal.com (with reference to "2U Disclosure Statement" in the subject line). You may also obtain copies of the Disclosure Statement, the Plan, and any pleadings filed in these chapter 11 cases at no charge at https://dm.epiq11.com/2U. The Equity Rights Offering is being conducted by the Company in good faith and in compliance with the Bankruptcy Code. In accordance with Section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the

2

**Bankruptcy Code, in the offer, issuance, sale, or purchase of a security offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.**

Convertible Noteholders should note the following times relating to the Equity Rights Offering:

| Date | Calendar Date | Event / Notes |
|------|---------------|---------------|
| Subscription Commencement Date | [ ● ], 2024 | Commencement of the Equity Rights Offering and the first date on which Convertible Noteholders are eligible to exercise Subscription Rights. |
| Equity Rights Offering Termination Time | 5:00 p.m. prevailing Eastern Time on [ ● ], 2024 | The deadline for Convertible Noteholders (including Equity Rights Offering Backstop Parties) to submit their Convertible Notes via ATOP in order to exercise Subscription Rights.[2] |
| Registration Deadline | By one Business Day after the Equity Rights Offering Termination Time | The deadline for Convertible Noteholders (including Equity Rights Offering Backstop Parties) to submit registration details and IRS Forms via the Registration Portal. |
| Non-Backstop Funding Deadline | By one Business Day after the Equity Rights Offering Termination Time | The deadline for Convertible Noteholders (other than Equity Rights Offering Backstop Parties) to deliver the payment of the aggregate Purchase Price. |
| Backstop Funding Deadline | 5:00 p.m. prevailing Eastern Time on [ ● ], 2024 | The deadline for Equity Rights Offering Backstop Parties to deliver their aggregate Purchase Price pursuant to the Equity Rights Offering Backstop Commitment Letter. |
| Settlement Date | Effective Date of Plan | The date by which the Equity Rights Offering is settled. |
| * The Equity Rights Offering Termination Time and any applicable funding deadline may be extended by the Company, in its sole distraction, with the prior written approval of the Required Consenting Noteholders, or as required by law. | | |

To Convertible Noteholders:

On July [ ● ], 2024, the Debtors filed the Plan with the United States Bankruptcy Court for the Southern District of New York, and the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of 2U, Inc. and its Debtor Affiliates under Chapter 11 of the Bankruptcy*

---

[2] Use of the ATOP system is subject to the DTC's agreement. If the ATOP system is not used, a Nominee (as defined below) will be required to arrange for the DWAC withdrawal of the corresponding Convertible Note upon instruction by the Subscription Agent.

*Code* (as may be amended, supplemented, or otherwise modified from time to time in accordance with its terms, the "**Disclosure Statement**").

Subject to the terms and conditions set forth in the Plan and these Equity Rights Offering Procedures, each Convertible Noteholder as of the Equity Rights Offering Termination Time is entitled to subscribe for its *pro rata* share of an aggregate amount of not less than $46.5 million of New Common Interests to be issued as of the Effective Date at the Purchase Price (defined below) (the "**Equity Rights Offering**" and the New Common Interests issued pursuant to the Equity Rights Offering, the "**Equity Rights Offering Shares**"). Convertible Noteholders who timely and validly elect to participate in the Equity Rights Offering by electing to exercise their Subscription Rights for their corresponding share of the Equity Rights Offering Shares shall purchase such shares at a price per share of $7.00 (the "**Purchase Price**"), which represents a 30% discount to the Stipulated Equity Value.

No Convertible Noteholder shall be entitled to participate in the Equity Rights Offering unless the aggregate Purchase Price for the Equity Rights Offering Shares it subscribes for is received by the Subscription Agent (i) in the case of a Convertible Noteholder that is not an Equity Rights Offering Backstop Party, by the Non-Backstop Funding Deadline, and (ii) in the case of the Equity Rights Offering Backstop Parties, by the Backstop Funding Deadline. Each Convertible Noteholder must deliver the payment of the aggregate Purchase Price by the relevant deadline. Any Convertible Noteholder that exercises its Subscription Rights must enter into a joinder to the Restructuring Support Agreement (the "**Joinder**") pursuant to which, among other things, such Convertible Noteholders must vote to accept the Plan (if such Convertible Notes were held as of the Voting Record Date) and must neither object to the confirmation of the Plan nor opt out of the releases contained therein.

No interest is payable on any advanced funding of the Purchase Price. If the Equity Rights Offering is terminated for any reason, then the applicable Purchase Price previously received by the Subscription Agent will be returned promptly to the Convertible Noteholders as provided in <u>Section 6</u> hereof. No interest will be paid on any returned Purchase Price.

**The rights and obligations of the Equity Rights Offering Backstop Parties in the Equity Rights Offering shall be governed by the Equity Rights Offering Backstop Commitment Letter, including to the extent the rights or obligations set forth therein differ from the rights and obligations set forth in these Equity Rights Offering Procedures.**

**To participate in the Equity Rights Offering, a Convertible Noteholder must complete all of the steps outlined below. If a Convertible Noteholder does not complete all of the steps outlined below by the applicable deadline, such Convertible Noteholder shall be deemed to have forever and irrevocably relinquished and waived its right to participate in the Equity Rights Offering**.

