**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS**
**(A) AUTHORIZING THE DEBTORS TO PAY PREPETITION TRADE CLAIMS IN**
**THE ORDINARY COURSE OF BUSINESS; AND (B) GRANTING RELATED RELIEF**

The debtors in possession (collectively, the "**Debtors**") in the above-captioned cases (the

"**Chapter 11 Cases**") hereby file this motion (this "**Motion**") and respectfully state as follows:

**RELIEF REQUESTED**

1.    By this Motion, the Debtors seek entry of interim and final orders, substantially in

the forms attached hereto as, respectively, **Exhibit A** (the "**Proposed Interim Order**") and

**Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the

"**Proposed Orders**"): (a) authorizing, but not directing, the Debtors, in their discretion and both in

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC
(N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter
(US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

the ordinary course of business and consistent with the DIP Order,[2] to pay the allowed prepetition claims (collectively, the "***Trade Claims***") of creditors that provide goods or services related to the Debtors' operations (the "***Trade Creditors***") and (b) granting related relief. The Debtors estimate the aggregate total amount of the Trade Claims is approximately $48.3 million. The Debtors further request that this Court confirm administrative priority status of all undisputed obligations of the Debtors owing to vendors and suppliers arising from the postpetition delivery of goods or provision of services ordered before the Petition Date under the Prepetition Purchase Orders (as defined below) and authorize the Debtors to pay such obligations in the ordinary course of business pursuant to the Approved Budget (as defined in the DIP Order).

2.    The Debtors further request that this Court (a) authorize all applicable banks and financial institutions (collectively, the "***Banks***") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtors in accordance with this Motion and to the extent the Debtors have sufficient funds standing to their credit with such Bank, whether such checks were presented or electronic requests were submitted before or after the Petition Date (as defined below), and (b) authorize all Banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion, without any duty of further inquiry, and without liability for following the Debtors' instructions.

---

[2]    "**DIP Order**" refers to that interim or final order, as applicable, approving the *Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to (I) Obtain Junior Lien Postpetition Financing and (II) Use Cash Collateral; (B) Granting Liens and Superpriority Claims; (C) Granting Adequate Protection to Certain Parties; and (D) Granting Related Relief* (as may be amended, restated, or otherwise modified from time to time).

## JURISDICTION AND VENUE

3.     The United States Bankruptcy Court for the Southern District of New York (this "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.     The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

5.     The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), 503(b)(9), and 1107(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), Bankruptcy Rules 6003 and 6004, and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***").

## BACKGROUND

6.     The Debtors comprise a leading online education technology company providing over eighty million people worldwide with access to high-quality education, including graduate, undergraduate, and non-degree programs.  Through a comprehensive platform, the Debtors enable non-profit universities and colleges to offer a wide range of online courses and programs.  These span diverse fields such as artificial intelligence, data science, business, healthcare, and education, with over 4,600 programs accessible on the Debtors' platform, edX.org, which provides learners

with essential information on admissions, enrollment requirements, application processes, curriculum, tuition, and completion times.  By consolidating a vast array of educational offerings on a single platform, the Debtors offer flexible and affordable pathways for achieving professional and educational goals.  Although operations are predominantly remote, the majority of the Debtors' revenue flows into New York, where the Debtors hold their primary bank accounts, and where they collaborate with prestigious institutions of higher education (many of which are located here in New York City, including New York University, Columbia University, and Fordham University), enhancing their reach and impact within the city and state.

7.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing these Chapter 11 Cases.  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested, and no committee has been appointed in these Chapter 11 Cases.

8.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Matthew Norden, Chief Legal Officer and Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions* (the "**Norden Declaration**") and the *Declaration of William Kocovski in Support of Chapter 11 Petitions and First Day Motions* (the "**Kocovski Declaration**" and, together with the Norden Declaration, the "**First Day Declarations**") filed contemporaneously herewith, which are fully incorporated herein by reference.[3]

---

[3]     Capitalized terms used, but not defined in this Motion have the meanings ascribed to them in the First Day Declarations.

9.      These Chapter 11 Cases are "prepackaged" cases commenced for the purpose of implementing an agreed restructuring of the Debtors' debt.  Prior to the Petition Date, the Debtors entered into the Restructuring Support Agreement, dated as of July 24, 2024 (as may be amended, modified or supplemented, the "***Restructuring Support Agreement***") with certain creditors including (a) an ad hoc group of certain holders (the "***Ad Hoc Noteholder Group***") of 2.25% convertible senior notes due May 1, 2025, issued under that certain Indenture, dated as of April 23, 2020 (the "***2025 Notes***") and 4.50% senior unsecured convertible notes due February 1, 2030, issued under that certain Indenture, dated as of January 11, 2023 (the "***2030 Notes***" and, together with the 2025 Notes, the "***Notes***") represented by Weil, Gotshal & Manges LLP, (b) Greenvale Capital LLP ("***Greenvale***" and, together with the Ad Hoc Noteholder Group, the "***Consenting Noteholders***") as holder of the Notes represented by Schulte Roth & Zabel LLP, and (c) an ad hoc group of certain First Lien Lenders (the "***First Lien Ad Hoc Group***" and, together with the Consenting Noteholders, the "***Consenting Stakeholders***") represented by Milbank LLP.  As of July 24, 2024, the Consenting Stakeholders held approximately 82% of the Debtors' first lien funded debt, 86.9% of the 2025 Notes, and 95.2% of the 2030 Notes.

10.     On the Petition Date, the Debtors filed a plan of reorganization reflecting the terms of the Restructuring Support Agreement (as may be amended, modified or supplemented, the "***Plan***") in addition to a disclosure statement with respect to the Plan (as may be amended, modified or supplemented, the "***Disclosure Statement***").  The Plan contemplates that all Allowed General Unsecured Claims (as defined in the Plan) will be paid in full or will otherwise be unimpaired. [4]

---

[4]    Contemporaneously with filing this Motion, the Debtors are filing a motion to seek this Court's authorization to reject certain unexpired commercial real property leases.

