**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR INTERIM AND FINAL
ORDERS (A) AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION
INSURANCE PROGRAMS OBLIGATIONS AND (II) MAINTAIN THEIR
INSURANCE PROGRAMS POSTPETITION; AND (B) GRANTING RELATED RELIEF**

The debtors in possession (collectively, the "***Debtors***") in the above-captioned cases (the "***Chapter 11 Cases***") hereby file this motion (this "***Motion***") and respectfully state as follows:

**RELIEF REQUESTED**

1.      By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as, respectively, **Exhibit A** (the "***Proposed Interim Order***") and **Exhibit B** (the "***Proposed Final Order***" and, together with the Proposed Interim Order, the

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802).  The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

"***Proposed Orders***"): (a) authorizing, but not directing, the Debtors, in their sole discretion, to (i) pay prepetition claims arising under their ordinary course Insurance Programs (as defined below), and (ii) maintain their Insurance Programs in the ordinary course postpetition; and (b) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of New York (this "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), 363(c), 1107(a), 1108, and 1112(b)(4)(C) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), Bankruptcy Rules 6003 and 6004, and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***").

## BACKGROUND

5. The Debtors comprise a leading online education technology company providing over eighty million people worldwide with access to high-quality education, including graduate, undergraduate, and non-degree programs. Through a comprehensive platform, the Debtors enable

non-profit universities and colleges to offer a wide range of online courses and programs. These span diverse fields such as artificial intelligence, data science, business, healthcare, and education, with over 4,600 programs accessible on the Debtors' platform, edX.org, which provides learners with essential information on admissions, enrollment requirements, application processes, curriculum, tuition, and completion times. By consolidating a vast array of educational offerings on a single platform, the Debtors offer flexible and affordable pathways for achieving professional and educational goals. Although operations are predominantly remote, the majority of the Debtors' revenue flows into New York, where the Debtors hold their primary bank accounts, and where they collaborate with prestigious institutions of higher education (many of which are located here in New York City, including New York University, Columbia University, and Fordham University), enhancing their reach and impact within the city and state.

6.      On the date hereof (the "***Petition Date***"), the Debtors filed voluntary petitions in this Court commencing these Chapter 11 Cases. The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been requested, and no committee has been appointed in these Chapter 11 Cases.

7.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Matthew Norden, Chief Legal Officer and Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions* (the "***Norden Declaration***") and the *Declaration of William Kocovski in Support of Chapter 11 Petitions and First Day Motions* (the

"*Kocovski Declaration*" and, together with the Norden Declaration, the "*First Day Declarations*")

filed contemporaneously herewith, which are fully incorporated herein by reference.[2]

8.      These Chapter 11 Cases are "prepackaged" cases commenced for the purpose of

implementing an agreed restructuring of the Debtors' debt.  Prior to the Petition Date, the Debtors

entered into the Restructuring Support Agreement, dated as of July 24, 2024 (as may be amended,

modified or supplemented, the "*Restructuring Support Agreement*") with certain creditors

including (a) an ad hoc group of certain holders (the "*Ad Hoc Noteholder Group*") of 2.25%

convertible senior notes due May 1, 2025, issued under that certain Indenture, dated as of April

23, 2020 (the "*2025 Notes*") and 4.50% senior unsecured convertible notes due February 1, 2030,

issued under that certain Indenture, dated as of January 11, 2023 (the "*2030 Notes*" and, together

with the 2025 Notes, the "*Notes*") represented by Weil, Gotshal & Manges LLP, (b) Greenvale

Capital LLP ("*Greenvale*" and, together with the Ad Hoc Noteholder Group, the "*Consenting

Noteholders*") as holder of the Notes represented by Schulte Roth & Zabel LLP, and (c) an ad hoc

group of certain First Lien Lenders (the "*First Lien Ad Hoc Group*" and, together with the

Consenting Noteholders, the "*Consenting Stakeholders*") represented by Milbank LLP.  As of

July 24, 2024, the Consenting Stakeholders held approximately 82% of the Debtors' first lien

funded debt, 86.9% of the 2025 Notes, and 95.2% of the 2030 Notes.

9.      On the Petition Date, the Debtors filed a plan of reorganization reflecting the terms

of the Restructuring Support Agreement (as may be amended, modified or supplemented, the

"*Plan*") in addition to a disclosure statement with respect to the Plan (as may be amended,

modified or supplemented, the "*Disclosure Statement*").  The Plan contemplates that all Allowed

---

[2]    Capitalized terms used, but not defined in this Motion have the meanings ascribed to them in the First Day
Declarations.

General Unsecured Claims (as defined in the Plan) will be paid in full or will otherwise be unimpaired.[3]

10.     Prior to the Petition Date, the Debtors commenced solicitation of votes on the Plan from holders of Class 3 First Lien Claims and Class 4 Unsecured Notes Claims (each as defined in the Plan), the only classes entitled to vote under the Plan.  Subject to this Court's approval, votes with respect to the Plan are due on August 21, 2024.  On the Petition Date, the Debtors filed a motion seeking, among other things, (a) conditional approval of the Disclosure Statement, and (b) to schedule a combined hearing to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan.  The Debtors seek to obtain confirmation of the Plan as quickly as this Court's schedule and requisite notice periods will permit.

## THE DEBTORS' INSURANCE PROGRAMS

11.     In the ordinary course of business, the Debtors maintain certain insurance policies that are administered by various insurers (the "***Insurers***"), which provide coverage to the Debtors for, among other things, worker's compensation,[4] directors' and officers' ("***D&O***") liability,[5] casualty and property loss, automotive liability, cyber errors and omissions ("***E&O***"), commercial crimes, social engineering, fraud, and general umbrella liability (collectively, the "***Insurance Policies***").  All of the Insurance Policies are held in the name of Debtor 2U, Inc. and cover all

---

[3]     Contemporaneously with filing this Motion, the Debtors are filing a motion to seek this Court's authorization to reject certain unexpired commercial real property leases.

