**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

## APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING AND APPROVING THE APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND <u>NOTICING AGENT TO THE DEBTORS; AND (B) GRANTING RELATED RELIEF</u>

The debtors in possession (collectively, the "***Debtors***") in the above-captioned cases (the "***Chapter 11 Cases***") hereby file this application (this "***Application***") and respectfully state as follows:

## <u>RELIEF REQUESTED</u>

1.      By this Application, the Debtors seek entry of an order substantially in the form attached hereto as **<u>Exhibit A</u>** (the "***Proposed Order***"):    (a) appointing Epiq Corporate

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

Restructuring, LLC ("*Epiq*")[2] as claims and noticing agent (the "*Claims and Noticing Agent*") for the Debtors in these Chapter 11 Cases effective as of the date hereof (the "*Petition Date*"); and (b) granting relief.  In support of this Application, the Debtors submit the *Declaration of Sophie Frodsham in Support of the Debtors' Application for Entry of an Order (A) Authorizing and Approving the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent to the Debtors; and (B) Granting Related Relief* (the "*Frodsham Declaration*"), attached hereto as **Exhibit B**.  The Debtors submit that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise.  The terms of Epiq's retention are set forth in the Engagement Agreement attached hereto as **Exhibit C** (the "*Engagement Agreement*"); *provided*, that Epiq is seeking approval solely of the terms and provisions as set forth in this Application and the Proposed Order.

2.      The Debtors anticipate that there will be thousands of entities to be noticed.  Local Rule 5075-1(b) provides that "[i]n a case in which the number of creditors and equity security holders, in the aggregate, is 250 or more, the estate shall retain, subject to approval of this Court, a claims and noticing agent in accordance with the [Claims Agent Protocol]."  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is required by Local Rule 5075-1(b) and is otherwise in the best interests of both the Debtors' estates and their creditors.

3.      By separate application, the Debtors will seek authorization to retain and employ Epiq as administrative advisor in these Chapter 11 Cases pursuant to section 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "*Bankruptcy Code*") because the

---

[2]      Epiq is the trade name of Epiq Corporate Restructuring, LLC.

administration of these Chapter 11 Cases will require Epiq to perform duties outside the scope of 28 U.S.C. § 156(c).

## JURISDICTION AND VENUE

4.      The United States Bankruptcy Court for the Southern District of New York (this "**_Court_**") has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the _Amended Standing Order of Reference from the United States District Court for the Southern District of New York_, dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**_Bankruptcy Rules_**"), to the entry of a final order by this Court in connection with this Application to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

6.      The statutory and legal predicates for the relief requested herein are section 156(c) of title 28 of the United States Code, Bankruptcy Rules 9013-1(a) and 5075-1(b), and this Court's _Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)_ (dated June 17, 2013) (the "**_Claims Agent Protocol_**").

## BACKGROUND

7.      The Debtors comprise a leading online education technology company providing over eighty million people worldwide with access to high-quality education, including graduate, undergraduate, and non-degree programs.  Through a comprehensive platform, the Debtors enable non-profit universities and colleges to offer a wide range of online courses and programs.  These span diverse fields such as artificial intelligence, data science, business, healthcare, and education,

with over 4,600 programs accessible on the Debtors' platform, edX.org, which provides learners with essential information on admissions, enrollment requirements, application processes, curriculum, tuition, and completion times.  By consolidating a vast array of educational offerings on a single platform, the Debtors offer flexible and affordable pathways for achieving professional and educational goals.  Although operations are predominantly remote, the majority of the Debtors' revenue flows into New York, where the Debtors hold their primary bank accounts, and where they collaborate with prestigious institutions of higher education (many of which are located here in New York City, including New York University, Columbia University, and Fordham University), enhancing their reach and impact within the city and state.

8.     On the date hereof (the "***Petition Date***"), the Debtors filed voluntary petitions in this Court commencing these Chapter 11 Cases.  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of chapter 11 of the Bankruptcy Code.  No trustee or examiner has been requested, and no committee has been appointed in these Chapter 11 Cases.

9.     The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Matthew Norden, Chief Legal Officer and Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions* (the "***Norden Declaration***") and the *Declaration of William Kocovski in Support of Chapter 11 Petitions and First Day Motions* (the "***Kocovski Declaration***" and, together with the Norden Declaration, the "***First Day Declarations***") filed contemporaneously herewith, which are fully incorporated herein by reference.[3]

---

[3]    Capitalized terms used, but not defined in this Application have the meanings ascribed to them in the First Day Declarations.

10.     These Chapter 11 Cases are "prepackaged" cases commenced for the purpose of implementing an agreed restructuring of the Debtors' debt.  Prior to the Petition Date, the Debtors entered into the Restructuring Support Agreement, dated as of July 24, 2024 (as may be amended, modified or supplemented, the "*Restructuring Support Agreement*") with certain creditors including (a) an ad hoc group of certain holders (the "*Ad Hoc Noteholder Group*") of 2.25% convertible senior notes due May 1, 2025, issued under that certain Indenture, dated as of April 23, 2020 (the "*2025 Notes*") and 4.50% senior unsecured convertible notes due February 1, 2030, issued under that certain Indenture, dated as of January 11, 2023 (the "*2030 Notes*" and, together with the 2025 Notes, the "*Notes*") represented by Weil, Gotshal & Manges LLP, (b) Greenvale Capital LLP ("*Greenvale*" and, together with the Ad Hoc Noteholder Group, the "*Consenting Noteholders*") as holder of the Notes represented by Schulte Roth & Zabel LLP, and (c) an ad hoc group of certain First Lien Lenders (the "*First Lien Ad Hoc Group*" and, together with the Consenting Noteholders, the "*Consenting Stakeholders*") represented by Milbank LLP.  As of July 24, 2024, the Consenting Stakeholders held approximately 82% of the Debtors' first lien funded debt, 86.9% of the 2025 Notes, and 95.2% of the 2030 Notes.

11.     On the Petition Date, the Debtors filed a plan of reorganization reflecting the terms of the Restructuring Support Agreement (as may be amended, modified, or supplemented, the "*Plan*") in addition to a disclosure statement with respect to the Plan (as may be amended, modified or supplemented, the "*Disclosure Statement*").  The Plan contemplates that all Allowed General Unsecured Claims (as defined in the Plan) will be paid in full or will otherwise be unimpaired.[4]

---

[4]    Contemporaneously with filing this Application, the Debtors are filing a motion to seek this Court's authorization to reject certain unexpired commercial real property leases.

12.     Prior to the Petition Date, the Debtors commenced solicitation of votes on the Plan from holders of Class 3 First Lien Claims and Class 4 Unsecured Notes Claims (each as defined in the Plan), the only classes entitled to vote under the Plan. Subject to this Court's approval, votes with respect to the Plan are due on August 21, 2024. On the Petition Date, the Debtors filed a motion seeking, among other things, (a) conditional approval of the Disclosure Statement, and (b) to schedule a combined hearing to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan. The Debtors seek to obtain confirmation of the Plan as quickly as this Court's schedule and requisite notice periods will permit.

### EPIQ'S QUALIFICATIONS

13.     Epiq employs leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Epiq's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases in matters of this size and complexity. Epiq's professionals have acted as Debtors' administrative advisor and/or official claims and noticing agent in many large bankruptcy cases in districts nationwide, including: *See, e.g.*, *In re Credivalores – Crediservicios S.A.*, Case No. 24-10837 (DSJ) (Bankr. S.D.N.Y. May 16, 2024); *In re Andrade Gutierrez Engenharia S.A.*, Case No. 22-11425 (MG) (Bankr. S.D.N.Y. October 31, 2022); *In re Lumileds Holding B.V., et al.*, Case No. 22-11155 (LGB) (Bankr. S.D.N.Y. August 29, 2022*); In re Madison Square Boys and Girls Club, Inc.*, Case No. 22-10910 (SHL) (Bankr. S.D.N.Y. June 29, 2022); *In re The Roman Catholic Diocese of Rockville Centre, New York et al.,* Case No. 20-12345 (SCC) (Bankr. S.D.N.Y. October 1, 2020); *In re Grupo Aeromexico, S.A.B. de C.V., et al.,* Case No. 20-11563 (SCC) (Bankr. S.D.N.Y. June 30, 2020); *In re Jason Industries, et al.,* Case No. 20-22766 (RDD) (Bankr. S.D.N.Y. June 24, 2020); *In re Ditech Holding Corporation, et al.,* Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Feb. 11, 2019); *In re Trident*

*Holding Company, LLC, et al.,* Case No. 19-10384 (SHL) (Bankr. S.D.N.Y. Feb. 10, 2019); *In re Tops Holding II Corporation, et al.,* Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re China Fishery Group Ltd.*, Case No. 16-11895 (JLG) (Bankr. S.D.N.Y. May 24, 2017); *In re Roust Corporation*, Case No. 16-23786 (RDD) (Bankr. S.D.N.Y. Jan. 10, 2017); *In re Atlas Resource Partners, L.P.*, Case No. 16-12149 (SHL) (Bankr. S.D.N.Y. Aug. 2, 2016); *In re Nautilus Holdings Ltd.*, Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. June 25, 2014); *In re LHI Liquidation Co. (f/k/a Loehmann's Holdings Inc.)*, Case No. 13-14050 (MG) (Bankr. S.D.N.Y. Dec. 17, 2013); *In re RDA Holding Co.*, Case No. 13-22233 (RDD) (Bankr. S.D.N.Y. Feb. 21, 2013); *In re HMX Acquisition Corp.*, Case No. 12-14300 (MEW) (Bankr. S.D.N.Y. Oct. 23, 2012); *In re K-V Discovery Solutions, Inc.*, Case No. 12-13346 (ALG) (Bankr. S.D.N.Y. Aug. 7, 2012); *In re Dewey & LeBoeuf LLP*, Case No. 12-12321 (MG) (Bankr. S.D.N.Y. May 29, 2012); *In re Hawker Beechcraft, Inc.*, Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. May 4, 2012).[5]

14.     Epiq will follow procedures that conform to applicable guidelines promulgated by the Clerk (as defined below) and the Judicial Conference and any procedures this Court might establish by order during these Chapter 11 Cases.

