**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR AN ORDER**
**(A) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING,**
**OR DISCONTINUING UTILITY SERVICES; (B) APPROVING THE DEBTORS'**
**PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT FOR UTILITY**
**SERVICES; (C) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS FOR**
**ADDITIONAL ADEQUATE ASSURANCE; AND (D) GRANTING RELATED RELIEF**

The debtors in possession (collectively, the "**Debtors**") in the above-captioned cases (the

"**Chapter 11 Cases**") hereby file this motion (this "**Motion**") and respectfully state as follows:

**RELIEF REQUESTED**

1.     By this Motion, the Debtors seek entry of an order, substantially in the form

attached hereto as **Exhibit A** (the "**Proposed Order**"):  (a) prohibiting the Debtors' utility service

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802).  The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

providers (the "***Utility Companies***") from altering, refusing, or discontinuing service to, or discriminating against, the Debtors; (b) approving an adequate assurance deposit as adequate assurance of postpetition payment to the Utility Companies in accordance with the Approved Budget (as defined in the DIP Order[2]); (c) establishing procedures for resolving any subsequent requests by the Utility Companies for additional adequate assurance of payment; and (d) granting related relief.

## JURISDICTION AND VENUE

2.     The United States Bankruptcy Court for the Southern District of New York (this "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.     The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.     The statutory and legal predicates for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"),

---

[2]     "***DIP Order***" refers to that interim or final order, as applicable, approving the *Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to (I) Obtain Junior Lien Postpetition Financing and (II) Use Cash Collateral; (B) Granting Liens and Superpriority Claims; (C) Granting Adequate Protection to Certain Parties; and (D) Granting Related Relief* (the "***DIP Motion***") (as may be amended, restated, or otherwise modified from time to time).

Bankruptcy Rule 6004, and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***").

## BACKGROUND

5.      The Debtors comprise a leading online education technology company providing over eighty million people worldwide with access to high-quality education, including graduate, undergraduate, and non-degree programs. Through a comprehensive platform, the Debtors enable non-profit universities and colleges to offer a wide range of online courses and programs. These span diverse fields such as artificial intelligence, data science, business, healthcare, and education, with over 4,600 programs accessible on the Debtors' platform, edX.org, which provides learners with essential information on admissions, enrollment requirements, application processes, curriculum, tuition, and completion times. By consolidating a vast array of educational offerings on a single platform, the Debtors offer flexible and affordable pathways for achieving professional and educational goals. Although operations are predominantly remote, the majority of the Debtors' revenue flows into New York, where the Debtors hold their primary bank accounts, and where they collaborate with prestigious institutions of higher education (many of which are located here in New York City, including New York University, Columbia University, and Fordham University), enhancing their reach and impact within the city and state.

6.      On the date hereof (the "***Petition Date***"), the Debtors filed voluntary petitions in this Court commencing these Chapter 11 Cases. The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been requested, and no committee has been appointed in these Chapter 11 Cases.

7.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is

set forth in detail in the *Declaration of Matthew Norden, Chief Legal Officer and Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions* (the "***Norden Declaration***") and the *Declaration of William Kocovski in Support of Chapter 11 Petitions and First Day Motions* (the "***Kocovski Declaration***" and, together with the Norden Declaration, the "***First Day Declarations***") filed contemporaneously herewith, which are fully incorporated herein by reference.[3]

8.     These Chapter 11 Cases are "prepackaged" cases commenced for the purpose of implementing an agreed restructuring of the Debtors' debt.  Prior to the Petition Date, the Debtors entered into the Restructuring Support Agreement, dated as of July 24, 2024 (as may be amended, modified or supplemented, the "***Restructuring Support Agreement***") with certain creditors including (a) an ad hoc group of certain holders (the "***Ad Hoc Noteholder Group***") of 2.25% convertible senior notes due May 1, 2025, issued under that certain Indenture, dated as of April 23, 2020 (the "***2025 Notes***") and 4.50% senior unsecured convertible notes due February 1, 2030, issued under that certain Indenture, dated as of January 11, 2023 (the "***2030 Notes***" and, together with the 2025 Notes, the "***Notes***") represented by Weil, Gotshal & Manges LLP, (b) Greenvale Capital LLP ("***Greenvale***" and, together with the Ad Hoc Noteholder Group, the "***Consenting Noteholders***") as holder of the Notes represented by Schulte Roth & Zabel LLP, and (c) an ad hoc group of certain First Lien Lenders (the "***First Lien Ad Hoc Group***" and, together with the Consenting Noteholders, the "***Consenting Stakeholders***") represented by Milbank LLP.  As of July 24, 2024, the Consenting Stakeholders held approximately 82% of the Debtors' first lien funded debt, 86.9% of the 2025 Notes, and 95.2% of the 2030 Notes.

