**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 (MEW) |
| Debtors.[1] | (Jointly Administered) |

**MOTION OF DEBTORS FOR AN ORDER (A) AUTHORIZING THE DEBTORS
TO (I) REJECT CERTAIN UNEXPIRED LEASES AND SUBLEASE OF
NONRESIDENTIAL REAL PROPERTY AND (II) ABANDON ANY
REMAINING PERSONAL PROPERTY LOCATED AT THE LEASED
PREMISES; AND (B) GRANTING RELATED RELIEF**

---

**EACH LANDLORD RECEIVING THIS MOTION SHOULD LOCATE ITS NAME
AND LEASE OR SUBLEASE IN THE SCHEDULE OF LEASES TO BE REJECTED,
ATTACHED TO THE PROPOSED ORDER AS <u>SCHEDULE 1</u>.**

---

The debtors in possession (collectively, the "***Debtors***") in the above-captioned cases (the

"***Chapter 11 Cases***") hereby file this motion (this "***Motion***") and respectfully state as follows:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC
(N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter
(US), LLC (9802).  The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

## RELIEF REQUESTED

1.       By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Proposed Order***"):  (a) authorizing, but not directing, the Debtors to (i) reject, effective as of the Lease Rejection Date (as defined below), certain unexpired leases and a certain sublease of nonresidential real property; and (ii) abandon, effective as of the Lease Rejection Date, any Remaining Property (as defined below) located at the Premises (as defined below); and (b) granting related relief.

## JURISDICTION AND VENUE

2.       The United States Bankruptcy Court for the Southern District of New York (this "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.       The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.       The statutory and legal predicates for the relief requested herein are sections 365(a) and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***") and Bankruptcy Rules 6004, 6006, and 6007.

2

## BACKGROUND

5.     The Debtors comprise a leading online education technology company providing over eighty million people worldwide with access to high-quality education, including graduate, undergraduate, and non-degree programs.  Through a comprehensive platform, the Debtors enable non-profit universities and colleges to offer a wide range of online courses and programs.  These span diverse fields such as artificial intelligence, data science, business, healthcare, and education, with over 4,600 programs accessible on the Debtors' platform, edX.org, which provides learners with essential information on admissions, enrollment requirements, application processes, curriculum, tuition, and completion times.  By consolidating a vast array of educational offerings on a single platform, the Debtors offer flexible and affordable pathways for achieving professional and educational goals.  Although operations are predominantly remote, the majority of the Debtors' revenue flows into New York, where the Debtors hold their primary bank accounts, and where they collaborate with prestigious institutions of higher education (many of which are located here in New York City, including New York University, Columbia University, and Fordham University), enhancing their reach and impact within the city and state.

6.     On the date hereof (the "***Petition Date***"), the Debtors filed voluntary petitions in this Court commencing these Chapter 11 Cases.  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested, and no committee has been appointed in these Chapter 11 Cases.

7.     The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Matthew Norden, Chief Legal Officer and Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions* (the "***Norden Declaration***") and the

*Declaration of William Kocovski in Support of Chapter 11 Petitions and First Day Motions* (the "***Kocovski Declaration***" and, together with the Norden Declaration, the "***First Day Declarations***") filed contemporaneously herewith, which are fully incorporated herein by reference.[2]

8.      These Chapter 11 Cases are "prepackaged" cases commenced for the purpose of implementing an agreed restructuring of the Debtors' debt.  Prior to the Petition Date, the Debtors entered into the Restructuring Support Agreement, dated as of July 24, 2024 (as may be amended, modified or supplemented, the "***Restructuring Support Agreement***") with certain creditors including (a) an ad hoc group of certain holders (the "***Ad Hoc Noteholder Group***") of 2.25% convertible senior notes due May 1, 2025, issued under that certain Indenture, dated as of April 23, 2020 (the "***2025 Notes***") and 4.50% senior unsecured convertible notes due February 1, 2030, issued under that certain Indenture, dated as of January 11, 2023 (the "***2030 Notes***" and, together with the 2025 Notes, the "***Notes***") represented by Weil, Gotshal & Manges LLP, (b) Greenvale Capital LLP ("***Greenvale***" and, together with the Ad Hoc Noteholder Group, the "***Consenting Noteholders***") as holder of the Notes represented by Schulte Roth & Zabel LLP, and (c) an ad hoc group of certain First Lien Lenders (the "***First Lien Ad Hoc Group***" and, together with the Consenting Noteholders, the "***Consenting Stakeholders***") represented by Milbank LLP.  As of July 24, 2024, the Consenting Stakeholders held approximately 82% of the Debtors' first lien funded debt, 86.9% of the 2025 Notes, and 95.2% of the 2030 Notes.

