**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 (MEW) |
| Debtors.[1] | (Jointly Administered) |

### INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO
### (I) OBTAIN JUNIOR LIEN POSTPETITION FINANCING AND
### (II) USE CASH COLLATERAL; (B) GRANTING LIENS
### AND SUPERPRIORITY CLAIMS; (C) GRANTING ADEQUATE
### PROTECTION TO CERTAIN PARTIES; AND (D) GRANTING RELATED RELIEF

Upon the motion, dated [Docket No. 6] (the "**Motion**"), of 2U, Inc. (the "**Borrower**") and the other debtors in possession (collectively, with the Borrower, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") seeking, pursuant to sections 105, 361, 362, 363, 364, 503, 506(c), 507, 546, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), entry of interim and final orders (respectively, the "**Interim Order**" and "**Final Order**") authorizing, among other things, the Debtors to obtain junior secured postpetition financing in the form of a term loan facility in the aggregate principal amount of up to $64 million (the "**DIP Facility**"), of which up to $60 million will be available immediately upon entry of this Interim Order (the "**Interim Borrowing**"), with the remaining up to $4 million to be available subject to and upon entry of the Final Order (the "**Final Borrowing**"), in accordance with and subject to the terms and conditions set forth in the DIP Credit Agreement (as defined

---

1    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

below), the other Credit Documents (as defined in the DIP Credit Agreement and, together with the DIP Credit Agreement, the "**DIP Credit Documents**"), this Interim Order, the Final Order (as it relates to any Final Borrowing) and the Approved Budget (as defined in the DIP Credit Agreement) then in effect; and upon this Court's consideration of that certain *Debtor-in-Possession Credit and Guaranty Agreement*, dated as of July 24, 2024, by and among the Borrower, certain subsidiaries of the Borrower party thereto, as guarantors (together with any subsidiaries of the Borrower that become guarantors subsequent to the Closing Date (as defined in the DIP Credit Agreement), the "**DIP Guarantors**" and, together with the Borrower, the "**DIP Credit Parties**"), Wilmington Savings Fund Society, FSB, as Administrative Agent and Collateral Agent (collectively, in such capacities, the "**DIP Agent**"), and the lenders from time to time party thereto (the "**DIP Lenders**" and, together with the DIP Agent, the "**DIP Secured Parties**"), substantially in the form filed with this Court as <u>**Exhibit A**</u> hereto (as the same may be amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**DIP Credit Agreement**"),[2] and the other DIP Credit Documents; and the Court having considered the interim relief requested in the Motion; and upon the record made by (a)  the Motion and the exhibits attached thereto, the *Declaration of Cullen Murphy in Support of Motion of Debtors for Interim and Final DIP Orders (A) Authorizing the Debtors to (I) Obtain Junior Lien Postpetition Financing and (II) Use Cash Collateral; (B) Granting Liens and Superpriority Claims; (C) Granting Adequate Protection to Certain Parties; and (D) Granting Related Relief* (the "**Murphy Declaration**"), and the *Declaration of William Kocovski, Restructuring Consultant to the Debtors, in Support of First Day Motions* (the "**First**

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Credit Agreement, or the other DIP Credit Documents, as applicable.

**Day Declaration**") filed with the Court in support of the relief requested in the Motion, and (b) the testimony and evidence at the interim hearing, held on July 26, 2024, on the Motion (the "**Interim Hearing**"); and due and sufficient notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the hearing to consider the Motion on a final basis (the "**Final Hearing**"), is otherwise fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and after due deliberation and consideration of all objections or responses to the Motion, and for good and sufficient cause therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.     <u>**Commencement of Chapter 11 Cases**</u>.  On July 25, 2024 (the "**Petition Date**"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No official committee or chapter 11 trustee has been appointed in the Chapter 11 Cases.

---

[3]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

B.    **Jurisdiction and Venue**.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).    Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.    Sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Rules provide the bases for the relief sought in the Motion and granted in this Interim Order.

C.    **Notice**.    Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors, in accordance with and compliance with Bankruptcy Rules 2002, 4001, and 9014, as well as the Local Rules, and is due, sufficient, and appropriate notice, and complies with section 102(1) of the Bankruptcy Code.    Without limiting the foregoing, due notice was afforded, whether by email, overnight courier and/or hand delivery to the Notice Parties.    No other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.    The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

D.    **Debtors' Stipulations**.    Subject to Sections 17, 18, 19, and 20 of this Interim Order, the Debtors admit, stipulate and agree that:

(1)    As of the Petition Date, pursuant to that certain Credit and Guaranty Agreement, dated as of June 28, 2021 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "**Prepetition Credit Agreement**" and, collectively with the Collateral Documents (as defined in the Prepetition Credit Agreement) and any other agreements and documents

4

executed or delivered in connection with the Prepetition Credit Agreement or Collateral Documents, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**Prepetition Loan Documents**"), by and among the Borrower (in such capacity, the "**Prepetition Borrower**"), certain subsidiaries of the Prepetition Borrower party thereto, as guarantors (the "**Prepetition Guarantors**" and, together with the Prepetition Borrower, the "**Prepetition Credit Parties**"), Alter Domus (US) LLC, as administrative agent and collateral agent (in such capacities, the "**Prepetition Agent**"), and the lenders from time to time party thereto (the "**Prepetition Lenders**" and, together with the Prepetition Agent, the **"Prepetition Secured Parties**"), the Prepetition Credit Parties incurred "Obligations" (as defined in the Prepetition Credit Agreement, the "**Prepetition Secured Obligations**") to the Prepetition Secured Parties on a joint and several basis;

(2)    As of the Petition Date, the Prepetition Credit Parties were justly and lawfully indebted and liable to the Prepetition Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, for Loans (as defined in the Prepetition Credit Agreement) in the aggregate principal amount of not less than $414,300,000.00, plus accrued and unpaid interest thereon and any fees, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other Prepetition Secured Obligations incurred under the Prepetition Loan Documents;

(3)    The Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Credit Parties, enforceable in accordance with the terms of the Prepetition Loan Documents, and no portion of the Prepetition

5

Secured Obligations or any payment made to the Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any Avoidance Actions (as defined below)), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(4)     As of the Petition Date, pursuant to the Prepetition Loan Documents, the Prepetition Credit Parties granted to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, a security interest in and continuing lien on (the "**Prepetition Liens**") substantially all of their respective assets and property, including (but, for the avoidance of doubt, not including any Excluded Assets (as defined in the Prepetition Loan Documents)), a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the Collateral (as defined in the Prepetition Credit Agreement), which, for the avoidance of doubt, includes Cash Collateral (as defined below), and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "**Prepetition Collateral**");

(5)     None of the Prepetition Liens are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any Avoidance Actions), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

6

(6)     No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Parties or their Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Prepetition Secured Party that is in existence as of the Petition Date.

(7)     As of the Petition Date, pursuant to that certain Indenture, dated as of April 23, 2020 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**2025 Notes Indenture**"), by and between 2U Inc., as issuer (the "**Issuer**"), and Wilmington Trust, National Association, as trustee (the "**Indenture Trustee**"), governing the Issuer's $380 million aggregate principal amount of 2.25% Convertible Senior Notes due 2025 (the "**2025 Notes**"), and that certain Indenture, dated as of January 11, 2023 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**2030 Notes Indenture**" and, collectively with the 2025 Notes Indenture and any other agreements and documents executed or delivered in connection with the 2025 Notes Indenture or the 2030 Notes Indenture, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Indentures**"), by and between the Issuer and the Indenture Trustee, as trustee, governing the Issuer's $147 million aggregate principal amount of 4.50% Senior Unsecured Convertible Notes due 2030 (the "**2030 Notes**" and, together with the 2025 Notes, the "**Convertible Notes**" and, all the holders of the Convertible Notes, whether or not party to this Agreement, the "**Convertible Noteholders**"), the Debtors were justly and lawfully unconditionally indebted and liable to the Convertible Noteholders without defense, challenge, objection, claim, counterclaim,

or offset of any kind (a) in the amount of not less than $381.9 million in aggregate principal and accrued interest outstanding under the 2025 Notes (together with all other debts, liabilities and obligations under the 2025 Indenture, the "**2025 Notes Obligations**") and (b) in the amount of not less than $150.1 million in aggregate principal and accrued interest outstanding under the 2030 Notes (together with all other debts, liabilities and obligations under the 2030 Indenture, the "**2030 Notes Obligations**" and, the 2030 Notes Obligations together with the 2025 Notes Obligations, the "**Notes Obligations**").

(8)    The Notes Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of the Indentures, and no portion of the Notes Obligations or any payment made to the Convertible Noteholders or applied to or paid on account of the Notes Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any Avoidance Actions), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law; and

(9)    No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Convertible Noteholders or their Representatives, in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Convertible Noteholder that is in existence as of the Petition Date.

