WILLIAM K. HARRINGTON
United States Trustee for Region 2
One Bowling Green
New York, New York 10004
Telephone: (212) 510–0500

**Hearing Date:  September 6, 2024**
**Hearing Time:  11:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------- x
In re:                                                                :        Chapter 11
                                                                         :
2U, INC., *et al.*,                                            :        Case No. 24-11279 (MEW)
                                                                         :
                        Debtors.[1]                          :        (Jointly Administered)
                                                                         :
--------------------------------------------------------- x

### OBJECTION OF THE UNITED STATES TRUSTEE TO APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802).  The Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................. i

TABLE OF AUTHORITIES .................................................................................... ii

I.      PRELIMINARY STATEMENT. ................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................... 3

        General Background ..................................................................................... 3

        Formation and Solicitation of the Prepackaged Plan ................................... 4

        The Plan ........................................................................................................ 6

        Relevant Plan Provisions ............................................................................. 7

III.    ARGUMENT ................................................................................................ 12

        A.  The Disclosure Statement Should Not Be Approved. ............................ 12

            1.  The Disclosure Statement Does Not Present Adequate Information About
            the Debtor Release and the Third-Party Releases......................................... 14

            2.  The Disclosure Statement Describes Key Provisions of the Original Plan that
            No Longer Apply to the Plan the Debtors are Soliciting. ............................ 16

            3.  The Disclosure Statement Does Not Provide Adequate Information About
            Pending Litigation......................................................................................... 17

        B.  The Plan Should Not be Confirmed.......................................................... 18

            1.  The Plan Violates Established Law on Releases. ................................... 18

            2.  The Scope of the Third-Party Releases is Impermissibly Broad. .......... 22

            3.  The Debtors are Releasing Third Parties Without Consideration…............. …… 24

            4.  The Exculpation Provision is Overly Broad. ......................................... 25

            5.  The Plan Supplement and Treatment of Certain Claims was Not Adequately
            Noticed………………………………………………………..…………….........26

IV.     CONCLUSION........................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Acorda Therapeutics, Inc.*
  Case No. 24-2284-DSJ (Bankr. S.D.N.Y. 2024)……………………………………………22

*In re Aegean Marine Petroleum Network, Inc.*,
  599 B.R. 717 (Bankr. S.D.N.Y. 2019) ................................................. 21, 22, 23, 25

*In re Adelphia Commc'ns Corp.*,
  352 B.R. 592 (Bankr. S.D.N.Y. 2006) ........................................................... 13, 14

*In re Arrowmill Dev. Corp.*,
  211 B.R. 497 (Bankr. D.N.J. 1997).................................................................... 19

*Century Glove, Inc. v. First American Bank of New York*,
  860 F.2d 94 (3d Cir. 1988) ............................................................................ 13

*In re Chassix Holdings*,
  533 B.R. 64 (Bankr. S.D.N.Y. 2015).................................................................. 22

*In re Congoleum Corp.*,
  362 B.R. 167 (Bankr. D.N.J. 2007).................................................................. 19

*In re Copy Crafters Quickprint, Inc.*,
  92 B.R. 973 (Bankr. N.D.N.Y. 1988) ................................................................ 14

*In re Coram Healthcare Corp.*,
  315 B.R. 321 (Bankr. D. Del. 2004) .................................................................. 22

*In re Crowthers McCall Pattern, Inc.*,
  120 B.R. 279 (Bankr. S.D.N.Y. 1990) ................................................................ 14

*In re DBSD N. Am., Inc.*,
  *419 B.R. 179 (Bankr. S.D.N.Y. 2009)* .............................................................. 14

*DePippo v. Kmart Corp.*,
  335 B.R. 290 (S.D.N.Y. 2005) ........................................................................ 17

*In re Dreier LLP*,
  429 B.R. 112 (Bankr. S.D.N.Y. 2010) ............................................................ 21, 23

*In re Duratech Indus.*,

241 B.R. 291 (Bankr. E.D.N.Y. 1999) ....................................................................... 13

*In re Emerge Energy Services, LP,*
2019 WL 7634308 (Bankr. D. Del. Dec. 5, 2019) ..................................................... 22

*In re Exide Techs.*,
303 B.R. 48 (Bankr. D. Del. 2003) ........................................................................... 22

*In re Ferretti,*
128 B.R. 16 (Bankr. D.N.H. 1991) .......................................................................... 14

*Harrington v. Purdue Pharma, L.P.,*
603 U.S. ___, 144 S.Ct. 2071, 2082-88 (2024)........................................... 15, 18, 19, 20

*In re Johns-Manville Corp.,*
600 F.3d 135 (2d Cir. 2010).................................................................................... 22

*Karlin v. Avis,*
457 F.2d 57 (2d Cir. 1972)...................................................................................... 21

*Kunica v. St. Jean Fin., Inc.*,
233 B.R. 46 (S.D.N.Y. 1999) .................................................................................. 13

*In re McLean Indus., Inc.*
87 B.R. 830 (Bankr. S.D.N.Y. 1987) ...................................................................... 13

*In re Metromedia Fiber Network, Inc.,*
416 F.3d 136 (2d Cir. 2005) ................................................................................... 13

*Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.),*
25 F.3d 1132 (2d Cir. 1994) ................................................................................... 13

*In re Motors Liquidation Co.,*
477 B.R. 198 (Bankr. S.D.N.Y. 2011) .................................................................... 14

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ............................................................................................... 17

*Patterson et al. v. Mahwah Bergen Retail Grp., Inc.,*
636 B.R. 641 (E.D. Va. 2022)............................................................................ 20, 22

*In re Quigley Co.,*

377 B.R. 110 (Bankr. S.D.N.Y. 2007) ................................................................ 13

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,*
  81 F.3d 355 (3d Cir. 1996) ............................................................................... 13

*Smart World Technologies, LLC v. Juno Online Servs., Inc.,*
  423 F.3d 166 (2d Cir. 2005) ............................................................................ 24

*In re SunEdison,*
  576 B.R. 453 (Bankr. S.D.N.Y. 2017) ..................................................... 13, 19, 21

*In re Tonawanda Coke Corp.,*
  Case No. 18-12156 (Bucki, C. J.) (Bankr. W.D.N.Y. Aug. 27, 2024) ....................... 20

*United States v. Alfano,*
  34 F. Supp. 2d 827 (E.D.N.Y. 1999) ................................................................. 19

*In re Wash. Mut., Inc.,*
  442 B.R. 314 (Bankr. D. Del. 2011). ............................................................. 22, 25

*Weiss v. Macy's Retail Holdings, Inc.,*
  265 F. Supp. 3d 358 (S.D.N.Y. 2017) ................................................................ 21

*In re Zenith Elecs. Corp.,*
  241 B.R. 92 (Bankr. D. Del. 1999). .................................................................. 22

**Statutes**

11 U.S.C. § 1125 .............................................................................................. 11

11 U.S.C § 1125(a)(1) ........................................................................................ 11

11 U.S.C § 1125(e) ........................................................................................... 22

**Other Authorities**

General Order M-621, *Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York,* amending General Order M-454 (Glenn, C.J.), Feb. 1, 2024 .................................................... 15

New York Rules of Professional Conduct, *i.e.*, N.Y. Comp. Codes R. & Res. Tit. 22 § 1200.8 Rule 1.8(h)(1) ................................................................................................. 26