1.    **Equity Rights Offering**

Convertible Noteholders as of the Equity Rights Offering Termination Time have the right, but not the obligation, to participate in the Equity Rights Offering.

During the period beginning on the Subscription Commencement Date and ending on the Equity Rights Offering Termination Time (the "**Rights Exercise Period**"), Convertible Noteholders are eligible to subscribe for up to their *pro rata* portion of the Equity Rights Offering Shares.

Subject to the terms and conditions set forth in the Plan, these Equity Rights Offering Procedures, and the Subscription Form, each Convertible Noteholder may timely and validly elect to participate in the Equity Rights Offering and to subscribe for up to its *pro rata* share of the Equity Rights Offering Shares. Convertible Noteholders who timely and validly elect to participate in the Equity Rights Offering by electing to exercise their Subscription Rights for their corresponding Equity Rights Offering Shares shall pay the aggregate Purchase Price for such shares. **For the avoidance of doubt, holders should use the principal amount of their Convertible Notes when calculating their allotted number of Equity Rights Offering Shares on their Subscription Form.**

**To the extent the aggregate amount subscribed for by the Convertible Noteholders that are not Equity Rights Offering Backstop Parties through the Equity Rights Offering is less than the Equity Rights Offering Backstop Commitment, the Equity Rights Offering Backstop Parties have agreed to purchase any unsubscribed Equity Rights Offering Shares up to the Equity Rights Offering Backstop Commitment amount, as set forth in the Equity Rights Offering Backstop Commitment Letter.**

The Subscription Rights and the corresponding Equity Rights Offering Shares issued in the Equity Rights Offering (other than the Equity Rights Offering Shares issued to the Equity Rights Offering Backstop Parties) will be issued in reliance on Section 1145 of the Bankruptcy Code and, unless such Convertible Noteholder is an "underwriter," as that term is defined for purposes of Section 1145 of the Bankruptcy Code, may be resold in reliance on Section 1145 of the Bankruptcy Code and pursuant to Section 4(a)(1) of the Securities Act and shall not be restricted securities under the Securities Act.

The Equity Rights Offering Shares issued to the Equity Rights Offering Backstop Parties are being distributed and issued by the Company without registration pursuant to Section 4(a)(2) under the Securities Act and/or Regulation D promulgated thereunder. Any Convertible Noteholder who receives such Equity Rights Offering Shares pursuant to Section 4(a)(2) of the Securities Act shall be subject to restriction under the Securities Act on its ability to resell those securities.

Resale restrictions are discussed in more detail in Article IX of the Disclosure Statement, entitled "EXEMPTIONS FROM SECURITIES ACT REGISTRATION."

**SUBJECT TO THE TERMS AND CONDITIONS OF THESE EQUITY RIGHTS OFFERING PROCEDURES, AND THE EQUITY RIGHTS OFFERING BACKSTOP COMMITMENT LETTER IN THE CASE OF THE EQUITY RIGHTS OFFERING BACKSTOP PARTIES, ALL SUBSCRIPTIONS SET FORTH IN THE SUBSCRIPTION FORM ARE IRREVOCABLE**.

2.    **Rights Exercise Period**

6

The Equity Rights Offering shall commence, and the Subscription Rights will be deemed to be delivered, on the Subscription Commencement Date and shall expire at the Equity Rights Offering Termination Time. Each Convertible Noteholder intending to purchase Equity Rights Offering Shares in the Equity Rights Offering must (a) affirmatively elect to exercise its Subscription Rights in the manner set forth in the applicable Subscription Form by the Equity Rights Offering Termination Time and (b) pay the applicable Purchase Price, by, in the case of this clause (b), (i) in the case of a Convertible Noteholder that is not an Equity Rights Offering Backstop Party, the Non-Backstop Funding Deadline, or (ii) in the case of the Equity Rights Offering Backstop Parties, the Backstop Funding Deadline.

Any exercise of the Subscription Rights to purchase the Equity Rights Offering Shares by a Convertible Noteholder after the Equity Rights Offering Termination Time or payment after the applicable funding deadline will not be allowed and any purported exercise or payment received by the Subscription Agent after such applicable deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored.

The Equity Rights Offering Termination Time and any applicable funding deadline may be extended by the Company with the prior written approval of the Required Consenting Noteholders, or as required by law.

### 3.   Delivery of Subscription Documents

In order to facilitate the exercise of the Subscription Rights, beginning on the Subscription Commencement Date, the Subscription Form and these Equity Rights Offering Procedures will be sent to each eligible Convertible Noteholder at that time, together with appropriate instructions for the proper completion, due execution and timely delivery of the required steps and the payment of the applicable aggregate Purchase Price for its Equity Rights Offering Shares.

Copies of the Subscription Form and these Equity Rights Offering Procedures may also be obtained by contacting the Subscription Agent or visiting the Debtors' restructuring website at https://dm.epiq11.com/2U.

### 4.   Exercise of Subscription Rights

For any Convertible Noteholder holding through its broker, bank, commercial bank, transfer agent, trust company, dealer, or other agent or nominee, as applicable (each a, "**Nominee**"): In order to exercise any Subscription Rights, such Convertible Noteholder's Nominee must submit its Convertible Notes into the ATOP system to the account established by the Subscription Agent with DTC.