11.     Prior to the Petition Date, the Debtors commenced solicitation of votes on the Plan from holders of Class 3 First Lien Claims and Class 4 Unsecured Notes Claims (each as defined in the Plan), the only classes entitled to vote under the Plan.  Subject to this Court's approval, votes with respect to the Plan are due on August 21, 2024.  On the Petition Date, the Debtors filed a motion seeking, among other things, (a) conditional approval of the Disclosure Statement, and (b) to schedule a combined hearing to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan.  The Debtors seek to obtain confirmation of the Plan as quickly as this Court's schedule and requisite notice periods will permit.

### THE DEBTORS' BUSINESS MODEL AND TRADE CREDITORS

**A.      THE DEBTORS' BUSINESS MODEL**

12.     As set forth in detail in the Norden Declaration, the Debtors and their non-Debtor affiliates (together, "*2U*") comprise a global online education platform company that delivers technology and services that enable nonprofit universities and other organizations to bring their educational offerings online at scale.  The Debtors rely upon numerous Trade Creditors, who are located around the world, to provide goods and services that are critical to the maintenance of the Debtors' highly-sophisticated, global-learning platform.

13.     The Trade Creditors include (but are not limited to):

    a.  third-party providers of curriculum design and development services, such as videography, editing, and other services associated with creating digital content;

    b.  third-party advertising platforms and providers of advertising and marketing services, including search-engine optimization, search-engine marketing, social-media optimization, and other digital-marketing services;

    c.  providers of certain software services, such cybersecurity and customer relationship management systems and applications, that are critical to the Debtors' upkeep of their business infrastructure;

    d.  data centers and cloud storage facilities;

    e.   certain college, university, or other commercial or non-profit institutional partners (the "***Alternative Credential* Partners**") who create and provide educational content for use in the Debtors' Alternative Credential Programs (as defined below);[5] and

    f.   business-services vendors and certain other operational partners and providers of services (the "***Other Operational Partners***") that are necessary for the Debtors' day-to-day operations and are not addressed in other first day motions.

14.    Without the services of such Trade Creditors, the Debtors would be unable to obtain the goods and services needed to provide online educational opportunities or operate their businesses.  In addition, the nature of the Debtors' businesses requires them to rely on data centers, cloud storage facilities, software, and technology services that are often available from single (or a limited pool of) suppliers, which makes it difficult (and, in some cases, impossible) for the Debtors to replace any of these Trade Creditors in a timely manner.  Accordingly, to avoid disruption to customers and unnecessary harm to the Debtors' businesses if obligations are not paid when due or as expected, the Debtors seek authority, but not direction, to pay and honor the Trade Claims in the ordinary course of business and consistent with customary past practice.

15.    Critically, the relief requested herein is focused on the timing of payment to the Trade Creditors rather than the extent to which such payments will ultimately be made to such creditors under the Plan.  As set forth above and more fully in the Norden Declaration, prior to the Petition Date, the Debtors and the Consenting Stakeholders entered into the Restructuring Support

---

[5]   As more fully detailed in the *Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to (I) Honor Prepetition Customer Obligations and (II) Continue Customer Programs; and (B) Granting Related Relief*, filed contemporaneously herewith, the Debtors offer premium, non-degree online open courses, executive education programs and skills-based boot camps (collectively, the "***Alternative Credential Programs***").  The content for Alternative Credential Programs is developed or approved by the Alternative Credential Partners.  In consideration for the Alternative Credential Partners' provision of content or related services, the Debtors pay an agreed-upon portion of the revenue generated from the Alternative Credential Programs to the Alternative Credential Partners (the "***Alternative Credential Revenue Share***").  The Alternative Credential Revenue Share generally accrues after the date set as the last possible date a learner can withdraw from an Alternative Credential Program and receive a refund, which can be one to three weeks after the first day of the course, and is paid quarterly to the applicable Alternative Credential Partner.

Agreement, the terms of which are reflected in the Plan.  The Plan contemplates the payment in full of all General Unsecured Claims in the ordinary course.  Therefore, the requested relief would, if granted, simply allow the Debtors to pay the Trade Claims now in the ordinary course of business (and, for the avoidance of doubt, consistent with their customary past practice) instead of upon consummation of the Plan.  This relief is essential because it will minimize any disruption to the Debtors' businesses that would otherwise occur as a result of delay in payment to the Trade Creditors, and thereby allows for a smooth and expeditious reorganization in these Chapter 11 Cases.

**B.     THE DEBTORS' TRADE CLAIMS**

16.     The Debtors incur numerous fixed, liquidated, and undisputed payment obligations to the Trade Creditors in the ordinary course of business.  The Trade Claims are comprised of (a) non-priority, prepetition claims held by vendors that are critical to the Debtors' business operations ("***Critical Vendors***" and, such claims, the "***Critical Vendor Claims***") totaling approximately $30.9 million, (b) non-priority prepetition claims held by suppliers, service providers, and distributors based outside the United States ("***Foreign Vendors***" and, the claims of Foreign Vendors, the "***Foreign Vendor Claims***") totaling approximately $5.0 million, and (c) non-priority prepetition claims held by Other Operational Partners and all other trade claimants (the "***Non-Priority Trade Claims***") totaling approximately $12.4 million.

17.     The Critical Vendors provide services that are critical to the maintenance of the Debtors' complex, global-learning platform.  As described above, numerous Critical Vendors are simply impossible to replace because they are significant Alternative Credential Partners or they act as the sole provider of certain services such as data centers, cloud storage facilities, and software, advertising, and technology services.  This makes it extremely difficult (and, in some cases, impossible) for the Debtors to replace any of these Critical Vendors in a timely manner.

18.    The Foreign Vendors include, among others, foreign technology development service providers and certain foreign Alternative Credential Partners.  The Foreign Vendors are critical to the Debtors' ability to provide educational offerings across the world and navigate and operate in foreign jurisdictions.

19.    While it may be possible to replace certain of the Critical Vendors or Foreign Vendors, doing so would impose significant financial and temporal burdens on the Debtors that could delay their ability to provide their products to customers for years.  For instance, any disruption to the Alternative Credential Programs would be detrimental (perhaps even life threatening) to the Debtors' businesses.  Any pause in the supply of content that is provided by the Alternative Credential Partners could delay or completely jeopardize the Debtors' ability to offer Alternative Credential Programs, which would, in turn, force students to seek out alternative educational opportunities or abandon their educational goals on a potentially permanent basis.

20.    The Debtors also rely on the Other Operational Partners, including landlords, utility providers and providers of professional services (such as accountants and other ordinary course professionals retained in matters unrelated to these Chapter 11 Cases and that are, therefore, not separately retained by the Debtors pursuant to applications under section 327 of the Bankruptcy Code).[6]  The ordinary course payment of the Non-Priority Trade Claims is both crucial to the Debtors' ability to reorganize successfully with minimal business disruptions and consistent with the unimpaired treatment of these claims under the Plan.  Accordingly, the Debtors respectfully submit that such payment is warranted under the facts and circumstances of these Chapter 11 Cases.

---

[6]    For the avoidance of doubt, the Debtors are not requesting authority to pay the claims of any attorneys via this Motion but reserve the right to file a motion seeking entry of an order authorizing the retention and compensation of such professionals utilized in the ordinary course of business (an "*OCP Motion*").

21.     In addition, although the Debtors are not currently aware of any of the following outstanding Trade Claims, there is a possibility that they may come due in the ordinary course of business:  (a) prepetition claims entitled to statutory priority under section 503(b)(9) of the Bankruptcy Code (the "***503(b)(9) Claims***" and, the claimants asserting 503(b)(9) Claims, the "***503(b)(9) Claimants***"), and (b) prepetition claims held by common carriers, warehousemen, toll processors, mechanics, and freight forwarders, in each case that may have or may be capable of asserting liens against the Debtors' property (collectively, the "***Lienholders***" and, the claims of Lienholders, the "***Lienholder Claims***")[7] totaling approximately $20,000.  During the twelve (12) months prior to the Petition Date, the Debtors' average monthly payment to Trade Creditors was approximately $25.2 million.  The Debtors estimate that they owe a total of approximately $48.3 million on account of accrued and unpaid Trade Claims as of the Petition Date, and that approximately $34.0 million of that amount will become due within the interim period before a final hearing on this Motion (the "***Interim Period***").  The following table summarizes the types of Trade Claims held by the Trade Creditors, and provides the Debtors' estimate of the total amount of each type of Trade Claim outstanding as of the Petition Date, including estimates for the portion of such total coming due within the Interim Period:

| Category | Description of Claims | Estimated Amount Due Within Interim Period | Estimated Total Amount Outstanding as of Petition Date |
|---|---|---|---|
| Critical Vendor Claims | Claims of certain Trade Creditors that are essential to maintaining the going concern value of the Debtors' enterprise. | $23,000,000 | $30,900,000 |
| Foreign Vendor Claims | Claims held by suppliers, service providers, and distributors based outside the United States. | $3,500,000 | $5,000,000 |

---

[7]   The Debtors do not concede that any liens referred to in this Motion are valid, and the Debtors expressly reserve the right to contest the extent, validity, and perfection of any and all such liens, and to seek avoidance thereof.

| Category | Description of Claims | Estimated Amount Due Within Interim Period | Estimated Total Amount Outstanding as of Petition Date |
|---|---|---|---|
| Non-Priority Trade Claims | Claims of Other Operational Partners and all other Trade Claims incurred in the ordinary course of business. | $7,500,000 | $12,400,000 |
| **Total Trade Claims:** | | **$34,000,000** | **$48,300,000** |

22.     The Debtors are not seeking to pay these amounts immediately or in one lump sum; rather, the Debtors intend to pay these amounts as they become due and payable in the ordinary course of the Debtors' businesses and in accordance with the Approved Budget.  Concurrently with the filing of this Motion, the Debtors have filed the *Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to (I) Obtain Junior Lien Postpetition Financing and (II) Use Cash Collateral; (B) Granting Liens and Superpriority Claims; (C) Granting Adequate Protection to Certain Parties; and (D) Granting Related Relief* (the "***DIP Motion***"), which, in addition to the cash generated by the Debtors' businesses, will provide the necessary additional liquidity for the Debtors to continue operations in the ordinary course of business.  As set forth in the Approved Budget, the Debtors' proposed expenditures set forth in the Approved Budget include payment of the Trade Claims the Debtors are seeking authority to pay pursuant to this Motion.  Accordingly, the Debtors believe they will have ample liquidity to pay the Trade Claims in the ordinary course during the administration of these Chapter 11 Cases subject to the Approved Budget.

## C.    PROPOSED CONDITIONS TO PAYMENT OF TRADE CLAIMS

23.     The Debtors request authority to pay all Trade Claims on the following terms and conditions, subject to the Approved Budget:

(a)    The Debtors, in their discretion and subject to the limitations set forth below, shall determine which Trade Claims, if any, will be paid pursuant to the Proposed Orders.

      (b)     Before making a payment to a creditor under the Proposed Orders, the Debtors may, in their discretion, settle all or some of the prepetition claims of such creditor for less than their face amount without further notice or hearing.

## D.    OUTSTANDING PURCHASE ORDERS

24.    As of the Petition Date, the Debtors have certain prepetition purchase orders (the "***Prepetition Purchase Orders***") outstanding with various third party vendors and suppliers for goods or services ordered by the Debtors that have not yet been delivered or provided to the Debtors.  These vendors may be concerned that payment owed on account of such Prepetition Purchase Orders will either be delayed or never honored at all.  Accordingly, and notwithstanding the Plan's treatment of General Unsecured Claims, certain vendors may refuse to provide goods or services to the Debtors purchased pursuant to the Prepetition Purchase Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order of this Court (a) confirming that all undisputed obligations of the Debtors arising from the postpetition delivery of goods or services subject to Prepetition Purchase Orders are afforded administrative expense priority status under section 503(b) of the Bankruptcy Code and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

25.    As discussed herein and in the Kocovski Declaration, any delay in the shipment or delivery of goods or services could bring the Debtors' operations to a halt, harming the Debtors' businesses.  Although it is difficult to estimate the total amount due and owing under the Prepetition Purchase Orders for goods or services that are not scheduled to be delivered or provided until after the Petition Date, the Debtors submit that the total amount to be paid in connection therewith, if the relief requested herein is granted, is *de minimis* compared to the importance and necessity of the goods or services provided.

**BASIS FOR RELIEF**

A.    **PAYMENT OF THE TRADE CLAIMS IS WARRANTED UNDER THE BANKRUPTCY CODE**

26.    Courts in this district generally acknowledge that it is appropriate to authorize a debtor's payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business' going-concern value. *See GLM DFW, Inc. v. Windstream Holdings Inc.* (*In re Windstream Holdings Inc.*), 614 B.R. 441, 460 (S.D.N.Y. 2020) (holding that bankruptcy court properly utilized its broad "equitable power" to allow payment of certain prepetition claims that would "ensure the rehabilitation of Debtors and viability of the estate for all creditors"), *appeal dismissed*, 838 F. App'x 634 (2d. Cir. 2021); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (S.D.N.Y. 1983) (affirming bankruptcy court's order granting authority to pay prepetition claims of suppliers); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (outlining the standards and case law governing payment of prepetition claims, and stating that courts can "authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor"). In doing so, these courts acknowledge that several legal theories rooted in sections 363(b) and 105(a) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

I.    **Section 363(b)(1) of the Bankruptcy Code Supports Payment of the Trade Claims**

27.    Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b) of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175; *In re James A. Phillips, Inc.*,

29 B.R. at 397 (relying on section 363 of the Bankruptcy Code to allow contractor to pay

prepetition claims of suppliers).

28.     The relief requested herein represents a sound exercise of the Debtors' business

judgment.  Not only is the relief requested herein necessary (as explained in more detail below) in

light of the prepackaged nature of these Chapter 11 Cases — which are predicated upon general

unsecured creditors receiving recovery in full under the Plan—the relief requested herein is solely

focused on the timing of payment to such creditors rather than the extent to which such payments

will ultimately be made to such creditors under the Plan.  Indeed, the ability to pay the Debtors'

day-to-day creditors in full and consistent with customary past practice will prevent unnecessary

disruption to the Debtors' businesses and ensure a timely restructuring process, thereby preserving

value for all stakeholders.  Given that the Plan contemplates the payment in full of all general

unsecured claims in the ordinary course, the relief requested herein merely enables the Debtors to

pay the Trade Claims now as they come due instead of upon consummation of the Plan.

### II.     The Doctrine of Necessity Set Out Under Section 105(a) of the Bankruptcy Code Supports Payment of the Trade Claims

29.     Under section 105(a) of the Bankruptcy Code, this Court has the authority to

authorize the relief requested herein because such relief is necessary for the Debtors to carry out

their fiduciary duties under section 1107(a) of the Bankruptcy Code.  11 U.S.C. § 1107(a).  Section

105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.

§ 105(a).  Section 1107(a) of the Bankruptcy Code contains an implied duty of the debtor in

possession to protect and preserve the estate, including an operating business' going-concern

value, on behalf of a debtor's creditors and other parties in interest.  *See In re Sillerman*, 605 B.R.

631, 648 (Bankr.  S.D.N.Y. 2019) ("While the Bankruptcy Code permits a debtor to operate its

business and exercise control over its estate, the debtor-in-possession acts as a fiduciary of the estate and its creditors.") (citations omitted); *Taub v. Taub* (*In re Taub*), 427 B.R. 208, 224 (Bankr. E.D.N.Y. 2010), *aff'd*, No. 10-cv-5717, 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990); *see also Unofficial Comm. of Equity Holders v. McManigle* (*In re Penick Pharm., Inc.*), 227 B.R. 229, 233 (Bankr. S.D.N.Y. 1998) ("upon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee").

30.    In a long line of well-established cases, courts consistently have permitted payment of a prepetition obligation where such payment is necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport, C. & Sw. Ry. Co.*, 106 U.S. 286, 311-12 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *In re Windstream Holdings Inc.*, 614 B.R. at 457 (noting existence of "judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor") (quoting *Ionosphere Clubs*, 98 B.R. at 175); *In re Cenargo Int'l, PLC*, 294 B.R. 571, 580 (Bankr. S.D.N.Y. 2003) (conditionally granting debtor's first day motion to pay prepetition vendor obligations related to "critical . . . goods or services" under the doctrine of necessity); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp.* (*In re Chateaugay Corp.*), 80 B.R. 279, 285–86

(S.D.N.Y. 1987) (approving bankruptcy court's order authorizing payment of prepetition wages, salaries, expenses and benefits).

31.     The relief requested herein is necessary to avoid unnecessary disruption to the Debtors' businesses and to ensure a timely restructuring process.  As set forth above and in the Kocovski Declaration, if the Trade Creditors are unwilling to provide essential goods and services to the Debtors postpetition because of their outstanding prepetition claims, the Debtors' business operations would suffer dramatically.  Indeed, in that event, it would be very difficult (and, in some cases, impossible) for the Debtors to locate replacement vendors necessary to support their operations, which could, in turn, make it difficult for the Debtors to maintain business operations. Moreover, any attempt by the Debtors to address the resulting impact on operations by either re-sourcing or shifting business to alternative vendors would, even if possible, result in significant expense to the Debtors' estates and delay the Debtors' ability to provide customers access to the Debtors' educational platform, resulting in losses to the Debtors' estates to the detriment of all of the Debtors' stakeholders.

32.     Similarly, certain Trade Claims may be held by Trade Creditors who may be entitled to assert possessory, mechanics or other statutory liens (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claims on account of any unpaid obligations under certain state and federal laws.  In addition, pursuant to section 363 of the Bankruptcy Code, such Trade Creditors may be entitled to adequate protection of their claims secured by such liens.  As such, the Debtors anticipate that, absent payment of their prepetition claims, certain Trade Creditors would simply refuse to turn over goods in their possession or otherwise stop performing their obligations to the Debtors.  If the Debtors

are unable to access these goods or utilize the services provided by such Trade Creditors, their business operations and ability to meet their customers' needs could be seriously impaired.

33.     Further, certain of the Trade Creditors are Foreign Vendors that lack minimum contacts with the United States.  If the Debtors do not pay the claims of such vendors, such vendors may simply refuse to do business with the Debtors unless and until they receive payment on account of their claims.  The Foreign Vendors may also take other precipitous action against the Debtors based on the incorrect belief they are not bound by the automatic stay.  In many instances, responding to such lawsuits and/or seeking to enforce an order of this Court in a Foreign Vendor's home country would be costly to the Debtors' estates and would require a significant amount of the Debtors' key employees' and professionals' time during these Chapter 11 Cases.  And even if the automatic stay could be effectively enforced abroad (which is often a difficult, if not fruitless, exercise in a foreign jurisdiction), the automatic stay by itself may not protect assets of the Debtors' non-Debtor foreign affiliates, which could remain at risk of seizure or setoff.

34.     Accordingly, authority to pay all Trade Claims and to settle disputes related thereto will allow the Debtors to preserve the going concern value of their businesses, which inures to the benefit of all stakeholders.  As such, the relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.  Moreover, as stated above, no party in interest will be prejudiced by the relief requested herein because, under the Plan, all Trade Claims will be unimpaired and will be paid in full in the ordinary course of business.  Thus, the requested relief is amply justified by the circumstances of these Chapter 11 Cases.

B.    **ADDITIONAL BASES FOR PAYMENT OF TRADE CLAIMS**

I.    **Payment of the Prepetition Trade Claims Is a Valid Exercise of the Debtors'
Fiduciary Duties**

35.    Authority for the payment of the Trade Claims is found in sections 1107(a) and

1108 of the Bankruptcy Code.  The Debtors, operating their businesses as debtors in possession

under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy

estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies)

equity owners."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr.  N.D. Tex. 2002).  Courts have

recognized that implicit in the duties of a chapter 11 debtor in possession is the duty "to protect

and preserve the estate, including an operating business's going-concern value."  *Id*.

36.    The *CoServ* court held that there are instances in which a debtor in possession can

fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim."  *Id*.  That

court specifically held that preplan satisfaction of prepetition claims would be a valid exercise of

a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement

of the estate," and also when the payment was to "sole suppliers of a given product."  *Id*. at 497-

98.  The court provided a three-pronged test for determining whether a preplan payment on account

of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant.
> Second, unless it deals with the claimant, the debtor risks the
> probability of harm, or, alternatively, loss of economic advantage to
> the estate or the debtor's going concern value, which is
> disproportionate to the amount of the claimant's prepetition claim.
> Third, there is no practical or legal alternative by which the debtor
> can deal with the claimant other than by payment of the claim.

*Id*.

37.    Payment of the Trade Claims meets each *CoServ* element.  As described above, the

Debtors have narrowly tailored the list of Trade Creditors to include holders of Trade Claims that

satisfy the criteria described above.  Any further disruptions of the Debtors' operations that result from non-payment of such claims would cost the Debtors' estates substantial amounts in lost revenues.  The harm and economic disadvantage that would stem from the Debtors' failure to pay the Trade Claims are grossly disproportionate to the amount of the prepetition claims that would have to be paid.  In addition, the Debtors have examined other options short of paying certain Trade Claims and could not discern any practical or legal alternative other than paying such Trade Claims if significant disruption of the Debtors' business operations is to be avoided.  Therefore, the Debtors respectfully submit that they can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of the Trade Claims.

## II.    Certain Trade Claims May Be Administrative Expenses

38.    Certain Trade Claims may be entitled to the statutory priority for goods delivered to the Debtors in the ordinary course of business within twenty (20) days before the Petition Date. Section 503(b)(9) of the Bankruptcy Code provides that claims for goods delivered to the Debtors in the ordinary course of business within twenty (20) days after the Petition Date are administrative expense claims against the applicable Debtor's estate.  *See* 11 U.S.C. § 503(b)(9).  The Debtors, therefore, are required to pay any such claims in full to confirm a plan of reorganization.  *See id.*; 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to administrative expense priority).  Instead of paying such Trade Claims on the effective date of the Plan, the Debtors seek authority to pay the Trade Claims during the pendency of these Chapter 11 Cases as they become due and in accordance with the Approved Budget.  The Bankruptcy Code requires, and the Plan provides for, payment in full of administrative expense claims on the effective date of the Plan, or as soon as practicable thereafter.  Thus, payment of Trade Claims are entitled to priority under

section 503(b)(9) of the Bankruptcy Code under the Proposed Orders will affect only a change in the timing of such payments, not the amounts or priority thereof.

39.     To the extent the Debtors identify any deliveries that were made within the statutory window, the Debtors request authority to pay the associated claims asserted by such Trade Creditors in the ordinary course and in accordance with the Approved Budget.  Finally, authorizing the Debtors to pay Trade Claims pursuant to the terms set forth herein should eliminate the burden on this Court and the Debtors arising from numerous individual motions requesting payment on account of 503(b)(9) Claims.

## C.     OBLIGATIONS OWED UNDER OUTSTANDING PREPETITION PURCHASE ORDERS ARE ENTITLED TO ADMINISTRATIVE EXPENSE PRIORITY STATUS UNDER SECTION 503(b) OF THE BANKRUPTCY CODE

40.     Pursuant to section 503(b) of the Bankruptcy Code, obligations that arise in connection with the postpetition provision of necessary goods and services are generally afforded administrative expense priority because they benefit the estate postpetition.   11 U.S.C. § 503(b)(1)(A); *see also In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d. Cir. 1993) (holding that an obligation arising from the postpetition performance relating to a prepetition transaction is entitled to administrative expense priority).  Accordingly, granting the Prepetition Purchase Orders administrative expense priority status will not provide affected claimants with any greater priority than they would otherwise be entitled to and will not prejudice any party in interest.  Absent such relief, the Debtors may be required to expend substantial time and effort reissuing the Prepetition Purchase Orders to provide affected claimants with assurance of administrative expense priority status.  This disruption to the continuous flow of goods and services to the Debtors would seriously impact the Debtors' ability to operate their businesses for the benefit of all stakeholders.

**D.      PRECEDENT CASES SUPPORT GRANT OF THE REQUESTED RELIEF**

41.      The relief requested in this Motion is similar to relief granted by numerous courts, including this Court in other chapter 11 cases in this district. *See, e.g.*, *In re Acorda Therapeutics, Inc.*, Case No. 24-22284 (DSJ) (Bankr. S.D.N.Y. April 26, 2024) [Docket No. 104] (granting relief to pay prepetition trade claims); *In re GOL Linhas Aèreas Inteligentes S.A.*, Case No. 24-10118 (MG) (Bankr. S.D.N.Y. Feb. 27, 2024) [Docket No. 192] (same); *In re Mercon Coffee Corporation*, Case No. 23-11945 (MEW) (Bankr. S.D.N.Y. Jan. 11, 2024) [Docket No. 107] (same); *In re Troika Media Grp., Inc.*, Case No. 23-11969 (DSJ) (Bankr. S.D.N.Y. Jan. 2, 2024) [Docket No. 68] (same); *In re Benitago Inc.*, Case No. 23-11394 (SHL) (Bankr. S.D.N.Y. Oct. 11, 2023) [Docket No. 83] (same); *In re Voyager Aviation Holdings, LLC*, Case No. 23-11177 (JPM) (Bankr. S.D.N.Y. Aug. 24, 2023) [Docket No. 105] (same); *In re Vice Grp. Holding, Inc.*, Case No. 23-10738 (JPM) (Bankr. S.D.N.Y. June 15, 2023) [Docket No. 150] (same); *In re PacificCo Inc.*, Case No. 23-10470 (PB) (Bankr. S.D.N.Y. Apr. 28, 2023) [Docket No. 151] (same); *In re Genesis Glob. Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. Feb. 24, 2023) [Docket No. 98] (same); *In re Lumileds Holding B.V.*, Case No. 22-11155 (LGB) (Bankr. S.D.N.Y. Sept. 21, 2022) [Docket No. 128] (same); *In re SAS AB*, Case No. 22-10925 (MEW) (Bankr. S.D.N.Y. Aug. 4, 2022) [Docket No. 168] (same).

**E.      THIS COURT SHOULD AUTHORIZE BANKS TO HONOR AND PAY CHECKS ISSUED AND ELECTRONIC FUNDS TRANSFERRED TO PAY THE TRADE CLAIMS**

42.      The Debtors further request that this Court authorize, but not direct, their Banks to receive, process, honor, and pay any and all checks drawn or electronic funds relating to the prepetition Trade Claims regardless of whether such checks were presented before or after the Petition Date. The Debtors expect to have sufficient liquidity to pay such amounts as they become due in the ordinary course of business, and under the Debtors' existing cash management system,

checks or wire transfer requests can be readily identified as relating to an authorized payment of the Trade Claims.  As such, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers on account of the Trade Claims to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of these Chapter 11 Cases.

## F.   NO PARTY WILL BE PREJUDICED BY THE RELIEF REQUESTED IN THIS MOTION

43.   No party in interest will be prejudiced by the relief requested by this Motion because the Trade Claims are unimpaired under the Plan and will be paid in full.  Thus, the relief requested herein seeks to alter only the timing, not the amount or priority, of such payments.  Moreover, authority to pay the Trade Claims in the ordinary course of business is necessary to avoid the risk of key vendors and service providers withholding essential services or refusing to sell goods to the Debtors.

## G.   BANKRUPTCY RULE 6003 HAS BEEN SATISFIED, AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED

44.   Certain aspects of the relief requested herein may, if granted, be subject to Bankruptcy Rule 6003.  Under Bankruptcy Rule 6003, this Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days after the Chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and the success of these Chapter 11 Cases.  As discussed in detail above and in the Kocovski Declaration, immediate and irreparable harm would result if the relief herein is not granted.  Absent payment, the Trade Creditors may stop providing goods and services to the

Debtors and may continue to assert liens against the Debtors' property.  This, in turn, would cause significant disruption to the Debtors' businesses.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that this Court approve the relief requested in this Motion on an emergency basis.

45.    Additionally, with respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors thus submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate, as the exigent nature of the relief sought herein justifies immediate unstayed relief.

## **RESERVATION OF RIGHTS**

46.    Nothing in this Motion shall be deemed:  (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved); (f) a request or authorization to assume, adopt, or reject any agreement,

contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  If this Court enters any order granting the relief sought herein, any payment made pursuant to such order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **MOTION PRACTICE**

47.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **NOTICE**

48.    Notice of this Motion will be given to:  (a) the United States Trustee for Region 2; (b) Milbank LLP as counsel to the First Lien Ad Hoc Group; (c) the administrative agent and collateral agent under the first lien credit agreement; (d) Weil, Gotshal & Manges LLP as counsel to the Ad Hoc Noteholder Group; (e) Schulte Roth & Zabel LLP as counsel to Greenvale; (f) the indenture trustees for the Notes; (g) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (h) the United States Attorney's Office for the Southern District of New York; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the Trade Creditors; and (l) all parties entitled to notice pursuant to Local Rule 9013-1(b).  The Debtors submit that, under the circumstances, no other or further notice is required.

49.    A copy of this Motion is available from (a) this Court's website, www.nysb.uscourts.gov, and (b) the website maintained by the Debtors' proposed claims and noticing agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/2U.

## **NO PRIOR MOTION**

50.    The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other court.

**WHEREFORE**, the Debtors respectfully request that this Court enter the Proposed

Interim Order and, following a noticed hearing on the relief sought, the Proposed Final Order,

granting the relief requested in this Motion and such other and further relief as may be just and

proper.

                                        **LATHAM & WATKINS LLP**

Dated:    July 25, 2024              By:    _/s/ George A. Davis_____
          New York, New York         George A. Davis
                                     George Klidonas
                                     Anupama Yerramalli
                                     Randall C. Weber-Levine
                                     Scott Yousey
                                     1271 Avenue of the Americas
                                     New York, NY 10020
                                     Telephone: (212) 906-1200
                                     Facsimile: (212) 751-4864
                                     Email:  george.davis@lw.com
                                             george.klidonas@lw.com
                                             anu.yerramalli@lw.com
                                             randall.weber-levine@lw.com
                                             scott.yousey@lw.com

                                     *Proposed Counsel to the Debtors and Debtors in
                                     Possession*

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

## INTERIM ORDER (A) AUTHORIZING
## THE DEBTORS TO PAY PREPETITION TRADE CLAIMS IN
## THE ORDINARY COURSE OF BUSINESS; AND (B) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtors for an interim order (this "***Interim Order***"):  (a) authorizing, but not directing, the Debtors, in their sole discretion, to pay the prepetition Trade Claims in the ordinary course of business and (b) granting related relief; and this Court having reviewed the Motion and the First Day Declarations; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and consideration of the Motion and the relief requested therein being  a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it appearing that

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

proper and adequate notice of the Motion has been given and that no other or further notice is

necessary; and a hearing having been held to consider the relief requested in the Motion (the

"*Hearing*"); and upon the First Day Declarations and the record of the Hearing and all the

proceedings before this Court; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      All objections to the entry of this Interim Order, to the extent not withdrawn or

settled, are overruled.

3.      The Debtors are authorized, but not directed, to pay, in the ordinary course of

business and in each case in accordance with the Approved Budget, some or all of the prepetition

Trade Claims of Trade Creditors in full; *provided* that:

  a.  the Debtors, in their discretion, subject to the limitations set forth below, shall
      determine which Trade Claims, if any, will be paid pursuant to this Interim Order;

  b.  before making a payment to a creditor under this Interim Order, the Debtors may,
      in their discretion, settle all or some of the prepetition claims of such creditor for
      less than their face amount without further notice or hearing;

  c.  the payment of postpetition claims of attorneys (if any) retained, or subject to
      retention, by the Debtors pursuant to an OCP Motion shall be governed by the terms
      of the order approving such OCP Motion; and

  d.  nothing in the Motion or this Interim Order shall be deemed to authorize the
      Debtors to accelerate any payments not otherwise due prior to the date of the Final
      Hearing (as defined below) to consider the relief requested in the Motion.

4.      The undisputed obligations of the Debtors arising under the Prepetition Purchase

Orders shall be afforded administrative expense priority status pursuant to section 503(b)(1)(A) of

the Bankruptcy Code.

5.      The Debtors are authorized, but not directed, pursuant to section 363(c)(1) of the Bankruptcy Code, to pay in the ordinary course of their businesses all undisputed obligations arising from the postpetition delivery or shipment of goods or provision of services under the Prepetition Purchase Orders consistent with their customary past practice.

6.      The Debtors' Banks are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for the Trade Claims and Prepetition Purchase Orders that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' directions or representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Interim Order; *provided* that sufficient funds are on deposit in the applicable bank accounts to cover such payments, and any such Banks shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Interim Order.

7.      Notwithstanding the relief granted in this Interim Order, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the DIP Order and the DIP Credit Documents (as defined in the DIP Order) and any orders governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating to the foregoing).  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Order or the DIP Credit Documents.  To the extent there is any inconsistency between the terms of the DIP Order, the DIP Credit Documents, or any orders approving the Debtors' use of cash collateral, and the terms of

this Interim Order, the terms of the DIP Order, the DIP Credit Documents, and such order approving the use of cash collateral, as applicable, shall control.

8.      The Debtors shall maintain a matrix summarizing payments made pursuant to this Interim Order, including: (a) names of the payee; (b) the nature, date and amount of the payment; (c) the category or type of payment as characterized in the Motion; and (d) the Debtor or Debtors that made the payment.  The Debtors shall provide a copy of such matrix/schedule to the Court (upon request), the U.S. Trustee, and any statutory committee appointed in the Chapter 11 Cases every seven (7) days beginning upon entry of this Interim Order.

9.      The final hearing on the Motion (the "***Final Hearing***") will be held on [ ● ], at [ ● ] [ ● ].m. (Eastern Time).  Any objections or responses to entry of a final order on the Motion must be filed on or before 4:00 p.m. (Eastern Time) on [ ● ], 2024, and served on the following parties: (a) United States Trustee, U.S. Department of Justice, Office of the U.S. Trustee, 1 Bowling Green, Room 534, New York, NY 10004 (Attn: Rachael E. Siegel (rachael.e.siegel@usdoj.gov), Daniel Rudewicz (daniel.rudewicz@usdoj.gov), and Brian Masumoto (brian.masumoto@usdoj.gov)); (b) 2U, Inc., 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202 (Attn: Paul S. Lalljie (plalljie@2u.com), Matthew Norden (mnorden@2u.com), and Lillian Brownstein (lbrownstein@2u.com)); (c) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020 (Attn: George A. Davis (george.davis@lw.com), George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Randall C. Weber-Levine (randall.weber-levine@lw.com) and Scott Yousey (scott.yousey@lw.com)), proposed counsel for the Debtors; (d) Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Albert A. Pisa (apisa@milbank.com), Tyson Lomazow (tlomazow@milbank.com), and Abigail Debold (adebold@milbank.com)), counsel for the First

Lien Ad Hoc Group; (e) Weil, Gotshal & Manges LLP, 767 5th Ave, New York, New York 10153

(Attn: Matt Barr (matt.barr@weil.com), David Griffiths (david.griffiths@weil.com), and F. Gavin

Andrews (f.gavin.andrews@weil.com)), counsel for the Ad Hoc Noteholder Group; (f) Schulte,

Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Kristine Manoukian

(kristine.manoukian@srz.com), Kelly Knight (kelly.knight@srz.com), and Reuben E. Dizengoff

(reuben.dizengoff@srz.com)), counsel to Greenvale; and (g) counsel to any statutory committee

appointed in these Chapter 11 Cases.  In the event no objections to entry of a final order on the

Motion are timely received, this Court may enter such final order without need for the Final

Hearing.

10.      Nothing in the Motion or this Interim Order or the relief granted herein (including

any actions taken or payments made by the Debtors), is to be construed as (a) an implication or

admission as to the amount of, basis for, or validity of any claim against the Debtors under the

Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other

party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular

claim; (d) an implication or admission that any particular claim is of a type specified or defined in

the Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or

otherwise) is valid (and all rights to contest the extent, validity or perfection or seek avoidance of

all such liens are expressly reserved); (f) a request or authorization to assume, adopt, or reject any

agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as

to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other

encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in

interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist

against any entity under the Bankruptcy Code or any other applicable law.  Nothing contained in

this Interim Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

11.    The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

12.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

13.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

14.    The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Interim Order.

15.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

New York, New York
Dated:_____, 2024

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

### FINAL ORDER (A) AUTHORIZING
### THE DEBTORS TO PAY PREPETITION TRADE CLAIMS IN
### THE ORDINARY COURSE OF BUSINESS; AND (B) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtors for a final order (this "***Final Order***"):
(a) authorizing, but not directing, the Debtors, in their sole discretion, to pay the prepetition Trade
Claims in the ordinary course of business and (b) granting related relief; and this Court having
reviewed the Motion and the First Day Declarations; and this Court having determined that the
relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors,
and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief
requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order
of Reference from the United States District Court for the Southern District of New York*, dated
January 31, 2012; and consideration of the Motion and the relief requested therein being a core
proceeding under 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order
consistent with Article III of the United States Constitution; and venue being proper before this
Court under 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC
(N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter
(US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

Motion has been given and that no other or further notice is necessary; and a hearing having been

held, if necessary, to consider the relief requested in the Motion (the "***Hearing***"); and upon the

First Day Declarations and the record of the Hearing and all the proceedings before this Court; and

after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on a final basis, as set forth herein.

2.      All objections to the entry of this Final Order, to the extent not withdrawn or settled,

are overruled.

3.      The Debtors are authorized, but not directed, to pay, in the ordinary course of

business and in each case in accordance with the Approved Budget, some or all of the prepetition

Trade Claims of Trade Creditors in full; *provided* that:

   a.   the Debtors, in their discretion, subject to the limitations set forth below, shall
        determine which Trade Claims, if any, will be paid pursuant to this Final Order;

   b.   before making a payment to a creditor under this Final Order, the Debtors may, in
        their discretion, settle all or some of the prepetition claims of such creditor for less
        than their face amount without further notice or hearing; and

   c.   the payment of postpetition claims of attorneys (if any) retained, or subject to
        retention, by the Debtors pursuant to an OCP Motion shall be governed by the terms
        of the order approving such OCP Motion.

4.      The undisputed obligations of the Debtors arising under the Prepetition Purchase

Orders shall be afforded administrative expense priority status pursuant to section 503(b)(1)(A) of

the Bankruptcy Code.

5.      The Debtors are authorized, but not directed, pursuant to section 363(c)(1) of the

Bankruptcy Code, to pay in the ordinary course of their businesses all undisputed obligations

arising from the postpetition delivery or shipment of goods or provision of services under the

Prepetition Purchase Orders consistent with their customary past practice.

6.      The Debtors are authorized, but not directed, in their sole discretion, pursuant to section 363(c)(1) of the Bankruptcy Code, to pay in the ordinary course of their businesses all undisputed obligations arising from the postpetition delivery or shipment of goods or provision of services under the Prepetition Purchase Orders consistent with their customary past practice.

7.      The Debtors will ensure that the payments made pursuant to this Final Order are reflected on their books and records such that they are identifiable as payments made on account of prepetition claims.

8.      The Debtors' Banks are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for the Trade Claims and Prepetition Purchase Orders that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' directions or representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Final Order; *provided* that sufficient funds are on deposit in the applicable bank accounts to cover such payments, and any such Banks shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Final Order.

9.      Notwithstanding the relief granted in this Final Order, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the DIP Order and the DIP Credit Documents (as defined in the DIP Order) and any orders governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating to the foregoing).  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Order or the DIP Credit Documents.  To

the extent there is any inconsistency between the terms of the DIP Order, the DIP Credit Documents, or any orders approving the Debtors' use of cash collateral, and the terms of this Final Order, the terms of the DIP Order, the DIP Credit Documents, and such order approving the use of cash collateral, as applicable, shall control.

10.     The Debtors shall maintain a matrix summarizing payments made pursuant to this Final Order, including: (a) names of the payee; (b) the nature, date and amount of the payment; (c) the category or type of payment as characterized in the Motion; and (d) the Debtor or Debtors that made the payment.  The Debtors shall provide a copy of such matrix/schedule to the Court (upon request), the U.S. Trustee, and any statutory committee appointed in the Chapter 11 Cases every seven (7) days beginning upon entry of this Final Order.

11.     Nothing in the Motion, the Interim Order, or this Final Order, or the relief granted herein (including any actions taken or payments made by the Debtors), is to be construed as (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) is valid (and all rights to contest the extent, validity or perfection or seek avoidance of all such liens are expressly reserved); (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which

may exist against any entity under the Bankruptcy Code or any other applicable law.  Nothing

contained in this Final Order shall be deemed to increase, reclassify, elevate to an administrative

expense status, or otherwise affect any claim to the extent it is not paid.

12.    The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

13.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final

Order shall be effective and enforceable immediately upon entry hereof.

14.    The Debtors are authorized and empowered to take all actions necessary or

appropriate to implement the relief granted in this Final Order.

15.    This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated:_____, 2024

_____
UNITED STATES BANKRUPTCY JUDGE