[4]     The Debtors have separately sought authorization to honor their obligations under their workers' compensation programs (including making prepetition payments associated with insurance premiums) as part of the contemporaneously filed *Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to (I) Satisfy Prepetition Workforce Obligations and (II) Continue Workforce Programs on a Postpetition Basis; (B) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims; and (C) Granting Related Relief* (the "**Wages Motion**").  While the Debtors have included reference to their workers' compensation insurance programs and the attendant premiums associated with that coverage in this Motion, they are not seeking authority to pay those amounts in this Motion.

[5]     Prior to the Petition Date, the Debtors purchased six (6) years of runoff or "tail" coverage for the D&O policies, incepting on the date of emergence.

subsidiaries of 2U, Inc. (including the other Debtors and their non-Debtor affiliates).  A detailed list of the Insurance Policies is attached hereto as **Exhibit C**.[6]  The Insurance Policies are essential to the preservation of the Debtors' businesses, property, and assets, and, in some cases, the coverage may be required by law or regulation, or obligated by contract.  The Insurance Policies provide coverage that is typical in scope and amount for businesses within the Debtors' industry.

12.    The Debtors and their non-Debtor affiliates obtain the Insurance Policies through Lockton Companies, LLC (the "***Broker***"), pursuant to that certain Engagement Letter between the Broker and 2U, Inc., dated as of July 19, 2022, which automatically renews annually, subject to negotiation or modification, unless properly terminated (the "***Broker Contract***").  The Broker assists in obtaining comprehensive insurance coverage and provides related services, including risk engineering and procuring and negotiating the Insurance Policies on advantageous terms and at competitive rates.  In exchange for the receipt of these services, the Debtors are obligated to pay certain fees to the Broker (the "***Broker Fees***"), which are included in the Debtors' payment of Insurance Premiums (as defined below).  The Debtors have already paid all Broker Fees owed to Lockton for the current calendar year.  Accordingly, as of the Petition Date, the Debtors estimate that they owe approximately $0 in prepetition Broker Fees.

13.    Typically, 2U, Inc. pays the Broker (which in turn pays the applicable Insurer) on account of the collective insurance-related obligations of the Debtors and their non-Debtor affiliates.  The other Debtors and non-Debtor affiliates are thereafter obligated to reimburse Debtor 2U, Inc. (either directly or indirectly) for their allocated share of such amounts on a monthly basis.

---

[6]    The Debtors request authority to honor obligations and renew all insurance policies, as applicable, notwithstanding any failure of the Debtors to include a particular insurance policy on **Exhibit C**.

14.     The total amount paid in annual premiums and other costs associated with the Insurance Policies (collectively, the "***Insurance Premiums***" and, together with the Broker Fees, the "***Prepetition Insurance Obligations***") is approximately $3.45 million.[7]  The Insurance Policies renew around March of each year.  The Debtors pay all of the Insurance Premiums due for each Insurance Policy at the beginning of its respective policy period.  The Insurance Premiums for all Insurance Policies have been paid for their current policy periods.  Accordingly, as of the Petition Date, the Debtors estimate that they owe approximately $0 in prepetition Insurance Premiums.

15.     Out of an abundance of caution, in the event the Debtors learn that additional amounts attributable to the period before the Petition Date are due and outstanding on account of the Insurance Policies and related services, the Debtors request authority to make payments to the Broker and Insurers, as applicable, on account of any such Prepetition Insurance Obligations in accordance with the Approved Budget (as defined in the DIP Order).[8]  The Debtors further request authority to renew, replace,[9] modify, extend, or add to the existing Insurance Policies, including by paying any premiums that may be triggered during these Chapter 11 Cases with respect to "runoff" options contained in the Insurance Policies, or obtaining new insurance policies postpetition in accordance with the Approved Budget.

---

[7]   For the avoidance of doubt, this amount of annual premiums and other costs associated with the Insurance Policies does not include the annual premiums for the Debtors' workers compensation insurance coverage, which is addressed in further detail in the Wages Motion, or the premiums for the runoff or "tail" coverage for the D&O policies.

[8]   "**DIP Order**" refers to that interim or final order, as applicable, approving the *Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to (I) Obtain Junior Lien Postpetition Financing and (II) Use Cash Collateral; (B) Granting Liens and Superpriority Claims; (C) Granting Adequate Protection to Certain Parties; and (D) Granting Related Relief* (as may be amended, restated, or otherwise modified from time to time).

[9]   In the context of the Insurance Programs, "***replace***", means to purchase an equivalent new insurance policy, letter of credit, or contract upon expiration of the term or period of the existing policy, letter of credit, or contract.

**LETTERS OF CREDIT**

16.    The Debtors have approximately $11.3 million[10] of outstanding letters of credit (the "*Letters of Credit*" and, together with the Insurance Policies the "***Insurance Programs***").[11]  The Letters of Credit cover a range of obligations, including real estate obligations and deferred government grant obligations.  A detailed list of the Letters of Credit that are currently maintained by the Debtors, as well as their expiration dates and issuing banks (the "***Issuing Banks***"), is attached hereto as **Exhibit D**.[12]

17.    In the ordinary course of business, the Debtors pay the Issuing Banks approximately $24,000 on a quarterly basis for fees relating to the Letters of Credit.  As of the Petition Date, the Debtors do not believe there are any payments due and owing on account of the Letters of Credit, and the Debtors are not aware of any pending requests for payment on the Letters of Credit (the "***Prepetition Letters of Credit Obligations***" and, together with the Prepetition Insurance Obligations, the "***Prepetition Insurance Programs Obligations***").  Out of an abundance of caution, in the event that the Debtors learn that additional amounts attributable to the period before the Petition Date are due and outstanding on account of the Letters of Credit and related services, the Debtors request authority to make payments to the Issuing Banks on account of any such Prepetition Letters of Credit Obligations in accordance with the Approved Budget.  The Debtors

---

[10]    The Debtors hold a Letter of Credit denominated in South African rand (ZAR).  The Debtors converted the value of this Letter of Credit from ZAR to USD on July 24, 2024 using an exchange rate calculator available at https://www.xe.com/currencyconverter.

[11]    Like an insurance policy, the issuance of a letter of credit shifts the risk of the Debtors' nonperformance or nonpayment from the Debtors to the applicable issuing bank.  Unlike an insurance policy, under the terms of a written letter of credit agreement with the applicable issuing bank, if a beneficiary draws on a letter of credit, then the issuing bank is typically entitled to recover from the applicable Debtor.  Failing to provide, maintain, or timely replace their Letters of Credit may prevent the Debtors from undertaking essential functions related to their operations.

[12]    The Debtors request authority to honor obligations and renew all Letters of Credit, as applicable, notwithstanding any failure of the Debtors to include a particular Letter of Credit on **Exhibit D**.

further request authority to honor the current Letters of Credit and renew, replace, modify, extend, cancel, or add to the Letters of Credit as needed in the Debtors sole discretion postpetition, including through the issuance of new Letters of Credit in accordance with the Approved Budget.

18.     To secure the Prepetition Letters of Credit Obligations, the Debtors have posted collateral, or may need to post new collateral, in favor of and as required by the relevant Issuing Banks.  As of the Petition Date, the Debtors have posted in the aggregate approximately $11.9 million in collateral in a segregated collateral account to secure the Prepetition Letters of Credit Obligations.  The Debtors request authority to pay the Issuing Banks in the ordinary course of business and honor the collateral posted prepetition and renew, replace, modify, extend, or add to the posted collateral as needed and in accordance with the Approved Budget in the Debtors' discretion postpetition, including through the posting of additional collateral.

## BASIS FOR RELIEF

A.    **THE BANKRUPTCY CODE AND U.S. TRUSTEE GUIDELINES REQUIRE THE DEBTORS TO MAINTAIN INSURANCE PROGRAMS AND SATISFY PREPETITION INSURANCE OBLIGATIONS**

19.     The Debtors' existing Insurance Programs provide a comprehensive range of protection for the Debtors' businesses, properties, and assets.  As such, it is essential that the Debtors' coverage under the Insurance Programs continues in full force and effect during the course of these Chapter 11 Cases.  Under section 1112(b)(4)(C) of the Bankruptcy Code, "failure [of a debtor] to maintain appropriate insurance [where such failure] poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).  Similarly, certain of the Insurance Programs are required by various state and federal regulations.  In addition, the United States Trustee's Operating Guidelines for Chapter 11 Cases (the "***Operating Guidelines***") require that a debtor "shall maintain" certain types of insurance coverage following the Petition Date.  *See* U.S. Trustee Guidelines § 6.  To ensure

that the Debtors comply with section 1112(b)(4)(C) of the Bankruptcy Code, applicable state and federal regulations, and the U.S. Trustee Guidelines, the Debtors respectfully request the authority to (a) pay the Prepetition Insurance Obligations, if any, in the ordinary course of business, including any prepetition amounts due or that may come due in connection with the Insurance Premiums, Broker Fees, and the Letters of Credit, (b) continue to honor obligations arising under the Insurance Programs, and (c) if necessary, renew, supplement, or purchase Insurance Policies and Letters of Credit on a postpetition basis in the ordinary course of business, each in accordance with the Approved Budget.

**B.     RENEWING, SUPPLEMENTING, ENTERING INTO NEW INSURANCE PROGRAMS, AND PAYING OBLIGATIONS RELATED TO THE INSURANCE PROGRAMS IN THE ORDINARY COURSE OF BUSINESS ARE EACH WARRANTED**

20.     The Debtors' Insurance Programs are maintained in the ordinary course of the Debtors' business.  Section 363(c)(1) of the Bankruptcy Code provides that a chapter 11 debtor in possession "may enter into transactions . . . [or] may use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The Bankruptcy Code does not define the "ordinary course of business."  *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992).  In determining whether a transaction is in the ordinary course of business, this court and others have adopted the two-part "horizontal dimension" and "vertical dimension" test.  *See In re Crystal Apparel, Inc.*, 207 B.R. 406, 409 (Bankr. S.D.N.Y. 1997).  Under the horizontal dimension test, the court must analyze whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry.  *Id.*  Under the vertical dimension test, the court must analyze the transaction from the perspective of a hypothetical creditor and determine "whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit."  *Id.*  In other words, under this two-part test, "the

10

touchstone of ordinariness is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." *In re Drexel Burnham Lambert Grp., Inc.*, 157 B.R. 532, 537 (S.D.N.Y. 1993).

21.     Here, the Debtors seek to continue their existing Insurance Programs and to continue to honor their obligations thereunder in the ordinary course of their businesses on a postpetition basis.  Maintaining the Insurance Programs and honoring postpetition obligations arising thereunder and under the Broker Contract, including undertaking renewals of the Insurance Policies and Letters of Credit as they expire or entering into new insurance arrangements or Letters of Credit, are each the type of ordinary course transactions contemplated by section 363(c) of the Bankruptcy Code.  The Debtors' Insurance Programs have been a part of their business operations (and their creditors either should or do know this fact) and all competitors in the Debtors' line of business would be expected to maintain similar Insurance Programs to allow those competitors to engage in the higher education industry.  The Debtors' failure to maintain, renew, or timely replace the existing Insurance Policies may jeopardize the Debtors' ability to conduct their operations.  In the event, however, that this Court believes that any actions are not properly characterized as transactions in the ordinary course of the Debtors' businesses, the Debtors respectfully request that this Court authorize the Debtors to take actions pursuant to section 363(b) of the Bankruptcy Code as a sound exercise of their business judgment.

## C.     THIS COURT SHOULD AUTHORIZE THE DEBTORS TO MAINTAIN THE INSURANCE PROGRAMS AS A SOUND EXERCISE OF BUSINESS JUDGMENT

22.     Although the Debtors believe continuing their Insurance Programs is within their authority to continue in the ordinary course of business, out of an abundance of caution, and to ensure authority to pay any Prepetition Insurance Programs Obligations, the Debtors are seeking

Court approval to maintain, continue, renew, revise, and supplement their Insurance Programs under section 363(b) of the Bankruptcy Code.

23.     The use of estate property should be authorized under section 363(b) so long as a sound business purpose exists for the transaction. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Once the debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Integrated Res.*, 147 B.R. at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."). Similarly, to the extent applicable, courts in this district generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See Ionosphere Clubs*, 98 B.R. at 175 (granting authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as requested herein.

24.     Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere*

*Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (N.D Tex. 2002).

25.     Here, the Debtors submit that there is sufficient business justification to grant the relief requested herein. As an initial matter, maintaining their Insurance Programs is critical to the Debtors' operations, as noted above. Thus, there are clear business reasons for the Debtors to maintain their Insurance Programs and allow the Debtors to renew or replace Insurance Policies and Letters of Credit in the ordinary course of business. Indeed, the Debtors' Insurance Policies and Letters of Credit are essential to the preservation of the value of the Debtors' businesses, properties, and assets and their ability to successfully prosecute these Chapter 11 Cases. Accordingly, in the event any of the Insurance Programs lapse or new coverage is required or necessary, it is imperative that the Debtors be able to renew, supplement, or purchase Insurance Policies and Letters of Credit on a postpetition basis in the ordinary course of business and in accordance with the Approved Budget. The Insurance Programs protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events. In these circumstances, the Debtors submit that the relief sought herein is in the best interests of their estates.

26.     Maintaining the Insurance Programs and honoring postpetition obligations arising thereunder and under the Broker Contract, including undertaking renewals of the Insurance

Policies and Letters of Credit as they expire or entering into new insurance arrangements or Letters

of Credit, are each the type of ordinary course transactions contemplated by section 363(c) of the

Bankruptcy Code.  In the event, however, that this Court believes that any actions are not properly

characterized as transactions in the ordinary course of the Debtors' business, the Debtors

respectfully request that this Court authorize the Debtors to take actions pursuant to section 363(b)

of the Bankruptcy Code as a sound exercise of their business judgment.

**D.    IN THE ALTERNATIVE, THIS COURT SHOULD GRANT THIS MOTION PURSUANT TO THE DOCTRINE OF NECESSITY**

27.    In addition, section 105(a) of the Bankruptcy Code codifies this Court's inherent

equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), courts may authorize

pre-plan payments of prepetition obligations when essential to the continued operation of a

debtor's business.  *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see

also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) ("The 'doctrine

of necessity' stands for the principle that a bankruptcy court may allow pre-plan payments of

prepetition obligations where such payments are critical to the debtor's reorganization.");

*Ionosphere Clubs*, 98 B.R. at 176 (holding that a court may authorize payments of prepetition

obligations under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment"

rule (also referred to as the "doctrine of necessity")).

28.    There is also sufficient basis to permit the Debtors to pay any prepetition

obligations related to their Insurance Programs.  For instance, the failure to pay Insurance

Premiums and related insurance expenses when due may harm the Debtors' estates in a number of

ways.  Specifically, the Insurers may refuse to renew the Debtors' Insurance Policies, which will

require the Debtors to obtain replacement policies and possibly reconfigure their risk management

program.  That scenario would require the commitment of significant resources and could result in less favorable coverage or terms from the Debtors' Insurers.  Additionally, the Insurers could attempt to terminate the Debtors' existing policies, which could threaten the Debtors' ability to continue operating their businesses given the Debtors' business reasons as well as regulatory and contractual obligations to maintain specific amounts and types of insurance coverage.

29.     Further, many of the Insurance Policies cannot be directly purchased by the Debtors and can only be placed through the Broker.  Should the Broker terminate the Broker Contract and its relationship with the Debtors, the Debtors would be in the unfavorable position of having to find a new broker while in chapter 11, likely at greater expense and resulting in additional costs and inefficiencies.  Accordingly, maintaining their relationship with the Broker allows the Debtors to obtain the insurance coverage necessary to operate their businesses in a reasonable and prudent manner and to realize savings in securing and maintaining the Insurance Policies.  The Debtors, therefore, believe that it is necessary and essential to continue their business relationships with the Broker and to continue to pay, as they come due, any Broker Fees or other amounts owed to the Broker under the Broker Contract.

**E.     MAINTENANCE OF THE INSURANCE POLICIES AND PAYMENT OF THE PREPETITION INSURANCE PROGRAMS OBLIGATIONS ARE A VALID EXERCISE OF THE DEBTORS' FIDUCIARY DUTIES**

30.     Authority for the payment of the Insurance Programs Obligations is found in sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors, operating their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Courts have recognized that implicit in the duties of a chapter 11 debtor in possession

is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

31.     The *CoServ* court held that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* That court specifically held that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." *Id.* at 497-98. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

32.     Payment of all Prepetition Insurance Programs Obligations meets each element of the *CoServ* court's standard. As described above, non-payment of the Prepetition Insurance Programs Obligations could result in cancellation of the Insurance Programs, in which case the Debtors would not only be in violation of the Operating Guidelines, of various federal and state laws and regulations and of various contractual commitments, but also the Debtors may be unable to find alternative insurance coverage, or could find such alternatives only at a much higher cost than the Debtors currently incur. Nonpayment of any Prepetition Insurance Programs Obligations also could render the Debtors unable to renew the Insurance Policies or Letters of Credit or obtain replacements therefor with respect to future periods. Therefore, the potential harm and economic disadvantage that would stem from the failure to honor any Prepetition Insurance Programs

Obligations are grossly disproportionate to the amount of any Prepetition Insurance Programs Obligations. Finally, the Debtors have examined other options short of honoring the Prepetition Insurance Programs Obligations and have determined that, in order to avoid significant disruption to the Debtors' business operations, there exists no practical or legal alternative to payment of such obligations.

33.    Accordingly, to meet their fiduciary duties as debtors in possession under Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors must not only be authorized to continue the Insurance Programs but also be authorized to pay all Prepetition Insurance Programs Obligations (including any Broker Fees), if doing so is necessary, in the Debtors' judgment, to avoid cancellation or interruption of insurance coverage.

**F.    PRECEDENT CASES SUPPORT GRANT OF THE REQUESTED RELIEF**

34.    The relief requested in this Motion is similar to relief granted by numerous courts, including this Court in other chapter 11 cases in this district. *See, e.g.*, *In re Credivalores - Crediservicios S.A.*, Case No. 24-10837 (DSJ) (Bankr. S.D.N.Y. June 12, 2024) [Docket No. 67] (granting final relief to pay prepetition insurance obligations and continue insurance policies); *In re GOL Linhas Aèreas Inteligentes S.A.*, Case No. 24-10118 (MG) (Bankr. S.D.N.Y. Feb. 22, 2024) [Docket No. 174] (same); *In re Mercon Coffee Corp.*, Case No. 23-11945 (MEW) (Bankr. S.D.N.Y. Jan. 10, 2024) [Docket No. 103] (same); *In re Voyager Aviation Holdings, LLC*, Case No. 23-11177 (JPM) (Bankr. S.D.N.Y. August 24, 2023) [Docket No. 104] (same); *In re Vice Grp. Holding Inc.*, Case No. 23-10738 (JPM) (Bankr. S.D.N.Y. Jun. 15, 2023) [Docket No. 152] (same); *In re PacificCo Inc.*, Case No. 23-10470 (PB) (Bankr. S.D.N.Y. Apr. 28, 2023) [Docket No. 153] (same); *In re Lumileds Holding B.V.*, Case No. 22-11155 (LGB) (Bankr. S.D.N.Y. Sep. 21, 2022) [Docket No. 127] (same); *In re SAS AB*, Case No. 22-10925 (MEW) (Bankr. S.D.N.Y. Aug. 4, 2022) [Docket No. 175] (same).

**G.    THIS COURT SHOULD AUTHORIZE BANKS TO HONOR AND PAY CHECKS ISSUED AND ELECTRONIC FUNDS TRANSFERRED TO PAY THE PREPETITION INSURANCE PROGRAMS OBLIGATIONS**

35.    The Debtors further request that this Court authorize, but not direct, their banking institutions and all other applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn or electronic funds relating to the Prepetition Insurance Programs Obligations, regardless of whether such checks were presented before or after the Petition Date.  The Debtors expect to have sufficient liquidity to pay such amounts as they become due in the ordinary course of business, and under the Debtors' existing cash management system, checks or wire transfer requests can be readily identified as relating to an authorized payment of the Prepetition Insurance Programs Obligations.  As such, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers on account of the Prepetition Insurance Programs Obligations to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of these Chapter 11 Cases.

**H.    NO PARTY WILL BE PREJUDICED BY THE RELIEF REQUESTED IN THIS MOTION**

36.    No party in interest will be prejudiced by the relief requested by this Motion because the claims related to the Insurance Programs are unimpaired under the Plan and will be paid in full.  Thus, the relief requested herein seeks to alter only the timing, not the amount or priority, of such payments.  Moreover, authority to pay the amounts related to the Insurance Programs in the ordinary course of business is necessary to avoid the risk of loss of coverage and the attendant disruption of the Debtors' business.

I.     **BANKRUPTCY RULE 6003 HAS BEEN SATISFIED, AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED**

37.     Certain aspects of the relief requested herein may, if granted, be subject to Bankruptcy Rule 6003.  Under Bankruptcy Rule 6003, this Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  The Debtors believe an immediate and orderly transition into Chapter 11 is critical to the viability of their operations and the success of these Chapter 11 Cases.  As discussed in detail above and in the Kocovski Declaration, immediate and irreparable harm would result if the relief herein is not granted.  Continuity of the Debtors' Insurance Programs is critical to the Debtors' ongoing operations.  Any interruption to the Insurance Programs could expose the Debtors' estates to potential liability for obligations otherwise covered by the Insurance Programs and thereby adversely (perhaps irreparably) impact the Debtors' ability to maximize estate value.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that this Court approve the relief requested in this Motion on an emergency basis.

38.     Additionally, with respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors thus submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the fourteen-day stay

imposed by Bankruptcy Rule 6004(h) is appropriate, as the exigent nature of the relief sought

herein justifies immediate unstayed relief.

## **RESERVATION OF RIGHTS**

39.    Nothing in this Motion shall be deemed:  (a) an implication or admission as to the

amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or

other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's

right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an

implication or admission that any particular claim is of a type specified or defined in this Motion;

(e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) is valid

(and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are

expressly reserved); (f) a request or authorization to assume, adopt, or reject any agreement,

contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the

validity, priority, enforceability, or perfection of any lien on, security interest in, or other

encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in

interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist

against any entity under the Bankruptcy Code or any other applicable law.  If this Court enters any

order granting the relief sought herein, any payment made pursuant to such order is not intended

and should not be construed as an admission as to the validity of any particular claim or a waiver

of the Debtors' rights to subsequently dispute such claim.

## **MOTION PRACTICE**

40.    This Motion includes citations to the applicable rules and statutory authorities upon

which the relief requested herein is predicated and a discussion of their application to this Motion.

Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## NOTICE

41.     Notice of this Motion will be given to:  (a) the United States Trustee for Region 2;
(b) Milbank LLP as counsel to the First Lien Ad Hoc Group; (c) the administrative agent and
collateral agent under the first lien credit agreement; (d) Weil, Gotshal & Manges LLP as counsel
to the Ad Hoc Noteholder Group; (e) Schulte Roth & Zabel LLP as counsel to Greenvale; (f) the
indenture trustees for the Notes; (g) the parties included on the Debtors' consolidated list of
thirty (30) largest unsecured creditors; (h) the United States Attorney's Office for the Southern
District of New York; (i) the Internal Revenue Service; (j) the Securities and Exchange
Commission; (k) the Insurers; (l) the Broker; (m) the Issuing Banks; and (n) all parties entitled to
notice pursuant to Local Rule 9013-1(b).  The Debtors submit that, under the circumstances, no
other or further notice is required.

42.     A  copy  of  this  Motion  is  available  from  (a)  this  Court's  website,
www.nysb.uscourts.gov, and (b) the website maintained by the Debtors' proposed claims and
noticing agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/2U.

## NO PRIOR MOTION

43.     The Debtors have not made any prior motion for the relief sought in this Motion to
this Court or any other court.

**WHEREFORE**, the Debtors respectfully request that this Court enter the Proposed Interim Order and, following a noticed hearing on the relief sought, the Proposed Final Order, granting the relief requested in this Motion and such other and further relief as may be just and proper.

**LATHAM & WATKINS LLP**

Dated:    July 25, 2024
New York, New York

By:    */s/ George A. Davis*
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  george.davis@lw.com
        george.klidonas@lw.com
        anu.yerramalli@lw.com
        randall.weber-levine@lw.com
        scott.yousey@lw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

## INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION INSURANCE PROGRAMS OBLIGATIONS AND (II) MAINTAIN THEIR INSURANCE PROGRAMS POSTPETITION; AND (B) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtors for an interim order (this "***Interim Order***"):  (a) authorizing, but not directing, the Debtors, in their discretion, to (i) pay prepetition claims arising under their ordinary course Insurance Programs, if any, and (ii) maintain their Insurance Programs in the ordinary course postpetition; and (b) granting related relief; and this Court having reviewed the Motion and the First Day Declarations; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and consideration of the Motion and the relief requested therein being  a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it appearing that

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

proper and adequate notice of the Motion has been given and that no other or further notice is

necessary; and a hearing having been held to consider the relief requested in the Motion (the

"*Hearing*"); and upon the First Day Declarations and the record of the Hearing and all the

proceedings before this Court; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is GRANTED on an interim basis, as set forth herein.

2.     All objections to the entry of this Interim Order, to the extent not withdrawn or

settled, are overruled.

3.     The Debtors are authorized, but not directed, to maintain and continue their

Insurance Programs.

4.     The Debtors are authorized, but not directed, to pay to the Insurers, Broker, and the

Issuing Banks any amounts owed on account of the Insurance Programs or maintenance of the

Insurance Programs, whether arising prepetition or postpetition, including the fees, costs,

premiums, and commissions of the Broker in connection with the Insurance Programs and the

Broker Contract, as applicable, in the ordinary course of business and in accordance with the

Approved Budget; *provided*, that nothing in the Motion or this Interim Order shall be deemed to

authorize the Debtors to accelerate any payments not otherwise due prior to the date of the final

hearing to consider the relief requested in the Motion.  For the avoidance of doubt, this relief is

being granted out of an abundance of caution, as the Debtors do not anticipate any amounts coming

due on account of the Insurance Programs.

5.     The Debtors are authorized, but not directed, to renew, replace, modify, extend, or

add to their Insurance Programs or the Broker Contract in the ordinary course of business as needed

and in accordance with the Approved Budget, including but not limited to entering into new

2

insurance policies, broker contracts, and letters of credit through renewal or purchase of new insurance coverage or insurance policies, broker contracts, and letters of credit, including but not limited to, in each case, by paying any premiums associated with "runoff" coverage triggered during the Chapter 11 Cases and/or by posting collateral as required by the Insurers, Broker, or Issuing Banks; *provided*, however, that the Debtors shall not be permitted to enter into any arrangement with a present or future Insurer outside of the ordinary course of business without prior court approval under 11 U.S.C. § 363(b)(1).

6.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for the Prepetition Insurance Programs Obligations that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' directions or representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Interim Order; *provided* that sufficient funds are on deposit in the applicable bank accounts to cover such payments, and any such banks and financial institutions shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Interim Order.

7.      Notwithstanding the relief granted in this Interim Order, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the DIP Order and the DIP Credit Documents (as defined in the DIP Order) and any orders governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating to the foregoing).  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Order or the DIP Credit

Documents. To the extent there is any inconsistency between the terms of the DIP Order, the DIP Credit Documents, or any orders approving the Debtors' use of cash collateral, and the terms of this Interim Order, the terms of the DIP Order, the DIP Credit Documents, and such order approving the use of cash collateral, as applicable, shall control.

8.      The final hearing on the Motion (the "***Final Hearing***") will be held on [ ● ], at [ ● ] [ ● ].m. (Eastern Time). Any objections or responses to entry of a final order on the Motion must be filed on or before 4:00 p.m. (Eastern Time) on [ ● ], 2024, and served on the following parties: (a) United States Trustee, U.S. Department of Justice, Office of the U.S. Trustee, 1 Bowling Green, Room 534, New York, NY 10004 (Attn: Rachael E. Siegel (rachael.e.siegel@usdoj.gov), Daniel Rudewicz (daniel.rudewicz@usdoj.gov), and Brian Masumoto (brian.masumoto@usdoj.gov)); (b) 2U, Inc., 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202 (Attn: Paul S. Lalljie (plalljie@2u.com), Matthew Norden (mnorden@2u.com), and Lillian Brownstein (lbrownstein@2u.com)); (c) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020 (Attn: George A. Davis (george.davis@lw.com), George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Randall C. Weber-Levine (randall.weber-levine@lw.com) and Scott Yousey (scott.yousey@lw.com)), proposed counsel for the Debtors; (d) Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Albert A. Pisa (apisa@milbank.com), Tyson Lomazow (tlomazow@milbank.com), and Abigail Debold (adebold@milbank.com)), counsel for the First Lien Ad Hoc Group; (e) Weil, Gotshal & Manges LLP, 767 5th Ave, New York, New York 10153 (Attn: Matt Barr (matt.barr@weil.com), David Griffiths (david.griffiths@weil.com), and F. Gavin Andrews (f.gavin.andrews@weil.com)), counsel for the Ad Hoc Noteholder Group; (f) Schulte, Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Kristine Manoukian (kristine.manoukian@srz.com), Kelly Knight (kelly.knight@srz.com), and Reuben E. Dizengoff

4

(reuben.dizengoff@srz.com)), counsel to Greenvale; and (g) counsel to any statutory committee appointed in these Chapter 11 Cases.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

9.      Nothing in the Motion or this Interim Order or the relief granted herein (including any actions taken or payments made by the Debtors), is to be construed as (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) is valid (and all rights to contest the extent, validity or perfection or seek avoidance of all such liens are expressly reserved); (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  Nothing contained in this Interim Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

10.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

11.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

12.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

13.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Interim Order.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

New York, New York
Dated:_____, 2024

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

## Proposed Final Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

### FINAL ORDER (A) AUTHORIZING THE DEBTORS TO (I) PAY PREPETITION INSURANCE PROGRAMS OBLIGATIONS AND (II) MAINTAIN THEIR INSURANCE PROGRAMS POSTPETITION; AND (B) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtors for a final order (this "***Final Order***"): (a) authorizing, but not directing, the Debtors, in their discretion, to (i) pay prepetition claims arising under their ordinary course Insurance Programs, if any, and (ii) maintain their Insurance Programs in the ordinary course postpetition; and (b) granting related relief; and this Court having reviewed the Motion and the First Day Declarations; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Motion has been given and that no other or further notice is necessary; and a hearing having been

held, if necessary, to consider the relief requested in the Motion (the "**_Hearing_**"); and upon the

First Day Declarations and the record of the Hearing and all the proceedings before this Court; and

after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on a final basis, as set forth herein.

2.      All objections to the entry of this Final Order, to the extent not withdrawn or settled,

are overruled.

3.      The Debtors are authorized, but not directed, to continue their Insurance Programs.

4.      The Debtors are authorized, but not directed, to pay to the Insurers, Broker, and the

Issuing Banks any amounts owed on account of the Insurance Programs or maintenance of the

Insurance Programs, whether arising prepetition or postpetition, including the fees, costs,

premiums, and commissions of the Broker in connection with the Insurance Programs and the

Broker Contract, as applicable, in the ordinary course of business and in accordance with the

Approved Budget.  For the avoidance of doubt, this relief is being granted out of an abundance of

caution, as the Debtors do not anticipate any amounts coming due on account of the Insurance

Programs.

5.      The Debtors are authorized, but not directed, to renew, replace, modify, extend, or

add to their Insurance Programs or the Broker Contract in the ordinary course of business and in

accordance with the Approved Budget as needed, including but not limited to entering into new

insurance policies, broker contracts, and letters of credit through renewal or purchase of new

insurance coverage or insurance policies, broker contracts, and letters of credit, including but not

limited to, in each case, by paying any premiums associated with "runoff" coverage triggered

during the Chapter 11 Cases and/or by posting collateral as required by the Insurers, Broker, or

2

Issuing Banks; *provided*, however, that the Debtors shall not be permitted to enter into any arrangement with a present or future Insurer outside of the ordinary course of business without prior court approval under 11 U.S.C. § 363(b)(1).

6.     The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for the Prepetition Insurance Programs Obligations that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' directions or representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Final Order; *provided* that sufficient funds are on deposit in the applicable bank accounts to cover such payments, and any such banks and financial institutions shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Final Order.

7.     Notwithstanding the relief granted in this Final Order, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the DIP Order and the DIP Credit Documents (as defined in the DIP Order) and any orders governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating to the foregoing).  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Order or the DIP Credit Documents.  To the extent there is any inconsistency between the terms of the DIP Order, the DIP Credit Documents, or any orders approving the Debtors' use of cash collateral, and the terms of this Final Order, the terms of the DIP Order, the DIP Credit Documents, and such order approving the use of cash collateral, as applicable, shall control.

8.      Nothing in the Motion, the Interim Order, or this Final Order, or the relief granted herein (including any actions taken or payments made by the Debtors), is to be construed as (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) is valid (and all rights to contest the extent, validity or perfection or seek avoidance of all such liens are expressly reserved); (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  Nothing contained in this Final Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

9.      The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

10.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

11.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Final Order.

12.     This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated:_____, 2024

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

**Insurance Policies**

| Policy Named Insured | Policy Type | Insurance Carrier | Policy Term | Policy Number | Total Program Cost |
|---|---|---|---|---|---|
| 2U, Inc. | Automotive Liability | The Hartford | 3/27/24 – 3/27/25 | 42 UEN AE8248 | $6,232 |
| 2U, Inc. | Business Travel Accident Liability | Chubb | 3/27/24 – 3/27/25 | ADD N16746320 | $6,370 |
| 2U, Inc. | Criminal Liability | AXA XL | 3/27/24 – 3/27/25 | ELU195920-24 | $13,705 |
| 2U, Inc. | Criminal Liability – Specialty | Hiscox | 3/27/24 – 3/27/25 | UKA3015913.22 | $9,843 |
| 2U, Inc. | D&O Liability – Primary | CNA | 3/27/24 – 3/27/25 | 596776451 | $600,000 |
| 2U, Inc. | D&O Liability – Excess | AXA XL | 3/27/24 – 3/27/25 | ELU195927-24 | $420,000 |
| 2U, Inc. | D&O Liability – Excess | BerkleyPro | 3/27/24 – 3/27/25 | BPRO8106927 | $304,500 |
| 2U, Inc. | D&O Liability – Excess | Lloyd's | 3/27/24 – 3/27/25 | SPRDR2401445 | $220,763 |
| 2U, Inc. | D&O Liability – Excess | Nationwide | 3/27/24 – 3/27/25 | XMF2408979 | $171,091 |
| 2U, Inc. | D&O Liability – Excess | Ascot | 3/27/24 – 3/27/25 | MLXS2410000012-04 | $128,500 |
| 2U, Inc. | D&O Liability – Excess | RSUI | 3/27/24 – 3/27/25 | NHS709478 | $100,000 |
| 2U, Inc. | D&O Liability – Excess | Convex | 3/27/24 – 3/27/25 | XDO000041 | $80,000 |
| 2U, Inc. | D&O Liability – Excess | AWAC | 3/27/24 – 3/27/25 | 0308-8977 | $60,000 |
| 2U, Inc. | D&O Liability – Excess | Lloyd's | 3/27/24 – 3/27/25 | SPRDR2401569 | $48,000 |
| 2U, Inc. | D&O Liability – Excess | Lloyd's | 3/27/24 – 3/27/25 | SPRDR2401583 | $40,800 |
| 2U, Inc. | D&O Liability – Excess | RLI | 3/27/24 – 3/27/25 | EPG0032656 | $36,000 |
| 2U, Inc. | D&O Liability – Excess | Sompo | 3/27/24 – 3/27/25 | DOX30001013804 | $35,000 |
| 2U, Inc. | D&O Tail – Primary | AWAC | Six (6) years from Effective Date[1] | 0314-3525 | $1,200,000 |
| 2U, Inc. | D&O Tail – 1st Excess | CNA | Six (6) years from Effective Date | 794117478 | $870,000 |
| 2U, Inc. | D&O Tail – 2nd Excess | Sompo | Six (6) years from Effective Date | DOX30064703700 | $630,750 |

---

[1]  Effective Date shall have the meaning provided in the Plan.

| Policy Named Insured | Policy Type | Insurance Carrier | Policy Term | Policy Number | Total Program Cost |
|---|---|---|---|---|---|
| 2U, Inc. | D&O Tail – 3rd Excess | Falcon Risk | Six (6) years from Effective Date | FRS-G-XL-ML-00010298-01 | $457,300 |
| 2U, Inc. | D&O Tail – 4th Excess | Chubb | Six (6) years from Effective Date | DOX G71407433 001 | $331,550 |
| 2U, Inc. | D&O Tail – 5th Excess | AIG | Six (6) years from Effective Date | 01-421-83-34 | $240,375 |
| 2U, Inc. | D&O Tail – 6th Excess | Berkshire Hathaway | Six (6) years from Effective Date | 47-EPC-336242-01 | $174,273 |
| 2U, Inc. | D&O Tail – 7th Excess | Swiss Re Corporate Solutions | Six (6) years from Effective Date | DOE 10000406-00 | $126,350 |
| 2U, Inc. | D&O Tail – 8th Excess | Arch Insurance | Six (6) years from Effective Date | ABL1000174-00 | $200,000 |
| 2U, Inc. | D&O Tail – 9th Excess (1st Excess Side A) | Sompo | Six (6) years from Effective Date | ADX30064723000 | $72,500 |
| 2U, Inc. | D&O Tail – 11th Excess (2nd Excess Side A) | Old Republic | Six (6) years from Effective Date | ORPRO 12 105259 | $57,500 |
| 2U, Inc. | D&O Tail – 3rd Excess (3rd Excess Side A) | Markel | Six (6) years from Effective Date | MKLM6EL0011280 | $55,000 |
| 2U, Inc. | Employment Practices Liability | AXIS | 3/27/24 – 3/27/25 | P-001-001131082-02 | $72,219 |
| 2U, Inc. | Employment Practices Liability | CNA | 3/27/24 – 3/27/25 | 652510742 | $46,942 |
| 2U, Inc. | Employment Practices Liability | Nationwide | 3/27/24 – 3/27/25 | XMF2410779 | $28,165 |
| 2U, Inc. | Fiduciary Liability | RLI | 3/27/24 – 3/27/25 | EPG0032649 | $19,436 |
| 2U, Inc. | General Liability | The Hartford | 3/27/24 – 3/27/25 | 42 UUN BI251 | $97,034 |
| 2U, Inc. | International Package Liability | The Hartford | 3/27/24 – 3/27/25 | 42CPGAE9060 | $7,329 |
| 2U, Inc. | Professional Liability & Cyber – Primary | CNA | 3/27/24 – 3/27/25 | 652208366 | $395,000 |
| 2U, Inc. | Professional Liability & Cyber – Excess | Sompo | 3/27/24 – 3/27/25 | PRX30017600902 | $278,100 |
| 2U, Inc. | Professional Liability & Cyber – Excess | AXA XL | 3/27/24 – 3/27/25 | MTE904079604 | $195,700 |
| 2U, Inc. | Umbrella Liability | The Hartford | 3/27/24 – 3/27/25 | 42 XHU BI5107 | $31,093 |
| 2U, Inc. | Workers Compensation and Employers Liability | The Hartford | 3/27/24 – 3/27/25 | 42 WB AF7YJU | $298,313[2] |

---

[2]    The Debtors have sought approval to pay for and maintain their workers compensation insurance policy in the Wages Motion.

**EXHIBIT D**

**Letters of Credit**

| Debtor | Face Value | Issuing Branch / Parent Bank Nam | Beneficiary |
|---|---|---|---|
| 2U Harkins Road LLC | $2,000,000 | JP Morgan Chase Bank, N.A. | Maryland Department of Commerce |
| 2U, Inc. | $1,663,159 | JP Morgan Chase Bank, N.A. | SRI Ten DCC, LLC |
| 2U, Inc. | $1,500,000 | JP Morgan Chase Bank, N.A. | Prince George's County, Maryland |
| 2U NYC LLC | $2,504,250 | JP Morgan Chase Bank, N.A. | RFR/K 55 Prospect Owner LLC |
| 2U Harkins Road LLC | $2,000,000 | JP Morgan Chase Bank, N.A. | KCP Harkins Fee Owner, LLC |
| 2U, Inc. | $1,657,505.01[3] | JP Morgan Chase Bank, N.A. | JP Morgan Chase Bank, N.A. |

---

[3]    The Debtors hold a Letter of Credit denominated in South African rand (ZAR).  The Debtors converted the value of this Letter of Credit from ZAR to USD on July 24, 2024 using an exchange rate calculator available at https://www.xe.com/currencyconverter.