15.     By appointing Epiq as the Claims and Noticing Agent in these Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the United States Bankruptcy Court for the Southern District of New York (the "***Clerk***") will be relieved of the administrative burden of processing proofs of claims, if any.  Additionally, the Debtors submit that appointing Epiq as Claims and Noticing Agent in these Chapter 11 Cases will provide the most cost-effective and efficient administrative service.  The Debtors believe that

---

[5]     Because of the voluminous nature of the orders cite herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtor's proposed counsel.

based on Epiq's experience, reputation, and the reasonableness of its fees, Epiq is well qualified

to serve as Claims and Noticing Agent and that such retention is in the best interests of the Debtors'

estates and their creditors,

### SERVICES TO BE PROVIDED

16.    This Application pertains only to the work to be performed by Epiq under the

Clerk's Office's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 5075-1, and

any work to be performed by Epiq outside of this scope is not covered by this Application or by

any order granting approval hereof.  Specifically, Epiq will perform the following tasks in its role

as Claims and Noticing Agent, as well as all quality control relating thereto:

(a)    prepare and serve required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or this Court, including (i) notice of the commencement of these Chapter 11 Cases and the initial meeting of creditors, if any, under section 341(a) of the Bankruptcy Code; (ii) notice of any claims bar date, if necessary; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement or confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or this Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

(b)    maintain an official copy of the Debtors' schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases, statements of financial affairs, schedules of current income and expenditures, and schedules of executory contracts and unexpired leases (collectively, the "***Schedules***"), to the extent the filing of the Schedules is necessary in these Chapter 11 Cases, listing the Debtors' known creditors and the amounts owed thereto, if the requirement to file such Schedules is not waived by this Court;

(c)    maintain (i) a list of all potential creditors, equity holders, and other parties in interest; and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update and make said lists available upon request by a party in interest or the Clerk;

(d)    if necessary, furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form

are approved by this Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     for *all* notices, applications, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

(g)     process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     provide an electronic interface for filing proofs of claim;

(i)     (i) maintain the official claims register for the Debtors (collectively, the "*Claims Registers*") on behalf of the Clerk on a case-specific website; (ii) upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and (iii) specify in the Claims Registers the following information for each claim docketed:  (A) the claim number assigned, (B) the date received, (C) the name and address of the claimant and agent, if applicable, who filed the claim, (D) the amount asserted, (E) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.), (F) the applicable Debtors, and (G) any disposition of the claim;

(j)     provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(k)     implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(l)     record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Epiq, not less than weekly;

(n)     upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(o)    monitor this Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(p)    identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(q)    assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors or this Court, including through the use of a case website and/or call center;

(r)    if these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Epiq of entry of the order converting the cases;

(s)    thirty days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to this Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

(t)    within seven days of notice to Epiq of entry of an order closing these Chapter 11 Cases, provide to this Court the final version of the Claims Registers as of the date immediately before the close of these Chapter 11 Cases; and

(u)    at the close of these Chapter 11 Cases, and after consultation with the Clerk's office, transport original documents to the Clerk's office in the proper electronic format.

## **PROFESSIONAL COMPENSATION**

17.    The Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of this Court. Epiq agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall

meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from this Court.

18.    As part of the overall compensation payable to Epiq under the terms of the Engagement Agreement, the Debtors have agreed to certain indemnification obligations.  The Engagement Agreement provides that the Debtors will indemnify, defend, and hold Epiq, its affiliates, parents and each such entity's officers, members, directors, agents, representatives, managers, consultants, and employees harmless under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement.  Both the Debtors and Epiq believe that such provisions are customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these Chapter 11 Cases.

19.    Prior to the Petition Date, the Debtors provided Epiq a retainer in the amount of $25,000.  Epiq seeks to hold the retainer under the Engagement Agreement during these Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

**DISINTERESTEDNESS**

20.    Although the Debtors do not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Frodsham Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

21.     Moreover, in connection with its retention as Claims and Noticing Agent, Epiq

represents in the Frodsham Declaration, among other things, that:

(a)     Epiq is not a creditor of the Debtors;

(b)     Epiq will not consider itself employed by the United States government and shall
not seek any compensation from the United States government in its capacity as the
Claims and Noticing Agent in these Chapter 11 Cases;

(c)     by accepting employment in these Chapter 11 Cases, Epiq waives any rights to
receive compensation from the United States government in connection with these
Chapter 11 Cases;

(d)     in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Epiq
will not be an agent of the United States and will not act on behalf of the United
States;

(e)     Epiq will not employ any past or present employees of the Debtors in connection
with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

(f)     Epiq is a "disinterested person" as that term is defined in section 101(14) of the
Bankruptcy Code with respect to the matters upon which it is engaged;

(g)     in its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Epiq will
not intentionally misrepresent any fact to any person;

(h)     Epiq shall be under the supervision and control of the Clerk's Office with respect
to the receipt and recordation of claims and claim transfers;

(i)     Epiq will comply with all requests of the Clerk's Office and the guidelines
promulgated by the Judicial Conference of the United States for the implementation
of 28 U.S.C. § 156(c); and

(j)     none of the services provided by Epiq as Claims and Noticing Agent in these
Chapter 11 Cases shall be at the expense of the Clerk's Office.

22.     Epiq will supplement its disclosure to this Court if any facts or circumstances are

discovered that would require such additional disclosure.

## COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

23.     This Application complies with the Claims Agent Protocol and conforms to the

standard application in use in this Court. Specifically, the Debtors selected Epiq as Claims and

Noticing Agent after engaging in the review and competitive comparison of at least three (3)

proposals.  The Debtors submit that Epiq's rates are competitive and reasonable given Epiq's

quality of services and expertise.  The terms of Epiq's retention are set forth in the Engagement

Agreement; *provided*, that to the extent there is any inconsistency between this Application, the

Proposed Order, and the Engagement Agreement, the Proposed Order shall govern.

## ADEQUACY OF SECURITY PROTOCOLS

24.    Epiq protects client data and information systems through a multi-layered security

defense approach, overseen by a Chief Information Security Officer and a dedicated Cyber

Security team.  Epiq maintains a robust information security program based on the ISO 27001

framework and implements data safeguards, including but not limited to: access controls, secure

facilities, network and application security, data encryption, security logging and monitoring, risk

assessments, endpoint protection, vulnerability assessments, and physical security.  In addition to

ISO 27001 certification, Epiq receives a Service Organization Controls (SOC 2 Type 2) Report on

an annual basis. This report includes all 5 trust principles (Confidentiality, Availability, Processing

Integrity, Security and Privacy).  Epiq will promptly notify the Office of the United States Trustee

and the Court of any data security breach.

## BASIS FOR RELIEF

25.    Section 156(c) of title 28 of the United States Code, which governs the staffing and

expenses of bankruptcy courts, authorizes this Court to use "facilities" or "services" other than the

Clerk's Office for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the
> court's premises, which pertain to the provision of notices, dockets,
> calendars, and other administrative information to parties in cases
> filed under the provisions of title 11, United States Code, where the
> costs of such facilities or services are paid for out of the assets of the
> estate and are not charged to the United States. The utilization of
> such facilities or services shall be subject to such conditions and
> limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

26.     In addition, Local Rule 5075-1(a) provides:

> The Court may direct, subject to the supervision of the Clerk, the use of agents either on or off the Court's premises to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judges' calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

Local Rule 5075-1(a).

27.     This Court may also rely on its general equitable powers to grant the relief requested in this Application. Section 105 of the Bankruptcy Code empowers this Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

28.     Local Rule 5075-1(b) requires the retention, pursuant to an order of this Court, of an approved claims and noticing agent in a case having 250 or more creditors and/or equity security holders, which is applicable to these Chapter 11 Cases.

29.     Given the number of creditors and other parties in interest involved in these Chapter 11 Cases, the Debtors seek an order appointing Epiq as the Claims and Noticing Agent in these Chapter 11 Cases effective as of the Petition Date pursuant to 28 U.S.C. § 156(c) and Local Rule 5075-1 to relieve this Court and the Clerk's Office of administrative burdens.

30.     At the Debtors' request, Epiq has been serving in a Claims and Noticing Agent capacity since prior to the Petition Date with assurances that the Debtors would seek approval of its employment and retention effective as of the Petition Date so that Epiq may be compensated for its pre-application services in these Chapter 11 Cases. The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided herein,

because Epiq has provided and continues to provide valuable services to the Debtors' estates in the interim period.

31.    Courts in this jurisdiction have routinely approved *nunc pro tunc* employment for claims and noticing agents similar to that requested herein. *See, e.g.*, *Lumileds Holding B.V., et al.* (Bankr. S.D.N.Y. Aug. 31, 2022) [Docket No. 68] (approving appointment of claims and noticing agent effective to the petition date); *In re GBG USA Inc.*, Case No. 21-11369 (Bankr. S.D.N.Y. Sept. 1, 2021) [Docket No. 154] (same); *In re Century 21 Dep't Stores LLC*, Case No. 20-12097 (Bankr. S.D.N.Y. Sept. 14, 2020) [Docket No. 48] (same); *In re Barneys New York, Inc.*, Case No. 19-36300 (Bankr.S.D.N.Y. Aug. 7. 2019) [Docket No. 55] (same); *In re Hollander Sleep Prods., LLC*, Case No. 19-11608 (Bankr. S.D.N.Y. May 19, 2019) [Docket No. 12] (same).

32.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, the Debtors respectfully request entry of the Proposed Order, pursuant to 28 U.S.C. § 156(c) and Local Rule 5075-1, approving this Application to retain and employ Epiq as the Claims and Noticing Agent in these Chapter 11 Cases, effective as of the Petition Date.

## MOTION PRACTICE

33.    This Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Application. Accordingly, the Debtors submit that this Application satisfies Local Rule 9013-1(a).

## NOTICE

34.    Notice of this Motion will be given to: (a) the United States Trustee for Region 2; (b) Milbank LLP as counsel to the First Lien Ad Hoc Group; (c) the administrative agent and collateral agent under the first lien credit agreement; (d) Weil, Gotshal & Manges LLP as counsel to the Ad Hoc Noteholder Group; (e) Schulte Roth & Zabel LLP as counsel to Greenvale; (f) the

indenture trustees for the Notes; (g) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (h) the United States Attorney's Office for the Southern District of New York; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; and (k) all parties entitled to notice pursuant to Local Rule 9013-1(b).  The Debtors submit that, under the circumstances, no other or further notice is required.

35.    A copy of this Application is available from (a) this Court's website, www.nysb.uscourts.gov, and (b) the website maintained by Epiq, at https://dm.epiq11.com/2U.

## NO PRIOR APPLICATION

36.    The Debtors have not made any prior motion or application for the relief sought in this Application to this Court or any other court.

**WHEREFORE,** the Debtors respectfully request that this Court enter the Proposed Order,

granting the relief requested in this Application and such other and further relief as may be just

and proper.

**LATHAM & WATKINS LLP**

Dated:  July 25, 2024
        New York, New York

By:    _/s/ George A. Davis_
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  george.davis@lw.com
        george.klidonas@lw.com
        anu.yerramalli@lw.com
        randall.weber-levine@lw.com
        scott.yousey@lw.com

_Proposed Counsel to the Debtors and Debtors in
Possession_

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

### ORDER (A) AUTHORIZING AND
### APPROVING THE APPOINTMENT OF
### EPIQ CORPORATE RESTRUCTURING,
### LLC AS CLAIMS AND NOTICING AGENT TO
### THE DEBTORS AND (B) GRANTING RELATED RELIEF

Upon the application (the "***Application***")[2] of the Debtors for an order (this "***Order***"): (a) appointing Epiq as the claims and noticing agent (the "***Claims and Noticing Agent***") to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer the proofs of claim filed in these Chapter 11 Cases, and (iii) provide such other administrative services—as required by the Debtors—that would fall within the purview of services to be provided by the Clerk's Office; and (b) granting related relief, all as more fully set forth in the Application; and upon the Frodsham Declaration submitted in support of the Application; and this Court having reviewed the Application and the First Day Declarations; and the Debtors having estimated that there are in excess of 1,000 creditors in these Chapter 11 Cases, some which may file proofs of claim, and it appearing that the receiving, docketing and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk;

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

and this Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and this Court being satisfied that the Claims Noticing Agent has the capability and experience to provide such services and that the Claims and Noticing Agent does not hold an interest adverse to the Debtors or the estates respecting the matters upon which it is to be engaged; and good and sufficient notice of the Application having been given; and no other or further notice being required; and it appearing that the employment of the Claims and Noticing Agent is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and consideration of the Application and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and a hearing having been held, if any, to consider the relief requested in the Application (the "***Hearing***"); and upon the First Day Declarations, the Frodsham Declaration, and the record of the Hearing; and all the proceedings before this Court; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

### ORDERED, ADJUDGED AND DECREED THAT:

1.      The Application is GRANTED as set forth herein.

2

2.      All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.      Notwithstanding the terms of the Engagement Letter attached to the Application, the Application is approved solely as set forth in this Order.

4.      The Debtors are authorized to retain Epiq as Claims and Noticing Agent effective as of the Petition Date under the terms of the Engagement Agreement, and the Claims and Noticing Agent is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in this Chapter 11 Case, and all related tasks, all as described in the Application on a final basis (the "***Claims and Noticing Services***").

5.      Epiq shall serve as the interim custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these Chapter 11 Cases and is authorized and directed to maintain the official Claims Register for the Debtors, to provide public access to every proof of claim unless otherwise ordered by this Court, and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk who remains the official custodian of court records under 28 U.S.C. § 156(e).

6.      Epiq is authorized and directed to provide an electronic interface for filing proofs of claim—to the extent necessary—and to obtain a post office box or address for the receipt of proofs of claim.

7.      Epiq is authorized to take such other action to comply with all duties set forth in the Application.

8.      The Debtors are authorized to compensate Epiq in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and

necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9.      Epiq shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

10.     The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided*, that the parties may seek resolution of the matter from this Court if resolution is not achieved.

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Order shall be an administrative expense of the Debtors' estates.

12.     Epiq may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and thereafter, Epiq may hold its advance under the Engagement Agreement during these Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

13.     The Debtors shall indemnify Epiq under the terms of the Engagement Agreement, as modified pursuant to this Order.

14.     That any limitation of liability contained in the Engagement Agreement shall have no effect during these Chapter 11 Cases.

15.     All requests by Epiq for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to this Court and shall be subject to review by this Court to ensure that payment of such indemnity conforms to the terms of the

4

Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, that in no event shall Epiq be indemnified in the case for its own bad faith, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

16.     In the event that Epiq seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Epiq's own applications, both interim and final, but determined by this Court after notice and a hearing.

17.     In the event Epiq is unable to provide the services set out in this Order, Epiq will immediately notify the Clerk and the Debtors' counsel and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

18.     The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Epiq, but is not specifically authorized by this Order.

19.     The Debtors and Claims and Noticing Agent are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order in accordance with the Application.

20.     Epiq shall not cease providing claims processing services during these Chapter 11 Cases for any reason, including nonpayment, without an order of this Court.

21.     In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

22.      This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated:_____, 2024

_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Frodsham Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

## DECLARATION OF SOPHIE FRODSHAM IN
## SUPPORT OF DEBTORS' APPLICATION FOR ENTRY
## OF AN ORDER (A) AUTHORIZING AND APPROVING THE
## APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC
## AS CLAIMS AND NOTICING AGENT AND (B) GRANTING RELATED RELIEF

I, Sophie Frodsham, under penalty of perjury, declare as follows:

1.      I am a Consulting Director at Epiq Corporate Restructuring, LLC ("***Epiq***"), a chapter 11 administrative services firm with offices at 777 Third Avenue, 12th Floor New York, New York 10017.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This declaration (this "***Declaration***") is made in support of the *Application of Debtors For Entry of an Order (A) Authorizing and Approving the Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent to the Debtors; and (B) Granting Related Relief*, filed contemporaneously herewith (the "***Application***").[2]

3.      Epiq employs leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Epiq's professionals have

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

[2]      Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases in matters of this size and complexity.  Epiq's professionals have acted as Debtors' administrative advisor and/or official claims and noticing agent in many large bankruptcy cases in districts nationwide, including: *In re Credivalores – Crediservicios S.A.*, Case No. 24-10837 (DSJ) (Bankr. S.D.N.Y. May 16, 2024); *In re Andrade Gutierrez Engenharia S.A.*, Case No. 22-11425 (MG) (Bankr. S.D.N.Y. October 31, 2022); *In re Lumileds Holding B.V., et al.*, Case No. 22-11155 (LGB) (Bankr. S.D.N.Y. August 29, 2022*); In re Madison Square Boys and Girls Club, Inc.*, Case No. 22-10910 (SHL) (Bankr. S.D.N.Y. June 29, 2022); *In re The Roman Catholic Diocese of Rockville Centre, New York et al.,* Case No. 20-12345 (SCC) (Bankr. S.D.N.Y. October 1, 2020); *In re Grupo Aeromexico, S.A.B. de C.V., et al.,* Case No. 20-11563 (SCC) (Bankr. S.D.N.Y. June 30, 2020); *In re Jason Industries, et al.,* Case No. 20-22766 (RDD) (Bankr. S.D.N.Y. June 24, 2020); *In re Ditech Holding Corporation, et al.,* Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Feb. 11, 2019); *In re Trident Holding Company, LLC, et al.,* Case No. 19-10384 (SHL) (Bankr. S.D.N.Y. Feb. 10, 2019); *In re Tops Holding II Corporation, et al.,* Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. Feb. 26, 2018); *In re China Fishery Group Ltd.*, Case No. 16-11895 (JLG) (Bankr. S.D.N.Y. May 24, 2017); *In re Roust Corporation*, Case No. 16-23786 (RDD) (Bankr. S.D.N.Y. Jan. 10, 2017); *In re Atlas Resource Partners, L.P.*, Case No. 16-12149 (SHL) (Bankr. S.D.N.Y. Aug. 2, 2016); *In re Nautilus Holdings Ltd.*, Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. June 25, 2014); *In re LHI Liquidation Co. (f/k/a Loehmann's Holdings Inc.)*, Case No. 13-14050 (MG) (Bankr. S.D.N.Y. Dec. 17, 2013); *In re RDA Holding Co.*, Case No. 13-22233 (RDD) (Bankr. S.D.N.Y. Feb. 21, 2013); *In re HMX Acquisition Corp.*, Case No. 12-14300 (MEW) (Bankr. S.D.N.Y. Oct. 23, 2012); *In re K-V Discovery Solutions, Inc.*, Case No. 12-13346 (ALG) (Bankr. S.D.N.Y. Aug. 7, 2012); *In re Dewey*

*& LeBoeuf LLP*, Case No. 12-12321 (MG) (Bankr. S.D.N.Y. May 29, 2012); *In re Hawker Beechcraft, Inc.*, Case No. 12-11873 (SMB) (Bankr. S.D.N.Y. May 4, 2012).[3]

4.    As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Epiq will perform, at the request of the Office of the Clerk of this Court (the "***Clerk's Office***"), the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement.  In performing such services, Epiq will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **<u>Exhibit C</u>** to the Application.

5.    Epiq represents, among other things, the following:

(a)    Epiq is not a creditor of the Debtors;

(b)    Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

(c)    By accepting employment in these Chapter 11 Cases, Epiq waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

(d)    In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Epiq will not be an agent of the United States and will not act on behalf of the United States;

(e)    Epiq will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

(f)    Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)    In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Epiq will not intentionally misrepresent any fact to any person;

(h)    Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

---

[3]    Because of the voluminous nature of the orders cite herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtor's proposed counsel.

(i)     Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Epiq as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

6.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Epiq, nor any employee thereof, has any materially adverse connection to the Debtors, its creditors, or other relevant parties.  Epiq may have relationships with certain of the Debtors' creditors as a vendor or in connection with cases in which Epiq serves or has served in a neutral capacity as noticing, claims, and balloting agent for another chapter 11 debtors.

7.      Epiq conducted a review, completed under my supervision, of the identified potential parties in interest (the "***Potential Parties in Interest***") in these Chapter 11 Cases based on a query of an internal client database containing names of individuals and entities that are present or recent clients of Epiq.  The list of Potential Parties in Interest was provided by the Debtors and is annexed hereto as **Schedule 1**.  To the best of my knowledge, and based solely upon information provided to me by the Debtors, Epiq does not have any materially adverse connection to the Debtors, their creditors or other relevant parties, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.  To the extent that Epiq's conflicts check has revealed that certain Potential Parties in Interest were connected to Epiq, these parties have been identified on a list annexed hereto as **Schedule 2** (the "***Client Match List***").  To the best of my knowledge, any such connections between Epiq and any parties on the Client Match List is completely unrelated to these Debtors.

8.      Epiq's personnel may have relationships with some of the Debtors' creditors or other parties in interest.  However, to the best of my knowledge, such relationships, to the extent

they exist, are of a personal nature and completely unrelated to these Chapter 11 Cases. Epiq has

and will continue to represent clients in matters unrelated to these Chapter 11 Cases. In addition,

Epiq has had and will continue to have relationships in the ordinary course of its business with

certain vendors, professionals, and other parties in interest that may be involved in the Debtors'

case in matters unrelated to this case. Epiq may also provide professional services to entities or

persons that may be creditors or parties in interest in these Chapter 11 Cases, which services do not

directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors. To

the best of my knowledge, neither Epiq, nor any employees thereof, represents any interest

materially adverse to the Debtors' estates with respect to any matter upon which Epiq is to be

engaged.

9.      Epiq shares a corporate parent with certain companies that provide integrated

technology products and services to the legal profession for electronic discovery, class action

settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory

compliance. Given the legal and operational separateness of Epiq from its affiliates and the

administrative nature of the services performed by such companies, Epiq does not believe that a

conflict would arise solely from any relations or claim of an Epiq affiliate or its corporate parent.

10.      Although the Debtors does not propose to employ Epiq under section 327 of the

Bankruptcy Code (because such retention will be sought by separate application), Epiq has

nonetheless reviewed its electronic database to determine whether it has any relationships with the

entities provided by the Debtors. At this time, we are not aware of any relationship which would

present a disqualifying conflict of interest. Should Epiq discover any new relevant facts or

relationships bearing on the matters described herein during the period of its retention, Epiq will

use reasonable efforts to promptly file a supplemental declaration. Epiq will also comply with all

requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).[4]

11.    Should Epiq discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Epiq will use reasonable efforts to promptly file a supplemental affidavit.

12.    In performing the services of Claims and Noticing Agent, Epiq will charge the Debtors the rates set forth in the Engagement Letter.

13.    Epiq will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

14.    Neither Epiq nor its affiliates are party to any agreements where it/they receive(s) consideration in exchange for transferring information derived from its role as a claims agent under 28 U.S.C. § 156(c) to non-client third parties.

15.    Based on the foregoing, I believe that Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

*[Remainder of page intentionally left blank.]*

---

[4]    Epiq shall exclude these Chapter 11 Cases from any file sharing arrangement with any third party.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my information, knowledge, and belief.

Dated:  <u>July 25, 2024</u>
New York, New York

<u>*/s/ Sophie Frodsham*</u>
Sophie Frodsham
Consulting Director
Epiq Corporate Restructuring, LLC

**<u>Exhibit C</u>**

**Engagement Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client.  Charges for the Services will be based on the pricing schedule attached hereto (the "Pricing Schedule").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding.  The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.  Charges.**

3.1   For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will bill Client monthly.  All invoices shall be due and payable upon receipt within thirty (30) business days.

3.2   Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2025.  If such

US-DOCS\152137131.2



annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

3.3 Client agrees to pay Epiq for all materials reasonably necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable and documented out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4 Client shall pay or reimburse all taxes applicable to Services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5 Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6 In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7 To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement. The Retainer is due within five (5) business days after execution of this Agreement. Epiq shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

**4. Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement, except to the extent that such damages or losses were a direct result of fraud, gross negligence, or willful misconduct by Epiq or any of its affiliates or any of Epiq's or its affiliates' officers, members, directors, agents, representatives, managers, consultants, and/or employees.



5. **Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

6. **Disposition of Data.**

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq. Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2    Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

7. **Indemnification.**

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an

3



"Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. **Limitation of Liability**

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



**9.  Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**10. Confidential On-Line Workspace**

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

**11.  General**

11.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties or ordered by the Bankruptcy Court.

11.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

US-DOCS\152137131.2



11.7   Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8   This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9   All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.   The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

US-DOCS\152137131.2



11.10    Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

If to Epiq:

Epiq Corporate Restructuring, LLC
777 Third Avenue, 12th Floor
New York, New York 10017
Attn:  Brad Tuttle

If to Client:

2U, Inc.
2345 Crystal Drive, Suite 1100
Arlington, Virginia 22202
Attn:  Paul S. Lalljie (plalljie@2u.com)
           Matthew Norden (mnorden@2u.com)
           Lillian Brownstein (Ibrownstein@2u.com)

With a copy to:

Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Attn:  George A. Davis (george.davis@lw.com)
           George Klidonas (george.klidonas@lw.com)
           Anupama Yerramalli (anu.yerramalli@lw.com)

11.11 Invoices sent to Client should be delivered to the following address:

2U, Inc.
2345 Crystal Drive, Suite 1100
Arlington, Virginia 22202
Attn:  Paul S. Lalljie (plalljie@2u.com)
           Matthew Norden (mnorden@2u.com)
           Lillian Brownstein (Ibrownstein@2u.com)

11.12    The "Effective Date" of this Agreement is July 11, 2024.

7



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____
Name:  Brad Tuttle
Title:    General Manager

**CLIENT**

By: _____
Name:  Matthew Norden

Title:    Chief Financial Officer and Chief Legal Officer

8



# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and



- Asserted amount and classification of the claim.

➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.


## NOTICING

➢ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and

10



manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.

➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditors having filed a proof of claim/interest.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties. Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

US-DOCS\152137131.2



- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

## <u>MISCELLANEOUS</u>

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.

12



# PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| Clerical/Administrative Support | WAIVED |
| IT/Programming | $55.00 - $85.00 |
| Case Managers | $75.00 - 165.00 |
| Project Managers/Consultants/ Directors | $165.00 - $185.00 |
| Solicitation Consultant | $190.00 |
| Executive Vice President, Solicitation | $195.00 |
| Executives | No Charge |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.12 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL* |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.05 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| Memory Stick (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

---

[1]  Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

*Quoted at time of request for high volume blasts to all creditors

13



On-Line Claim Filing                                    NO CHARGE

## **CALL CENTER RATES**

Standard Call Center Setup                              NO CHARGE

Call Center Operator                                    $55 per hour

Voice Recorded Message                                  $0.34 cents/minute

## **OTHER SERVICES RATES**

Custom Software, Workflow
and Review Resources                                    Quoted at time of request

Strategic Communication Services                        Quoted at time of request

Escrow Services                                         Quoted at time of request /competitive rates

Securities Exchange/ATOP Event                          $50,000 per event

eDiscovery                                              Quoted at time of request, bundled pricing available

Virtual Data Room --
Confidential On-Line Workspace                          Quoted at time of request

Disbursements -- Check and/or Form 1099                 Quoted at time of request

Disbursements -- Record to Transfer Agent               Quoted at time of request

US-DOCS\152137131.2

## Schedule 1

## Parties in Interest List[1]

### 1.    Debtors and Non-Debtor Affiliates

2U GETSMARTER (UK) LIMITED
2U GETSMARTER (US), LLC
2U GETSMARTER, LLC
2U GROUP (UK) LIMITED
2U HARKINS ROAD LLC
2U HK LLC
2U KEIH HOLDCO, LLC
2U NYC, LLC
2U, INC.
CRITIQUEIT, INC.
EDX BOOT CAMPS (AUSTRALIA) PTY
   LIMITED
EDX BOOT CAMPS (CANADA) ULC
EDX BOOT CAMPS (GERMANY) GMBH
EDX BOOT CAMPS (UK) LIMITED
EDX BOOT CAMPS LLC

EDX BOOT CAMPS MEXICO S. DE R.L.
   DE C.V.
EDX INC.
EDX LLC
GET EDUCATED INTERNATIONAL
   PROPRIETARY LIMITED
GET EDUCATED PROPRIETARY
   LIMITED
GETSMARTER ONLINE LTD
K2017143886 PROPRIETARY LIMITED
TES, INC.
TES, LLC
TESI MERGER SUB, INC.
TRILOGY EDUCATION SERVICES
   INTERNATIONAL LIMITED
TRILOGY EDUCATION SERVICES, INC.

### 2.    Debtors' Previous Names (including previous DBA and Trade Names)[2]

CIRCUIT SUB LLC
CIRCUIT SUB PBLLC
JOBTRACK, INC.
THE FIREHOSE PROJECT
TRILOGY EDUCATION SERVICES
   (AUSTRALIA) PROPRIETARY
   LIMITED
TRILOGY EDUCATION SERVICES
   (CANADA) ULC

TRILOGY EDUCATION SERVICES
   (GERMANY) GMBH
TRILOGY EDUCATION SERVICES
   MEXICO, S. DE R.L. DE C.V.
TRILOGY EDUCATION SERVICES UK
   LTD.
TRILOGY EDUCATION SERVICES, LLC

### 3.    Debtors' Restructuring Professionals

ALIXPARTNERS LLP
EPIQ CORPORATE RESTRUCTURING,
   LLC

KATTEN MUCHIN ROSENMAN LLP
LATHAM & WATKINS LLP

---

[1]    This list (and the categories contained herein) are for purposes of a conflicts check and should not be relied upon by any party as a list of creditors or for any other purpose.  As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible.  Accordingly, a party that otherwise would fall under multiple categories is likely to be listed under only one category.

[2]    This category includes all known prior names in the eight years prior to the Petition Date.

US-DOCS\150090743.15

MOELIS & COMPANY LLC
PWC US TAX LLP

**4.    Restructuring Professionals for Lenders, Trustees, Agents, Other Secured Parties, and Noteholders**

ALLEN OVERY SHERMAN STERLING (US) LLP
BRIAN NAPACK
FTI CONSULTING, INC.
GREG O'BRIEN
HEIDRICK & STRUGGLES, INC.

HOLLAND & KNIGHT LLP
HOULIHAN LOKEY, INC.
MILBANK LLP
ROCKPORT ADVISORS
SCHULTE ROTH & ZABEL LLP
WEIL, GOTSHAL & MANGES LLP

**5.    Debtors' Other Professionals**

ADAIR GOLDBLATT BIEBER
AZETS
BAKER & HOSTETLER LLP
BDO MEXICO
BDO USA LLP
BLANK ROME, LLP
BOTKIN CHIARELLO CALAF
BOWMAN GILFILLAN INCORPORATED
C STREET ADVISORY GROUP
CADWALADER, WICKERSHAM & TAFT LLP
CASSELS LLP
COLAS & ASSOCIATES
COMPENSIA
COOLEY LLP
COVINGTON & BURLING LLP
CRAFT MEDIA
DCI GROUP AZ, LLC
DUANE MORRIS
EMMAUS ACCOUNTANTS LTD
EQUITY METHODS
FORVIS LLP
GIBBONS P.C.
GOMEZ-ACEBO & POMBO ABOGADOS, S. L. P.
GONRING & SPAHN (ANDY SPAHN & ASSOC.)
GRAY GLOBAL ADVISORS
GREENBERG TRAURIG, LLP

HOGAN LOVELLS US LLP
ISS CORPORATE
KELLEY DRYE & WARREN LLP
KPMG LLP
LAURA BROWN & ASSOC CROSSROADS STRATEGIES
LAVERY DE BILLY, L.L.P.
LITTLER MENDELSON P.C.
MCINNES COOPER
MINTERELLISON
MORGAN, LEWIS & BOCKIUS LLP
OFFIT KURMAN
PAUL HASTINGS
POTOMAC LAW GROUP
RICHARDS LAYTON & FINGER
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
SKW SCHWARZ
STOUT
TRANSASIA LAWYERS
TYDINGS & ROSENBERG LLP
VINCE SAMPSON (COOLEY LLP)
WILLIS TOWERS WATSON
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
WILSON SONSINI GOODRICH & ROSATI
WYRICK ROBBINS YATES & PONTON LLP

2

### 6.    Lenders, Trustees, Agents, and Other Secured Parties

ACE LIMITED
ALTER DOMUS (US) LLC
APOLLO CAPITAL MANAGEMENT,
   L.P.
BAYSIDE CAPITAL LLC
BLACKWELL PARTNERS, LLC
BLANTYRE CAPITAL LIMITED
CHUBB
CONTRARIAN CAPITAL
   MANAGEMENT,LLC
DEPARTMENT OF COMMERCE OF THE
   STATE OF MARYLAND

HG VORA CAPITAL MANAGEMENT,
   LLC
HIG BAYSIDE
HPS INVESTMENT PARTNERS, LLC
MARATHON ASSET MANAGEMENT,
   L.P.
MERCER LLC
MORGAN STANLEY & CO LLC
MUDRICK CAPITAL MANAGEMENT
   L.P.
PRINCE GEORGE'S COUNTY
   MARYLAND
THE GOLDMAN SACHS GROUP, INC.

### 7.    Significant Noteholders and Indenture Trustees

AMERIPRISE FINANCIAL INC
BAYSIDE CAPITAL LLC
BLANTYRE CAPITAL LTD
CAPSTONE INVESTMENT ADVISORS
   LLC
CONTEXT CAPITAL MANAGEMENT
   LLC
CURATED WEALTH PARTNERS LLC
DEEPCURRENTS INVESTMENT
   GROUP LLC

GREENVALE CAPITAL LLP
HUDSON BAY CAPITAL
   MANAGEMENT
MUDRICK CAPITAL MANAGEMENT
   L.P.
SIG HOLDING LLC
WALLEYE CAPITAL LLC
WILMINGTON TRUST, NATIONAL
   ASSOCIATION

### 8.    Bank Account and Cash Management Institutions

AMERICAN EXPRESS NATIONAL
   BANK
BANK OF AMERICA, N.A.
CITIZENS BANK, N.A.
COMERICA BANK

FLAGSTAR BANK, N.A.
JPMORGAN CHASE BANK, NATIONAL
   ASSOCIATION
STRIPE CAPITAL

### 9.    Current and Former Officers and Directors

AARON M. MCCULLOUGH
ADAM DRUDGE
ALEXIS MAYBANK
ANANT AGARWAL
ANDREW J. HERMALYN
ANDY MORGAN

BRAD ADAMS
CATHERINE A. GRAHAM
CHRISTOPHER "CHIP" PAUCEK
CORETHA M. RUSHING
EARL LEWIS
EDWARD S. MACIAS

3

| | |
|---|---|
| GREGORY K. PETERS | MICHAEL KURBJEWEIT |
| HARSHA MOKKARALA | MICHAEL T. MOE |
| IVONA SMITH | PAUL A. MAEDER |
| JAMES H. SHELTON | PAUL S. LALLJIE |
| JAMES KENIGSBERG | ROBERT L COHEN |
| JEFF C. RINEHART | ROBERT M. STAVIS |
| JOHN B. ELLIS | SALLIE L. KRAWCHECK |
| JOHN M. LARSON | SUSAN E. CATES |
| LILLIAN BROWNSTEIN | TIMOTHY M. HALEY |
| MARK J. CHERNIS | TODD GLASSMAN |
| MARK MIDGLEY | VALERIE B. JARRETT |
| MATTHEW J. NORDEN | VIRGINIA FLETCHER |

## 10.    Known Holders of 1% or More of Outstanding Common Equity Securities of 2U, Inc.

| | |
|---|---|
| AQR CAPITAL MANAGEMENT, LLC | LOYS AG |
| ARK INVESTMENT MANAGEMENT LLC | MILLENNIUM MANAGEMENT LLC |
| BLACKROCK, INC. | MIRAE ASSET GLOBAL INVESTMENTS CO., LTD. |
| BLANTYRE CAPITAL LIMITED | MORGAN STANLEY |
| BNP PARIBAS ARBITRAGE SA, ASSET MANAGEMENT ARM | NIKKO ASSET MANAGEMENT AMERICAS, INC. |
| CREDIT SUISSE ASSET MANAGEMENT (SWITZERLAND) LTD. | PAUCEK, CHRISTOPHER J. |
| DE SHAW | RENAISSANCE TECHNOLOGIES LLC |
| GEODE CAPITAL MANAGEMENT, LLC | STATE STREET GLOBAL ADVISORS, INC. |
| GREENVALE CAPITAL LP | THE VANGUARD GROUP, INC. |
| JACOBS LEVY EQUITY MANAGEMENT INC | |

## 11.    Parties to Pending Litigation

| | |
|---|---|
| CHAD FRANCIS | OFFICE OF THE ATTORNEY GENERAL OF CALIFORNIA |
| DAVID BERNARD | |
| DEONTE SIMPKINS | OFFICE OF THE LOS ANGELES COUNTY COUNSEL |
| FEDERAL TRADE COMMISSION | |
| HENRY DE LA PAZ | OFFICE OF THE LOS ANGELES COUNTY DISTRICT ATTORNEY |
| IOLA FAVELL | |
| LOS ANGELES COUNTY CONSUMER PROTECTION TASK FORCE | SANDRA CAMPOS |
| | STEPHANIE LUNA |
| MARIAH CUMMINGS | SUE ZARNOWSKI |
| MICHAEL BEAUMONT | U.S. DEPARTMENT OF EDUCATION |
| MIGUEL CARDONA | |

## 12.    Landlords

4

125 HIGH STREET, L.P.
55 PROSPECT OWNER LLC
BPREP 707 17TH STREET LLC
CAROLINA SQUARE PROJECT LP
FOURTH CRYSTAL PARK
    ASSOCIATES LIMITED
    PARTNERSHIP
JACOBS ENGINEERING GROUP, INC.
K 2018512905 PROPRIETARY LIMITED
KCP HARKINS FEE OWNER LLC
LANHAM OFFICE 2015 LLC
LBA REALTY FUND II – HOLDING CO.
    I-A, LLC

LBA REALTY FUND II – HOLDING CO.
    VI-A, LLC
NORTHWOOD OFFICE
OLIVE/HILL STREET PARTNERS, LLC
PG MAINSTREET NORTH FORTY, LLC
RFR/K 55 PROSPECT OWNER LLC
SARGAS (PTY) LTD
SEARDEL GROUP TRADING (PTY)
    LTD.
SRI TEN DCC LLC
WEWORK 8 DEVONSHIRE SQUARE

## 13.    **Material Contract Counterparties**

6SENSE
ALGOLIA
AMAZON WEB SERVICES, INC.
AUTH0
BETTERCLOUD, INC.
BRIGHT HORIZONS FAMILY
    SOLUTIONS LLC
BRIGHTEDGE TECHNOLOGIES, INC.
COGNIZANT WORLDWIDE LIMITED
COMMERCETOOLS
CONFLUENT CLOUD KAFKA
    (RESELLER - AMAZON WEB
    SERVICES)
COUPA
DATAIKU SAS
DENODO
EPLUS
EPWERY S.A.
FIVE9 INC
FORTUNE EDUCATION (USA)
    CORPORATION
GITHUB
GREENHOUSE SOFTWARE, INC.
GOOGLE
G-SUITE (RESELLER - DITO)
GUIDEPOINT SECURITY
HE HOLDINGS LLC
JUMIO
LEARNINGMATE SOLUTIONS
    PROPRIETARY SOLUTIONS
LIGHTCAST

LINKEDIN
LUCID SOFTWARE INC.
MICROSOFT CORPORATION
    (MICROSOFT AZURE)
MULESOFT, LLC (RESELLER -
    SALESFORCE.COM, INC)
OBSERVE.AI
ONE IDENTITY LLC
ORACLE NETSUITE
OUTREACH CORPORATION
PALO ALTO XSOAR (RESELLER -
    GUIDEPOINT SECURITY)
QUALTRICS, LLC
RELIAQUEST (RESELLER -
    GUIDEPOINT SECURITY)
SALESFORCE, INC (TABLEAU)
SALESFORCE, INC.
SALESFORCE.COM, INC
SKEDULO INC.
SLACK TECHNOLOGIES, LLC
SNOWFLAKE
SPLUNK (RESELLER - GUIDEPOINT
    SECURITY)
SQUARED PRODUCTS LTD
STRIPE, INC.
TALKDESK
VALIDITY, INC.
WORKIVA, INC.
WW DEVONSHIRE LIMITED
ZOOM
ZOOMINFO

5

## 14.    Taxing and Governmental Authorities

ARIZONA DEPARTMENT OF REVENUE
AUSTRALIAN TAX OFFICE
CALIFORNIA FRANCHISE TAX BOARD
CANADA REVENUE AGENCY
CITY AND COUNTY OF DENVER
CITY OF PHILADELPHIA
    DEPARTMENT OF REVENUE
COMPTROLLER OF MARYLAND
CONNECTICUT DEPARTMENT OF
    REVENUE SERVICES
DELAWARE DIVISION OF
    CORPORATIONS
DEPARTMENT OF REVENUE
    WASHINGTON STATE
DISTRICT OF COLUMBIA OFFICE OF
    TAX AND REVENUE
FEDERAL INLAND REVENUE
    SERVICES
FLORIDA DEPARTMENT OF REVENUE
GEORGIA DEPARTMENT OF REVENUE
INDIA INCOME TAX DEPARTMENT
INLAND REVENUE AUTHORITY OF
    SINGAPORE
IOWA DEPARTMENT OF REVENUE
KENTUCKY DEPARTMENT OF
    REVENUE
KENYA REVENUE ADMINISTRATION
LOS ANGELES COUNTY TAX
    COLLECTOR
LOS ANGELES OFFICE OF FINANCE
MASSACHUSETTS DEPARTMENT OF
    REVENUE
MINNESOTA DEPARTMENT OF
    REVENUE
MONTANA DEPARTMENT OF
    REVENUE
MYORANGECOUNTRYNC
NATIONAL TAX AUTHORITY JAPAN
NATIONAL TAX SERVICE (SOUTH
    KOREA)
NEW HAMPSHIRE DEPARTMENT OF
    REVENUE ADMINSTRATION
NEW JERSEY DIVISION OF TAXATION

NEW MEXICO TAXATION AND
    REVENUE
NEW YORK CITY DEPARTMENT OF
    FINANCE
NEW YORK DEPARTMENT OF
    TAXATION AND FINANCE
NORTH CAROLINA DEPARTMENT OF
    REVENUE
OFFICE OF THE REVENUE
    COMMISSIONERS
OHIO DEPARTMENT OF TAXATION
OKLAHOMA TAX COMMISSION
OREGON DEPARTMENT OF REVENUE
PALM BEACH COUNTY PROP.
    APPRAISER
PENNSYLVANIA FEPARTMENT OF
    REVENUE
PRINCE GEORGE'S COUNTY, MD
REVENU QUEBEC
RHODE ISLAND DIVISION OF
    TAXATION
SAN FRANCISCO TREASURER AND
    TAX COLLECTOR
SOUTH AFRICAN REVENUE SERVICES
SOUTH CAROLINA DEPARTMENT OF
    REVENUE
SOUTH CAROLINA DEPARTMENT OF
    REVENUE
STATE OF ALABAMA, DEPARTMENT
    OF REVENUE
STATE OF HAWAII DEPARTMENT OF
    TAXATION
STATE OF TENNESSEE DEPARTMENT
    OF REVENUE
TEXAS COMPTROLLER OF PUBLIC
    ACCOUNTS
TURKEY REVENUE ADMINISTRATION
UTAH STATE TAX COMMISSION
VERMONT DEPARTMENT OF TAXES
WISCONSIN DEPARTMENT OF
    REVENUE
ZAKAT, TAX, CUSTOMS AUTHORITY
    (ZATCA)

6

**15.    Insurance Providers and Benefits Administrators**

ALLIED WORLD ASSURANCE
   COMPANY (AWAC)
ASCOT GROUP
AXA SA
AXA XL
AXIS CAPITAL
BERKELEY PROFESSIONAL LIABILITY
CHUBB GROUP HOLDINGS INC.
CNA FINANCIAL CORPORATION
CONVEX GROUP LIMITED

HISCOX INC.
LLOYD'S
NATIONWIDE MUTUAL INSURANCE
   COMPANY
RLI CORP.
RSUI GROUP INC.
SOMPO INTERNATIONAL HOLDINGS
   LTD.
THE HARTFORD FINANCIAL
   SERVICES GROUP, INC.

**16.    Top 30 Unsecured Creditors (Excluding Creditors Appearing in Other Categories of this List)**

BANNER EDGE MEDIA
BRIGHT LABS SERVICES LLC
CIGNA HEALTH AND LIFE
GUILD EDUCATION INC
KFORCE INC.

MARKETPLACE OPERATIONS INC
PWC US TAX LLC
RED VENTURES EDUCATION
SPI GLOBAL CONTENT HOLDING

**17.    Partner Institutions**

AMERICAN PSYCHOLOGICAL
   ASSOCIATION
AMERICAN UNIVERSITY
ARCADIA UNIVERSITY
ARIZONA STATE UNIVERSITY
AUSTRALIAN NATIONAL
   UNIVERSITY
BABSON COLLEGE
BERKLEE COLLEGE OF MUSIC
BOCCONI UNIVERSITY
BOSTON UNIVERSITY
CAMBRIDGE UNIVERSITY PRESS
CARLETON UNIVERSITY
CASE WESTERN RESERVE
   UNIVERSITY
CHALMERS UNIVERSITY OF
   TECHNOLOGY
COLORADO SEMINARY
COLUMBIA UNIVERSITY
CORNELL UNIVERSITY

CURTIN UNIVERSITY
DARTMOUTH COLLEGE
DATABRICKS
DAVIDSON COLLEGE
DELFT UNIVERSITY OF TECHNOLOGY
DOANE UNIVERSITY
DRAKE STATE COMMUNITY &
   TECHNICAL COLLEGE
EMERSON COLLEGE
FORDHAM UNIVERSITY
GEORGE WASHINGTON UNIVERSITY
GEORGE WASHINGTON UNIVERSITY
   COLLEGE OF PROFESSIONAL
   STUDIES
GEORGETOWN UNIVERSITY
GEORGIA INSTITUTE OF
   TECHNOLOGY
GRAZ UNIVERSITY OF TECHNOLOGY
HAMAD BIN KHALIFA UNIVERSITY
HARVARD UNIVERSITY

7

HARVARDX
HARVEY MUDD COLLEGE
HEC MONTRÉAL
HEC PARIS
HONG KONG UNIVERSITY OF
    SCIENCE AND TECHNOLOGY
HOWARD UNIVERSITY
IE UNIVERSITY
IMPERIAL COLLEGE BUSINESS
    SCHOOL
IMPERIAL COLLEGE LONDON
INDIAN INSTITUTE OF MANAGEMENT
    BANGALORE
INDIANA UNIVERSITY
JESUS COLLEGE, CAMBRIDGE
KTH ROYAL INSTITUTE OF
    TECHNOLOGY
LASALLE COLLEGE
LEHIGH UNIVERSITY
LONDON SCHOOL OF ECONOMICS
    AND POLITICAL SCIENCE
MANDARINX
MARYVILLE UNIVERSITY
MASSACHUSETTS INSTITUTE OF
    TECHNOLOGY
MCCOMBS SCHOOL OF BUSINESS
    FOUNDATION
MICHIGAN STATE UNIVERSITY
MONASH UNIVERSITY
MOREHOUSE COLLEGE
NATIONAL UNIVERSITY OF
    SINGAPORE
NEW YORK INSTITUTE OF FINANCE
NEW YORK UNIVERSITY
NORTHWESTERN UNIVERSITY
OHIO STATE UNIVERSITY
OSAKA UNIVERSITY
PEKING UNIVERSITY
PEPPERDINE UNIVERSITY
PONTIFICIA UNIVERSIDAD
    JAVERIANA
PRESIDENT & FELLOWS HARVARD
    COLLEGE
PURDUE UNIVERSITY
QATAR UNIVERSITY
QUEEN'S UNIVERSITY

REGENTS OF THE UNIVERSITY OF
    CALIFORNIA, BERKELEY
REGENTS OF UNIVERSITY OF
    CALIFORNIA, DAVIS
REGENTS OF UNIVERSITY OF
    CALIFORNIA, IRVINE
RICE UNIVERSITY
ROCHESTER INSTITUTE OF
    TECHNOLOGY
RUTGERS UNIVERSITY
RWTH AACHEN UNIVERSITY
SCHOOL OF INFORMATION AT
    UNIVERSITY OF CALIFORNIA,
    BERKELEY
SDG ACADEMY
SEOUL NATIONAL UNIVERSITY
SIMMONS COLLEGE
SIMMONS UNIVERSITY
SORBONNE UNIVERSITÉ
SOUTHERN METHODIST UNIVERSITY
SOUTHERN NEW HAMPSHIRE
    UNIVERSITY
ST. JOHN FISHER COLLEGE
STANFORD UNIVERSITY
STATE UNIVERSITY OF MARINGÁ
STELLENBOSCH UNIVERSITY
SYRACUSE UNIVERSITY
TECHNISCHE UNIVERSITÄT
    MÜNCHEN
TECNOLÓGICO DE MONTERREY
TEL AVIV UNIVERSITY
TENARIS UNIVERSITY
THE CHANCELLOR, MASTERS AND
    SCHOLARS OF THE UNIVERSITY OF
    OXFORD
THE FRIDAY CENTER – UNC CHAPEL
    HILL
THE HONG KONG POLYTECHNIC
    UNIVERSITY
THE INTERNATIONAL MONETARY
    FUND
THE LINUX FOUNDATION
THE REGENTS OF THE UNIVERSITY
    OF CALIFORNIA
THE UNIVERSITY OF EDINBURGH
THE UNIVERSITY OF ICELAND

8

THE UNIVERSITY OF KANSAS
THE UNIVERSITY OF MARYLAND
    EASTERN SHORE
THE UNIVERSITY OF MARYLAND,
    COLLEGE PARK
THE UNIVERSITY OF MICHIGAN
THE UNIVERSITY OF NEWCASTLE,
    AUSTRALIA
THE UNIVERSITY OF TEXAS MD
    ANDERSON CANCER CENTER IN
    HOUSTON
THE UNIVERSITY OF TOKYO
THE UNIVERSITY OF WISCONSIN-
    MADISON
THOMAS EDISON STATE UNIVERSITY
TOKYO INSTITUTE OF TECHNOLOGY
TSINGHUA UNIVERSITY
TULSA COMMUNITY COLLEGE
UNIVERSIDAD AUTÓNOMA DE
    MADRID
UNIVERSIDAD CARLOS III DE
    MADRID
UNIVERSIDAD DEL ROSARIO
UNIVERSIDAD GALILEO
UNIVERSIDAD NACIONAL DE
    CÓRDOBA
UNIVERSIDADES ANÁHUAC
UNIVERSITÀ DEGLI STUDI DI NAPOLI
    FEDERICO II
UNIVERSITAT POLITÈCNICA DE
    VALÈNCIA
UNIVERSITÉ CATHOLIQUE DE
    LOUVAIN
UNIVERSITÉ DE MONTRÉAL
UNIVERSITY OF ADELAIDE
UNIVERSITY OF ALASKA FAIRBANKS
UNIVERSITY OF BAYREUTH
UNIVERSITY OF BIRMINGHAM
UNIVERSITY OF BRITISH COLUMBIA
UNIVERSITY OF CALIFORNIA,
    BERKELEY
UNIVERSITY OF CALIFORNIA, IRVINE
UNIVERSITY OF CALIFORNIA, LOS
    ANGELES
UNIVERSITY OF CAMBRIDGE
UNIVERSITY OF CANTERBURY

UNIVERSITY OF CAPE TOWN
UNIVERSITY OF CAPE TOWN
    INFORMATION SYSTEMS
    DEPARTMENT
UNIVERSITY OF CENTRAL FLORIDA
UNIVERSITY OF CHICAGO
UNIVERSITY OF CONNECTICUT
UNIVERSITY OF DAYTON
UNIVERSITY OF DENVER
UNIVERSITY OF HONG KONG
UNIVERSITY OF KANSAS
UNIVERSITY OF LONDON
UNIVERSITY OF MARYLAND
UNIVERSITY OF MARYLAND
    BALTIMORE COUNTY
UNIVERSITY OF MARYLAND CENTER
    FOR ENVIRONMENTAL SCIENCE
UNIVERSITY OF MARYLAND GLOBAL
    CAMPUS
UNIVERSITY OF MIAMI
UNIVERSITY OF MINNESOTA
UNIVERSITY OF NEW BRUNSWICK
UNIVERSITY OF NEW HAMPSHIRE
UNIVERSITY OF NORTH CAROLINA
    AT CHAPEL HILL
UNIVERSITY OF NORTH CAROLINA
    AT CHARLOTTE
UNIVERSITY OF OREGON
UNIVERSITY OF OXFORD
UNIVERSITY OF PENNSYLVANIA
UNIVERSITY OF QUEENSLAND
UNIVERSITY OF RICHMOND
UNIVERSITY OF SOUTHERN
    CALIFORNIA
UNIVERSITY OF SYDNEY
UNIVERSITY OF TEXAS AT AUSTIN
UNIVERSITY OF TEXAS AT SAN
    ANTONIO
UNIVERSITY OF TEXAS, MCCOMBS
    SCHOOL OF BUSINESS
UNIVERSITY OF TORONTO
UNIVERSITY OF UTAH
UNIVERSITY OF WASHINGTON
UNIVERSITY OF WESTERN
    AUSTRALIA
UNIVERSITY OF WISCONSIN

9

UNIVERSITY SYSTEM OF MARYLAND
VANDERBILT UNIVERSITY
WAGENINGEN UNIVERSITY &
   RESEARCH
WASEDA UNIVERSITY

WASHINGTON UNIVERSITY IN ST.
   LOUIS
WELLESLEY COLLEGE
WESTERN GOVERNORS UNIVERSITY
YALE UNIVERSITY

**18.**   **Utility Providers**

AT&T MOBILITY
COMCAST

GRANITE TELECOMMUNICATIONS
   LLC
WASHINGTON GAS

**19.**   **Significant Competitors**

ACADEMIC PARTNERSHIPS
COURSERA
LINKEDIN LEARNING
NOODLE

PLURASIGHT
SKILLSOFT
UDEMY

**20.**   **United States Bankruptcy Judges for the Southern District of New York (and Key Staff Members)**

CHIEF JUDGE MARTIN GLENN
JUDGE CECELIA G. MORRIS
JUDGE DAVID S. JONES
JUDGE JAMES L. GARRITY, JR.
JUDGE JOHN P. MASTANDO
JUDGE LISA G. BECKERMAN
JUDGE MICHAEL E. WILES
JUDGE PHILIP BENTLEY
JUDGE SEAN H. LANE
AILEEN RAMIA
ARIELLE AMBRA-JUAREZ
ATA NALBANTOGLU
BRIAN MCELROY
CAROLINE ELLIS
CAROLYN INDELICATO
CHANTEL BARRETT
CHRISTINE AZZARO
COURTNEY N. BLINN
DANIEL MCCARTHY
DEANNA ANDERSON
DORIE ARTHUR
DWIJ PATEL
EMILIE SIMONE
FRANCIS O'ROURKE

GREG WHITE
GRISELDA CABRERA
ILAYNA GUEVREKIAN
JACQUELINE DEPIEROLA
JIAWEI LIN
JILLIAN INGRISANO
JOHN KUEBLER
KYU YOUNG (MIKE) PAEK
LIZA EBANKS
LORRAINE ECHEVARRIA
LYNDA CALDERON
MARIA RODRIGUEZ-CASTILLO
MATTHEW SMITH
PAUL VEAZEY
PHILIP LOCKWOOD-BEAN
SARAH ROSENTHAL
TAMMI HELLWIG
TRACY MERCADO
VANESSA ASHMEADE
VINCENT PUZAK
VITO GENNA
WILL JAGIELLO
WILLIE RODRIGUEZ

US-DOCS\150090743.15

**21.    United States Trustee for the Southern District of New York (and Key Staff Members)**

| | |
|---|---|
| ALABA OGUNLEYE | MARK BRUH |
| AMANDA D. CASSARA | MARY V. MORONEY |
| ANDREA B. SCHWARTZ | NADKARNI JOSEPH |
| ANDY VELEZ-RIVERA | OLGA S. ALLEN |
| ANNIE WELLS | PAUL K. SCHWARTZBERG |
| BRIAN S. MASUMOTO | RACHAEL E SIEGEL |
| CARMEN DAVIS | SHANNON SCOTT |
| DANIEL RUDEWICZ | SHARA CORNELL |
| ERCILIA A. MENDOZA | SYLVESTER SHARP |
| GREG M. ZIPES | TARA TIANTIAN |
| ILUSION RODRIGUEZ | VALENTINA VLASOVA |
| LINDA A. RIFFKIN | VICTOR ABRIANO |
| MADELEINE VESCOVACCI | WILLIAM K. HARRINGTON |

**Schedule 2**

**Client Match List**

| NAME | RELATIONSHIP TO DEBTORS |
|------|------------------------|
| ALLEN OVERY SHERMAN STERLING (US) LLP | Restructuring Professionals for Lenders, Trustees, Agents, Other Secured Parties, and Noteholders |
| APOLLO CAPITAL MANAGEMENT, L.P. | Lenders, Trustees, Agents and Other Secured Parties |
| AT&T MOBILITY | Utility Providers |
| AXA SA | Insurance Providers and Benefits Administrators |
| BANK OF AMERICA | Bank Account and Cash Management Institutions |
| BANK OF AMERICA, N.A. | Bank Account and Cash Management Institutions |
| BLACKROCK, INC. | Known Holders of 1% or More of Outstanding Common Equity Securities of 2U, Inc. |
| CHUBB | Lenders, Trustees, Agents and Other Secured Parties; Insurance Providers and Benefits Administrators |
| CITIZENS BANK, N.A. | Bank Account and Cash Management Institutions |
| COMERICA BANK | Bank Account and Cash Management Institutions |
| COVINGTON & BURLING LLP | Debtors' Other Professionals |
| CREDIT SUISSE | Known Holders of 1% or More of Outstanding Common Equity Securities of 2U, Inc. |
| DE SHAW | Known Holders of 1% or More of Outstanding Common Equity Securities of 2U, Inc. |
| FEDERAL TRADE COMMISSION | Parties to Pending Litigation |
| FLAGSTAR BANK, N.A. | Bank Account and Cash Management Institutions |
| GOOGLE | Material Contract Counterparties |
| HOGAN LOVELLS | Debtors' Other Professionals |
| JACOBS ENGINEERING GROUP, INC. | Landlords |

| | |
|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION | Bank Account and Cash Management Institutions |
| KPMG LLP | Debtors' Other Professionals |
| KPMG LLP | Debtors' Other Professionals |
| LLOYD'S | Insurance Providers and Benefits Administrators |
| MICROSOFT CORPORATION (MICROSOFT AZURE) | Material Contract Counterparties |
| MORGAN STANLEY | Lenders, Trustees, Agents, and Other Secured Parties |
| MORGAN STANLEY | Lender, Trustee, Agent, and Other Secured Party; Known Holders of 1% or More of Outstanding Common Equity Securities of 2U, Inc. |
| NATIONWIDE MUTUAL INSURANCE COMPANY | Insurance Providers and Benefits Administrators |
| NIKKO ASSET MANAGEMENT CO., LTD | Known Holders of 1% or More of Outstanding Common Equity Securities of 2U, Inc. |
| NORTHWESTERN UNIVERSITY | Partner Institutions |
| PEPPERDINE UNIVERSITY | Partner Institutions |
| PWC US Tax LLP | Debtors' Restructuring Professionals |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | Partner Institutions |
| UNIVERSITY OF DENVER | Partner Institutions |
| UNIVERSITY OF MIAMI | Partner Institutions |
| UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL | Partner Institutions |
| UNIVERSITY OF PENNSYLVANIA | Partner Institutions |
| UNIVERSITY OF TEXAS AT SAN ANTONIO | Partner Institutions |
| ZOOM | Material Contract Counterparties |