---

[3]     Capitalized terms used, but not defined in this Motion have the meanings ascribed to them in the First Day Declarations.

9.      On the Petition Date, the Debtors filed a plan of reorganization reflecting the terms of the Restructuring Support Agreement (as may be amended, modified or supplemented, the "***Plan***") in addition to a disclosure statement with respect to the Plan (as may be amended, modified or supplemented, the "***Disclosure Statement***").  The Plan contemplates that all Allowed General Unsecured Claims (as defined in the Plan) will be paid in full or will otherwise be unimpaired.[4]

10.     Prior to the Petition Date, the Debtors commenced solicitation of votes on the Plan from holders of Class 3 First Lien Claims and Class 4 Unsecured Notes Claims (each as defined in the Plan), the only classes entitled to vote under the Plan.  Subject to this Court's approval, votes with respect to the Plan are due on August 21, 2024. On the Petition Date, the Debtors filed a motion seeking, among other things, (a) conditional approval of the Disclosure Statement, and (b) to schedule a combined hearing to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan.  The Debtors seek to obtain confirmation of the Plan as quickly as this Court's schedule and requisite notice periods will permit.

## THE UTILITY COMPANIES

### A.    THE DEBTORS' UTILITY SERVICES

11.     The Debtors rely on electricity, gas, water, sewer, waste, telephone and internet services, and/or other similar services (collectively, the "***Utility Services***") from the Utility Companies to operate their businesses.  As of the Petition Date, at least four (4) Utility Companies provide Utility Services to the Debtors in the United States.   A nonexclusive list of Utility

---

[4]    Contemporaneously with filing this Motion, the Debtors are filing a motion to seek this Court's authorization to reject certain unexpired commercial real property leases.

Companies that provide Utility Services to the Debtors as of the Petition Date is attached as **Exhibit 1** to the Proposed Order (the "***Utility Services List***").[5]

12.    It is best for the Debtors' estates that Utility Services go uninterrupted.  Should any Utility Company refuse or discontinue service, even for a brief period, the Debtors' business operations could be disrupted, and such disruption could negatively impact recoveries for the Debtors' creditors.

13.    Over the past twelve (12) months, the Debtors have incurred obligations totaling an average of approximately $8,432 per month for Utility Services.  Based on the timing of the filings of these Chapter 11 Cases in relation to the Utility Companies' billing cycles, however, there may be outstanding invoices reflecting prepetition utility costs that have been incurred by the Debtors but for which payment is not yet due, as well as prepetition utility costs for services provided to the Debtors since the end of the last billing cycle that have not yet been invoiced.

14.    The Debtors also indirectly remit payment to certain of these Utility Companies through the Debtors' landlords (collectively the "***Landlords***"), who pay certain Utility Companies directly for 'non-technical' Utility Services such as water, sewer, trash, electric, and gas.  These Utility Services are paid directly by the Landlords and therefore the Proposed Adequate Assurance (as defined below) does not allocate any amounts toward these Utility Companies because they do not directly rely on the Debtors for payment for such Utility Services.

15.    To the best of the Debtors' knowledge, there are no material defaults or arrearages with respect to invoices for prepetition Utility Services as of the Petition Date.  The Debtors intend to pay, or direct the payment of, any postpetition obligations to the Utility Companies in the

---

[5]    The inclusion of any entity on, as well as any omission of any entity from, the Utility Services List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect thereto.  Utility Companies and Utilities Services that are paid directly by the Landlords (as defined below) are not included on the Utility Services List.

ordinary course and in a timely fashion.  Concurrently with the filing of this Motion, the Debtors

have filed the DIP Motion, which, in addition to the cash generated by the Debtors' businesses,

will provide the necessary additional liquidity for the Debtors to continue operations in the

ordinary course of business.  As set forth in the Approved Budget, the Debtors' proposed

expenditures set forth in the Approved Budget include payment of obligations to the Utility

Companies in the ordinary course on a postpetition basis.

**B.    THE DEBTORS' PROPOSED ADEQUATE ASSURANCE**

16.    The Debtors anticipate that they will have sufficient cash on hand to timely pay in

full, in cash, all undisputed postpetition obligations owed to Utility Companies during these

Chapter 11 Cases.

17.    Nevertheless, the Debtors propose to provide additional assurance of payment to

each Utility Company listed on the Utility Services List for postpetition Utility Services in

accordance with the Approved Budget.  The Debtors propose to place a cash deposit equal to one-

half of the Debtors' approximate average monthly cost for all Utility Services (the "***Utility***

***Deposit***"), based on the Debtors' payments over the past twelve (12) months, into a segregated,

interest-bearing account for the benefit of the Utility Companies (the "***Adequate Assurance***

***Account***").  The Adequate Assurance Account will be maintained pending further order of this

Court, and the Debtors' creditors will have no interest in, or lien on, any Utility Deposit or the

Adequate Assurance Account.

18.    Based on the average monthly cost of the Utility Services, as further described

above, the Debtors propose that the aggregate Utility Deposit be $4,216.  The Debtors propose that

the portion of the Utility Deposit calculated based on their average expense for each Utility

Company be returned to the Debtors on the earlier of (a) the Debtors' termination of services from

such Utility Company, *provided* that the Debtors obtain the affected Utility Company's consent to

do so or serve upon the affected Utility Company a notice of the Debtors' intent to reduce the Utility Deposit within fourteen (14) days thereof and receive no response thereto; (b) the entry of an order of this Court authorizing the return of such Utility Deposit to the Debtors; or (c) the effective date of a chapter 11 plan in these Chapter 11 Cases (at which time the Utility Deposit shall automatically, without further order of this Court, be returned to the Debtors or the reorganized Debtors, as applicable).

19.    Where the Debtors pay a Utility Company in advance for its Utility Services, the Debtors submit that such Utility Company should be deemed to have received adequate assurance of payment satisfactory to such Utility Company as required by section 366 of the Bankruptcy Code.

20.    The Debtors submit that the Utility Deposit, together with the Debtors' ability to pay for postpetition Utility Services in the ordinary course of business (collectively, the "***Proposed Adequate Assurance***"), constitutes "adequate assurance of payment" to Utility Companies for purposes of section 366 of the Bankruptcy Code.

**C.    THE ADDITIONAL ADEQUATE ASSURANCE PROCEDURES**

21.    The Debtors believe that no other or further assurance of payment to Utility Companies for postpetition Utility Services beyond the Proposed Adequate Assurance is necessary.  However, if a Utility Company believes that additional or alternative assurance of payment is necessary, the Debtors propose the following procedures (the "***Adequate Assurance Procedures***") to resolve requests for additional or alternative assurance of payment in an orderly and fair manner:

    (a)    Any Utility Company dissatisfied with the Proposed Adequate Assurance may make an additional adequate assurance request in writing (each an "***Additional Adequate Assurance Request***"), that sets forth (i) the amount and form of additional or alternative assurance of payment requested; (ii) the type of Utility Services provided and the location(s) where such Utility

Services are provided; (iii) a summary of any security deposits provided by the Debtors to such Utility Company; (iv) an explanation as to why the Utility Company believes the Proposed Adequate Assurance is insufficient; and (v) an email address to which the Debtors may respond to the Additional Adequate Assurance Request.

(b)     Any such Additional Adequate Assurance Request must be served on: (i) 2U, Inc., 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202 (Attn: Matthew Norden (mnorden@2u.com) and Lillian Brownstein (lbrownstein@2u.com)) and (ii) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020 (Attn: George A. Davis (george.davis@lw.com), George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Randall C. Weber-Levine (randall.weber-levine@lw.com) and Scott Yousey (scott.yousey@lw.com)), proposed counsel for the Debtors.

(c)     The Debtors may, in their discretion and without further order of this Court, resolve any Additional Adequate Assurance Request by mutual agreement with the objecting Utility Company, and in connection with such resolution, may provide a Utility Company with alternative assurance of payment in accordance with the Approved Budget, to the extent the Debtors believe such alternative assurance is reasonable in the exercise of their business judgment, including, but not limited to, cash deposits, letters of credit, prepayments, or other forms of security.

(d)     If the Debtors are unable to reach a resolution with an objecting Utility Company regarding an Additional Adequate Assurance Request, the Debtors may request a hearing (a "***Determination Hearing***") before this Court (which hearing may be the next regularly scheduled omnibus hearing) to determine the adequacy of the Proposed Adequate Assurance; *provided*, that the Debtors, with the consent of such Utility Company, may continue any unresolved Additional Adequate Assurance Request to a hearing date after the Determination Hearing, and *provided*, *further*, that the Debtors request that any objecting Utility Company be prohibited from altering, refusing, or discontinuing Utility Services to, or discriminating against, the Debtors on account of any unpaid charges for prepetition Utility Services or any perceived inadequacy of the Proposed Adequate Assurance, pending resolution of any Additional Adequate Assurance Request.

(e)     Any Utility Company that does not make an Additional Adequate Assurance Request as described above will be deemed to have received adequate assurance of payment satisfactory to such Utility Company as required by section 366 of the Bankruptcy Code.

(f)     All Utility Companies, including any Additional Utility Companies (subject to service of this Motion and any related orders), will be prohibited from altering, refusing, or discontinuing Utility Services to, or discriminating against, the Debtors on account of any unpaid charges for prepetition Utility Services or any perceived inadequacy of the Proposed Adequate Assurance, subject to such Utility

Company's right to seek modification of the Proposed Adequate Assurance under the Adequate Assurance Procedures, unless otherwise ordered by this Court.

**D.    AMENDMENTS TO THE UTILITY LIST**

22.    Although the Debtors have undertaken thorough and good-faith efforts to identify all their Utility Companies, there is a possibility that some Utility Companies currently providing Utility Services to the Debtors may have been unintentionally omitted from the Utility Services List.  To the extent that the Debtors identify additional Utility Companies (each, an "***Additional Utility Company***"), the Debtors will promptly amend the Utility Services List, file a notice of the amendment with this Court, and serve copies of the notice, this Motion, and any order entered with respect to this Motion on any Additional Utility Companies.

23.    Upon the addition of an Additional Utility Company to the Utility Services List, the Debtors may increase the amount of the Utility Deposit by an amount equal to one-half of the Debtors' approximate monthly payment for Utility Services provided by such Additional Utility Company, based on the Debtors' average payments over the past twelve (12) months.  The Debtors also seek authority to reduce the Utility Deposit to the extent it includes an amount for a Utility Company that the Debtors subsequently determine should be removed from the Utility Services List; *provided* that the Debtors provide such Utility Company with notice and an opportunity to object; and, *provided*, *further*, that there are no outstanding disputes related to postpetition payments due.

24.    The Debtors request that the Proposed Order (if and when entered) be binding on all Utility Companies, regardless of when each Utility Company was added to the Utility Services List, from and after the date on which the applicable Utility Company is served with a copy of this Motion and any order entered with respect to this Motion, along with an amended Utility Services List; *provided*, that the Proposed Order will only be binding on any additional Utility Company

once the Proposed Adequate Assurance has been increased for such Additional Utility Company;
and *provided*, *further*, that any Additional Utility Company served with notice pursuant to the
Adequate Assurance Procedures may make an Additional Adequate Assurance Request in
compliance with the Adequate Assurance Procedures.

25.    Should any Additional Utility Company make an Additional Adequate Assurance
Request, the Debtors request that such Additional Utility Company be prohibited from altering,
refusing, or discontinuing Utility Services to, or discriminating against, the Debtors on account of
any unpaid charges for prepetition Utility Services or any perceived inadequacy of the Proposed
Adequate Assurance, pending resolution of such Additional Adequate Assurance Request.

**BASIS FOR RELIEF**

**A.    THIS COURT SHOULD APPROVE THE DEBTORS' PROPOSED ADEQUATE
ASSURANCE AND ADEQUATE ASSURANCE PROCEDURES**

26.    Section 366 of the Bankruptcy Code protects a debtor against the immediate
termination or alteration of utility services after the Petition Date.    *See* 11 U.S.C. § 366.
Section 366(c) requires the debtor to provide "adequate assurance" of payment for postpetition
utility services in a form "satisfactory" to the utility provider within thirty (30) days of the petition
date, or the utility provider may alter, refuse, or discontinue service.    11 U.S.C. § 366(c)(2).
Section 366(c)(1) enumerates what constitutes "assurance of payment."    11 U.S.C. § 366(c)(1).
Although assurance of payment must be "adequate," it need not constitute an absolute guarantee
of the debtors' ability to pay.    *See, e.g.*, *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL
5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is
adequate enough to insure against unreasonable risk of nonpayment, but are not required to give
the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.*, 199 B.R. 1,3 (S.D.N.Y. 1996),
*aff'd sub nom., Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997)

("Section 366(b) requires . . . 'adequate assurance' of payment.  The statute does not require an absolute guarantee of payment.") (citation omitted).

27.     When considering whether a given assurance of payment is "adequate," courts should examine the totality of the circumstances to make an informed decision as to whether a utility provider will be subject to an unreasonable risk of nonpayment.  *See Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002).  In determining the requisite level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also Great Atl. & Pac.*, 2011 WL 5546954, at *5–6 (holding that no additional adequate assurance deposit was necessary where such deposit would impose an unreasonable burden on reorganizing debtors). Accordingly, demands by a utility provider for a guarantee of payment should be refused when a debtor's specific circumstances already afford adequate assurance of payment.

28.     Here, the Utility Companies are adequately assured against any risk of nonpayment for future services.  The Utility Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance of the Debtors' payment of their future utility obligations.  Moreover, termination of the Utility Services could result in the Debtors' inability to operate their businesses to the detriment of all stakeholders. *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the

debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

29.     Courts may fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) ("The plain language of § 366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order.")  Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* Here, notwithstanding a determination that the Debtors' Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Companies believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at *5–6.  The Utility Companies still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *5.  The Adequate Assurance Procedures, however, avoid a disorganized process whereby each Utility Company could make a last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at *5. Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, this Court should grant the relief requested herein.

30.     Further, this Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions

particularly section 366 the Bankruptcy Code. Accordingly, this Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

## B.    PRECEDENT CASES SUPPORT GRANT OF THE REQUESTED RELIEF

31.    The relief requested in this Motion is similar to relief granted by numerous courts, including this Court in other chapter 11 cases in this district. *See, e.g.*, *In re Credivalores - Crediservicios S.A.*, Case No. 24-10837 (DSJ) (Bankr. S.D.N.Y. June 12, 2024) [Docket No. 74] (prohibiting utility companies from altering, refusing or discontinuing services; approving the proposed adequate assurance of payment for future services; approving procedures for resolving adequate assurance requests; and granting related relief); *In re Acorda Therapeutics, Inc.*, Case No. 24-22284 (DSJ) (Bankr. S.D.N.Y. Apr. 26, 2024) [Docket No. 106] (same); *In re GOL Linhas Aèreas Inteligentes S.A.*, Case No. 24-10118 (MG) (Bankr. S.D.N.Y. Jan. 29, 2024) [Docket No. 69] (same); *In re Mercon Coffee Corp.*, Case No. 23-11945 (MEW) (Bankr. S.D.N.Y. Jan. 11, 2024) [Docket No. 110] (same); *In re Troika Media Grp., Inc.*, Case No. 23-11969 (DSJ) (Bankr. S.D.N.Y. Dec. 29, 2023) [Docket No. 56] (same); *In re Voyager Aviation Holdings, LLC*, Case No. 23-11177 (JPM) (Bankr. S.D.N.Y. July 28, 2023) [Docket No. 31] (same); *In re Vice Grp. Holding, Inc.*, Case No. 23-10738 (JPM) (Bankr. S.D.N.Y. June 15, 2023) [Docket No. 153] (same); *In re PacificCo Inc.*, Case No. 23-10470 (PB) (Bankr. S.D.N.Y. Apr. 28, 2023) [Docket No. 148] (same); *In re Lumileds Holding B.V.*, Case No. 22-11155 (LGB) (Bankr. S.D.N.Y. Sept. 21, 2022) [Docket No. 125] (same).

## C.    BANKRUPTCY RULE 6004 SHOULD BE WAIVED

32.    With respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and of the fourteen-day

stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates. The Debtors thus submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate, as the exigent nature of the relief sought herein justifies immediate unstayed relief.

## **RESERVATION OF RIGHTS**

33.     Nothing in this Motion shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved); (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. If this Court enters any order granting the relief sought herein, any payment made pursuant to such order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## MOTION PRACTICE

34.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## NOTICE

35.    Notice of this Motion will be given to: (a) the United States Trustee for Region 2; (b) Milbank LLP as counsel to the Ad Hoc First Lien Group; (c) the administrative agent and collateral agent under the first lien credit agreement; (d) Weil, Gotshal & Manges LLP as counsel to the Ad Hoc Noteholder Group; (e) Schulte Roth & Zabel LLP as counsel to Greenvale; (f) the indenture trustees for the Notes; (g) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (h) the United States Attorney's Office for the Southern District of New York; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the Utility Companies; and (l) all parties entitled to notice pursuant to Local Rule 9013-1(b).  The Debtors submit that, under the circumstances, no other or further notice is required.

36.    A copy of this Motion is available from (a) this Court's website, www.nysb.uscourts.gov, and (b) the website maintained by the Debtors' proposed claims and noticing agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/2U.

## NO PRIOR MOTION

37.    The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other court.

**WHEREFORE**, the Debtors respectfully request that this Court enter the Proposed Order granting the relief requested in this Motion and such other and further relief as may be just and proper.

**LATHAM & WATKINS LLP**

Dated:    July 25, 2024            By:    _/s/ George A. Davis_
          New York, New York             George A. Davis
                                          George Klidonas
                                          Anupama Yerramalli
                                          Randall C. Weber-Levine
                                          Scott Yousey
                                          1271 Avenue of the Americas
                                          New York, NY 10020
                                          Telephone: (212) 906-1200
                                          Facsimile: (212) 751-4864
                                          Email:  george.davis@lw.com
                                                   george.klidonas@lw.com
                                                   anu.yerramalli@lw.com
                                                   randall.weber-levine@lw.com
                                                   scott.yousey@lw.com

                                          _Proposed Counsel to the Debtors and Debtors in Possession_

## <u>EXHIBIT A</u>

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 ([ ● ]) |
| Debtors.[1] | (Joint Administration Requested) |

### ORDER (A) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES; (B) APPROVING THE DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT FOR UTILITY SERVICES; (C) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE; AND (D) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtors for an order (this "***Order***") (a) prohibiting the Debtors' utility service providers (the "***Utility Companies***") from altering, refusing, or discontinuing service to, or discriminating against, the Debtors; (b) approving an adequate assurance deposit as adequate assurance of postpetition payment to the Utility Companies; (c) establishing procedures for resolving any subsequent requests by the Utility Companies for additional adequate assurance of payment; and (d) granting related relief; and this Court having reviewed the Motion and the First Day Declarations; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802).  The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

January 31, 2012; and consideration of the Motion and the relief requested therein being a core

proceeding under 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order

consistent with Article III of the United States Constitution; and venue being proper before this

Court under 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the

Motion has been given and that no other or further notice is necessary; and a hearing having been

held to consider the relief requested in the Motion (the "**_Hearing_**"); and upon the First Day

Declarations and the record of the Hearing and all the proceedings before this Court; and after due

deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED, as set forth herein.

2.      All objections to the entry of this Order, to the extent not withdrawn or settled, are

overruled.

3.      Except as provided herein, absent further order of this Court, all Utility Companies

identified on the attached **__Exhibit 1__** (as amended from time to time, the "**_Utility Services List_**"),

are prohibited from altering, refusing, or discontinuing services to, or discriminating against, the

Debtors solely on the basis of the commencement of these Chapter 11 Cases, a debt owed by the

Debtors for Utility Services rendered before the Petition Date, or any perceived inadequacy of the

Proposed Adequate Assurance.

4.      As adequate assurance of payment to Utility Companies for postpetition Utility

Services, the Debtors shall deposit cash in the amount of $4,216 which is equal to one-half of the

Debtors' approximate monthly payment for all Utility Services based on the Debtors' average

payments over a twelve (12)-month period (the "**_Utility Deposit_**"), into a segregated, interest-

bearing account (the "**_Adequate Assurance Account_**").

5.      Any Utility Company that is paid in advance for Utility Services shall be deemed to have received adequate assurance of payment satisfactory to such Utility Company as required by section 366 of the Bankruptcy Code.

6.      Except as provided herein with respect to Utility Companies' rights, the Debtors' creditors shall have no interest in, or lien on, the Utility Deposit or the Adequate Assurance Account.

7.      The portion of the Utility Deposit attributable to each Utility Company shall be returned to the Debtors on the earlier of (a) the Debtors' termination of services from such Utility Company, *provided* that the Debtors obtain the affected Utility Company's consent to do so or serve upon the affected Utility Company a notice of the Debtors' intent to reduce the Utility Deposit within fourteen (14) days thereof and receive no response thereto; (b) entry of an order of this Court authorizing the return of such Utility Deposit to the Debtors; or (c) the effective date of a chapter 11 plan in these Chapter 11 Cases (at which time the Utility Deposit shall automatically, without further order of this Court, be returned to the Debtors or the reorganized Debtors, as applicable).

8.      The following procedures (the "***Adequate Assurance Procedures***") to resolve objections to the Debtors' Proposed Adequate Assurance are approved:

(a)     Any Utility Company dissatisfied with the Proposed Adequate Assurance may make an additional adequate assurance request in writing (each an "***Additional Adequate Assurance Request***"), that sets forth (i) the amount and form of additional or alternative assurance of payment requested; (ii) the type of Utility Services provided and the location(s) where such Utility Services are provided; (iii) a summary of any security deposits provided by the Debtors to such Utility Company; (iv) an explanation as to why the Utility Company believes the Proposed Adequate Assurance is insufficient; and (v) an email address to which the Debtors may respond to the Additional Adequate Assurance Request.

(b)     Any such Additional Adequate Assurance Request must be served on: (a) 2U, Inc., 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202 (Attn:

3

Matthew Norden (mnorden@2u.com) and Lillian Brownstein (lbrownstein@2u.com)); (b) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020 (Attn: George A. Davis (george.davis@lw.com), George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Randall C. Weber-Levine (randall.weber-levine@lw.com) and Scott Yousey (scott.yousey@lw.com)), proposed counsel for the Debtors.

(c)     The Debtors may, in their discretion and without further order of this Court, resolve any Additional Adequate Assurance Request by mutual agreement with the objecting Utility Company, and in connection with such resolution, may provide a Utility Company with alternative assurance of payment in accordance with the Approved Budget, to the extent the Debtors believe such alternative assurance is reasonable in the exercise of their business judgment, including, but not limited to, cash deposits, letters of credit, prepayments, or other forms of security.

(d)     If the Debtors are unable to reach a resolution with an objecting Utility Company regarding an Additional Adequate Assurance Request, the Debtors may request a hearing (a "***Determination Hearing***") before this Court (which hearing may be the next regularly scheduled omnibus hearing) to determine the adequacy of the Proposed Adequate Assurance; *provided*, that the Debtors, with the consent of such Utility Company, may continue any unresolved Additional Adequate Assurance Request to a hearing date after the Determination Hearing, and *provided*, *further*, that the any objecting Utility Company will be prohibited from altering, refusing, or discontinuing Utility Services to, or discriminating against, the Debtors on account of any unpaid charges for prepetition Utility Services or any perceived inadequacy of the Proposed Adequate Assurance, pending resolution of any Additional Adequate Assurance Request.

(e)     Any Utility Company that does not make an Additional Adequate Assurance Request as described above will be deemed to have received adequate assurance of payment satisfactory to such Utility Company as required by section 366 of the Bankruptcy Code.

(f)     All Utility Companies, including any Additional Utility Companies (subject to service of this Motion and any related orders), will be prohibited from altering, refusing, or discontinuing Utility Services to, or discriminating against, the Debtors on account of any unpaid charges for prepetition Utility Services or any perceived inadequacy of the Proposed Adequate Assurance, subject to such Utility Company's right to seek modification of the Proposed Adequate Assurance under the Adequate Assurance Procedures, unless otherwise ordered by this Court.

9.      If an amount relating to postpetition Utility Services provided by a Utility Company is unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Adequate Assurance Account (a "***Disbursement Request***") by giving written notice to:

(a) United States Trustee, U.S. Department of Justice, Office of the U.S. Trustee, 1 Bowling Green, Room 534, New York, NY 10004 (Attn: Rachael E. Siegel (rachael.e.siegel@usdoj.gov), Daniel Rudewicz (daniel.rudewicz@usdoj.gov), and Brian Masumoto (brian.masumoto@usdoj.gov)); (b) 2U, Inc., 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202 (Attn: Matthew Norden (mnorden@2u.com) and Lillian Brownstein (lbrownstein@2u.com)); and (c) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020 (Attn: George A. Davis (george.davis@lw.com), George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Randall C. Weber-Levine (randall.weber-levine@lw.com) and Scott Yousey (scott.yousey@lw.com)), proposed counsel for the Debtors. A Disbursement Request shall only be honored on the date that is three (3) business days after the date of receipt of the Disbursement Request.

10. The Debtors are authorized to amend the Utility Services List by adding or deleting a Utility Company. When doing so, the Debtors shall file with this Court a notice of such amendment and serve such notice on the affected Utility Company together with a copy of the Motion and this Order.

11. The Debtors are authorized to reduce the Utility Deposit, to the extent it includes an amount for a Utility Company that the Debtors subsequently determine, in their sole discretion, should be removed from the Utility Services List, by an amount equal to one-half the Debtors' approximate monthly payment, based on the Debtors' average payments over a twelve (12) month period, for Utility Services provided by such Utility Company; *provided*, that the Debtors provide such Utility Company with notice and an opportunity to object.

12. This Order is binding on all Utility Companies, regardless of when such Utility Companies are added to the Utility Services List, from and after the date on which the applicable

Utility Company is served with notice of this Order; *provided*, that the Order will only be binding on any additional Utility Company once the Proposed Adequate Assurance has been increased for such additional Utility Company.  A Utility Company served with notice of this Order that was not previously served with notice of the Motion or this Order (an "***Additional Utility Company***") shall be permitted to make an Additional Adequate Assurance Request in accordance with the Adequate Assurance Procedures, and any Additional Utility Company that does not so make an Additional Adequate Assurance Request shall be deemed to have received adequate assurance of payment satisfactory to such Additional Utility Company as required by section 366 of the Bankruptcy Code, subject to such Additional Utility Company's right to seek modification of the Proposed Adequate Assurance in accordance with the Adequate Assurance Procedures, unless otherwise ordered by this Court.

13.    Upon the addition of an Additional Utility Company to the Utility Services List, the Debtors shall increase the amount of the Utility Deposit by an amount equal to one-half of the Debtors' approximate monthly payment for Utility Services provided by such Additional Utility Company, based on the Debtors' average payments over a twelve (12) month period.

14.    Should any Additional Utility Company make an Additional Adequate Assurance Request, such Additional Utility Company is prohibited from altering, refusing, or discontinuing Utility Services to, or discriminating against, the Debtors on account of any unpaid charges for prepetition Utility Services or any perceived inadequacy of the Proposed Adequate Assurance, pending resolution of such Additional Adequate Assurance Request.

15.    The Debtors' service of the Motion, this Order, or notice of an amendment to the Utility Services List on the Utility Companies does not constitute an admission or concession that

any such entity is a utility within the meaning of section 366 of the Bankruptcy Code, and all rights and defenses of the Debtors are reserved with respect thereto.

16.     Consistent with the Adequate Assurance Procedures, the Debtors are authorized to, in their discretion and without further order of this Court or filing in these cases, resolve any Additional Adequate Assurance Request by an Additional Utility Company by mutual agreement, and in connection with such resolution, may provide an Additional Utility Company with alternative assurance of payment, to the extent the Debtors determine such alternative assurance is reasonable in the exercise of their business judgment, including, but not limited to, cash deposits, letters of credit, prepayments, or other forms of security.

17.     If the Debtors are not able to reach a resolution with an objecting Additional Utility Company, the Debtors shall promptly request a hearing before this Court to determine the adequacy of assurance of payment with respect to such Additional Utility Company.

18.     Notwithstanding the relief granted in this Order, any payment made or to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with the DIP Order[3] and the DIP Credit Documents (as defined in the DIP Order) and any orders governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating to the foregoing).  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Order or the DIP Credit Documents.  To the extent there is any inconsistency between the terms of the DIP Order, the DIP Credit Documents, or any orders approving the Debtors' use of cash collateral, and the terms of this

---

[3]     "**DIP Order**" refers to that interim or final order, as applicable, approving the *Motion of Debtors for Interim and Final Orders (A) Authorizing the Debtors to (I) Obtain Junior Lien Postpetition Financing and (II) Use Cash Collateral; (B) Granting Liens and Superpriority Claims; (C) Granting Adequate Protection to Certain Parties; and (D) Granting Related Relief* (as may be amended, restated, or otherwise modified from time to time).

7

Order, the terms of the DIP Order, the DIP Credit Documents, and such order approving the use of cash collateral, as applicable, shall control.

19.      Nothing in the Motion, this Order, or the relief granted herein (including any actions taken or payments made by the Debtors), is to be construed as (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) is valid (and all rights to contest the extent, validity or perfection or seek avoidance of all such liens are expressly reserved); (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  Nothing contained in this Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

20.      The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

21.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

22.      The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

23.     This Court retains jurisdiction with respect to all matters arising from or related to
the implementation, interpretation, and enforcement of this Order.

**Exhibit 1**

**Utility Services List**

| Utility Company | Address | Account Number[1] | Service Type | Average Monthly Spend | One-Half Monthly Spend | Existing Deposit | Proposed Utility Deposit |
|---|---|---|---|---|---|---|---|
| AT&T Mobility | P.O. Box 6463 Carol Stream, IL 60197-6463 | 287285084550 | Telecommunications | $2,684 | $1,342 | $0 | $1,342 |
| Comcast | P.O. Box 37601 Philadelphia, PA 19101-0601 | 708772856 | Telecommunications | $1,527 | $764 | $0 | $764 |
| Granite Telecommunications LLC | P.O. Box 983119 Client Id #311 Boston, MA 02298-3119 | 04233469 | Telecommunications | $3,345 | $1,673 | $0 | $1,673 |
| Washington Gas | P.O. Box 37747 Philadelphia, PA 19101-5047 | 210000304183 | Natural Gas | $875 | $438 | $0 | $438 |

---

[1] Although the Debtors have undertaken thorough and good-faith efforts to identify and verify all account numbers for all of their Utility Companies, due to the voluminous number of accounts, there is a possibility that some account numbers may have changed or may be otherwise unintentionally inaccurate. To the extent that the Debtors become aware of any inaccuracies, the Debtors will promptly contact the applicable Utility Company to update the account number and confirm that any applicable adequate assurance deposit applies to the updated accurate account number with respect to the applicable Utility Company. The Debtors further encourage any Utility Company to promptly bring to the Debtors' attention any inaccuracies they independently identify.