9.      On the Petition Date, the Debtors filed a plan of reorganization reflecting the terms of the Restructuring Support Agreement (as may be amended, modified or supplemented, the "***Plan***") in addition to a disclosure statement with respect to the Plan (as may be amended, modified or supplemented, the "***Disclosure Statement***").  The Plan contemplates that all Allowed

---

[2]     Capitalized terms used, but not defined in this Motion have the meanings ascribed to them in the First Day Declarations.

General Unsecured Claims (as defined in the Plan) will be paid in full or will otherwise be unimpaired.

10.     Prior to the Petition Date, the Debtors commenced solicitation of votes on the Plan from holders of Class 3 First Lien Claims and Class 4 Unsecured Notes Claims (each as defined in the Plan), the only classes entitled to vote under the Plan. Subject to this Court's approval, votes with respect to the Plan are due on August 21, 2024. On the Petition Date, the Debtors filed a motion seeking, among other things, (a) conditional approval of the Disclosure Statement, and (b) to schedule a combined hearing to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan. The Debtors seek to obtain confirmation of the Plan as quickly as this Court's schedule and requisite notice periods will permit.

## REJECTION OF UNEXPIRED LEASES

11.     The COVID-19 pandemic and resulting economic challenges, movement of employees away from offices, and overall decline in office use nationally reduced the Debtors' need for office space. In addition, the downturn in the Debtors' business has impacted the Debtors' ability to maintain their existing leased real estate portfolio. Accordingly, the Debtors have exited most of their office space despite the fact certain leases remain ongoing. In light of the Debtors' financial difficulties, it is now prudent that the Debtors alleviate their onerous lease and sublease obligations.

12.     In the weeks prior to the Petition Date, the Debtors' management, in consultation with the Debtors' advisors, engaged in discussions with certain landlords and/or lessors to negotiate a mutually beneficial termination of certain of the Debtors' leases. Unfortunately, most of these negotiations were not successful, and the Debtors and their advisors ultimately determined that it would be most cost effective and beneficial to the Debtors' estates to seek to reject certain of their leases and subleases.

US-DOCS\150990229.15

13.     The Debtors have identified five (5) leases (the "***Identified Leases***") and one (1) sublease (the "***Sublease***" and, together with the Identified Leases, the "***Leases***") that threaten the Debtors' continued operations as a going concern and ought to be rejected.  Two of the Identified Leases are currently occupied by third-party sublessees (the "***Sublessees***") pursuant to individual subleases.  The Debtors seek authority to reject the Leases set forth on **Schedule 1** attached to the Proposed Order effective as of the Petition Date (the "***Lease Rejection Date***").

14.     Prior to the filing of this Motion, the landlords and/or lessors and the Sublessees set forth on **Schedule 1** attached to the Proposed Order (collectively, the "***Landlords***") received correspondence (collectively, the "***Landlord Letters***") from the Debtors indicating that the Debtors intend to reject the Leases as of the Lease Rejection Date and that the Debtors were unequivocally surrendering possession of the applicable properties (collectively, the "***Premises***") in conjunction therewith as of the Lease Rejection Date.  The Landlords will not be unduly prejudiced if the Leases are rejected effective as of the Lease Rejection Date because the Debtors will have served the Landlord Letters prior to the Lease Rejection Date, and this Motion on the Lease Rejection Date on the Landlords and/or their agents or representatives by overnight delivery, and electronic mail (where available), in accordance with the notice provisions of the Leases, thereby advising such Landlords that the Debtors intend to reject the Leases effective as of the Lease Rejection Date.  Furthermore, the Debtors have or will, on or before the Lease Rejection Date: (a) relinquished the keys, if any, to the Landlords or their representatives; (b) provided the alarm code(s) and/or keyless entry code(s), if any, to the Landlords or their representatives; (c) abandoned the Premises in substantially the condition required by the Leases; and (d) delivered the Landlord Letters, which indicate that the Debtors are unequivocally surrendering possession of the Premises as a result thereof, if applicable.  Importantly, given that the Plan contemplates the

US-DOCS\150990229.15

payment in full of General Unsecured Claims (as defined in the Plan) subject to the statutory cap set forth in section 502(b)(6) of the Bankruptcy Code, the landlords and/or lessors will receive the full amount of their allowed rejection damages claims subject to the statutory cap set forth in section 502(b)(6) of the Bankruptcy Code.

15.     Despite such contemplated payment in full of allowed rejection damages claims subject to the statutory cap set forth in section 502(b)(6) of the Bankruptcy Code, rejecting the Leases will save the Debtors and their estates approximately $78.3 million, in the aggregate, over the remaining terms of the Leases.  As an initial matter, by rejecting the Leases, the Debtors will avoid any amounts they would have owed on the leases that exceed the statutory cap and the accrual of unnecessary administrative expenses that would have no foreseeable benefits to the Debtors' estates.  Moreover, given the obligations under the Leases and current market conditions, the Debtors have concluded, in consultation with their advisors, that the Leases are not marketable and are unlikely to generate material value for the Debtors' estates.[3]

16.     During the ordinary course of business, the Debtors accumulated certain miscellaneous assets at the Premises, including certain furniture and office equipment of limited value.  The Debtors generally have removed such assets from the Premises.  However, the Debtors have determined that, in the exercise of their business judgment, certain of these assets were or will be difficult or expensive to remove or store (the "***Remaining Property***").  The Debtors estimate that the Remaining Property is of limited value and, therefore, the Debtors will not realize any economic benefit by retaining the Remaining Property and may experience an economic loss if the Debtors were to try and retain such Remaining Property as a result of the cost to relocate and

---

[3]   Two Landlords hold letters of credit, one of which totals approximately $2.0 million and guarantees the lease in Lanham MD, and the other of which totals approximately $2.5 million and guarantees the lease in Brooklyn, NY.

US-DOCS\150990229.15

potentially store the same.  Each Landlord Letter advised the applicable counterparties that the Debtors were surrendering any Remaining Property that is located at the Premises.  Accordingly, the Debtors request authority to abandon any Remaining Property, effective as of the applicable Lease Rejection Date.

## BASIS FOR RELIEF

### A.    REJECTION OF THE LEASES REFLECTS THE DEBTORS' SOUND BUSINESS JUDGMENT

17.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any . . . executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The purpose behind section 365(a) of the Bankruptcy Code is "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property."  *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1098 (2d Cir. 1993); *In re Rep. Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016); *In re Grubb & Ellis Co.*, 2012 WL 1036071, at *4 (S.D.N.Y. Mar. 27, 2012); *In re Bildisco*, 465 U.S. 513, 528 (1984) ("the authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization").

18.    The standard applied by courts to determine whether the assumption or rejection of an unexpired nonresidential lease should be authorized is the "business judgment" test, which requires a debtor to have determined that the requested assumption or rejection would be beneficial to its estate.  *See Grp. of Institutional Inv'rs, Inc. v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 318 U.S. 523, 550 (1943) (noting that "the question whether a lease should be rejected . . . is one of business judgment"); *In re Bildisco*, 628 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 ("The

8

usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *In re Old Carco LLC*, 470 B.R. 688, 703 (Bankr. S.D.N.Y. 2012) (noting that the business judgment standard "applies when a Bankruptcy Court approves a debtor's assumption or rejection of a contract"); *In re Rep. Airways Holdings Inc.*, 547 B.R. at 582; *In re Delta Airlines, Inc.*, 359 B.R. 468, 476 (Bankr. S.D.N.Y. 2006).

19.    In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject leases.  *See e.g.*, *In re MF Global Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012) ("Courts generally will not second-guess a debtor's business judgment concerning whether the assumption or rejection of an executory contract or unexpired lease would benefit the debtor's estate."); *In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996).

20.    A court may permit such retroactive rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses.  *See Bildisco*, 465 U.S. at 523 (stating that rejection relates back to the petition date); *In re Jamesway Corp.*, 179 B.R. 33, 38 (S.D.N.Y. 1995) ("A court can . . . approve rejection retroactively."); *In re Bethlehem Steel Corp.*, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002); *see also In re Thinking Machs. Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("In the section 365 context . . . bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation.").

21.    Rejection of the Leases is well within the Debtors' business judgment and will serve the best interests of their estates.  The Debtors no longer require the use of the Premises.  The Debtors will surrender, or have surrendered, each of the Premises to the respective Landlords as

of the Lease Rejection Date.  As a result, as of the Lease Rejection Date, the Leases have no value

to the Debtors' estates.

22.    The facts and circumstances of these Chapter 11 Cases and the balance of the

equities favor the Debtors' retroactive rejection of the Leases effective as of the Lease Rejection

Date.  Without a retroactive date of rejection, the Debtors may incur unnecessary administrative

charges and other unnecessary expenses related to the Leases.  Moreover, the Landlords will not

be unduly prejudiced if the Leases are rejected, effective as of the Lease Rejection Date, because

the Debtors informed the Landlords prior to the Lease Rejection Date that they would reject the

Leases effective as of the Lease Rejection Date.  Additionally, this Motion—which is being served

on the Landlords and/or their agents or representatives by overnight delivery, electronic mail,

and/or facsimile—is a statement to such Landlords that the Debtors are unequivocally surrendering

their interests in the Leases (and underlying leasehold) as of the Lease Rejection Date.

Importantly, given that the Plan contemplates the payment in full of General Unsecured Claims

subject to the statutory cap set forth in section 502(b)(6) of the Bankruptcy Code, the Landlords

will receive the full amount of their allowed rejection damages claims subject to the statutory cap

set forth in section 502(b)(6) of the Bankruptcy Code.

23.    Given it is in the best interests of the Debtors and their estates to eliminate the

potential incurrence of administrative expenses and to avoid the potential accrual of any further

obligations under the Leases, the Debtors respectfully submit that the retroactive rejection of the

Leases is appropriate.

**B.    ABANDONMENT OF ANY REMAINING PROPERTY AS OF THE APPLICABLE
LEASE REJECTION DATE IS AUTHORIZED BY SECTION 554(A) OF THE
BANKRUPTCY CODE**

24.    Under section 554(a) of the Bankruptcy Code, a debtor, after notice and a hearing,

is authorized to "abandon any property of the estate that is burdensome to the estate or that is of

inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  The right to abandon property

is virtually unfettered, unless (a) abandonment of the property will contravene laws designed to

protect public health and safety, or (b) the property poses an imminent threat to the public's

welfare.  *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986).  Neither of these limitations

is relevant under the instant facts.

25.    Any Remaining Property left at the Premises is of inconsequential value to the

Debtors' estates, and the costs to the Debtors of removing or storing the Remaining Property will

exceed any realistic economic benefit that might be realized by retaining such Remaining Property.

Accordingly, the Debtors have determined that, in the exercise of their sound business judgment,

abandonment of any Remaining Property will be in the best interests of the Debtors and their

estates.

## C.    PRECEDENT CASES SUPPORT GRANT OF THE REQUESTED RELIEF

26.    The relief requested in this Motion is similar to relief granted by numerous courts,

including this Court in other chapter 11 cases in this district.  *See, e.g.*, *In re Troika Media Grp.,

Inc.*, Case No. 23-11969 (DSJ) (Bankr. S.D.N.Y. Jan. 2, 2024) [Docket No. 71] (authorizing the

debtors to reject certain unexpired leases of real property and to abandon any personal property of

the debtors remaining at the lease premises); *In re Mercon Coffee Corp.*, Case No. 23-

11945 (MEW) (Bankr. S.D.N.Y. May 23, 2024) [Docket No. 520] (same); *In re Vice Grp.

Holding, Inc.*, Case No. 23-10738 (JPM) (Bankr. S.D.N.Y. July 21, 2023) [Docket No. 326]

(same); *In re SVB Fin. Grp.*, Case No. 23-10367 (MG) (Bankr. S.D.N.Y. June 29, 2023) [Docket

No. 370] (same); *In re GBG USA Inc.*, Case No. 21-11369 (MEW) (Bankr. S.D.N.Y. Sept. 22,

2021) [Docket Nos. 235, 236] (same); *In re KB US Holdings, Inc.*, Case No. 20-22962 (SHL)

(Bankr. S.D.N.Y. Jan. 29, 2021) [Docket No. 528] (same).

## RESERVATION OF RIGHTS

27.    Nothing in this Motion shall be deemed:  (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved); (f) except as otherwise provided in the Motion, a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  If this Court enters any order granting the relief sought herein, any payment made pursuant to such order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## MOTION PRACTICE

28.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***").

## NOTICE

29.     Notice of this Motion will be given to:  (a) the United States Trustee for Region 2; (b) Milbank LLP as counsel to the First Lien Ad Hoc Group; (c) the administrative agent and collateral agent under the first lien credit agreement; (d) Weil, Gotshal & Manges LLP as counsel to the Ad Hoc Noteholder Group; (e) Schulte Roth & Zabel LLP as counsel to Greenvale; (f) the indenture trustees for the Notes; (g) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (h) the United States Attorney's Office for the Southern District of New York; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the Landlords; (l) the Sublesses; and (m) all parties entitled to notice pursuant to Local Rule 9013-1(b).  The Debtors submit that, under the circumstances, no other or further notice is required.

30.     A copy of this Motion is available from (a) this Court's website, www.nysb.uscourts.gov, and (b) the website maintained by the Debtors' proposed claims and noticing agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/2U.

## NO PRIOR MOTION

31.     The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other court.

WHEREFORE the Debtors respectfully request that this Court enter the Proposed Order granting the relief requested in this Motion and such other and further relief as may be just and proper.

**LATHAM & WATKINS LLP**

Dated:  July 25, 2024            By:   */s/ George A. Davis*
        New York, New York       George A. Davis
                                 George Klidonas
                                 Anupama Yerramalli
                                 Randall C. Weber-Levine
                                 Scott Yousey
                                 1271 Avenue of the Americas
                                 New York, NY 10020
                                 Telephone: (212) 906-1200
                                 Facsimile: (212) 751-4864
                                 Email:  george.davis@lw.com
                                         george.klidonas@lw.com
                                         anu.yerramalli@lw.com
                                         randall.weber-levine@lw.com
                                         scott.yousey@lw.com

                                 *Proposed Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT A**

**Proposed Order**

US-DOCS\150990229.15

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 (MEW) |
| Debtors.[1] | (Jointly Administered) |

### ORDER (A) AUTHORIZING THE DEBTORS TO (I) REJECT CERTAIN UNEXPIRED LEASES AND SUBLEASE OF NONRESIDENTIAL REAL PROPERTY AND (II) ABANDON ANY REMAINING PERSONAL PROPERTY LOCATED AT THE LEASED PREMISES; AND (B) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtors for an order (this "***Order***"): (a) authorizing, but not directing, the Debtors, in their sole discretion, to (i) reject, effective as of the Lease Rejection Date, certain unexpired leases and a certain sublease of nonresidential real property, and (ii) abandon, effective as of the Lease Rejection Date, any Remaining Property located at the Premises; and (b) granting related relief; and this Court having reviewed the Motion and the First Day Declarations; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order consistent with

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington Virginia 22202.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and a hearing having been held to consider the relief requested in the Motion (the "**_Hearing_**"); and upon the First Day Declarations and the record of the Hearing and all the proceedings before this Court; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED, as set forth herein.

2.      All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.      The Leases identified on **<u>Schedule 1</u>** hereto, to the extent not already terminated in accordance with their applicable terms or upon agreement of the parties, are hereby rejected, effective as of the Lease Rejection Date.

4.      The Debtors are authorized to abandon any Remaining Property located at the Premises free and clear of all liens, claims, encumbrances, interests, and rights of third parties, with such abandonment being effective as of the Lease Rejection Date, as applicable.  The applicable Landlords and/or their agents or representatives are authorized to dispose of the abandoned Remaining Property without liability to the Debtors or any third party, and, to the extent applicable, the automatic stay is modified to allow such disposition.

5.      Nothing contained in the Motion or this Order shall prejudice the rights of the Debtors to argue that:  (a) any of the Leases were terminated prior to the Lease Rejection Date, as applicable; (b) any claim for damages arising from the rejection of the Leases is limited to the

2

remedies available under any applicable termination provision of such Leases; or (c) any such claim is an obligation of a third party and not that of the Debtors or their estates.

6.      Nothing in the Motion or this Order or the relief granted herein (including any actions taken or payments made by the Debtors) is to be construed as (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a concession by the Debtors that any lien (contractual, common, statutory or otherwise) is valid (and all rights to contest the extent, validity or perfection or seek avoidance of all such liens are expressly reserved); (f) except as otherwise set forth in the Motion, a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  Nothing contained in this Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

7.      The requirements set forth in Bankruptcy Rules 6006 and 6007 are satisfied and no further notice of the Motion is necessary.

8.      The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

3

9.      This Court retains jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.


New York, New York
Dated:_____, 2024

_____
UNITED STATES BANKRUPTCY JUDGE

4

## SCHEDULE 1

### Rejected Leases

| Landlord Counterparty and Address | Location of Leased Property | | | Debtor Counterparty | Rejection Date |
|---|---|---|---|---|---|
| | Street Address | City | State | | |
| KCP Harkins Fee Owner, LLC<br><br>1370 Broadway<br>6th Floor<br>New York, NY 10018 | 7900 Harkins Rd. | Lanham | MD | 2U Harkins Road LLC | Petition Date |
| RFR/K 55 Prospect Owner LLC<br><br>c/o Kushner Companies<br>666 Fifth Ave, 15th Floor<br>New York, NY 10103 | 55 Prospect St. #900 | Brooklyn | NY | 2U NYC, LLC | Petition Date |
| Carolina Square Project LP<br><br>c/o Cousins Properties Incorporated<br>3344 Peachtree Road NE<br>Atlanta, GA 30326 | 123 West Franklin St.<br>Suite No. 610[1] | Chapel Hill | NC | 2U, Inc. | Petition Date |
| PG Mainstreet North Forty, LLC<br><br>c/o Mainstreet Real Estate Services, Inc.<br>2101 West Commercial Blvd, Suite 1200<br>Fort Lauderdale, FL 33309 | 5201 Congress Ave. | Boca Raton | FL | edX Boot Camps LLC (d/b/a Trilogy Education Services LLC) | Petition Date |
| OLIVE/HILL STREET PARTNERS, LCC | 1150 South Olive St. Suite 2050[2] | Los Angeles | CA | 2Tor, Inc. | Petition Date |

---

[1]   Rocket Media, LLC, d/b/a Launch Labs, is currently subleasing this property from the Debtor 2U, Inc. pursuant to that certain Sublease Agreement, dated as of August 31, 2023.

[2]   Fulfillment Fund is currently subleasing this property from the Debtor 2U, Inc. pursuant to that certain Sublease Agreement, dated as of July 1, 2023.

| Landlord Counterparty and Address | Location of Leased Property | | | Debtor Counterparty | Rejection Date |
| --- | --- | --- | --- | --- | --- |
| | Street Address | City | State | | |
| c/o LBA Realty<br>3347 Michelson Drive<br>Suite 200<br>Irvine, CA 92612 | | | | | |
| Houghton Mifflin Harcourt Publishing Company<br><br>222 Berkeley Street<br>Boston, MA 02116 | 125 High Street[3] | Boston | MA | edX LLC | Petition Date |

---

[3]    The Debtors sublet these premises.  The rejection of this sublease is not designed affect the underlying lease between Houghton Mifflin Harcourt Publishing Company and its landlord.

US-DOCS\150990229.15