(10)    No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the DIP Agent or the other DIP Secured Parties under, with respect to, in connection with, related to, or arising from any agreements by and among

the Debtors and any of the DIP Agent or the other DIP Secured Parties, including, without limitation, this Interim Order, the other DIP Credit Documents, or otherwise that is in existence as of the Petition Date.

(11)    None of the DIP Agent or the other DIP Secured Parties control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, or the DIP Credit Documents.  None of the Prepetition Secured Parties control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition Loan Documents.  None of the Convertible Noteholders control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to or arising from any Indenture.

E.    **Cash Collateral**.  As used herein, the term "**Cash Collateral**" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Prepetition Secured Parties or DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

F.    **No Credit Available on More Favorable Terms**.  As set forth in the Motion and on the record before this Court, the Debtors are unable to obtain:  (i) financing on more favorable terms and conditions from sources other than the DIP Lenders under the DIP Credit Documents; (ii) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense;  or (iii) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, and have only been able to obtain credit for money borrowed that is secured by a junior lien on property of the DIP Credit Parties.  The Debtors have also been unable to obtain credit for borrowed money without (i) granting the DIP Liens (as defined below), (ii) the DIP Superpriority Claims (as defined below) to (or for the benefit of) the DIP Secured Parties, and (iii) incurring the Adequate Protection Obligations (as defined below).  Accordingly, the DIP Facility is the best source of debtor-in-possession financing available to the Debtors.

G.    **Extension of Financing**.  The DIP Lenders have indicated a willingness to provide the DIP Facility (and the Loans (as defined in the DIP Credit Agreement) thereunder (the "**DIP Loans**")) to the Borrower in accordance with this Interim Order, the other DIP Credit Documents, and the Approved Budget then in effect, and subject to (i) the entry of this Interim Order, (ii) the entry of the Final Order by no later than the applicable DIP Milestone (as defined and set forth in the DIP Credit Agreement), (iii) approval and ratification of the Debtors' entry into the DIP Credit Agreement, the other DIP Credit Documents, and each of their respective terms, and (iv) findings by this Court that (x) such financing is essential to the Debtors' estates, the continued operation of the Debtors' businesses, and the preservation of the value of the Debtors' assets, (y) the DIP Secured Parties are good-faith lenders, and (z) the DIP Secured Parties' claims, junior lien claims, security interests and liens, rights, and other

protections granted pursuant to and in connection with this Interim Order and the DIP Facility (including the DIP Superpriority Claims and the DIP Liens), will not be affected by any subsequent reversal, modification, vacatur, stay or amendment, as the case may be, of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

H.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)    The DIP Facility and the DIP Credit Documents result from a competitive process that the Debtors, along with their advisors, conducted to select the best available terms of postpetition financing available to the Debtors under the circumstances.  The DIP Facility and the DIP Credit Documents were negotiated in good faith and at arm's length between the DIP Credit Parties, on the one hand, and each DIP Secured Party, on the other hand.  The terms and conditions of the DIP Facility and the DIP Credit Documents, and the fees paid and to be paid thereunder and/or in respect thereof, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration;

(ii)    all obligations incurred, payments made (or to be made), and transfers or grants of security set forth in this Interim Order, the DIP Facility, and the DIP Credit Documents by any DIP Credit Party are granted to or for the benefit of the DIP Secured Parties for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the DIP Loans and the Commitments (as defined in the DIP Credit Agreement) (such commitments, the "**DIP Commitments**") and the other financial accommodations secured thereby; and

(iii)    the use of proceeds from the DIP Loans made under the DIP Facility that may be extended under this Interim Order and the other DIP Credit Documents are deemed to be

extended by the DIP Lenders in good faith and for valid business purposes and uses, and in express

reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the

DIP Secured Parties (and the successors and assigns of each) are entitled to the full protection and

benefits of section 364(e) of the Bankruptcy Code whether or not this Interim Order or any

provision thereof is vacated, reversed or modified, on appeal or otherwise.

(iv)     Based on the Motion, the First Day Declaration, the Murphy Declaration

and the record and argument presented to the Court at the Interim Hearing, the terms of the

adequate protection granted to the Prepetition Secured Parties as provided in Section 12 of this

Interim Order (collectively, the "**Adequate Protection**"), and the terms on which the Debtors may

continue to use Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order

and the DIP Credit Documents are consistent with the Bankruptcy Code, including section 506(b)

thereof, are fair and reasonable, and reflect the Debtors' exercise of prudent business judgment

consistent with their fiduciary duties under the circumstances.

(v)     The Prepetition Secured Parties and the DIP Secured Parties have acted in

good faith and without negligence, misconduct, or violation of public policy or law, in respect of

all actions taken by them in connection with or related in any way to negotiating, implementing,

documenting, or obtaining requisite approvals of this Interim Order and the use of Cash Collateral,

including in respect of the granting of the Adequate Protection Liens (as defined below), any

challenges or objections to the use of Cash Collateral, and all other documents related to and all

transactions contemplated by the foregoing.  Accordingly, without limitation to any other right to

indemnification, the Prepetition Secured Parties and the DIP Secured Parties shall be and hereby

are indemnified (as applicable) as provided in the Prepetition Loan Documents or the DIP Credit

Documents, as applicable.

(vi)     The Prepetition Secured Parties are entitled to the Adequate Protection as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed Adequate Protection are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral, including Cash Collateral.

I.     **Section 506(c)**.  The parties' request for a waiver of section 506(c) of the Bankruptcy Code will be considered in connection with the entry of a Final Order and with a full reservation of the parties' rights.

J.     **Section 552(b)**.  The parties' request for confirmation that the Prepetition Secured Parties shall have all of the rights and benefits of section 552(b) of the Bankruptcy Code, and that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral, will be considered in connection with the entry of a Final Order and with a full reservation of the parties' rights.

K.     **Relief Essential; Best Interest**.  The relief provided in this Interim Order is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their assets and property.  Good and sufficient cause has been shown for the entry of this Interim Order and for the authorization of the Debtors to obtain financing pursuant to the DIP Credit Documents.  The Debtors have an immediate and critical need to obtain the relief set out herein, and will suffer immediate and irreparable harm if the interim relief is not granted.  It is in the best interests of the Debtors' estates that the Debtors be allowed to enter into the DIP Facility and the DIP Credit Documents (and entry into such documents is

ratified), to incur the Obligations (as defined in the DIP Credit Agreement) (the "**DIP Obligations**") and to grant the liens, claims, rights, and other protections contemplated by this Interim Order, the DIP Facility, and the DIP Credit Documents to the DIP Secured Parties.

Based upon the foregoing findings and conclusions, the Motion, and the record before this Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    **Motion Granted**.  The relief sought in the Motion is hereby granted on an interim basis to the extent set forth in this Interim Order, and the Interim Borrowing under the DIP Facility is hereby authorized, upon the terms and conditions set forth in this Interim Order and the DIP Credit Documents.  Any objections to the relief set forth in this Interim Order that have not been withdrawn, waived, or settled are hereby denied and overruled in their entirety.  The Interim Order shall become effective and enforceable immediately upon its entry.

2.    **DIP Facility**.

(a)    **DIP Obligations**.  The Debtors are expressly and immediately authorized and empowered (i) to enter into the DIP Credit Documents, and their entry into such agreements is hereby ratified and approved, (ii) to incur the DIP Obligations in accordance with and subject to this Interim Order and the other DIP Credit Documents, (iii) to enter into, execute and/or deliver all the DIP Credit Documents and all other instruments, certificates, agreements and documents contemplated thereby or hereby, and (iv) to take all actions, which may be required or otherwise necessary for the performance by the DIP Credit Parties under the DIP Credit Documents and the creation and perfection of the DIP Liens described and provided for herein and therein.  The DIP Credit Parties are hereby authorized and directed to pay, without further court order, all principal,

14

interest, fees, costs and expenses, indemnities and other amounts described herein and in the DIP

Credit Documents (including the DIP Obligations) as such shall accrue and become due hereunder

or thereunder, and all such payments of principal, interest, fees, costs and expenses, indemnities

and other amounts shall not be subject to disgorgement once made.  The DIP Credit Documents

and all DIP Obligations represent, constitute and evidence, as the case may be, valid and binding,

joint and several, obligations of the DIP Credit Parties, enforceable against each of the DIP Credit

Parties, each of their estates and any successors thereto in accordance with their terms.  All

obligations incurred, payments made, rights granted, and transfers or grants of security set forth in

this Interim Order or the other DIP Credit Documents by any DIP Credit Party are for fair

consideration and reasonably equivalent value, and are granted contemporaneously with the

making of the loans and/or commitments and other financial accommodations secured thereby.

The obligations and guarantees incurred or made, payments made, transfers or grants of security

as set forth in the DIP Credit Documents, by any DIP Credit Party as approved under this Interim

Order shall not be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code

or under any applicable non-bankruptcy law, or subject to any challenge, rejection, reduction,

subordination, defense, recharacterization, avoidance, reduction, setoff, recoupment or

counterclaim or other claim, cause of action or other challenge of any nature under the Bankruptcy

Code or any applicable non-bankruptcy law.

(b)    **Authorization to Borrow**.  To prevent immediate and irreparable harm to

the Debtors' estates, the Borrower is hereby authorized to borrow under the DIP Facility, and the

DIP Guarantors are authorized to guarantee, on a joint and several basis, repayment of such DIP

Obligations up to the Interim Borrowing under the DIP Facility (plus interest, fees, indemnities,

and other expenses and other amounts provided for in the DIP Credit Agreement) in accordance with this Interim Order, the Approved Budget then in effect, and the DIP Credit Documents.

(c)    **DIP Account**.  The Debtors shall maintain a deposit account at Flagstar Bank, N.A. in the name of the Debtor 2U, Inc. but subject to a deposit account control agreement solely in favor of the DIP Agent, with the account number ending in ******1233, which account (x) shall constitute DIP Collateral and (y) shall be subject solely to the DIP Liens and the DIP Superpriority Claims (the "**DIP Account**").  The proceeds of the DIP Facility (including the Interim Borrowing and the Final Borrowing) shall be funded into the DIP Account and the Debtors shall be permitted to make Withdrawals from the DIP Account for disbursements to be made on such day or the immediately succeeding day, subject to the terms and conditions of the DIP Credit Agreement (including Section 5.19 thereof), including, without limitation, the prior or concurrent submission of a Withdrawal Notice to the DIP Agent (for distribution to the DIP Lenders), with a concurrent copy (which shall not constitute notice) to the Lender Advisors, that certifies, among other things, that the Withdrawal complies with the Withdrawal Conditions.[4]  Notwithstanding anything to the contrary herein, proceeds of the DIP Facility (including all amounts in the DIP Account) shall constitute DIP Collateral and be subject solely to the DIP Liens and the DIP Superpriority Claims.

---

[4]    "Withdrawal Conditions" shall mean "(a) no Default or Event of Default shall have occurred and be continuing on the date of the Withdrawal or after giving effect to the use of the Withdrawal, (b) an Authorized Officer of the Borrower shall have delivered to the Collateral Agent and the Lenders a Withdrawal Notice with respect to the applicable Withdrawal, (c) the Interim DIP Order or Final DIP Order, as applicable, shall be in full force and effect and shall not have been vacated, reversed, modified, amended or subject to a stay without the prior written consent of the Required Lenders, and (d) the Withdrawal Liquidity Condition shall have been satisfied."

"Withdrawal Liquidity Condition" shall mean "with respect to any Withdrawal on any date, the amount of the requested Withdrawal does not exceed the positive difference of (a) the amount of disbursements to be made on such day or the immediately succeeding day, which disbursements are to be made in accordance with the Approved Budget (subject to Permitted Variances), _minus_ (b) the aggregate amount of cash in the Credit Parties' bank accounts as of the end of the day immediately prior to such withdrawal date in excess of $5,000,000."

3.      **DIP Liens**.

(a)      Effective as of the date of entry of this Interim Order, in each case subject only to the Carve-Out (as defined below) and the priorities set forth in Section 3 hereof, the DIP Agent, for the benefit of the DIP Secured Parties and to secure the DIP Obligations, is granted, without the necessity of the execution or recordation of filings by the DIP Credit Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents or instruments, or the possession or control by the DIP Agent or any DIP Lender of, or over, any collateral, the following security interests and liens (all such security interests and liens granted to the DIP Agent, for the benefit of the DIP Secured Parties, pursuant to this Interim Order and the other DIP Credit Documents, collectively, the "**DIP Liens**" and, the property subject to the DIP Liens, the "**DIP Collateral**"):

(i)      Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, enforceable, non-avoidable, continuing and automatically and fully-perfected security interest in and lien on all prepetition and postpetition property of each DIP Credit Party (whether existing on the Petition Date or thereafter acquired) that is not, on or as of the Petition Date, subject to valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) (collectively, the "**Unencumbered Property**"), including, without limitation, any unencumbered cash of each DIP Credit Party (whether maintained with the DIP Agent, in the DIP Account or otherwise) and any investment of such cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, intercompany claims, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, securities

accounts, commodity accounts, commercial tort claims, instruments, investment property, letter-of-credit rights, supporting obligations, vehicles, machinery and equipment, real property, leases[5] (and proceeds from the disposition thereof), all of the issued and outstanding capital stock or other equity or ownership interests held by each DIP Credit Party, including equity interests in subsidiaries and non-wholly-owned subsidiaries, beneficial interests in any trust, money, investment property, causes of action (other than Avoidance Actions[6] and any proceeds of Avoidance Actions, but with a reservation of the parties' rights to seek the approval of liens and security interests on Avoidance Actions and the proceeds of Avoidance Actions in connection with the entry of a Final Order), and all cash and non-cash proceeds, rents, products, substitutions, accessions, profits and supporting obligations of any of the collateral described above, whether in existence on the Petition Date or thereafter created, acquired or arising and wherever located, which security interest and liens in favor of the DIP Agent and the DIP Lenders are with respect to (x) proceeds of the DIP Facility, the DIP Account, and any and all amounts from time to time therein, are subject only to the Carve-Out and (y) all DIP Collateral other than proceeds of the DIP Facility, the DIP Account, and any and all amounts from time to time therein, are subject to the Carve-Out and junior only to the Adequate Protection Liens; *provided* that, so long as there are any Prepetition Secured Obligations outstanding, to the extent that any DIP Secured Party receives any proceeds of Unencumbered Property (other than proceeds of the DIP Facility, the DIP Account, and any and all amounts from time to time therein), such DIP Secured Party shall

---

[5]    Provided, however, that no liens granted pursuant to this Interim Order or the DIP Facility shall attach to any lease rejected pursuant to an order of the Court in the Chapter 11 Cases.

[6]    "Avoidance Actions" shall mean all claims and causes of actions of any of the Debtors and their respective estates arising under chapter 5 of the Bankruptcy Code or under similar laws of any jurisdiction.

promptly turn over any such proceeds to the Prepetition Agent for the benefit of the Prepetition Lenders until the payment in full in cash of the Prepetition Secured Obligations.

(ii)    Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien on all prepetition and postpetition property of each DIP Credit Party (whether now existing or hereafter acquired) that is subject to valid, perfected and non-avoidable liens (including the Prepetition Liens) in existence immediately prior to the Petition Date, or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Permitted Liens**"), which security interests and liens in favor of the DIP Agent, for the benefit of the DIP Secured Parties, are subject to the Carve-Out and junior only to such Permitted Liens and the Adequate Protection Liens; *provided* that, for the avoidance of doubt, the DIP Facility, the DIP Account, and any and all amounts from time to time therein, are not subject to Permitted Liens of any non-DIP Secured Party.

(b)    The DIP Liens shall not be subject to challenge including, without limitation, under sections 510, 546, 549, or 550 of the Bankruptcy Code.  The DIP Liens shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or in any other successor or other proceedings related to any of the foregoing (such successor cases or proceedings, "**Successor Cases**"), or upon the dismissal of any of the Chapter 11 Cases.

(c)    Notwithstanding anything herein to the contrary, the DIP Liens shall not be (i) subject or subordinated to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Credit Documents or in this

Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Credit Parties, or (C) any intercompany liens; or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code; *provided*, for the avoidance of doubt, that the DIP Liens granted pursuant to (x) section 364(c)(2) of the Bankruptcy Code shall have the priority set forth in Section 3(a)(i) hereof and (y) section 364(c)(3) of the Bankruptcy Code shall have the priority set forth in Section 3(a)(ii) hereof.

4. **DIP Superpriority Claims**. Effective as of the date of entry of this Interim Order, in each case subject to the Carve-Out and subject and junior to the Adequate Protection Claims, in accordance with the DIP Credit Documents, the DIP Agent, for the benefit of the DIP Secured Parties, is granted, pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code, allowed superpriority administrative expense claims (the "**DIP Superpriority Claims**"). The DIP Secured Parties shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, including as set forth in Section 22(a) hereof, with respect to the DIP Superpriority Claims.

5. **Budget**. The Initial Approved Budget, a summary form of which is annexed as **Exhibit B** hereto (as it may be updated periodically in accordance with the DIP Credit Documents) is hereby approved. Proceeds of all DIP Loans made to or for the benefit of any of the Debtors on or after the Petition Date in accordance with the DIP Credit Documents and Cash Collateral shall be used by the Debtors in accordance with the DIP Credit Documents and this Interim Order, and subject to and in accordance with the Approved Budget[7] then in effect.

---

[7]     As used in this Interim Order, the Approved Budget shall refer to the "Approved Budget" as defined in the DIP Credit Agreement, which budget, including, for the avoidance of doubt, the Initial Approved Budget, shall be reasonably acceptable to the Required Lenders (as defined in the Prepetition Credit Agreement, the "**Prepetition Required Lenders**")) with such consent not to be unreasonably withheld.

6.     **Authorization and Approval to Use Proceeds of DIP Loans**.  Subject to the terms and conditions and in compliance with this Interim Order, the Approved Budget then in effect, and the DIP Credit Documents, each DIP Credit Party is authorized to use proceeds of the DIP Loans.

7.     **Automatic DIP Lien Perfection**.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the respective DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein and the other DIP Credit Documents.  Notwithstanding the foregoing, the DIP Agent and the Required Lenders (as defined in the DIP Credit Agreement) (the "**Required DIP Lenders**") are each authorized (without obligation) to, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents or instruments, and the automatic stay set forth in section 362 of the Bankruptcy Code does not apply or prohibit any of the actions set forth in this Section 7, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents or instruments shall be deemed to have been filed or recorded at the time and on the Petition Date. Subject in all instances to the terms of the DIP Credit Documents, upon request of the Required DIP Lenders, the DIP Credit Parties shall execute and deliver to the DIP Agent and the Required DIP Lenders all such financing statements, mortgages, security agreements, notices and other documents or instruments, and otherwise cooperate and assist in any such filings, as the Required DIP Lenders may request to evidence, confirm, validate or perfect, or to ensure the contemplated priority of, the DIP Liens.  The DIP Agent and the Required DIP Lenders are each authorized (without obligation) to file a photocopy of this Interim Order as a financing statement with any

recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any DIP Credit Party has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.  In the event that the Prepetition Agent requires any subsidiary of the Borrower that is not a Prepetition Guarantor to become a Prepetition Guarantor and/or to grant liens or security interests in favor of, or for the benefit of, the Prepetition Secured Parties, the DIP Agent (at the direction of the Required DIP Lenders) may require the Borrower to cause any of such subsidiaries that are not DIP Credit Parties to also become DIP Credit Parties and grant liens and security interests in favor and for the benefit of the DIP Secured Parties.

8.    **[Reserved]**

9.    **[Reserved]**

10.    **Carve-Out**.

(a)    **Carve-Out Components**.  As used in this Interim Order and the DIP Credit Documents, the "**Carve-Out**" shall be comprised of the following components:

(i)    **Clerk and U.S. Trustee Fees**.  All fees required to be paid to the Clerk of this Court and U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code (collectively, "**Clerk and UST Fees**").

(ii)    **Chapter 7 Trustee Fees**.  All reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the "**Chapter 7 Trustee Fee Cap**").

(iii)    **Allowed Professional Fees**.  To the extent allowed at any time, whether by interim order, final order, procedural order, or otherwise, all accrued and unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained or proposed

22

to be retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Professional Persons**"), (a) at any time before, on, or the first business day following, the delivery of the Carve-Out Trigger Notice (as defined below), and without regard to whether such fees and expenses are provided for in the Approved Budget then in effect and whether allowed by the Bankruptcy Court prior to or after delivery of the Carve-Out Trigger Notice, and (b) incurred after the first business day following the delivery of the Carve-Out Trigger Notice in an aggregate amount not exceeding $5 million (the amount set forth in clause (b), the "**Post-Trigger-Notice Carve-Out Fee Cap**").  The Post-Trigger-Notice Carve-Out Fee Cap shall not be reduced or increased by the amount of any compensation or reimbursement of expenses paid prior to the occurrence of an Event of Default in respect of which the Carve-Out is invoked.  Notwithstanding anything to the contrary herein, for purposes of the Carve-Out, Allowed Professional Fees shall exclude any transaction, completion, restructuring, sale, consummation, success, or similar fees of any Professional Person to the extent incurred or payable after the first business day following the delivery of the Carve-Out Trigger Notice.  Any payment or reimbursement made in respect of any Allowed Professional Fees incurred on or after the first business day following  delivery of the Carve-Out Trigger Notice shall permanently reduce the Carve-Out on a dollar-for-dollar basis. Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the other DIP Credit Documents, the Bankruptcy Code, and applicable law.

(b)     **Carve Out Reserve**.  On a weekly basis, the Debtors shall fund from cash on hand into a segregated account (the "**Carve Out Reserves**") held in trust by Epiq Corporate Restructuring, LLC for the benefit of the Professional Persons and, solely for purposes of U.S. Trustee fees held therein, the U.S. Trustee, an amount equal to the estimated amounts included

in the Approved Budget and for (i) the U.S. Trustee fees and (ii) fees and expenses of Professional Persons (the "**Estimated Professional Fees**"); *provided* that, until a Final Order has been entered, the Debtors shall fund, on a weekly basis, the Carve Out Reserve in an amount equal to the lesser of (i) the estimated amounts included in the Approved Budget and (ii) the estimated accrual amounts for such week as reported by the Professional Persons to the DIP Lender Advisors for the Estimated Professional Fees. The Debtors shall use funds held in the Carve Out Reserve to pay the Clerk and UST Fees as they become due and payable, and shall otherwise use funds held in the Carve Out Reserve exclusively to pay Allowed Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim or final orders of this Court and any amounts paid from the Carve Out Reserves shall reduce the amount in the Carve Out Reserves on a dollar-for-dollar basis; *provided* that when all obligations included within the Carve Out Reserves have been paid in full (regardless of when such obligations are due and/or allowed by this Court), any funds remaining in the Carve Out Reserve shall revert to the DIP Agent, for the benefit of the DIP Secured Parties, and the Prepetition Agent, for the benefit of the Prepetition Secured Parties (to the extent the Prepetition Secured Obligations are outstanding at such time), in each case, subject to and in accordance with the priorities set forth in this Interim Order. Funds transferred to the Carve Out Reserve shall be subject to the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Claims granted hereunder solely to the extent of such reversionary interest; *provided* further that, for the avoidance of doubt, such liens and claims shall be subject in all respects to the Carve-Out. For the avoidance of doubt, after the first business day following the delivery of the Carve-Out Trigger Notice, funding of the Carve Out Reserves, taking into account amounts already funded into the Carve Out Reserves *minus*

Allowed Professional Fees incurred on, or prior to the first business day following, the delivery of the Carve-Out Trigger Notice, shall in no event exceed Post-Trigger-Notice Carve-Out Fee Cap.

(c)    **Carve-Out Trigger Notice**.  For purposes of this Interim Order, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent at the direction of the Required DIP Lenders, on behalf of the DIP Lenders, to the Debtors, the Debtors' lead restructuring counsel (Latham & Watkins LLP), and the U.S. Trustee, which notice (i) may be delivered upon the occurrence and during the continuation of an Event of Default (as defined below and subject to any applicable grace periods, waivers, or forbearances) and acceleration of the DIP Obligations under the DIP Credit Documents, and (ii) shall state that the Carve-Out is triggered and the Post-Trigger-Notice Carve-Out Fee Cap has been invoked.

(d)    **Priority of Carve-Out**.  The Carve-Out shall be senior to all claims and liens over all assets of the Debtors, including any DIP Collateral and Prepetition Collateral (including Cash Collateral), as set forth in this Interim Order.

(e)    None of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases or any Successor Cases. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

11.     **Cash Collateral.**  The Prepetition Secured Parties have consented or are deemed to have consented to the use of Cash Collateral that constitutes Prepetition Collateral; *provided* that nothing in this Interim Order shall (a) be construed as the affirmative consent by the Prepetition Secured Parties for the use of Cash Collateral that constitutes Prepetition Collateral other than on the terms set forth in this Interim Order, in compliance with the Approved Budget then in effect, and in the context of the DIP Facility authorized by this Interim Order, (b) be construed as a consent by any party to the terms of any other financing or any other lien encumbering Prepetition Collateral (whether senior or junior) other than as contemplated by this Interim Order, or (c) prejudice, limit or otherwise impair the rights of any Prepetition Secured Party (solely in such capacity) to seek new, different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the DIP Secured Parties, to object to such relief are hereby preserved.

12.     **Adequate Protection.**  Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their interests in the Prepetition Collateral (including Cash Collateral that constitutes Prepetition Collateral) for any diminution in value of their interests in the Prepetition Collateral (including Cash Collateral that constitutes Prepetition Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "**Diminution in Value**"), and as an inducement to the Prepetition Secured Parties to consent to the use of their Cash Collateral that constitutes Prepetition Collateral, the Prepetition Secured Parties are granted the following Adequate Protection (collectively, the "**Adequate Protection Obligations**"):

(a)     *Adequate Protection Liens*.  The Prepetition Secured Parties are hereby granted, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or

other agreements, a valid and perfected replacement security interest in and lien upon all of the DIP Collateral (other than the DIP Account (and all amounts from time to time therein) and any proceeds of the DIP Facility) on account of the Diminution in Value (the "**Adequate Protection Liens**"), subject only to the Carve-Out.

(b)       *Adequate Protection Claims*.  The Prepetition Secured Parties are hereby granted an allowed superpriority administrative expense claim against the DIP Credit Parties on a joint and several basis (without the need to file any proof of claim) on account of the Diminution in Value under section 507(b) of the Bankruptcy Code (the "**Adequate Protection Claims**"), which Adequate Protection Claims shall be payable from and have recourse to all DIP Collateral (other than proceeds of the DIP Facility, the DIP Account, and all amounts from time to time therein), subject only to the Carve-Out.

(c)       *Prepetition Secured Parties Fees and Expenses*.  As further adequate protection, the DIP Credit Parties shall currently pay, in cash, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses (collectively, the "**Adequate Protection Fees and Expenses**") of (i) the advisors to the *ad hoc* group of Prepetition Lenders represented by Milbank LLP (in such capacity, the "**First Lien Ad Hoc Group Counsel**", and the Prepetition Lenders in the *ad hoc* group represented by such First Lien Ad Hoc Group Counsel, the "**First Lien Ad Hoc Group Members**"), including, without limitation, those of the First Lien Ad Hoc Group Counsel and FTI Consulting, Inc., (ii) the Prepetition Agent, (iii) Holland & Knight LLP, as counsel to the Prepetition Agent, and (iv) Allen Overy Shearman Sterling US LLP ("**AOS**"), as counsel to the Revolving Credit Lenders (as defined in the Prepetition Credit Agreement but subject to the last sentence of this Section 12(c)), in each case subject to the review procedures set forth in this Section 13(c) (with respect to any advisor), whether or not

incurred prepetition or postpetition, including, without limitation, agency fees.  Payment of such

fees and expenses shall not be subject to allowance or review by this Court or subject to the U.S.

Trustee fee guidelines.  At any time that any of the professionals referenced in this Section 13(c)

seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan,

each such professional shall provide summary copies of its invoices (which shall not be required

to contain daily time entries, but shall include a general brief description of the nature of the matters

for which services were performed and the total time that each attorney worked, and which may

be redacted or modified to delete any privileged information or any other confidential information,

and the provision of a professional's invoices shall not constitute any waiver of the attorney-client

privilege or of any benefits of the attorney work product doctrine) to the Debtors and the U.S.

Trustee (collectively, the "**Review Parties**").  Any objections raised by any Review Party with

respect to such invoices must be in writing and state with particularity the grounds therefor and

must be submitted to the applicable professional within five (5) calendar days after the receipt by

the Review Parties (the "**Review Period**").  If no written objection is received by 12:00 p.m.

(prevailing Eastern Time) at the end date of the Review Period, the Debtors shall promptly pay

such invoices as soon as practicable but not later than three (3) business days after the end date of

the Review Period.  If an objection to a professional's invoice is received within the Review Period,

the Debtors shall promptly (and in no event later than three (3) business days after receipt of the

applicable professional's invoice) pay the undisputed amount of the invoice and this Court shall

have jurisdiction to determine the disputed portion of such invoice if the parties are unable to

resolve the dispute consensually.  Payments of any amounts set forth in this Section 13(c) are not

subject to recharacterization, avoidance, subordination or disgorgement.   Notwithstanding

anything to the contrary in this Interim Order, nothing in this Interim Order shall authorize the

payment or reimbursement of any fees and expense of any of the Revolving Credit Lenders (including any fees and expenses of AOS) incurred in connection with filing, prosecuting or pursuing any objection, or litigation related to the DIP Facility, the DIP Credit Documents, the use of DIP Collateral (including Cash Collateral), the Restructuring Support Agreement and any of the transactions contemplated under any of the foregoing, including the confirmation and consummation of the Approved Chapter 11 Plan.

(d)     *Payment of Interest to Prepetition Secured Parties*.  The Debtors shall pay to the Prepetition Secured Parties current interest in respect of the Prepetition Secured Obligations at the rates and times and in the form provided for in the Prepetition Credit Agreement.

(e)     *Maintenance of Collateral*.  The DIP Credit Parties shall continue to maintain and insure the Prepetition Collateral and DIP Collateral (including, in each case, Cash Collateral) in amounts and for the risks, and by the entities, as required under the Prepetition Loan Documents and the DIP Credit Documents, as applicable.

(f)     *Perfection of Adequate Protection Liens*.  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of the Adequate Protection Liens granted and created hereunder, and, such security interests and liens shall constitute valid, automatically perfected and unavoidable security interests and liens, with the priorities set forth herein, effective as of the date of this Interim Order, without the necessity of executing deposit account control agreements or creating, filing, recording, or serving any financing statements, mortgages, or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens granted to the applicable Prepetition Secured Parties hereunder.

Without in any way limiting the validity of the automatic perfection of the Adequate Protection Liens under the terms of this Interim Order, the Prepetition Secured Parties are hereby authorized, but not required, to execute in the name of the Prepetition Credit Parties, as their true and lawful attorneys (with full power of substitution, to the maximum extent permitted by law) and to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in any jurisdiction, or take possession of certificated securities, or take any other similar action in a manner not inconsistent herewith to document, validate or perfect the liens and security interests granted to them hereunder (the "*Perfection Actions*").  All such Perfection Actions shall be deemed to have been taken on the date of entry of this Interim Order.  The automatic stay shall be modified to the extent necessary to permit the Prepetition Secured Parties to take any Perfection Action.   For the avoidance of doubt, the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order, whether or not the Prepetition Secured Parties take such Perfection Actions.  A certified copy of this Interim Order may, in the discretion of the Prepetition Agent, be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing and recording offices are hereby authorized and directed to accept a certified copy of this Interim Order for filing and/or recording, as applicable.

(g)    *Reporting*.  The Debtors shall provide to (i) the Prepetition Agent at the same time as such reporting (including any reporting with respect to the Approved Budget and the Permitted Variances (as defined in the DIP Credit Agreement) in connection therewith) is provided to any DIP Secured Party, all reporting required to be provided to the DIP Secured

Parties under the DIP Credit Documents and (ii) the Prepetition Secured Parties the reports, documents, and other information required to be delivered to the Prepetition Secured Parties under the Prepetition Credit Agreement in accordance with the relevant timelines and requirements set forth therein, which reports, documents, and other information shall also be provided to the DIP Secured Parties at the same time.

13.    **Indemnity**. The DIP Agent, the DIP Lenders, the First Lien Ad Hoc Group Members, the Revolving Credit Lenders, and the Prepetition Agent have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and the use of DIP Collateral (including Cash Collateral), including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Facility or the use of DIP Collateral (including Cash Collateral), and all documents related to any and all transactions contemplated by the foregoing.  The Debtors shall jointly and severally indemnify and hold harmless the DIP Agent, the DIP Lenders, the First Lien Ad Hoc Group Members, the Revolving Credit Lenders, the Prepetition Agent, and, solely in their capacities as such, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns ("**Representatives**"), in accordance with the DIP Credit Documents and the Prepetition Loan Documents, which indemnification is hereby authorized and approved; *provided* that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable

judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct.

14.     **[Reserved]**

15.     **Events of Default; Rights and Remedies Upon Event of Default; Termination of Use of Cash Collateral**.

(a)     Any material violation of this Interim Order or any occurrence of an "Event of Default" under (and as defined in) the DIP Credit Agreement or any other DIP Credit Document (including, without limitation, a breach of any DIP Milestone) shall constitute a "DIP Termination Event" under this Interim Order unless waived or otherwise agreed in writing by the Required DIP Lenders.   Notwithstanding anything to the contrary set forth herein or in the DIP Credit Documents, unless waived or extended in writing by the Required DIP Lenders, any failure to meet or satisfy any of the DIP Milestones in accordance with the DIP Credit Agreement shall constitute an immediate Event of Default and DIP Termination Event, and any remedies with respect thereto shall not be subject to any notice requirements or periods.

(b)     Upon the expiration of five (5) business days (unless extended with the written consent of the Required DIP Lenders in their sole discretion) following the delivery of a written notice (which may be the Carve-Out Trigger Notice) by the DIP Agent (at the direction of the Required DIP Lenders), on behalf of the DIP Lenders, to the Borrower and the U.S. Trustee of the occurrence, and during the continuance, of a DIP Termination Event (the "**DIP Remedies Notice Period**"), the DIP Agent (acting at the direction of the Required DIP Lenders) shall be entitled to (i) immediately terminate and/or revoke the Debtors' right under this Interim Order and the DIP Credit Documents to use the proceeds of the DIP Facility and any funds in the DIP Account, and/or access or make withdrawals from the DIP Account, (ii) declare all DIP

Obligations owing under the DIP Credit Documents to be immediately due and payable, (iii) terminate, reduce or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains, (iv) terminate the DIP Facility and any DIP Credit Documents as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations, (v) invoke the right to charge interest at the default rate under the DIP Credit Documents, and/or (vi) stop lending (collectively, the "**DIP Termination Remedies**").  For the avoidance of doubt, notwithstanding the foregoing, during the DIP Remedies Notice Period, the Debtors (x) may not borrow under the DIP Facility or make any Withdrawal from or access the DIP Account, or use the proceeds therein, and (y) may use Cash Collateral solely in amounts necessary to avoid immediate and irreparable harm to the Debtors' estates (including funding payroll and other administrative expenses) all in accordance with this Interim Order and the Approved Budget then in effect, or that have otherwise been approved in advance in writing by the Required DIP Lenders.  During the DIP Remedies Notice Period, the Debtors and any party in interest shall be entitled to seek an emergency hearing within the DIP Remedies Notice Period with the Court for the purposes of (1) contesting whether an Event of Default has occurred or is continuing or (2) seeking authorization for the Debtors' use of Cash Collateral; *provided* that the DIP Remedies Notice Period shall be automatically extended if this Court cannot hold a hearing prior to the expiration of the DIP Remedies Notice Period then in effect until such time as this Court can hold such hearing.

(c)     The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application, or order of the Court to the extent necessary to permit the DIP Secured Parties to (i) implement the postpetition financing arrangements authorized by this Interim

Order, (ii) permit the DIP Secured Parties to take any act to create, validate, evidence, attach or

perfect any lien, security interest, right or claim in the DIP Collateral, (iii) permit the DIP Secured

Parties to assess, charge, collect, advance, deduct and receive payments with respect to the DIP

Obligations (or any portion thereof), including, without limitation, all interests, fees, costs, and

expenses permitted under any of the DIP Credit Documents and apply such payments to the DIP

Obligations.

(d)     Prior to the entry of an order granting relief from the automatic stay

provisions of section 362(a) of the Bankruptcy Code, the DIP Secured Parties shall not take any

enforcement action with respect to the DIP Collateral.

(e)     Notwithstanding anything to the contrary in this Interim Order or any DIP

Credit Document, so long as there are any Prepetition Secured Obligations outstanding and except

with respect to the proceeds of the DIP Facility, the DIP Account and/or any amounts from time

to time therein, the DIP Secured Parties shall have no right and shall take no action to foreclose

upon, or recover in connection with, the liens granted thereto pursuant to the DIP Credit

Documents or this Interim Order on the DIP Collateral (other than proceeds of the DIP Facility,

the DIP Account, and all amounts from time to time therein), or otherwise seek to exercise or

enforce any rights or remedies against the DIP Collateral (other than proceeds of the DIP Facility,

the DIP Account, and all amounts from time to time therein).

(f)     So long as there are any Prepetition Secured Obligations outstanding, all

proceeds realized in connection with the exercise of rights and remedies of the DIP Secured Parties

(other than proceeds of the DIP Facility, the DIP Account, and all amounts from time to time

therein) shall be promptly turned over to the Prepetition Agent for the benefit of the Prepetition

Lenders and applied in accordance with the terms of the Prepetition Loan Documents.  After the

payment of all Prepetition Secured Obligations in full in cash, any and all proceeds realized in connection with the exercise of rights and remedies of the Prepetition Secured Parties shall be promptly turned over to the DIP Agent for the benefit of the DIP Secured Parties and applied in accordance with the terms of the DIP Credit Documents.

16.    **Rights and Remedies of Prepetition Secured Parties Upon Termination of Use of Cash Collateral**.

(a)    To the extent that the Prepetition Secured Obligations are outstanding at such time, upon the occurrence and during the continuance of a Prepetition Secured Party Termination Event (as defined below), and after delivery by the Prepetition Agent, on behalf of the Prepetition Required Lenders, to the Debtors of a written notice of the occurrence of a Prepetition Secured Party Termination Event (with copy to counsel to the DIP Lenders and the DIP Agent) following five (5) business days (the "**Prepetition Remedies Notice Period**"), unless such Prepetition Secured Party Termination Event is cured (to the extent curable) by the Debtors or waived by the Prepetition Required Lenders, at the end of the Prepetition Remedies Notice Period, the Prepetition Agent (on behalf of the Prepetition Required Lenders) may terminate or revoke the Prepetition Secured Parties' consent to the Debtors' right to use Cash Collateral constituting Prepetition Collateral (but not the proceeds of the DIP Facility, the DIP Account or any amounts therein, the right to which shall only be terminated or revoked by the Required DIP Lenders).  For purposes of this Section 16(a), "Prepetition Secured Party Termination Event" shall mean any of the following events: (i) the breach by the Debtors or failure to satisfy any requirement under this Interim Order in any manner materially adverse to the Prepetition Secured Parties; (ii) an Event of Default under the DIP Credit Agreement or any other DIP Credit Document (including, without limitation, a breach of any DIP Milestone) unless waived or otherwise agreed in writing

by the Required DIP Lenders; (iii) unless waived or extended in writing by the Required DIP
Lenders, any failure to meet or satisfy any of the DIP Milestones in accordance with the DIP Credit
Agreement; (iv) the dismissal of any of the Chapter 11 Cases or conversion of any Chapter 11
Case to a chapter 7 case; (v) the appointment or election of a chapter 11 trustee, a responsible
officer or an examiner (other than a fee examiner) under section 1104 of the Bankruptcy Code
with enlarged powers (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy
Code) relating to the operation of the business of any Debtor in the Chapter 11 Cases; (vi) any
Debtor challenging or contesting the nature, extent, amount, enforceability, validity, priority or
perfection of any of the Prepetition Secured Obligations or Prepetition Liens; (vii) the entry of an
order in the Chapter 11 Cases granting relief from or otherwise modifying any stay of proceeding
(including the automatic stay) to allow a third party to execute upon or enforce a lien against any
assets of the Debtors that constitute Prepetition Collateral or DIP Collateral (other than proceeds
of the DIP Facility, the DIP Account, or amounts from time to time therein) without the prior
written consent of the Prepetition Required Lenders if such assets have an aggregate value in
excess of $2,500,000; (viii) subject to the Carve-Out, the entry of an order in the Chapter 11 Cases
granting liens that are senior to the liens of the Prepetition Secured Parties under the Prepetition
Loan Documents or the Adequate Protection Liens without the prior written consent of the
Prepetition Required Lenders; (ix) the failure of the Debtors to make any payment required
pursuant to Sections 12(c) or (d) hereof when due that is not cured within two (2) business days of
receipt by the Debtors of written notice (which may be by email) from the Prepetition Agent (acting
at the direction of the Prepetition Required Lenders) or an advisor to the First Lien Ad Hoc Group
of such default, violation or breach; (x) the failure by the Debtors to deliver to the Prepetition
Agent any Budget or Variance Report required to be delivered to the Prepetition Agent when due

pursuant to this Interim Order that is not cured within three (3) business days after the applicable delivery deadline; or (xi) the failure by the Debtors to provide the Debtors' balance sheet and monthly profits and losses statement as required by the DIP Credit Agreement, within the timeframe set forth therein, that is not cured within three (3) business days of receipt by the Debtors of written notice (which may be by email) from the Prepetition Agent (acting at the direction of the Prepetition Required Lenders) or an advisor to the First Lien Ad Hoc Group of such failure. For the avoidance of doubt, notwithstanding the foregoing, during the Prepetition Remedies Notice Period, the Debtors may use Cash Collateral solely in amounts necessary to avoid immediate and irreparable harm to the Debtors' estates (including funding payroll and other administrative expenses) all in accordance with this Interim Order and the Approved Budget then in effect, or that have otherwise been approved in advance in writing by the Required Prepetition Lenders. During the Prepetition Remedies Notice Period, the Debtors and any party in interest shall be entitled to seek an emergency hearing within the Prepetition Remedies Notice Period with the Court for the purposes of (1) contesting whether a Prepetition Secured Party Termination Event has occurred or is continuing or (2) seeking authorization for the Debtors' use of Cash Collateral; *provided*, that the Prepetition Remedies Notice Period shall be automatically extended if this Court cannot hold a hearing prior to the expiration of the Prepetition Remedies Notice Period then in effect until such time as this Court can hold such hearing.

(b)    Prior to the entry of an order granting relief from the automatic stay provisions of section 362(a) of the Bankruptcy Code, the Prepetition Secured Parties shall not take any enforcement action with respect to the DIP Collateral (including Prepetition Collateral).

17.    **Effect of Stipulations**. The Debtors' stipulations in this Interim Order, including those in Section D, shall be binding upon the Debtors and their respective successors,

representatives and assigns in all circumstances and immediately upon entry of this Interim Order. The Debtors' stipulations in subparagraphs 1 through 10 of Section D, above, shall be binding also upon all other parties in interests, including, without limitation, any official committee or statutory or non-statutory committees appointed or formed in the Chapter 11 Cases (to the extent appointed or formed), and any other person or entity seeking to act on behalf of the Debtors' estates (including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or Successor Cases) for all purposes unless and to the extent any such other party in interest, including a committee (subject to any agreement or applicable law, which may limit or affect such party's rights or ability to do so), timely and properly commences and serves an adversary proceeding or contested matter (each, a "**Challenge Proceeding**") by no later than September 5, 2024, asserting a challenge with respect to the amount, validity, perfection, enforceability, priority, scope or extent of the Prepetition Secured Obligations, the Prepetition Liens, the Prepetition Collateral or the Prepetition Loan Documents, or otherwise challenging any of the Debtors' stipulations (each a "**Challenge**"), and subsequently obtains a final non-appealable order by a court of competent jurisdiction sustaining any such Challenge.

18.    If no Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court does not rule in favor of the plaintiff in any such timely and properly filed Challenge Proceeding, then, without application to or further order of the Court, (i) each of the Debtors' stipulations shall be binding on all parties in interest, including, without limitation, any official committee or statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, (ii) the Prepetition Secured Obligations and Notes Obligations shall constitute allowed claims against each of the Debtors in the Chapter 11 Cases, and the Prepetition Liens shall forever be deemed to be legal, valid, binding, continuing, perfected and enforceable, as of the Petition Date,

against each of the Debtors in the Chapter 11 Cases, (iii) the Prepetition Secured Obligations, the Notes Obligations, and the Prepetition Liens shall not be subject to any other or further challenge by any person or entity, and (iv) any and all challenges, of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, against any of the Prepetition Secured Parties and Convertible Noteholders shall be deemed forever waived, released and barred.

19.     If any Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' stipulations shall nonetheless remain binding and preclusive on all parties in interest, including, without limitation, any official committee or statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, except to the extent that any of the admissions, stipulations, findings or releases contained in the Debtors' stipulations are expressly challenged in such Challenge Proceeding.

20.     Nothing in this Interim Order vests or confers on any person or entity, including any official committee or statutory or non-statutory committee appointed or formed in the Chapter 11 Cases, or any other party in interest, standing or authority to pursue any cause of action belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.

21.     **Proofs of Claim**.  None of the DIP Secured Parties, the Indenture Trustee, or the Prepetition Agent shall be required to file proofs of claim in any of these Chapter 11 Cases or any Successor Cases for any claim allowed herein or with respect to any of the DIP Obligations, the Notes Obligations, or the Prepetition Secured Obligations (as applicable).  The statements of claim in respect of the DIP Obligations, the Notes Obligations, and the Prepetition Secured Obligations set forth in this Interim Order are deemed sufficient to and do constitute proofs of claim in respect

of such obligations and, with respect to the DIP Obligations and the Prepetition Secured Obligations, their secured status. Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or any Successor Cases to the contrary, the DIP Agent, on behalf of the DIP Secured Parties, the Indenture Trustee, on behalf of itself and the Convertible Noteholders under the 2025 Notes and the 2030 Notes, and the Prepetition Agent, on behalf of the Prepetition Secured Parties are each hereby authorized and entitled, in their sole and absolute discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim (or a master proof of claim) with respect to, respectively, each of the 2025 Notes, the 2030 Notes and the Prepetition Secured Obligations in the Borrower's Chapter 11 Case, which shall be deemed filed in each of the Chapter 11 Cases or any Successor Cases for any claim allowed herein or with respect to any of the DIP Obligations, Notes Obligations, or Prepetition Secured Obligations. Any such proof of claim and/or aggregate proof of claim (or master proof of claim) may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor. Any proof of claim filed by the DIP Agent, Indenture Trustee, or Prepetition Agent, as applicable, shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective DIP Secured Parties, the Convertible Noteholders, or the Prepetition Secured Parties, as applicable.

22.     **Other Rights and Obligations.**

(a)     **Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order**. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility, in the event any or all of the provisions of this Interim Order are hereafter modified,

amended, vacated or stayed by a subsequent order of this Court or any other court, the DIP Secured

Parties are deemed to have acted in good faith and are hereby entitled to all the protections and

benefits provided by section 364(e) of the Bankruptcy Code.

(b)    **Expenses**.  The Debtors are authorized and directed, without further Court

order, to promptly pay, in cash, all reasonable and documented fees and expenses of (1) the DIP

Secured Parties as provided in the applicable DIP Credit Documents, whether or not the

transactions contemplated thereby or hereby are consummated, whether or not incurred prepetition

or postpetition, including, without limitation, agency fees and the fees and expenses of (x) (i)

counsel to DIP Lenders, Schulte Roth & Zabel LLP ("**SRZ**") and Weil, Gotshal & Manges LLP

("**Weil**"), (ii) financial advisor to DIP Lenders, Houlihan Lokey Capital, Inc. ("**Houlihan**" and

together with SRZ and Weil, the "**DIP Lender Advisors**") and (iii) any other counsel, advisors or

consultants retained by DIP Lenders (with the consent of the Required DIP Lenders), and (y) (i)

the DIP Agent, Wilmington Savings Fund Society, FSB and (ii) counsel to the DIP Agent, Seward

& Kissel LLP and, solely to the extent necessary to enforce rights and remedies under the DIP

Credit Documents, one counsel in each local jurisdiction and (2) the Indenture Trustee under each

of the 2025 Note and the 2030 Notes and its counsel, whether or not incurred prepetition or

postpetition, including, without limitation, agency fees.  Payment of such fees and expenses shall

not be subject to allowance or review by this Court or subject to the U.S. Trustee fee guidelines.

At any time that any of the professionals hereunder seek payment from the Debtors of fees and

expenses that are incurred on or after the Petition Date but prior to confirmation of a chapter 11

plan, each professional shall provide summary copies of its invoices (which shall not be required

to contain daily time entries, but shall include a general brief description of the nature of the matters

for which services were performed and the total time that each attorney worked, and which may

be redacted or modified to delete any privileged information or any other confidential information, and the provision of a professional's invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the Review Parties.  Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within the Review Period.  If no written objection is received by 12:00 p.m. (prevailing Eastern Time) at the end date of the Review Period, the Debtors shall promptly pay such invoices as soon as practicable but not later than three (3) business days after the end date of the Review Period.  If an objection to a professional's invoice is received within the Review Period, the Debtors shall promptly (and in no event later than three (3) business days after receipt of the applicable professional's invoice) pay the undisputed amount of the invoice and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Payments of any amounts set forth in this Section 22(b), whether prior to, on or after the Petition Date, are not subject to recharacterization, avoidance, subordination or disgorgement.

(c)    **No Waiver**.  The failure or delay of the DIP Secured Parties or Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order or any other DIP Credit Document, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Secured Parties or Prepetition Secured Parties, unless any such waiver is pursuant to a written instrument executed by, with respect to the DIP Secured Parties, the DIP Agent (acting at the direction of the Required DIP Lenders) or by the Required DIP Lenders, in each case on behalf of the DIP Lenders, and, with respect to the Prepetition Secured Parties, the Prepetition Agent (acting at the direction of the

Prepetition Required Lenders) or the Prepetition Required Lenders, in each case on behalf of the Prepetition Lenders.

(d)    **No Third Party Rights**.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(e)    **No Limitation of Rights**.  No rights, protections or remedies of the DIP Secured Parties and/or the Prepetition Secured Parties granted by this Interim Order and/or the DIP Credit Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order (other than the Final Order) or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

(f)    **Consent**.  Nothing in this Interim Order shall be construed to convey on any individual DIP Secured Party any consent, voting or other rights beyond those (if any) set forth in the DIP Credit Documents.

(g)    **No Marshaling**.  The parties' request that the DIP Secured Parties and Prepetition Secured Parties not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral shall be considered in connection with the application for a Final Order and with a full reservation of the parties' rights with respect thereto.

(h)    **Amendment**.  As provided in and consistent with their respective rights under the DIP Credit Documents, the Borrower and the applicable DIP Credit Party, as the case may be, with the consent of the Required DIP Lenders, may make any non-material amendment,

modification, or supplement to the DIP Credit Documents, and the Debtors are authorized to enter into any such amendment, modification, supplement or waiver, without further notice to or approval of this Court, and shall provide copies of any such amendments to the U.S. Trustee and the Prepetition Secured Parties.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof or of any other DIP Credit Document (including any material amendment, modification, supplement or waiver thereof) shall be effective unless (i) set forth in writing, (ii) signed by, or on behalf of, the Borrower, the other applicable DIP Credit Party, and the Required DIP Lenders (except as otherwise provided in the DIP Credit Agreement), and (iii) approved by this Court after notice to the U.S. Trustee and the Prepetition Secured Parties; *provided*, *however*, that any forbearance from, or waiver of, a Default or an Event of Default (each as defined in the DIP Credit Agreement), including a breach of any DIP Milestone, in each case, under the DIP Credit Documents shall not require an order of this Court but shall require the consent of the Required DIP Lenders in their sole discretion and written notice to the First Lien Ad Hoc Group Counsel within one (1) business day of such forbearance or waiver.  For the avoidance of doubt, a material amendment, modification, supplement or waiver of the DIP Credit Documents shall include, without limitation, any change to a DIP Credit Document that operates to shorten the term of the DIP Facility or the maturity of the DIP Obligations, to increase the aggregate amount of the commitments of the DIP Lenders under the DIP Facility, to increase the rate of interest or fees or provide for additional fees, premiums, or other amounts for the benefit of the DIP Secured Parties, in each case, except as currently provided in or contemplated by such DIP Credit Document, to add specific Events of Default, or to enlarge the nature or extent of remedies available to the DIP Agent following the occurrence of an Event of Default.  Notwithstanding anything to the contrary herein, any amendment, modification, supplement or

waiver of this Interim Order that would materially affect the rights of any Prepetition Secured Parties or affect the DIP Collateral (other than proceeds of the DIP Facility, the DIP Account, and any and all amounts from time to time therein) in any way shall require the prior written consent of the Prepetition Required Lenders.

(i)    **Priority of Terms**.  To the extent of any conflict between or among (i) the express terms or provisions of any of the DIP Credit Documents, the Motion, any other order of this Court (including, without limitation, the Cash Management Order), or any other agreements, on the one hand, and (ii) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" any of the other DIP Credit Documents, the terms and provisions of this Interim Order shall govern.  This Interim Order shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise.

(j)    **Binding Nature of Order**.  The provisions of this Interim Order shall be binding upon the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter elected or appointed for or on behalf of any Debtor's estate or with respect to its property).

(k)    **Survival of this Interim Order**.  The provisions of this Interim Order and any actions taken pursuant thereto shall survive entry of any order which may be entered (i) confirming any plan of reorganization in these Chapter 11 Cases, (ii) converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of these Chapter 11 Cases, (iv) withdrawing of the reference of any of these Chapter 11 Cases from this Court, or (v) providing for abstention from handling or

45

retaining of jurisdiction of any of these Chapter 11 Cases in this Court. The terms and provisions of this Interim Order, including the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, and Adequate Protection Claims granted pursuant to this Interim Order, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, and Adequate Protection Claims shall maintain their respective priorities as provided by this Interim Order, the DIP Facility, and the other DIP Credit Documents (as the case may be) until, with respect to the DIP Liens and DIP Superpriority Claims, all of the DIP Obligations have been indefeasibly paid in full, in cash (other than contingent indemnification obligations for which no claim has been asserted), and, with respect to the Adequate Protection Liens and Adequate Protection Claims, all of the Prepetition Secured Obligations have been indefeasibly paid in full, in cash, or as otherwise provided in the DIP Credit Documents, including upon the effective date of an Approved Chapter 11 Plan.

(l) **No Discharge**. The DIP Obligations, the Prepetition Secured Obligations, and the Adequate Protection Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been paid in full, in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such plan of reorganization, or such plan is otherwise an Approved Chapter 11 Plan.

(m) **Credit Bid Rights**. To the extent approved in a Final Order, in connection with any sale process authorized by this Court of any DIP Credit Party's assets, whether effectuated through section 363 or section 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, and subject in all respects to the DIP Credit Documents

and the Prepetition Loan Documents, as applicable, (i) the DIP Secured Parties (including the DIP Agent (directly or via one or more acquisition vehicles) acting at the direction of the Required DIP Lenders) shall have the unqualified right to credit bid up to the full amount of the then outstanding DIP Obligations in connection with any such sale and (ii) the Prepetition Secured Parties shall have the unqualified right to credit bid up to the full amount of the then outstanding Prepetition Secured Obligations in connection with any such sale, subject to the terms of this Interim Order. None of the Debtors or the Prepetition Secured Parties shall object to any DIP Secured Party's credit bidding up to the full amount of the applicable outstanding DIP Obligations in any sale of any DIP Collateral.  None of the Debtors or the DIP Secured Parties shall object to any Prepetition Secured Party's credit bidding up to the full amount of the applicable Prepetition Secured Obligation in any sale of any Prepetition Collateral (which shall not constitute the DIP Facility proceeds, the DIP Account or any amounts therein from time to time).  The DIP Agent (at the direction of the Required DIP Lenders), on behalf of the DIP Lenders, shall have the right to assign, sell, or otherwise dispose of its right to credit bid in connection with any credit bid by or on behalf of the DIP Secured Parties to any acquisition entity or joint venture formed in connection with such bid.  The Prepetition Agent (at the direction of the Prepetition Required Lenders), on behalf of the Prepetition Lenders, shall have the right to assign, sell, or otherwise dispose of its right to credit bid in connection with any credit bid by or on behalf of the Prepetition Secured Parties to any acquisition entity or joint venture formed in connection with such bid.

(n)    **Rights Cumulative**.  The rights and obligations, including any consent rights, as provided under this Interim Order shall be cumulative, and not alternative, to, and not otherwise derogate from, the rights and obligations as provided under the DIP Credit Documents and Prepetition Loan Documents.

23.    **Limitation of Liability**.  In determining to make any DIP Loan or DIP Commitment under the DIP Credit Agreement pursuant to this Interim Order or the other DIP Credit Documents or consent to the Debtors' use of Cash Collateral, as applicable, the DIP Secured Parties and Prepetition Secured Parties in their capacity as such shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.  Furthermore, nothing in this Interim Order or the other DIP Credit Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.  None of the DIP Secured Parties or Prepetition Secured Parties in their capacity as such or any of their affiliates are successors to the Debtors and/or their estates by reason of any theory of law or equity, and none of the DIP Secured Parties, Prepetition Secured Parties, or any of their respective affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates.

24.    **Section 506(c) Claims**.    The parties' request that no costs or expenses of administration which have been or may be incurred by any Debtor or their estate in these Chapter 11 Cases at any time (excluding, for the avoidance of doubt, the Carve-Out) shall be charged against the DIP Secured Parties or the DIP Collateral or the Prepetition Secured Parties or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise shall be considered in connection with the application for a Final Order and with a full reservation of the parties' rights with respect thereto.

25.    **Section 552(b)**.  The parties' request that the DIP Secured Parties and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b)

of the Bankruptcy Code, and that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Prepetition Secured Parties in any respect, shall be considered in connection with the application for a Final Order and with a full reservation of the parties' rights with respect thereto.

26.    **Restrictions on the Use of DIP Collateral with Respect to Foreign and Non-Debtor Affiliates**.    The Debtors shall not transfer or use any DIP Collateral or Prepetition Collateral, including any Cash Collateral, to or for the benefit of any direct or indirect foreign or non-debtor affiliate or subsidiary of the Debtors that is not a DIP Credit Party; *provided* that the Debtors shall be permitted to make payments for the benefit of its foreign and non-debtor affiliates or subsidiaries that are not DIP Credit Parties (i) in compliance in all respects with the Approved Budget (subject to Permitted Variances) or (ii) with the prior written consent of the Required DIP Lenders and the Prepetition Required Lenders ("**Permitted Non-Debtor Affiliate Payments**"). All intercompany investments in the form of a loan or advance owed to a DIP Credit Party shall be evidenced by a subordinated intercompany note, which shall be pledged to the Prepetition Secured Parties and the DIP Secured Parties, subject to the priorities set forth in this Interim Order.

27.    **Headings**.    Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

28.    **Retention of Jurisdiction**.    This Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, the DIP Credit Documents, and/or this Interim Order.

29.    **Final Order and Hearing**.  The Final Hearing to consider the relief requested in the Motion will be held on September 6, 2024 at 11:00 a.m.  The Debtors will file with the Court the proposed form of Final Order at a later date.

Dated:  New York, New York
         July 29, 2024

**s/Michael E. Wiles**
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE