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
In re:                                          :          Chapter 11
                                                :
2U, INC., *et al.*,                             :          Case No. 24-11279 (MEW)
                                                :
            Debtors.                            :          (Jointly Administered)
                                                :
-------------------------------------------------------- x

**OBJECTION OF THE UNITED STATES TRUSTEE TO APPROVAL OF THE**
**DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN**

TO:    **THE HONORABLE MICHAEL E. WILES,**
       **UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "**United States**
**Trustee**"), respectfully submits this objection (the "**Objection**") in the case of 2U, Inc. (with its
debtor affiliates, the "**Debtors**") to the approval of the Debtors' *Disclosure Statement for the Joint*
*Prepackaged Plan of Reorganization of 2U, Inc. and its Debtor Affiliates Under Chapter 11 of the*
*Bankruptcy Code* (ECF No. 20) (as may be amended, the "**Disclosure Statement**") and the
confirmation of the *Second Amended Joint Prepackaged Plan of Reorganization of 2U, Inc. and its*
*Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (ECF No. 90) (as may be further
amended, the "**Plan**").[2]  In support thereof, the United States Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

A prepackaged plan, in contrast to a traditional Chapter 11 plan of reorganization, involves
the solicitation of votes on a plan prior to the filing of the Chapter 11 petition, followed by the
filing of a Chapter 11 petition and a request to the Court to approve the debtors' disclosure
statement and plan of reorganization on an expedited basis at a combined hearing.

---

[2]    All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or the
Disclosure Statement, as applicable.

1

Here, prior to the filing of the Chapter 11 petitions, the Debtors solicited their creditors with the Disclosure Statement and the *Joint Prepackaged Plan of Reorganization of 2U, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (ECF No. 19) (the "**Original Plan**").  The Disclosure Statement does not contain sufficient information upon which an informed creditor could have made a reasoned decision as to whether to vote to accept the Plan. Notably, the Disclosure Statement does not contain adequate information about the Plan's third-party release provisions (the "**Third-Party Release**"), including the Debtors' justification for imposing third-party releases and the risks that the Third-Party Release renders the Plan unconfirmable.  No information is provided about the consideration that a number of third parties have or have not given in order to benefit from the release of claims or causes of action that the Debtors' estates could otherwise have brought (the "**Debtor Release**").  The Disclosure Statement also does not describe significant substantive changes made to the release mechanisms after the Debtors commenced solicitation.  Also, the Disclosure Statement fails to provide adequate information about pending litigation.

Even if the Court should determine that the Disclosure Statement contained sufficient information, the Plan is unconfirmable because the Plan violates the law on releases.  Here, the Debtors conflate a vote for the Plan, which is governed by the Bankruptcy Code dealing with relations between a debtor and its creditors, with acceptance of the Third-Party Release, which is a contract governed by state law dealing with relations between non-debtor parties.  For a creditor to be deemed to have affirmatively consented to the Third-Party Releases, each creditor must have indicated express consent to be bound by a contract with the non-debtor beneficiaries of these

Releases.  A vote to accept the Plan cannot demonstrate consent to such a contract with a non-debtor.

The scope of the Third-Party Release is also impermissibly broad, as the Plan proposes to improperly release claims against non-estate assets and against an unenumerated bevy of "Related Parties."  Finally, the Plan is unconfirmable because, to the extent applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), the exculpation provision is overly broad.

In sum, the Disclosure Statement falls far short of the level of disclosure required under the Bankruptcy Code, and the Plan that it supports is not confirmable.  Accordingly, the Disclosure Statement should not be approved, and the Plan should not be confirmed.

## FACTUAL BACKGROUND

### General Background

1.      On July 25, 2024 (the "**Petition Date**"), the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code**Petitions**").  ECF No. 1.

2.      The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      According to the Debtors, the Debtors partner with higher education institutions to provide online learning services through a degree program segment and an alternative credential segment.  Through their degree program segment, the Debtors provide a comprehensive operating infrastructure to partner institutions that allows the Debtors to operate over 4,700 educational programs with their partners.  The alternative credential segment of the Debtors' business is intended to expand the Debtors' product offerings to include open courses and to provide non-degree credentials to students.  *Declaration of Matthew Norden, Chief Legal*

*Officer, and Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions* (the "**First Day Declaration**"), at ¶¶ 5-8.  ECF No. 3.

4.     Debtor 2U, Inc. is a public company that has shares listed on the Nasdaq Global Select Market.  *Id*. at ¶ 15.

5.     The Debtors seek approval of the prepackaged Plan to effectuate a restructuring of the Debtors' indebtedness to reduce the Debtors' total principal debt obligations by approximately $486.3 million by converting the Debtors' Unsecured Notes into reorganized equity through an equity rights offering and by amending and restating the terms of the Debtors' First Lien Loans (the "**First Lien Loans**").

6.     On the Petition Date, the Debtor also filed motions and applications seeking, among other things, the payment of certain prepetition expenses to minimize disruption of the Debtors' business.

7.     No committee of unsecured creditors has been appointed in these cases.

8.     On July 29, 2024, the Court entered the *Order (A) Scheduling a Combined Hearing to Consider Approval of the Disclosure Statement and Confirmation of the Plan; (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates; (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Disclosure Statement or the Plan; (D) Approving the Manner and Forms of Notice and Other Related Documents; (E) Approving Equity Rights Offering Documents; (F) Conditionally Waiving Requirement of Filing Schedules and Statements and of Convening Section 341 Meeting of Creditors; and (G) Granting Related Relief* (the "**Scheduling Order**") (ECF No. 38).

**Formation and Solicitation of the Prepackaged Plan**

9.    As of the Petition Date, the Debtors owed approximately $944.8 million of principal debt obligations, including term loans in a principal amount of $374.3 million and revolving loans in a principal amount of $40 million pursuant to that certain First Lien Credit Agreement dated as of June 28, 2021, with Alter Domus (US) LLC as administrative and collateral agent.  The Debtors are also obligated to holders of two sets of unsecured notes in the principal amounts of $380 million (for unsecured notes issued pursuant to that certain indenture, dated as of April 23, 2020, with Wilmington Trust, N.A. as Trustee, maturing on May 1, 2025 (the "**2025 Notes**")) and $147 million (for unsecured notes issued pursuant to that certain indenture, dated as of January 11, 2023, with Wilmington Trust, N.A. as trustee, maturing on February 1, 2030 (the "**2030 Notes**" and, collectively with the 2025 Notes, the "**Unsecured Notes**")).  First Day Declaration at ¶ 35.

10.    As of the Petition Date, the Debtors had two outstanding conditional loan agreements with the state of Maryland and the county of Prince George's, Maryland in an aggregate amount of $3.5 million.  *Id.* at ¶ 43.

11.    The Debtors estimated that they had approximately $65 million in general unsecured claims outstanding as of the Petition Date.  *Id*. at ¶ 46.

12.    Per the Debtors, they faced financial difficulties in late 2021, as a tapering of the COVID-19 pandemic led to a decline in the demand for online learning, which hampered the Debtors' ability to realize their expected benefits from the strategic acquisition of a competitor in 2021.  The Debtors also noticed a decrease in consumer demand for certain of the Debtors' offerings due to an unanticipated boom of artificial intelligence that led to large layoffs at technology companies.  *Id.* at ¶¶ 54-55.

5

13.     Per the Debtors, the state of capital markets made it hard for the Company to refinance its debts.  The publicly visible financial distress that the Debtors were experiencing led some partner institutions to not renew their partnerships with the Debtors.  *Id.* at ¶¶ 56-57.

14.     Facing an upcoming debt maturity, the Debtors explored cost optimization measures and negotiated restructuring options with their creditors, which eventually culminated in a restructuring support agreement.  *Id.*

15.     On July 24, 2024, the Debtors commenced solicitation of the Original Plan.  *Id.* at ¶ 79.

**The Plan**

16.     The Plan, if confirmed, will provide for the conversion of the Unsecured Notes into one hundred percent of the reorganized Debtors' equity and the amendment and extension of the First Lien Loans with a scheduled paydown schedule.  *Id*. at ¶ 75.

17.     Creditors who hold Other Secured Claims or Other Priority Claims are, per the Plan, labeled unimpaired and not entitled to vote on the Plan.  Plan at § III.B.  Holders of general unsecured claims against the Debtors are also considered unimpaired under the Plan that calls for repayment of these claims in full in the ordinary course of business.  *Id.*

18.     Holders of Existing Equity Interests or Subordinated Claims against the Debtors are not receiving any distributions pursuant to the Plan and are deemed to reject the Plan.  *Id.*

19.     The only classes that are entitled to vote on the Debtors' Plan are First Lien Claims and Unsecured Note Claims.  *Id.*

20.     On July 29, 2024, the Court entered the Scheduling Order that, among other things, established a Voting Deadline of August 26, 2024.

21.     The Scheduling Order also amended certain terms of the Original Plan and required

the Debtors to supplement the solicitation that began pre-petition as follows:

- Provisions in the Original Plan and accompanying ballots and notices stating that parties would be bound by third-party releases except to the extent they elected to opt out of the releases were deemed to be of no force and effect;
- Holders of First Lien Claims and/or Unsecured Note Claims must be sent additional notices informing them that they will not be bound by the proposed third-party releases unless they vote in favor of the Plan notwithstanding the Original Plan and accompanying documents; and
- Non-voting creditors are to receive notices and opt-in forms that provide the creditor the opportunity to opt in to the third party releases, and in the absence of an opt-in, creditors will not be bound by these third party releases.

Scheduling Order at ¶ 2.

22.     The Debtors are authorized to accept Ballots that were distributed prior to the

Petition Date, notwithstanding that such Ballots were issued in connection with the Original Plan

and not the Plan before the Court today.  To the extent the Ballots provided "opt-out" provisions

with regard to third-party releases, such provisions would be disregarded.  *Id.* at ¶ 14.

23.     As of August 29, 2024, the Debtors' solicitation agent has not submitted a voting

and tabulation report.  The United States Trustee reserves all rights to raise any objections to the

tabulation of votes or disclosures in connection therewith.

**Relevant Plan Provisions**

24.     The following terms of the Plan are particularly relevant to the Objection: the

definitions of Exculpated Parties, Related Parties, Released Parties, and Releasing Parties, the

Debtor Release, the Third-Party Release, and the Exculpation.

25.     The Plan defines Exculpated Parties in Section I as:

collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Consenting Stakeholders; (iv) the Agents/Trustees; (v) the DIP Lenders; and (vi) with respect to the foregoing clauses (i) through (v), each such Entity's or Person's Related Parties.

26.     The Plan defines a Related Party in Section I as:

with respect to an Entity, each of, and in each case solely in its capacity as such, such Entity's current and former Affiliates, and such Entity's and such Affiliates' current and former members, directors, managers, officers, proxyholders, control persons, investment committee members, special committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds (including any beneficial holders for the account of whom such funds are managed), predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, investment managers, and other professionals and advisors, each in their capacity as such, and any such Person's or Entity's respective heirs, executors, estates, and nominees.

27.     The Plan defines a Released Party in Section I as:

collectively, each of, and in each case in its capacity as such: (i) each Debtor; (ii) each Reorganized Debtor; (iii) each Non-Debtor Affiliate; (iv) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers and proxyholders; (v) the Agents/Trustees; (vi) the Consenting Stakeholders; (vii) the DIP Lenders; (viii) if applicable, each Consenting Stakeholder in its capacity as a Holder of Existing Equity Interests; (ix) the Equity Rights Offering Backstop Parties; (x) each of the Releasing Parties; and (xi) with respect to each of the foregoing (i) through (x), each such Entities' (a) Related Parties and (b) their current and former Affiliates' Related Parties; *provided*, that in each case, an Entity shall not be a Released Party if it: (y) elects to opt out of the Releases; or (z) timely Files with the Bankruptcy Court on the docket of these Chapter 11 Cases an objection to the Releases that is not resolved before Confirmation.

28.     The Plan defines Releasing Parties in Section I as:

collectively, each of, and in each case in its capacity as such: (i) each Debtor; (ii) each Reorganized Debtor; (iii) each Non-Debtor Affiliate; (iv) each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers and proxyholders; (v) the Agents/Trustees; (vi) the Consenting Stakeholders; (vii) the DIP Lenders; (viii) if applicable, each Consenting Stakeholder in its capacity as a Holder of Existing Equity Interests; (ix) each other Holder of Claims or Interests that is entitled to vote on this Plan and votes to accept this Plan; (x) each other Holder of Claims or Interests that is deemed to reject this Plan and elects to opt into the Releases; and (xi) with respect to each of the foregoing (i) through (x), each such Entities' current and former Affiliates, and such Entities' and their current and former Affiliates' Related Parties; *provided*, that, for the avoidance of doubt, an Entity described in clauses (ix) through (xi) above shall not be a Releasing Party if it: (y) elects to opt out of the Releases; or (z) timely Files with the Bankruptcy Court on the docket of these Chapter 11 Cases an objection to the Releases that is not resolved before Confirmation; *provided further*, that, for the avoidance of doubt, any opt-out election made by a Consenting Stakeholder, or Holder of Claims or Interests that is entitled vote on this Plan and votes to accept this Plan, will be void *ab initio*.

29.     Section IX.B of the Plan, the Debtor Release, states:

**EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THECOMBINED ORDER, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, IS AND IS DEEMED TO BE, FOREVER AND UNCONDITIONALLY RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED BY EACH DEBTOR, REORGANIZED DEBTOR, AND THEIR ESTATES FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (I) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES (INCLUDING ANY DIVIDENDS OR OTHER DISTRIBUTIONS); (II) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES; (III) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS; (IV) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY; (V) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF COURT RESTRUCTURING EFFORTS; (VI) INTERCOMPANY TRANSACTIONS; (VII) THE RESTRUCTURING SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THESE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION; (VIII) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE RESTRUCTURING TERM SHEET, THE DIP DOCUMENTS, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN; (IX) THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT; OR (X) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (X) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THIS PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION,**

9

**ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THIS PLAN; (Y) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION; OR (Z) ANY CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD.**

**ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THIS PLAN; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (III) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VI) A BAR TO ANY OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE DEBTORS' ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

30.      Section IX.C of the Plan, the Third-Party Release, states:

**EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN OR THE COMBINED ORDER, AS OF THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CLAIM OR CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, HAS AND IS DEEMED TO HAVE, FOREVER AND UNCONDITIONALLY, RELEASED, ABSOLVED, ACQUITTED, AND DISCHARGED EACH DEBTOR, REORGANIZED DEBTOR, AND RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THEIR ESTATES, OR THE REORGANIZED DEBTORS THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN ITS OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, (I) THE MANAGEMENT, OWNERSHIP, OR OPERATION OF**

10

THE DEBTORS OR THE NON-DEBTOR AFFILIATES (INCLUDING ANY DIVIDENDS OR OTHER DISTRIBUTIONS); (II) THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS OR THE NON-DEBTOR AFFILIATES; (III) THE SUBJECT MATTER OF, OR THE TRANSACTIONS, EVENTS, CIRCUMSTANCES, ACTS OR OMISSIONS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE RESTRUCTURING TRANSACTIONS, INCLUDING THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE RESTRUCTURING TRANSACTIONS; (IV) THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR NON-DEBTOR AFFILIATE AND ANY OTHER ENTITY; (V) THE DEBTORS' AND NON-DEBTOR AFFILIATES' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS; (VI) INTERCOMPANY TRANSACTIONS; (VII) THE RESTRUCTURING SUPPORT AGREEMENT, THE DEFINITIVE DOCUMENTS, THESE CHAPTER 11 CASES, OR ANY RESTRUCTURING TRANSACTION; (VIII) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE RESTRUCTURING SUPPORT AGREEMENT, THE RESTRUCTURING TERM SHEET, THE DIP DOCUMENTS, THE DEFINITIVE DOCUMENTS, OR THE RESTRUCTURING TRANSACTIONS, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN; (IX) THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT; OR (X) ANY OTHER ACT, OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATING TO ANY OF THE FOREGOING AND TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (X) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THIS PLAN, THE COMBINED ORDER, ANY OTHER DEFINITIVE DOCUMENT, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN, OR ANY CLAIM OR OBLIGATION ARISING UNDER THIS PLAN;  (Y) ANY CAUSES OF ACTION SPECIFICALLY RETAINED BY THE DEBTORS PURSUANT TO THE SCHEDULE OF RETAINED CAUSES OF ACTION; OR (Z) ANY CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD.

ENTRY OF THE COMBINED ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (I) CONSENSUAL; (II) ESSENTIAL TO THE CONFIRMATION OF THIS PLAN; (III) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, INCLUDING THE RELEASED PARTIES' SUBSTANTIAL CONTRIBUTIONS TO FACILITATING THE RESTRUCTURING TRANSACTIONS AND IMPLEMENTING THIS PLAN; (IV) A GOOD FAITH SETTLEMENT AND

**COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (VI) FAIR, EQUITABLE, AND REASONABLE; (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

31.    Section IX.E of the Plan, the Exculpation provision, states:

**EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE EXCULPATED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY CLAIMS OR CAUSES OF ACTION ARISING PRIOR TO OR ON THE EFFECTIVE DATE FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONFIRMATION OR CONSUMMATION OF THIS PLAN, THE DISCLOSURE STATEMENT, THE DEFINITIVE DOCUMENTS, THE DIP DOCUMENTS, OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THIS PLAN OR ANY OTHER POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTORS, THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OR CONSUMMATION OF THIS PLAN; *PROVIDED*, THAT THE FOREGOING PROVISIONS OF THIS EXCULPATION SHALL NOT (X) OPERATE TO WAIVE OR RELEASE THE RIGHTS OF ANY PERSON OR ENTITY TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, CREDIT DOCUMENTS, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT AND (Y) APPLY TO THE EXCULPATED PARTIES FOR ACTS OR OMISSIONS DETERMINED BY FINAL ORDER TO CONSTITUTE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR INTENTIONAL FRAUD; *PROVIDED, FURTHER*, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS RESPECTIVE DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS OR INACTIONS;**

**THE EXCULPATED PARTIES HAVE, AND UPON CONSUMMATION OF THIS PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THIS PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THIS PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THIS PLAN.**

**THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON OR ENTITY.**

## ARGUMENT

**A.    The Disclosure Statement Should Not Be Approved**

The disclosure statement requirement imposed by Section 1125 of the Bankruptcy Code is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.*), 848 F.2d 414, 417-18 (3d Cir. 1988)).

Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan.  11 U.S.C. § 1125; *see also In re Quigley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007).   The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Adelphia Commc'ns Corp.*, 352

B.R. 592, 596 (Bankr. S.D.N.Y. 2006); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y.

1999).

The "adequate information" requirement is designed to give creditors enough information

so that they can make an informed decision about whether to approve or reject a plan. *See Century

Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988); *In re Duratech

Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd* at 241 B.R. 283 (E.D.N.Y. 1999).  To be

approved, a disclosure statement must include sufficient information to apprise creditors of the

risks and financial consequences of the proposed plan. *See In re McLean Indus., Inc.,* 87 B.R. 830,

834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications

of any proposed plan will have to be provided to, and digested by, the creditors and other parties

in interest in order to arrive at an informed decision concerning the acceptance or rejection of a

proposed plan").  Although the adequacy of the disclosure statement is determined on a case-by-

case basis, the disclosure statement must "contain simple and clear language delineating the

consequences of the proposed plan on [creditors'] claims and the possible [restructuring]

alternatives . . . ." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less.

*See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990).  The

"adequate information" requirement establishes a floor, not a ceiling, for disclosures that must be

made to creditors. *Adelphia*, 352 B.R. at 596 (citing *Century Glove,* 860 F.2d at 100).  Once the

"adequate disclosure" floor is satisfied, additional information can go into a disclosure statement

if the additional information is accurate and its inclusion is not misleading. *Adelphia*, 352 B.R. at

596.  The disclosure statement must inform the average creditor what it will receive and when and

what contingencies might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

1.  <u>The Disclosure Statement Does Not Present Adequate Information About the Debtor Release and the Third-Party Releases</u>

The Plan, if confirmed, will provide a myriad of third parties with broad releases that will deprive the Debtors' creditors of certain property rights.  The Third-Party Releases in the Plan are material terms and should be addressed fully and in detail in the Disclosure Statement so that interested creditors can determine (i) exactly what releases will be imposed upon them and (ii) the likelihood of the Debtors' success in confirming a Plan with or without such broad third-party releases.  Without adequate information about the releases, a creditor could not reasonably determine whether to consent to such releases.

The Debtors restate the release, exculpation, and injunction provisions in the Plan in their entirety on pages 96-101 out of 568 pages in the Disclosure Statement.  These provisions, covering six pages of single-spaced text, discuss how the release and exculpation provisions work in lengthy and complex legal terminology, very far from the "plain English" language that would allow a creditor to easily understand the Plan's provisions and how to exercise their rights.  Nowhere in the Disclosure Statement do the Debtors attempt to explain nor justify these provisions.  Simple restatement of Plan provisions cannot constitute adequate information; this would render a separate disclosure statement unnecessary and obviate Congress's intent in enacting Section 1125.

The Disclosure Statement must explain why the Third-Party Release is justified.  Nonconsensual third-party releases are unlawful in their entirety, and the Disclosure Statement fails to establish that the Third-Party Release is consensual.  *Harrington v. Purdue Pharma, L.P.*, 603 U.S. ___, 144 S.Ct. 2071, 2082-88 (2024).  In fact, the *Purdue Pharma* Court emphasized the importance of obtaining a claimant's consent before its claims are "bargained away" (*id.* at *8) or otherwise "extinguished" (id.), and a creditor cannot consent to a release that it does not fully understand.

15

This Court's guidelines for prepackaged plans of reorganization also suggest that, because a 'Rapid Prepackaged Chapter 11 Case' only impairs accepting class(es) of creditors, such cases "[do] not provide for [. . .] (b) releases of claims by parties in interest against non-Debtor parties, unless, in each instance, the Debtor establishes that the foregoing is on a consensual basis, including, without limitation, that the affected party is a co-proponent of the plan or of a settlement embodied in the plan." General Order M-621, *Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York*, amending General Order M-454 (Glenn, C.J.), Feb. 1, 2024. While the Debtors' timeline is two weeks longer than the fourteen-day timeline in a 'Rapid Prepackaged Chapter 11 Case', this Plan is analogous in that it also purports to impair only accepting classes of creditors and is being presented to creditors for their votes on an extremely expedited basis. In these cases, additional information about the justification for imposing the Third-Party Release is especially critical.

The Disclosure Statement is also inadequate because it describes a plan where the Debtors are releasing potential claims and causes of action (that are property of the estate) against numerous third parties without explaining what consideration these parties have given in exchange for the Debtor Release.

Although the Disclosure Statement does advise creditors that the Bankruptcy Court may not approve the release, injunction, or exculpation provisions, it does so in a perfunctory and unhelpful matter. ("The Plan provides for certain releases, injunctions, and exculpations. Parties in interest, however, may object to, and the Bankruptcy Court may not approve such releases, injunctions, and exculpations. If the Bankruptcy Court does not approve such provisions, certain Released Parties may not support the Plan." Disclosure Statement at pp. 115-116 of 568.) Due to

the impact of the Third-Party Release and exculpation provision on the Plan's confirmability, as discussed in detail below, more information must be provided to creditors.

2.    <u>The Disclosure Statement Describes Key Provisions of the Original Plan that No Longer Apply to the Plan the Debtors are Soliciting</u>

The Court's Scheduling Order amended the terms of the Debtors' Plan in significant, material ways after the Debtors began soliciting the Original Plan with the Disclosure Statement. The Disclosure Statement told voting creditors, as well as certain non-voting creditors, that they would need to opt-out of the Third-Party Releases or else be deemed to have granted these broad provisions.    The current iteration of the Plan has modified the Third-Party Release mechanism such that (1) creditors authorized to vote who vote against the Plan or abstain from casting a vote on the Plan must opt-in to granting these Third-Party Releases, (2) but a vote in favor of the Plan can deem a creditor who has not opted-in bound by the Releases, and (3) creditors deemed to reject the Plan may opt-in to the Third-Party Releases rather than being required to opt-out.    However, to be clear, any creditor who votes in favor of the Plan and any creditor who has signed the Restructuring Support Agreement is bound to accept the Third-Party Release.    Indeed, even if one of these creditors tries to return a ballot where they have affirmatively checked a box indicating that they do not wish to opt in to the releases, the Plan provides that such action will be deemed null and void.    The opt-in mechanism is therefore ineffectual for creditors who vote in favor of the Plan or who signed the Restructuring Support Agreement.

The Debtors have presumably sent the supplemental notices that the Court approved in connection with the Scheduling Order to their creditors to advise them that the Plan now resembles a largely opt-in plan as to its Third-Party Releases.    Scheduling Order, ECF No. 38-9, p. 136. However, the supplemental notices do not tell creditors what will happen to their release elections if they have already cast a vote on the Plan.    The notices do not explain to creditors how their rights

in connection with the Plan changed from the Original Plan to the current Plan, and the notices do not tell creditors how to change their votes to amend their elections if they so choose.

The Disclosure Statement is 568 pages long, yet in these 568 pages, creditors are not given enough information to have a full and fair opportunity to respond to the Plan. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (requiring that notice be "reasonably calculated, under all the circumstances, to apprise interest parties of the pendency of the action and afford them an opportunity to present their objections"); *DePippo v. Kmart Corp.*, 335 B.R. 290, 295 (S.D.N.Y. 2005) (confirmed chapter 11 plan binds creditors, but only so long as they have received notice sufficient to satisfy due process). The Debtors should have amended or supplemented the Disclosure Statement to explain the Plan changes clearly and in plain English to their creditors.

### 3. The Disclosure Statement Does Not Provide Adequate Information About Pending Litigation

Finally, the Disclosure Statement fails to provide adequate information about litigation that the Debtor is currently involved in and the risks stemming therefrom. Specifically, the Disclosure Statement advises that, "While certain prepetition litigation Claims will be treated as Class 9 Subordinated Claims and discharged in accordance with the Plan, the Debtors are involved in certain litigation, which so long as it remains unresolved represents a legal issue and potential claim for monetary damages." Disclosure Statement at p. 119 of 568. The Disclosure Statement does not provide a list of pending litigation against the Debtors (or initiated by the Debtors). Creditors are not provided with any sense of the scope and size of these litigation claims, and

therefore cannot reasonably assess the risks of the Debtors' potential litigation liability and how that impacts the feasibility of the Plan.[3]

No interested parties other than the Debtors were given the chance to weigh in on the adequacy of the Disclosure Statement or propose amendments to the Debtors before the solicitation materials were sent out, so votes have already been solicited based on an inadequate Disclosure Statement. Rather than plow forward at a breakneck pace, the Debtors should re-solicit for their Plan in a more fulsome manner that gives creditors an opportunity to truly understand the Plan and to exercise their rights. Accordingly, the Court should revoke its conditional approval of the Disclosure Statement because it does not provide adequate information to creditors.

**B.     The Plan Should Not be Confirmed**

    1.   The Plan Violates Established Law on Releases

Nonconsensual third-party releases are not permitted by the Bankruptcy Code, so any third-party release provision in a chapter 11 plan is unlawful to the extent it binds claimants without their consent. *Harrington v. Purdue Pharma, L.P.*, 603 U.S. ___, 144 S.Ct. 2071, 2082-88 (2024). Under the Debtors' Plan, holders of claims who vote to accept the Plan will be deemed to grant releases to a wide range of Released Parties. The Plan seemingly purports to equate votes in favor of the economic treatment that parties will receive under the Plan with an agreement to release non-debtors from an exhaustive range of conduct. That is incorrect as a matter of law. A vote in favor of a plan is insufficient to manifest consent to release non-debtor parties. *See United States v. Alfano*, 34 F. Supp. 2d 827, 840 (E.D.N.Y. 1999) ("A creditor's acceptance of a reorganization

---

[3]   In the Plan Supplement, the Debtors identify seven lawsuits currently pending against the Debtors to preserve Causes of Action the Debtors may have in relation to these lawsuits. As this information is evidently available to the Debtors, it should be included in the Disclosure Statement. Plan Supplement, ECF No. 71, at p. 24 of 35.

plan is not an unambiguously manifested assent to the release of the nondebtor from liability on its debt.").

The Bankruptcy Code does not govern relationships between claimholders and non-debtor third parties, contract principles are the bedrock of authority when considering whether a release is consensual. *In re SunEdison, Inc*., 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017). No provision of the Bankruptcy Code alters the obligations of a non-debtor party owed to another non-debtor except in cases where Section 524(g) applies. *Harrington v. Purdue Pharma,* 114 S. Ct. at 2086 (noting that "nothing in the bankruptcy code contemplates (much less authorizes)" third party releases; *see also In re Arrowmill Dev. Corp*., 211 B.R. 497, 506 (Bankr. D.N.J. 1997) (quoting *Union Carbide Corp. v. Newboles,* 686 F.2d 593, 595 (7th Cir. 1982) (holding "a creditor's approval of the bankruptcy plan cannot be deemed as an assent that has significance beyond the confines of the bankruptcy proceedings."). Therefore, the Plan is not the mechanism under which a non-debtor release could be effectuated; a non-debtor release by a non-debtor must be effectuated via a contract governed by state contract law, not the Bankruptcy Code.

In evaluating third-party releases after the *Harrington v. Purdue Pharma* decision, Judge Bucki reasoned that because the Bankruptcy Code does not contemplate releases outside of the context of section 524(g), "any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent. Not authorized by any provision of the Bankruptcy Code, any such consensual agreement would be governed instead by state law." *In re Tonawanda Coke Corp.,* Decision and Order on Disclosure Statement, Bankr. W.D.N.Y. Aug. 27, 2024 (Case No. 18-12156) (Bucki, C.J.), ECF No. 790 at *4.

The "general rule of contracts is that silence cannot manifest consent." *Patterson et al. v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 686 (E.D. Va. 2022). For example, in applying

black letter contract principles to opt-out releases in a chapter 11 plan in *Mahwah*, the Court found

that contract law does not support consent by failure to opt-out.   *Mahwah*, 636 B.R. at 686.

"Whether the Court labels these 'nonconsensual' or based on 'implied consent' matters not because

in either case there is a lack of sufficient affirmation of consent."  *Id.* at 688.

Although *Mahwah* concerned an opt-out release, the reasoning is equally applicable here

where the Plan proposes to equate a vote in favor of the Plan to affirmative consent to a third-party

release. Such an equation is dubious, and many courts have held that voting in favor of the plan

alone is an insufficient affirmation of consent to releasing non-debtor parties. *See, e.g.*, *In re*

*Congoleum Corp.*, 362 B.R. 167, 194 (Bankr. D.N.J. 2007) (Ferguson, J.) ("[T]his Court agrees

with those courts that have held that a consensual release cannot be based solely on a vote in favor

of a plan."); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 507 (Bankr. D.N.J. 1997) (Gindin, C.J.)

("[I]t is not enough for a creditor to abstain from voting for a plan, or even to simply vote 'yes' as

to a plan. . . . Thus, the court must ascertain whether the creditor unambiguously manifested assent

to the release of the nondebtor from liability on its debt."); *In re Digital Impact, Inc.*, 223 B.R. 1,

14 (Bankr. N.D. Okla. 1998) (agreeing with *In re. Arrowmill Development Corp.* that the validity

of the release does not hinge upon the confirmation order and that simply voting yes as to a plan

is not enough to release a non-debtor.). Similarly, in applying New York contract law, the

*Tonawanda Coke* Court refused to approve a disclosure statement for a plan that would bind

creditors to a third-party release unless the creditors opted out.   "Absent a writing expressly

agreeing to a release of non-debtors, creditors have not given consent as required by the Supreme

Court in *Harrington v. Purdue Pharma*."  *Tonawanda Coke* at *5.  Returning a ballot in favor of

the Plan does not present a sufficient affirmation of consent to the Third-Party Releases as it is not

a writing expressly agreeing to such a release.

Similarly, warnings in the Disclosure Statement and the Ballots that a vote in favor of the plan will also bind the creditor to a Third-Party Release are insufficient to convert a party's silence (or even affirmative indication to not opt in) into consent to the release. New York state contract law provides that silence is not acceptance, even if an offer purports to set that condition. *See Karlin v. Avis*, 457 F.2d 57, 62 (2d Cir. 1972). "Thus, the offeror cannot ordinarily force the other party into a contract saying, "If I do not hear from you by next Tuesday, I shall assume you accept." John D. Calamari & Joseph M. Perillo, The Law on Contracts § 2-18, at 83 (3d ed. 1987). An exception to this rule may exist where the party has a duty to speak due to an ongoing course of conduct, the offeree accepts the benefits of the offer despite the opportunity to reject them, or when silence will have the effect of misleading. *See e.g., Weiss v. Macy's Retail Holdings, Inc.*, 265 F. Supp. 3d 358 (S.D.N.Y. 2017). None of those circumstances exist here. Voting on a Chapter 11 plan is governed by the Bankruptcy Code, and a favorable vote reflects only approval of the plan's treatment of the voters' claims *against the debtor*. The only benefits received are through distributions from the debtor's chapter 11 plan— there are no benefits provided from the released nondebtor to the releasing claimant. Further, because the plan's distributions are not contingent on agreeing to the non-debtor release, one cannot infer consent from the acceptance of those distributions.

Imputing consent from a vote in favor of a plan assumes that the creditor understands the plan's non-debtor release, which is a questionable assumption at best. Voting for a plan does not necessarily reflect actual and knowing consent, particularly in the context of "an immensely complicated plan" where "it would be difficult for any layperson to comprehend all of its details." *In re Congoleum Corp.*, 362 B.R. at 194.

Additionally, a plan is presented as a package deal—a person votes yes or no on the entire

plan, not particular aspects of it—and a person should not be compelled to accept a non-debtor

release as a condition of receiving the benefits of a plan.  That is not true consent.

Further, the Bankruptcy Code guarantees that a creditor may not be required to accept in

a chapter 11 plan less than it would receive in a chapter 7 liquidation. 11 U.S.C. § 1129(a)(7)(A).

But a chapter 7 liquidation could not require a release of non-debtors as a condition of receiving

a distribution (because it does not involve a plan). Requiring a non-debtor release as a condition

of receiving a distribution under a chapter 11 plan, absent the individual creditor's consent, is

thus inconsistent with § 1129(a)(7)(A).

Moreover, the terms of the Third-Party Release do not enable a reader of the Plan to discern

who exactly is receiving a release and/or exculpation due to the incredibly broad definitions of the

terms "Exculpated Parties" and "Released Parties," particularly in their inclusion of "Related

Parties,"  which throws the Third-Party Release into the realm of the unknown—indeed, the

unknowable—regarding who that will be receiving releases.  It is impossible for this Court to find

that a claimholder has granted a "consensual" release where it is unclear to whom the release is

given.  And the list of individuals, parties, and entities that will be released under the Plan extends

far beyond those who have been actively involved in these cases and to whom a creditor may

reasonably have some relationship.

Affirmative consent to the Third-Party Releases cannot be shown by a vote in favor of the

Plan.  A release imposed without the releasing party's affirmative consent is a nonconsensual

release and should not be approved by this Court.

The Third-Party Release is also impermissible in that it includes a release of claims

pursuant to federal or state securities laws.  *See* Plan at p.8, definition of "Causes of Action".  This

Court lacks jurisdiction to rewrite securities laws or to bind the current or future actions of an executive branch agency tasked with enforcing the same.

Debtors appear to have intended to use Rule 9019 to justify third-party release; Rule 9019 cannot authorize the court to approve something the Supreme Court held no Bankruptcy Code provision permits. Section 2075 of title 28 commands that Bankruptcy Rules shall not abridge substantive rights. To the extent Rule 9019 might be read as permitting a *Purdue* violation, this reading would be wrong, and prohibited both by section 2075 and Supreme Court precedent.

2. The Third-Party Release Injunction Also Violates *Purdue.*

Section IX.C. also provides that the court will enter a bar to any of the releasing parties asserting any claim or cause of action released pursuant to the Third-Party Release. However, this Court may not approve the injunction enforcing the release by parties in interest against non-debtors. First, *Purdue* clearly stands for the proposition that non-consensual third-party releases are not permitted by the Bankruptcy Code. *See Purdue Pharma*, 144 S.Ct. at 2088. As the *Purdue* court noted, the Bankruptcy Code allows courts to issue an injunction in support of a non-consensual, third-party release in exactly one context: asbestos-related bankruptcies, and this case is not asbestos-related. *See Purdue Pharma*, 144 S.Ct. at 2085 (citing 11 U.S.C. § 524(e)). Second, even if the Plan did contain a consensual third-party release, there would be no need for an injunction to support same, as an injunction in support of a purely consensual release is, by definition, not necessary to prevent "immediate and irreparable harm" to either the Debtors' estates or the released parties. The consensual releases may serve as an affirmative defense in any ensuing, post-effective date litigation between the third party releasees and releasors, and there is no reason for this Court to be involved with the post-effective date enforcement of those releases. Moreover, this injunction essentially precludes any party deemed to consent to this release from

raising any issue with respect to the effectiveness or enforceability of the release (such as mistake or lack of capacity) under applicable nonbankruptcy law.

### 3. The Debtors are Releasing Parties Without Consideration

The Debtor Release improperly releases claims that belong to the estate without proper consideration. The Debtors' potential claims against other parties are property of the estate. *See* 11 U.S.C. § 541. Pursuant to Bankruptcy Rule 9019, debtors have the authority to settle or release such claims. *See* Fed. R. Bankr. P. 9019; *see also Smart World Technologies, LLC v. Juno Online Servs., Inc.,* 423 F.3d 166, 175 (2d Cir. 2005). The release of such claims, however, must still "satisfy the provisions of the Bankruptcy Code relating to the approval of settlements." *Id.* (citing *Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S. Ct. 1157, 20 L.Ed.2d 1 (1968)).

The Plan provides for the Debtors to release "any and all claims and causes of action" the estates may have against the Released Parties. *See* Plan, IX.B. The definition of "Released Parties" encompasses an extensive range of entities and individuals.

The release of the potentially valuable estate claims against the Released Parties is allegedly for the Debtors' receipt of "good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the restructuring transactions and implementing this plan." *Id*. Yet neither the Plan nor the Disclosure Statement provide sufficient detail of what consideration was provided by *each* Released Party, and how, for example, each of the Debtors' and Non-Debtor Affiliates' current and former directors, officers, and proxyholders made substantial contributions to the Debtors' restructuring that entitle them to a release.

The burden is on the Debtors to detail why the releases should be granted. There is not

sufficient evidence in the record of these Released Parties' consideration, economic or otherwise. There is also no evidence as to the value of these estate claims that the Debtors so readily release without any reciprocal consideration.  If the Debtors hold claims against the Released Parties, the Debtor Release inappropriately releases claims that are assets of the estate.

    4. The Exculpation Provision Should be Rejected

The only code provision that authorizes exculpation is § 1125(e).  The Second Circuit has not ruled on the parameters set by the Code as to exculpation provisions.  To the extent that this Court finds, however, that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), the exculpation provision in this Plan is overly broad in contravention of case law from other circuits. The Debtors have failed to cite any decision by any other courts of appeal supporting this broad view of who may be exculpated.  Plan § IX.E; see, e.g., *Bank of New York Trust Company, NA v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)* 584 F.3d 229 (5th Cir. 2009); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

And the exculpation provision even extends beyond what bankruptcy courts have allowed in this District for "claims against exculpated parties based on the negotiation, execution, and implementation of agreements and transactions that were approved by the Court."  *In re Aegean Marine Petroleum Network, Inc.* 599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019).

The exculpation provision is inappropriate because the list of exculpated parties, in addition to being unknowable by virtue of the inclusion of "Related Parties," surely extends to individuals or entities that cannot be classified as estate fiduciaries.  Exculpation should not shield anyone who is not a court-supervised fiduciary from liability.  *Aegean Marine*, 599 B.R. at 721. Bankruptcy Courts have held that an exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their

members, and the Debtor's directors and officers." *In re Washington Mut., Inc.*, 442 B.R. 314, 350–51 (Bankr. D. Del. 2011). Exculpation provisions are based "to some extent . . . on the theory that court-supervised fiduciaries are entitled to qualified immunity for their actions." *Aegean*, 599 B.R. at 720. Parties who had nothing to do with the bankruptcy process should not be entitled to benefit from such exculpations.

Second, while the exculpation clause excepts acts that constitute fraud, gross negligence, or willful misconduct, it should not be approved because it does not also carve out claims for bad faith, breach of fiduciary duty, and legal malpractice, release of which is prohibited under section of the New York Rules of Professional Conduct, *i.e.*, N.Y. Comp. Codes R. & Res. Tit. 22 § 1200.8 Rule 1.8(h)(1).

5. The Plan Supplement and Treatment of Certain Claims was Not Adequately Noticed

The Court should not confirm the Plan because the Debtors failed to give creditors adequate notice about (1) a plan supplement and (2) the potential disallowance and expungement of their claims. First, the Debtors filed an amended plan supplement that includes material Plan modifications on August 23, 2024, giving interested parties only one business day to review these materials. In this plan supplement, the Debtors provided for the first time the Restructuring Transactions Memorandum, members of the New Board, Exit Facility Documents, and new corporate governance documents. Confirmation should, at a minimum, be delayed to give parties the proper time to review and respond to these documents. Second, the Plan provides that "[a]ny and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in these Chapter 11 Cases, including pursuant to the Combined Order, and for which any Cure Claim has been fully paid pursuant to this Article V.B, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice

to or action order, or approval of the Bankruptcy Court." Plan, Art. V.B. Creditors whose Proofs of Claim will be deemed disallowed and expunged should have notice and an opportunity to object to this treatment of their claims. The Plan does not provide for any notice to be sent to these creditors.

## CONCLUSION

In sum, the Disclosure Statement does not contain adequate information about material issues, and the Plan contains provisions that render it patently unconfirmable.

WHEREFORE, for all the foregoing reasons, the United States Trustee respectfully requests that the Court (i) sustain this Objection and decline to approve the Disclosure Statement (ii) decline to approve the Plan, and (iii) grant such other relief as is just and appropriate.

Dated:  New York, New York
         August 30, 2024

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE
Region 2

By:    */s/Rachael E. Siegel*
       Rachael E. Siegel
       Tara Tiantian
       Trial Attorneys
       Office of the United States Trustee
       Alexander Hamilton Custom House
       One Bowling Green, Rm. 534
       New York, New York 10004
       Tel.: (212) 510-0500

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

--------------------------------------------------------

In re

TONAWANDA COKE CORPORATION                    BK 18-12156 CLB


                                        Debtor.          DECISION & ORDER

--------------------------------------------------------


                    Hodgson Russ LLP
                    James C. Thoman, Esq., of counsel
                    Guaranty Building
                    140 Pearl Street
                    Buffalo, New York 14202
                    Attorneys for Debtor

                    Baumeister Denz LLP
                    Arthur G. Baumeister, Jr., Esq., of counsel
                    174 Franklin St., Suite 2
                    Buffalo, New York 14202
                    Attorneys for the Official Committee of Unsecured Creditors

                    Office of the U.S. Trustee
                    Joseph W. Allen, Esq., Assistant U.S. Trustee
                    Olympic Towers
                    300 Pearl Street, Suite 401
                    Buffalo, New York 14202


Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

        In this Chapter 11 case, the United States Trustee objects to a disclosure statement on grounds that it seeks to advance a plan that is not confirmable in its present format. The issue is whether the debtor may assume consent to a third-party release except in those instances where a creditor expressly opts out of that proposal.

        Until October of 2018, Tonawanda Coke Corporation maintained a coke foundry along the Niagara River in Tonawanda, New York. By then, the corporation had

accumulated substantial debt, much of it related to the alleged emission of toxic pollutants. On October 15, 2018, at about the time that it was terminating operations, the Corporation filed a petition for relief under Chapter 11 of the Bankruptcy Code. Since that filing, the debtor in possession has completed the liquidation of its property. Hoping to implement a distribution, Tonawanda Coke Corporation filed a Second Amended Disclosure Statement and Plan on March 5, 2024. In its Disclosure Statement, the debtor reports that it now has approximately $300,000 available for distribution on account of filed and scheduled unsecured claims totaling in excess of $282 million.

The Office of the United States Trustee presented several objections to the Disclosure Statement. All have been resolved except one. In its Plan, the debtor proposes that with regard to the claims of unsecured creditors and tort victims, a general release be given to "the Debtor, its interest holders, the members of the Committee and each of their respective directors, officers, shareholders, members, partners, agents, employees, representatives, attorneys and other professionals, subsidiaries and affiliates, and any successor in interest in any of them." This arrangement would be conditioned, however, on the right of any creditor to "opt out" of the general release. At the hearing to consider approval of the Disclosure Statement, the trustee argued that third-party releases were permitted only upon creditor consent and that such consent could occur only with an affirmative "opt in" by each creditor.

At the time of argument before this Court, the Supreme Court had not yet

rendered its decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. ___, 144 S.Ct. 2071

(2024).   Anticipating the relevance of that case, we deferred any decision on the

Disclosure Statement until after the Supreme Court had provided its guidance.  Now,

with the benefit of higher authority, we address the process for securing consent to a

third-party release.

Discussion

After the commencement of a case, the proponent of a plan may not solicit its

acceptance unless there is transmitted to creditors "the plan or a summary of the plan,

and a written disclosure statement approved, after notice and a hearing by the court

as containing adequate information." 11 U.S.C. § 1125(b).  Implicitly, such adequate

information includes a representation that the proposed plan is one that can be

confirmed.  Consequently, the Court may decline to approve a disclosure statement

that aims to solicit votes in favor of an unconfirmable plan.

In *Harrington v. Purdue Pharma L.P.,* the Supreme Court held "that the

bankruptcy code does not authorize a release and injunction that, as part of a plan of

reorganization under Chapter 11, effectively seeks to discharge claims against a

nondebtor without the consent of affected claimants." 144 S.Ct. at 2088.  Like Purdue

Pharma, Tonawanda Coke Corporation proposes a plan that contemplates a release

from liability for the benefit of various third parties.  The debtor argues, however, that

any requirement for consent would be satisfied by allowing creditors to opt out of a

general release.  We disagree.

In its decision in *Harrington v. Purdue Pharma*, the Supreme Court declined

4

"to express a view on what qualifies as a consensual release."   114 S.Ct. at 2088.
Nonetheless, the Court observed that "nothing in the bankruptcy code contemplates
(much less authorizes) it." *Id.* at 2086.   Hence, any proposal for a non-debtor release
is an ancillary offer that becomes a contract upon acceptance and consent.   Not
authorized by any provision of the Bankruptcy Code, any such consensual agreement
would be governed instead by state law.

The debtor is a New York Corporation whose principal and only place of business
is in that state.   All or nearly all of its creditors either transacted business with the
debtor during the course of its operations in New York, or suffered environmental
damages as a result of activities in New York.  With regard to the adequacy of consent,
therefore, the choice of law falls in the present instance to New York.

To each creditor, Tonawanda Coke Corporation already owes far in excess of any
proposed distribution.   Any payment under the plan serves as consideration for pre-
petition obligations.   No further consideration is given on account of the separate
liabilities of the non-debtor beneficiaries of the releases.   Indeed, the plan
contemplates the same distribution whether or not a creditor opts out of the release.
Essentially, creditors are being asked to give releases to third parties for no
consideration.   Consent for this arrangement is therefore governed by the following
provisions of the New York General Obligations Law:

> "An agreement, promise or undertaking to change or
> modify, or to discharge in whole or in part, any . . .
> obligation . . . shall not be invalid because of the
> absence of consideration, provided that the agreement,
> promise or undertaking changing, modifying, or

> discharging such . . . obligation . . . shall be in writing
> and signed by the party against whom it is sought to
> enforce the change, modification or discharge, or by his
> agent."

N.Y. GEN. OBLIG. LAW § 5-1103 (McKinney 2022).  Under this standard, a failure to opt

out will not suffice to bind a creditor.  Rather, the creditor must affirmatively sign a

writing under which it expressly agrees to discharge the non-debtor parties.  *See also*

*Matter of Tanenbaum Textile Co. v. Schlanger*, 287 N.Y. 400 (1942).  Without such a

writing from each affected creditor, the release becomes a mere proposal that no one

can enforce.

Even aside from the specific requirements for a writing under the General

Obligations Law, we find that the debtor's plan would be deficient in securing the

consent of creditors.  "Consent and failure to object are not synonymous."  *In re Arch*

*Hospitality, Inc.*, 530 B.R. 588, 591 (Bankr. W.D.N.Y. 2015).  In many Chapter 11

cases, only a small percentage of creditors will cast ballots on confirmation of a plan.

Many who do vote may overlook the box indicating a preference to deny a release to

third parties.  Absent a writing expressly agreeing to a release of non-debtors,

creditors have not given consent as required by the Supreme Court in *Harrington v.*

*Purdue Pharma*.

Conclusion

In its recent decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. __, 144

S.Ct. 2071 (2024), the Supreme Court held that a Chapter 11 Plan can provide a

release for the benefit of non-debtors only with the consent of affected creditors.  We

6

find that the mere ability to opt out of a release is insufficient to establish that consent.

Consequently, the debtor's proposed plan is not confirmable in its present form.  By

failing to report this problem, the Disclosure Statement is similarly deficient.  The

objection of the United States Trustee is therefore sustained.   The request of

Tonawanda Coke Corporation to approve the Second Amended Disclosure Statement

is denied, but without prejudice to presenting a further amended plan and disclosure

statement that conforms with the guidelines recited herein.


      So ordered.

Dated: August 27, 2024
      Buffalo, New York      Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