   (a)   In order to validly exercise its Subscription Rights, each Convertible Noteholder must:

      i.   have instructed its Nominee to electronically deliver the Convertible Notes through DTC's ATOP, such that the Nominee's delivery of the Convertible Notes through DTC's ATOP is completed prior to the Equity Rights Offering Termination Time;

    ii.    by the Registration Deadline, provide registration details for the Equity Rights Offering Shares via the Subscription Agent's Registration Portal (https://epiqworkflow.com/cases/2URightsOffer) and an IRS Form W-9 or appropriate IRS Form W-8, as applicable and for Convertible Noteholders who are not Equity Rights Offering Backstop Parties, provide an executed signature page to the Joinder; and

    iii.    pay the applicable Purchase Price in accordance with the following:

        a.    if the Convertible Noteholder is not an Equity Rights Offering Backstop Party, by the Non-Backstop Funding Deadline, pay, or arrange for the payment by its Nominee of, the applicable Purchase Price to the Subscription Agent by wire transfer **ONLY** of immediately available funds in accordance with the instructions included in the Subscription Form; and

        b.    if the Convertible Noteholder is an Equity Rights Offering Backstop Party, no later than the Backstop Funding Deadline, pay, or arrange for the payment by its Nominee of, the applicable Purchase Price to the Subscription Agent by wire transfer **ONLY** of immediately available funds in accordance with the instructions included in the Subscription Form.

(b)    With respect to <u>Section 4(a)(ii)</u> above, each subscribing Convertible Noteholder may coordinate with its Nominee(s) to deliver the payment of the applicable Purchase Price payable for the Equity Rights Offering Shares elected to be purchased by such Convertible Noteholder, by the applicable deadline.

(c)    In the event that the funds received by the Subscription Agent from any Convertible Noteholder do not correspond to the Purchase Price payable for the Equity Rights Offering Shares elected to be purchased by such Convertible Noteholder, the number of the Equity Rights Offering Shares deemed to be purchased by such Convertible Noteholder will be the lesser of (1) the number of the Equity Rights Offering Shares elected to be purchased by such Convertible Noteholder as evidenced by the relevant DTC ATOP submission(s) and (2) a number of the Equity Rights Offering Shares determined by dividing the amount of the funds received by the Purchase Price, in each case up to such Convertible Noteholder's *pro rata* portion of Equity Rights Offering Shares. In the event any excess funds remain following the adjustment described in the foregoing sentence, such amounts will be returned, without interest, to the applicable Convertible Noteholder as soon as reasonably practicable.

(d)    The cash paid to the Subscription Agent in accordance with these Equity Rights Offering Procedures will be deposited and held by the Subscription Agent in a segregated account until released to the Debtors in connection with the settlement of the Equity Rights Offering on the Effective Date or in accordance with the Plan.

The Subscription Agent may not use such cash for any other purpose prior to the Effective Date and may not encumber or permit such cash to be encumbered with any lien or similar encumbrance. The cash held by the Subscription Agent hereunder shall not be deemed part of the Debtors' bankruptcy estates.

(e)     Each Convertible Noteholder that participates in the Equity Rights Offering is deemed to have made the following representations and acknowledgments:

i.      Each Convertible Noteholder recognizes and understands that the Subscription Rights are not transferrable and that the benefits of the Subscription Rights are not separable from the claim or securities with respect to which the Subscription Rights have been granted.

ii.     Each Convertible Noteholder represents and warrants that it will not accept a distribution of Equity Rights Offering Shares if at such time it does not hold all of the Convertible Notes associated with its Subscription Rights and, by accepting a distribution of Equity Rights Offering Shares, such Convertible Noteholder will be deemed to be the owner thereof.

iii.    Each Convertible Noteholder represents and warrants that it is the beneficial owner of, or the authorized signatory of such beneficial owner of, the Convertible Notes as of the date such Convertible Noteholder exercises its Subscription Rights.

## 5.   Transfer Restriction

(a)     Once a Convertible Noteholder has tendered its Convertible Note(s) through DTC's ATOP, such Convertible Note(s) shall be frozen from trading unless and until the Equity Rights Offering is terminated.

(b)     The Subscription Rights are not detachable or transferable. Any purported transfer of the Subscription Rights shall be void and without effect, and the purported transferee will not receive any Equity Rights Offering Shares otherwise purchasable on account of such purported transfer of Subscription Rights.

(c)     Once a Convertible Noteholder has properly exercised its Subscription Rights, subject to the terms and conditions contained in these Equity Rights Offering Procedures, and the Equity Rights Offering Backstop Commitment Letter in the case of the Equity Rights Offering Backstop Parties, such exercise will be irrevocable.

## 6.   Termination/Return of Payment

Unless the Effective Date has occurred, the Equity Rights Offering will be deemed automatically terminated without any action of any party upon the earlier of (a) termination of the Restructuring Support Agreement in accordance with its terms or (b) the Debtors revoking or withdrawing the Plan. In the event the Equity Rights Offering is terminated, any payments received

pursuant to these Equity Rights Offering Procedures will be returned, without interest, to the applicable Convertible Noteholder as soon as reasonably practicable, which is expected to be no later than the later of the date that is five Business Days after the date on which the Equity Rights Offering is terminated or the date the Subscription Agent receives the applicable refund information.

**7.    Settlement of the Equity Rights Offering and Distribution of the Equity Rights Offering Shares**

The settlement of the Equity Rights Offering is conditioned on confirmation of the Plan by the Bankruptcy Court, compliance by the Debtors with these Equity Rights Offering Procedures, the consent of the Required Consenting Noteholders and the simultaneous occurrence of the Effective Date.

**8.    Fractional Shares**

No fractional Equity Rights Offering Shares will be issued in the Equity Rights Offering. All share allocations (including each Convertible Noteholder's Equity Rights Offering Shares) will be calculated and rounded down to the nearest whole share, at the beneficial holder level. The total amount of Equity Rights Offering Shares that may be purchased pursuant to the Equity Rights Offering shall be adjusted as necessary to account for the rounding described in this <u>Section 8</u>. No compensation shall be paid, whether in cash or otherwise, in respect of any rounded-down amounts.

**9.    Validity of Exercise of Subscription Rights**

All questions concerning the timeliness, viability, form and eligibility of any exercise of Subscription Rights will be determined in good faith by the Company, and, if necessary, subject to a final and binding determination by the Bankruptcy Court. The Company may waive or reject any defect or irregularity in, or permit such defect or irregularity to be corrected within such time as they may determine in good faith, the purported exercise of any Subscription Rights. Subscriptions will be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Company determines in good faith. In addition, the Subscription Agent shall have no obligation to notify parties of or cure any defects to the forms returned in exercising the Subscription Rights.

*Before exercising any Subscription Rights, Convertible Noteholders should read the Disclosure Statement and the Plan for information relating to the Debtors and the risk factors to be considered.*

All calculations shall be made in good faith by the Debtors and in accordance with any Allowed Unsecured Notes Claim amounts included in the Plan, and any disputes regarding such calculations shall be subject to a final and binding determination by the Bankruptcy Court.

### 10.   Modification of Procedures

With the prior written consent of the Required Consenting Noteholders, the Debtors reserve the right to modify these Equity Rights Offering Procedures, or adopt additional procedures consistent with these Equity Rights Offering Procedures to effectuate the Equity Rights Offering and to issue the Equity Rights Offering Shares, *provided, however*, to the extent that any modification to these Equity Rights Offering Procedures or adoption of additional procedures is made after the Subscription Commencement Date which directly, adversely, and materially impacts the Convertible Noteholders, the Debtors shall provide prompt written notice by posting a notice with respect to such material modification or adoption of additional procedures on the Debtors' case website at https://dm.epiq11.com/2U. In so doing, and with the prior written consent of the Required Consenting Noteholders, the Debtors may execute and enter into agreements and take further action that the Debtors determine in good faith is necessary and appropriate to effectuate and implement the Equity Rights Offering and the issuance of the Equity Rights Offering Shares. Nothing in this paragraph shall be construed so as to permit the Debtors to modify the terms of the Subscription Form without the reasonable consent of the Convertible Noteholder subject thereto. The Debtors are not obligated to deliver any notice to the Convertible Noteholders in connection with any reduction in the size of the Equity Rights Offering, other than Equity Rights Offering Backstop Parties.

### 11.   Inquiries and Transmittal of Documents; Subscription Agent

The Rights Offering Instructions for the Convertible Noteholders attached hereto should be carefully read and strictly followed by the Convertible Noteholders.

Questions relating to the Equity Rights Offering should be directed to the Subscription Agent via email to: tabulation@epiqglobal.com (please reference "2U Subscription" in the subject line) or at the following phone number: +1-646-362-6336. Please note that the Subscription Agent is only able to respond to procedural questions regarding the Equity Rights Offering, and cannot provide any information beyond that included in these Equity Rights Offering Procedures and the Subscription Form. A Convertible Noteholder must follow the directions included herein with respect to providing instructions in connection with the Equity Rights Offering.

The risk of non-delivery of any instructions, documents, and payments to the Subscription Agent is on the Convertible Noteholder electing to exercise its Subscription Rights and not the Debtors or the Subscription Agent.

### 12.   Failure to Exercise Subscription Rights

Subscription Rights that are not exercised in accordance with these Equity Rights Offering Procedures by the Equity Rights Offering Termination Time will be relinquished on the Equity Rights Offering Termination Time, and none of the Debtors, the Reorganized Debtors or any of their respective employees, Affiliates, or professionals shall have any liability for any failure to

exercise Subscription Rights. Any attempt to exercise Subscription Rights after the Equity Rights Offering Termination Time shall be null and void and the Debtors shall not be obligated to honor any such purported exercise received by the Subscription Agent after the Equity Rights Offering Termination Time regardless of when the documents relating thereto were sent. In all cases, you should allow sufficient time to ensure timely delivery of your Convertible Notes by ATOP by the Equity Rights Offering Termination Time, and you must also provide the relevant registration details and the applicable IRS tax form via the Registration Portal.

**2U, INC.**
**EQUITY RIGHTS OFFERING INSTRUCTIONS FOR CONVERTIBLE**
**NOTEHOLDERS**

**Terms used and not defined herein shall have the meaning assigned to them in the Plan.**

**To elect to participate in the Equity Rights Offering, you must follow the instructions set out below:**

- **<u>Review</u>** the worksheet in Item 1 of your Subscription Form, which calculates the maximum number of Equity Rights Offering Shares available for you to purchase. Such total amount should be automatically rounded down to the nearest whole share.

- **<u>Review</u>** Item 2 of your Subscription Form to determine the number of Equity Rights Offering Shares you elect to purchase.

- **<u>Review</u>** Item 3 of your Subscription Form to determine the aggregate Purchase Price for such Equity Rights Offering Shares you have elected to purchase.

- **<u>Review</u>** the payment instructions in Item 4 for such Equity Rights Offering Shares you have elected to purchase.

- **<u>Review</u>** the certification in Item 5 of your Subscription Form. Participation in the Equity Rights Offering shall indicate your acceptance and approval of the terms and conditions set forth in these Equity Rights Offering Procedures.

- **<u>Provide your instructions to your Nominee</u>** to submit the applicable portion of your Convertible Notes via ATOP prior to the Equity Rights Offering Termination Time.

- **<u>Submit required information on the Registration Portal</u>** for the registration of your Equity Rights Offering Shares and provide the applicable IRS Form by the Registration Deadline. To access the Registration Portal, visit https://epiqworkflow.com/cases/2URightsOffer and follow the instructions to submit the needed details.

- **<u>Arrange for full payment</u>** by wire transfer of immediately available funds of the aggregate Purchase Price, calculated in accordance with Item 3 of your Subscription Form by the Non-Backstop Funding Deadline (in the case of Convertible Noteholders that are not Equity Rights Offering Backstop Parties), or the Backstop Funding Deadline (in the case of Convertible Noteholders that are Equity Rights Offering Backstop Parties). You may wish to coordinate with your Nominee(s) to arrange for payment of the Purchase Price to the Subscription Agent by the Non-Backstop Funding Deadline or the Backstop Funding Deadline, as applicable.

- Timely submission of (i) your Convertible Notes via ATOP and (ii) the required information via the Registration Portal is the only valid method to participate in the Equity Rights Offering.

13

**The Equity Rights Offering Termination Time is 5:00 p.m. prevailing Eastern Time on [ ● ], 2024.**

**The Registration Deadline and the Non-Backstop Funding Deadline are one Business Day after the Equity Rights Offering Termination Time.**

**2U, INC. (THE "COMPANY")**
**EQUITY RIGHTS OFFERING SUBSCRIPTION FORM**

**FOR USE BY CONVERTIBLE NOTEHOLDERS**

**IN CONNECTION WITH DEBTORS'**
**DISCLOSURE STATEMENT DATED JULY [ ● ], 2024**

---

**EQUITY RIGHTS OFFERING TERMINATION TIME**

The Equity Rights Offering Termination Time is 5:00 p.m. prevailing Eastern Time on [ ● ], 2024 (the "Equity Rights Offering Termination Time"). Capitalized terms used but not defined herein shall have the meaning assigned to them in the Equity Rights Offering Procedures enclosed herewith (the "Equity Rights Offering Procedures").

Please note that (i) your Convertible Notes must be delivered via DTC's ATOP platform prior to the Equity Rights Offering Termination Time, (ii) you must provide the registration details and other required information (listed below) by one business day after the Equity Rights Offering Termination Time (the "Registration Deadline") and (iii) the payment of the aggregate Purchase Price must be received by the Subscription Agent no later than either (a) in the case of Convertible Noteholders that are not Equity Rights Offering Backstop Parties, one business day after the Equity Rights Offering Termination Time (the "Non-Backstop Funding Deadline") or (b) in the case of Convertible Noteholders that are Equity Rights Offering Backstop Parties, no later than 5:00 p.m. prevailing Eastern Time on [ ● ], 2024 (the "Backstop Funding Deadline"). If you do not comply with all of the Subscription Steps (as defined below) by the applicable deadlines, you shall be deemed to have forever and irrevocably relinquished and waived your right to participate in the Equity Rights Offering.

The Subscription Rights and the Equity Rights Offering Shares (except for the Equity Rights Offering Shares issued to the Equity Rights Offering Backstop Parties) are being distributed and issued by the Company without registration under the Securities Act of 1933, as amended (the "Securities Act"), as a result of Section 1145 of the Bankruptcy Code to the maximum extent available by law or, if Section 1145 is not available, then otherwise pursuant to another exemption from registration under the Securities Act and any other applicable securities laws. The Equity Rights Offering Shares issued to the Equity Rights Offering Backstop Parties are being distributed and issued by the Company without registration pursuant to Section 4(a)(2) of the Securities Act and/or the safe harbor of Regulation D promulgated thereunder, or such other exemption as may be available from any applicable registration requirements.

None of the Subscription Rights or Equity Rights Offering Shares have been, nor is it anticipated that they will be, registered under the Securities Act or any state or local law requiring registration for the offer or sale of a security.

Please consult the Plan, the Disclosure Statement and the Equity Rights Offering Procedures (including the Equity Rights Offering Instructions for Convertible Noteholders attached thereto) for additional information with respect to this Equity Rights Offering Subscription Form.

If you have any questions, please contact the Solicitation Agent via email to tabulation@epiqglobal.com (with reference to "2U Subscription" in the subject line), or at the following phone number: +1-646-362-6336.

## Subscription Steps

In order to exercise the Subscription Rights and subscribe for the Equity Rights Offering Shares, you must follow the subscription steps listed below (the "Subscription Steps"):

1. **Submit your Convertible Notes via ATOP**:  You must instruct your Nominee to electronically deliver any Convertible Notes you wish your Nominee to deliver via DTC's ATOP platform by 5:00 p.m. prevailing Eastern Time on [ ● ], 2024 (the "Equity Rights Offering Termination Time"). In order to complete Step 2 below, you must retrieve the Voluntary Offer Instruction number(s) from the Nominee that tendered your Convertible Notes.

2. **Provide Registration Details and Other Required Information**:  You must provide the relevant registration details (listed on Exhibit A hereto) and the IRS Form W-9 or appropriate IRS Form W-8, as applicable (these forms may be obtained from www.irs.gov), via the registration portal (https://epiqworkflow.com/cases/2URightsOffer) (the "Registration Portal") by one Business Day after the Equity Rights Offering Termination Time (the "Registration Deadline"). Convertible Noteholders who are not Equity Rights Offering Backstop Parties must also provide a signature page (included on Exhibit B hereto) to the Joinder (as defined below).

3. **Deliver Payment of the Aggregate Purchase Price**:

   a. Convertible Noteholders who are not Equity Rights Offering Backstop Parties must deliver full payment of the aggregate Purchase Price no later than one Business Day after the Equity Rights Offering Termination Time (the "Non-Backstop Funding Deadline"), in accordance with the wire instructions provided in Item 4 below; and

   b. Convertible Noteholders who are Equity Rights Offering Backstop Parties must deliver full payment of the aggregate Purchase Price pursuant to the Equity Rights Offering Backstop Commitment Letter no later than 5:00 p.m. prevailing Eastern Time on [ ● ], 2024 (the "Backstop Funding Deadline"), in accordance with the wire instructions provided in Item 4 below.

**Equity Rights Offering Backstop Parties have been provided with a special Backstop Party Code to use when registering on the Registration Portal.**

**BY FILLING IN THE DETAILS IN ITEMS 1, 2 AND 3 YOU ARE INDICATING THAT THE CONVERTIBLE NOTEHOLDER IS THE BENEFICIAL HOLDER OF THE CONVERTIBLE NOTES.**

**Item 1. Subscription Rights Calculation Worksheet.**

In order to exercise your Subscription Rights and subscribe for the Equity Rights Offering Shares, you must have instructed your Nominee to electronically deliver your Convertible Notes into ATOP and such tender must have occurred prior to the Equity Rights Offering Termination Time. By tendering (or causing to be tendered) Convertible Notes into ATOP, the Convertible Noteholder is certifying that it holds the Convertible Notes, is eligible to participate in the Equity Rights Offering, and agrees to be bound by the terms of the Equity Rights Offering. A Convertible Noteholder must tender a minimum of $1,000 of Convertible Notes to participate in the Equity Rights Offering and integral multiples thereof. Therefore, DTC will accept minimum tenders of $1,000 of Convertible Notes only or more and in integral multiples thereof thereafter. Nominees must submit instructions on account of each of their Convertible Noteholder clients separately. "Bulk tenders" into ATOP will not be permitted. Withdrawals from ATOP will be permitted up to (but not beyond) the Equity Rights Offering Termination Time.

**IMPORTANT NOTE: IF YOU HOLD YOUR CONVERTIBLE NOTES THROUGH MORE THAN ONE NOMINEE, YOU MUST GIVE INSTRUCTIONS TO EACH APPLICABLE NOMINEE.**

Use the worksheet below to determine the number of Equity Rights Offering Shares which you may subscribe for based on the principal amount of your Convertible Notes electronically delivered through ATOP. Please include the principal (face) amount of your Convertible Notes only—do not include any accrued or unmatured interest. If you do not know the principal amount of your Convertible Notes held, please contact your Nominee immediately.

Any Convertible Noteholder that exercises its Subscription Rights must enter into a joinder to the Restructuring Support Agreement attached as Exhibit B hereto (the "Joinder") pursuant to which, among other things, such Convertible Noteholders must vote to accept the Plan (if such Convertible Notes were held as of the Voting Record Date) and must neither object to the confirmation of the Plan nor opt out of the releases contained therein.

Each Convertible Noteholder is entitled to subscribe for 12.54781 Equity Rights Offering Shares per $1,000 of principal amount of the 2025 Notes (as defined below) and 12.753 Equity Rights Offering Shares per $1,000 of principal amount of the 2030 Notes (as defined below) (collectively the "Maximum Participation Amount"). The maximum number of Equity Rights Offering Shares for which you may subscribe, based on the principal amount shown below, is calculated as follows:

| Description of Convertible Notes: | CUSIP/ISIN | Principal Amount | | Subscription Rate * | | The maximum Equity Rights Offering Shares based on your Convertible Notes claim is: |
|---|---|---|---|---|---|---|
| 1a. 2.25% Convertible Senior Notes due 2025 ("2025 Notes) | 90214JAB7/ US90214JA B70 | $_____ | x | 0.01254781 | = | 1a _____ (Round down to nearest whole share) |
| 1b. 4.50% Senior Unsecured | 90214JAD3/ | $_____ | x | 0.01275300 | = | 1b _____ |

3

| Convertible Notes due 2030 ("2030 Notes") | US90214JAD37 | | | | (Round down to nearest whole share) |
| | | | Maximum Participation Amount (Total of Items 1a and 1b) | | _____ |

*\* Rate to convert the principal amount into the number of Equity Rights Offering Shares (rates include accrued interest where applicable).*

## Item 2.  Subscription Rights Exercise and Nominee Instruction.

Use the worksheet below to list the amount of Convertible Notes you wish your Nominee to deliver electronically via ATOP. Please include the principal (face) amount of your Convertible Notes only—do not include any accrued or unmatured interest. If you do not know the principal amount of your Convertible Notes held, please contact your Nominee immediately. **The Subscription Agent will not deliver any of your Convertible Notes via ATOP. Only your Nominee can deliver your Convertible Notes via ATOP on your behalf.**

The principal amount of Convertible Notes you instruct your Nominee to deliver via ATOP and (if calculated correctly) the corresponding number of Equity Rights Offering Shares for which you wish to subscribe are shown below and should be used to calculate the aggregate Purchase Price in Item 3 below.

Please note that the amount shown in this Item 2 must be no greater than the principal amount of Convertible Notes that your Nominee electronically delivers on your behalf via ATOP. If there is a discrepancy between the amount set forth in this Item 2 below and the amount(s) delivered via ATOP, the amount delivered through ATOP shall control. Moreover, please note that if your calculations are incorrect, the amount of Convertible Notes tendered into ATOP will control regarding the amount of Equity Rights Offering Shares that you are committed to purchase pursuant to this Equity Rights Offering.

**IMPORTANT NOTE**: You must instruct your Nominee to deliver your Convertible Notes via ATOP to exercise your Subscription Rights. You may exercise any portion of your principal amount of Convertible Notes, up to the total amount you hold. If you do not wish to exercise 100% of your Subscription Rights, you should instruct your Nominee to only submit the principal amount of Convertible Notes associated with the number of Subscription Rights you wish to exercise. For example, if you only wish to exercise 50% of your Subscription Rights, you should instruct your Nominee to only deliver 50% of your principal amount of Convertible Notes via ATOP. Once your Nominee has tendered your Convertible Note(s) through ATOP, such Convertible Note(s) shall be frozen from trading unless and until the Equity Rights Offering is terminated.

| *Description of Convertible Notes:* | *CUSIP/ISIN* | *Principal Amount you request your Nominee to deliver via ATOP (may not exceed principal amount held)* | | *Subscription Rate \** | | *Number of Equity Rights Offering Shares based on your Convertible Notes you are requesting be submitted via ATOP* |
|---|---|---|---|---|---|---|
| 2a. 2025 Notes | 90214JAB7/ US90214JAB70 | $_____ | x | 0.01254781 | = | 2a _____ (Round down to nearest whole share) |

| 2b.<br>2030 Notes | 90214JAD3/<br>US90214JAD<br>37 | $ _____ | x | 0.01275300 | = | 2b _____<br>(Round down to nearest whole share) |
|---|---|---|---|---|---|---|
| | | | | 2c. Purchase Amount<br>(Total of Items 2a and 2b) | | 2c. _____<br>(Total Number of Equity Rights Offering Shares<br>from 2a and 2b above)<br>(Insert into Item 3a below) |

*\* Rate to convert the principal amount into the number of Equity Rights Offering Shares (rates include accrued interest where applicable).*

## Item 3. Calculation of Aggregate Purchase Price for Equity Rights Offering Shares

By filling in the following blanks, you are indicating that the Convertible Noteholder is interested in purchasing the number of Equity Rights Offering Shares specified in Item 2c above (which does not exceed the Maximum Participation Amount calculated in Item 1), on the terms and subject to the conditions set forth in the Equity Rights Offering Procedures.

| | *Equity Rights Offering Shares* | | *Price per share of Equity Rights Offering Shares* | | *Aggregate Purchase Price* |
|---|---|---|---|---|---|
| 3a | _____<br>Total number of shares of New Common Interests | X | **$7.00** | = | _____<br>3b. Total Amount (rounded down to nearest cent) |

**For the avoidance of doubt, the exercise of your Subscription Rights will be based solely on the principal amount of Convertible Notes tendered through ATOP and for which payment of the aggregate Purchase Price must be received.**

## Item 4. Payment Instructions

Payment of the aggregate Purchase Price calculated pursuant to Item 3b above shall be made by wire transfer ONLY of immediately available funds. Convertible Noteholders who are not Equity Rights Offering Backstop Parties must deliver full payment of the aggregate Purchase Price by the Non-Backstop Funding Deadline. Equity Rights Offering Backstop Parties must deliver full payment of the aggregate Purchase Price pursuant to the Equity Rights Offering Backstop Commitment Letter by the Backstop Funding Deadline.

Any Convertible Noteholder that is submitting payment via its Nominee must coordinate such payment with its Nominee in sufficient time to ensure such payment is provided to the Subscription Agent on or prior to the Non-Backstop Funding Deadline (in the case of Convertible Noteholders that are not Equity Rights Offering Backstop Parties), or the Backstop Funding Deadline (in the case of Convertible Noteholders that are Equity Rights Offering Backstop Parties).

Please be aware that, under Section V.U. of the Plan, a Convertible Noteholder is generally prohibited, prior to receiving its Equity Rights Offering Shares, from entering into any written or oral contract, understanding or arrangement to Transfer, as defined in the Plan, directly or indirectly, all or part of its right, title, or interests in such shares (including issuing or granting any option thereon or right or interest therein).

5

**Convertible Noteholders must comply with all the Subscription Steps.**

<u>**Wire Instructions**</u>:

| | |
|---|---|
| Account Name: | EPIQ CORPORATE RESTRUCTURING LLC AS AGT FOR 2U INC SUBSCRIPTION ACCOUNT |
| Bank Account No.: | 6323308154 |
| ABA/Routing No.: | 036076150 |
| SWIFT: | CTZIUS33 |
| Bank Name: | CITIZENS BANK, NA |
| Bank Address: | 1 CITIZENS DRIVE, RIVERSIDE RI, 02915 |
| Reference: | [Insert last four digits of the holder's taxpayer ID in the wire memo] |

**Item 5. Certification.**

The following Certifications are automatically incorporated into any ATOP instruction, regardless of how the Convertible Noteholder requested to submit its instructions to its Nominee. By electing to subscribe for the amount of Equity Rights Offering Shares, the Convertible Noteholder hereby certifies that (i) the Convertible Noteholder is the beneficial owner of the Convertible Notes set forth in Item 1 above, or the authorized signatory (the "<u>Authorized Signatory</u>") of such Convertible Noteholder acting on behalf of the Convertible Noteholder, (ii) the Convertible Noteholder has reviewed a copy of the Plan, the Disclosure Statement and the Equity Rights Offering Procedures (including the Equity Rights Offering Instructions attached thereto) and other applicable materials and (iii) the Convertible Noteholder understands that the exercise of the rights under the Equity Rights Offering is subject to all the terms and conditions set forth in the Plan and the Equity Rights Offering Procedures.

By electing to subscribe for the amount of Equity Rights Offering Shares shown in Item 2c above, the Convertible Noteholder (or the Authorized Signatory on behalf of the Convertible Noteholder) acknowledges that payment of the aggregate Purchase Price associated with such election will be made by the Non-Backstop Funding Deadline (in the case of Convertible Noteholders that are not Equity Rights Offering Backstop Parties), or the Backstop Funding Deadline (in the case of Convertible Noteholders that are Equity Rights Offering Backstop Parties).

**The Convertible Noteholder (or the Authorized Signatory on behalf of such Convertible Noteholder) acknowledges that, the Convertible Noteholder has elected to subscribe for the number of Equity Rights Offering Shares shown in Item 2c above, and will be bound to pay the aggregate Purchase Price for the Equity Rights Offering Shares and that it may be liable to the Debtors to the extent of any nonpayment.**

## **EXHIBIT A**

**Registration Details:**

Name of Eligible Convertible Noteholder:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

U.S. Federal Tax EIN/SSN (optional):＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

If Non-U.S. person, check here and attach appropriate IRS Form W-8 ☐

If U.S. person, check here and attach IRS Form W-9 ☐

Signature:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Name of Signatory: ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Title:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Type of account:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Address:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Telephone Number:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Fax:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Email:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

*Wire information in the event a refund is needed:*

Account Name:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Beneficiary Address:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Bank Account No. (For International this may be IBAN):＿＿＿＿＿＿＿＿＿＿

ABA/Routing No.:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Bank Name:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Bank Address:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Reference:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Swift Instructions (if applicable):＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

7

**EXHIBIT B**

**FORM OF JOINDER AGREEMENT FOR CONSENTING CREDITORS**

      This joinder agreement to the Restructuring Support Agreement, dated as of [_____], 2024 (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**Agreement**"), between the Debtors, and the Consenting Creditors, each as defined in the Agreement, is executed and delivered by _____ (the "**Joining Party**") as of _____, 2024.  Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Agreement.

1.    <u>Agreement to be Bound</u>.  The Joining Party hereby agrees to be bound by all of the terms of the Agreement, a copy of which is attached to this Joinder Agreement as <u>**Annex I**</u> (as the same has been or may be hereafter amended, restated or otherwise modified from time to time in accordance with the provisions thereof).

2.    <u>Effectiveness</u>.  Upon (i) delivery of a signature page for this joinder and (ii) written acknowledgement by the Debtors, the Joining Party shall hereafter be deemed to be a "Consenting Creditor" and a "Party" for all purposes under the Agreement and with respect to any and all Claims held by such Joining Party.

3.    <u>Representations and Warranties</u>.  With respect to the aggregate principal amount of Claims set forth below its name on the signature page hereto, the Joining Party hereby makes the representation and warranties of the Consenting Creditors, as set forth in <u>Article **Error! Reference source not found.**</u> of the Agreement to each other Party to the Agreement.

4.    <u>Governing Law</u>.  This joinder agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to any conflict of laws provisions which would require the application of the law of any other jurisdiction.

*[Signature Page Follows]*

8

IN WITNESS WHEREOF, the undersigned has caused this joinder to the Restructuring Support Agreement to be executed as of the date first written above.

**[JOINING PARTY]**

By:_____
Name:
Title: