Hearing Date: December 18, 2024, 2:00 p.m. (Prevailing Eastern Time)
Objection Deadline: December 16, 2024, 4:00 p.m. (Prevailing Eastern Time)

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey

*Counsel to the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>2U, Inc., *et al.*,<br><br>　　　　　Reorganized Debtors.[1] | Chapter 11<br><br>Case No. 24-11279 (MEW)<br><br>(Jointly Administered)<br><br>**Related Docket Nos. 266, 272 and 275** |

**REORGANIZED DEBTORS' REPLY
IN SUPPORT OF THE MOTION FOR ENTRY OF AN ORDER
(A) CONSOLIDATING THE ADMINISTRATION OF ALL OUTSTANDING
CLAIMS AND MISCELLANEOUS MATTERS UNDER 2U, INC.; (B) ENTERING
A FINAL DECREE CLOSING CERTAIN CHAPTER 11 CASES; (C) AMENDING
THE CAPTION OF THE LEAD CASE; AND (D) GRANTING RELATED RELIEF**

The reorganized debtors (collectively, the "***Debtors***" or the "***Reorganized Debtors***") in the above-captioned cases (the "***Chapter 11 Cases***") hereby file this reply (this "***Reply***"): (a) in support of the *Reorganized Debtors' Motion for Entry of an Order (A) Consolidating the*

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: 2U, Inc. (5939); edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802). The Reorganized Debtors' mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

*Administration of all Outstanding Claims and Miscellaneous Matters Under 2U, Inc.; (B) Entering a Final Decree Closing Certain Chapter 11 Cases; (C) Amending the Caption of the Lead Case; and (D) Granting Related Relief* [Docket No. 266] (the "**Case Closing Motion**"); and (b) to the *Limited Objection of KCP Harkins Fee Owner, LLC to the Reorganized Debtors' Motion for Entry of an Order (A) Consolidating the Administration of all Outstanding Claims and Miscellaneous Matters Under 2U, Inc.; (B) Entering a Final Decree Closing Certain Chapter 11 Cases; (C) Amending the Caption of the Lead Case; and (D) Granting Related Relief* [Docket No. 272] (the "**HQ Case Closing Objection**") and *RFR/K Prospect Owner LLC's Limited Objection to the Reorganized Debtors' Motion for Entry of an Order (A) Consolidating the Administration of all Outstanding Claims and Miscellaneous Matters Under 2U, Inc.; (B) Entering a Final Decree Closing Certain Chapter 11 Cases; (C) Amending the Caption of the Lead Case; and (D) Granting Related Relief* [Docket No. 275] (the "**Brooklyn Case Closing Objection**" and, together with the HQ Case Closing Objection, the "**Case Closing Objections**").[2] In support of this Reply and the Case Closing Motion, the Reorganized Debtors respectfully represent as follows:

### PRELIMINARY STATEMENT

1.　　Had KCP Harkins Fee Owner, LLC (the "**HQ Landlord**") or RFR/K 55 Prospect Owner LLC (the "**Brooklyn Landlord**" and, together with the HQ Landlord, the "**Objecting Landlords**") expressed any concerns with the Case Closing Motion before filing the Case Closing Objections, the Reorganized Debtors would have acted reasonably to obviate the additional time and costs that must now be dedicated to this matter. However, the Case Closing Objections were not filed out of any inability to come to terms on what should be a straightforward and consensual

---

[2]　Capitalized terms used, but not otherwise defined, herein shall have the meanings given to them in the Case Closing Motion or the Debtors' plan of reorganization [Docket No. 90] (as amended or otherwise modified from time to time, the "**Plan**").

2

administrative motion that was filed to save the Reorganized Debtors unnecessary costs. Rather, filing the Case Closing Objections is a strategic attempt to use a pending, unrelated administrative motion to pressure the Reorganized Debtors to acquiesce to immediate payment of exorbitant claim amounts that are not supported by the Bankruptcy Code, the Plan, or the underlying agreements.

2. Even though section 502(b)(6) of the Bankruptcy Code caps a ***lessor's total*** claim for damages resulting from the rejection of a lease (rather than its claim against each Debtor), both of the Objecting Landlords seem to believe they are entitled to payment of the maximum section 502(b)(6) cap from not only the Debtors tenant to such leases but also the Debtor who guarantees such leases, 2U, Inc. (the "**Debtor Guarantor**").

3. As is detailed in the Reorganized Debtors' objection to the HQ Landlord Claims filed contemporaneously herewith (the "**HQ Claims Objection**"),[3] that position contradicts the plain text of section 502(b)(6) of the Bankruptcy Code, the legislative history underpinning the codification and enactment of section 502(b)(6) of the Bankruptcy Code, and case law from jurisdictions across the United States. It also defies common sense. A guaranty is not designed to multiply a landlord's recovery; it is designed to satisfy the tenant's obligations to the extent a tenant is unable to do so. But, here, the Debtors are satisfying the claims against the Debtor tenants in full to the extent permitted under section 502(b)(6) of the Bankruptcy Code.

4. Even though the claims against the Debtor Guarantor are rooted solely in conjecture, each of the Objecting Landlords denied a settlement proposal from the Reorganized

---

[3] The Reorganized Debtors are optimistic that they can reach an agreement with the Brooklyn Landlord regarding the Brooklyn Primary-Obligor Claim and the Brooklyn Guarantor Claim (together, the "**Brooklyn Landlord Claims**") after the Brooklyn Landlord has a chance to read the HQ Claims Objection. To the extent such an agreement cannot be reached, however, the Reorganized Debtors are prepared to file a similar objection to the Brooklyn Landlord Claims in short order.

3

Debtors that offered to, in exchange for withdrawing the relevant claim against the Debtor Guarantor, satisfy the amount the Objecting Landlord asserted it is entitled to in its claim against the Debtor tenant (up to the section 502(b)(6) cap) via monthly payments in accordance with the terms of the applicable lease. Neither Objecting Landlord offered any explanation for its denial of the settlement proposal and, instead, each proceeded to file a motion to compel payment [Docket Nos. 273 & 276] (the "***Motions to Compel***") and a Case Closing Objection. Despite frequent communication between counsel to the Reorganized Debtors and counsel to each of the Objecting Landlords, neither Objecting Landlord mentioned at any time whatsoever that it had any concerns with, or was considering objecting to, the Case Closing Motion.

5. Against that backdrop, it is hard to view the Case Closing Objections as anything other than attempts to paint the Reorganized Debtors in a bad light in the hopes that they will put pressure on the Reorganized Debtors to agree to pay some amount on the Debtor Guarantor Claims. Such tactics will not work.

## BACKGROUND

6. On October 10, 2024, the HQ Landlord filed two Proofs of Claim for rejection damages after Debtor 2U Harkins Road LLC ("***2U Harkins Road***") rejected the Office Lease, dated as of December 23, 2015 (as amended, restated, supplemented, or modified from time to time, the "***HQ Lease***"), it was party to with the HQ Landlord. One Proof of Claim [Claim No. 10052] (the "***HQ Primary-Obligor Claim***") seeks from 2U Harkins Road the maximum amount of damages allowed under section 502(b)(6) of the Bankruptcy Code as a result of 2U Harkins Road's rejection of the HQ Lease. The other Proof of Claim [Claim No. 10051] (the "***HQ Guarantor Claim***") again seeks the maximum amount of rejection damages allowed under section 502(b)(6) of the Bankruptcy Code as a result of 2U Harkins Road's rejection of the HQ Lease, but this time from the Debtor Guarantor who guaranteed the HQ Lease.

4

7.  Similarly, on September 25, 2024, the Brooklyn Landlord filed two Proofs of Claim for rejection damages after Debtor 2U NYC LLC ("**2U NYC**" and, together with 2U Harkins Road, the "**Debtor-Tenants**") rejected the Lease, dated as of February 13, 2017 (as amended, restated, supplemented, or modified from time to time, the "**Brooklyn Lease**"), it was party to with the Brooklyn Landlord.  One Proof of Claim [Claim No. 10046] (the "**Brooklyn Primary-Obligor Claim**" and, together with the HQ Primary-Obligor Claim, the "**Primary-Obligor Claims**") seeks from 2U NYC the maximum amount of damages allowed under section 502(b)(6) of the Bankruptcy Code as a result of 2U NYC's rejection of the Brooklyn Lease.  The other Proof of Claim [Claim No. 10047] (the "**Brooklyn Guarantor Claim**") again seeks the maximum amount of rejection damages allowed under section 502(b)(6) of the Bankruptcy Code as a result of 2U NYC's rejection of the HQ Lease but from the Debtor Guarantor who guaranteed the Brooklyn Lease.

8.  The HQ Landlord has taken the position that it is entitled to payment up to the 502(b)(6) cap on both the HQ Primary-Obligor Claim and the HQ Guarantor Claim (together, the "**HQ Landlord Claims**").  *See* Primary-Obligor Claim, ¶ 13 & Guarantor Claim, ¶ 13.  While the Brooklyn Landlord has not expressly taken the same position with respect to the Brooklyn Lease, the Brooklyn Landlord has intimated that it may do so.  *See, e.g.*, Brooklyn Case Closing Objection at 5 (adopting the legal arguments set forth in the HQ Case Closing Objection and requesting "that the Court enter an order . . . reserving RFR/K 55's rights to separately collect on each of the , Inc. Claim and the 2U NYC, LLC Claim") (sic).

5

## REPLY[4]

9. The Court should deny the Case Closing Objections because they are wrong on the facts, and they are wrong on the law.

### A. THE CASE CLOSING OBJECTIONS ARE WRONG ON THE FACTS

10. On the facts, the Case Closing Objections are littered with off-handed and, frankly, perplexing commentary. *First*, the HQ Landlord asserts that the "Debtors have . . . expended time and money on *needless* administrative actions, such as . . . this Consolidation Motion." HQ Case Closing Objection, ¶ 2 (emphasis added). But the express purpose of the Case Closing Motion is "to save the Reorganized Debtors' significant costs"—in particular, fees payable to the United States Trustee, which have totaled more than $731,000 to date. Case Closing Motion, ¶ 16.

11. *Second*, the HQ Landlord asserts that "2U Harkins' delay in paying or filing any substantive objection to the Tenant Claim, is already prejudicial to" the HQ Landlord. HQ Case Closing Objection, ¶ 11. But the Debtors paid all amounts owed on the HQ Lease through August 31, 2024, and the HQ Landlord, by its own admission, drew on a $2 million letter of credit on September 19, 2024. HQ Primary-Obligor Claim, ¶ 12.

12. *Third*, the HQ Landlord asserts that "if the Debtors had instead focused their efforts on resolving the four claims set forth on the chart on page 5 of the Consolidation Motion (including the Tenant Claim), the estates of the eight Debtors subject to the relief requested in the Consolidation Motion (including 2U Harkins) would be fully administered and could be closed legitimately." HQ Case Closing Objection, ¶ 3. But it is undeniable that the Reorganized Debtors

---

[4] For the avoidance of doubt, given that the Brooklyn Case Closing Objection "adopts and incorporates by reference as if fully set forth herein the legal arguments set forth in the [HQ Case Closing Objection]," any reference to, or argument against, the HQ Case Closing Objection in this Reply shall apply in full force to the Brooklyn Case Closing Objection.

6

have been focused on resolving the Rejection Damages Claims and trying to work constructively with the Objecting Landlords to do so.

13.  In fact, since the HQ Landlord filed the HQ Landlord Claims just over two months ago:

- The Reorganized Debtors and the HQ Landlord negotiated, and agreed upon, a stipulation that was filed on November 1, 2024 [Docket No. 253], and an order that was entered on November 7, 2024 [Docket No. 256], thereby resolving the administrative expense claim filed by the HQ Landlord;

- The Reorganized Debtors prepared and distributed, on November 1, 2024, letters to all claimants (including the Objecting Landlords) who timely filed Proofs of Claim for rejection damages, requesting that such claimants provide information with respect to their efforts to mitigate damages from the rejection of their leases and the results thereof, and the calculation of damages in accordance with any liquidated damages provisions in their respective leases (each a "**Mitigation Request Letter**");

- On November 8, 2024, the Reorganized Debtors received a reply from the HQ Landlord informing the Reorganized Debtors that the HQ Landlord has not yet been able to relet the premises but had conducted three tours for prospective tenants;

- On November 15, 2022, the Reorganized Debtors granted the Brooklyn Landlord a one-week extension to respond to the Mitigation Request Letter;

- By November 22, 2024, the Reorganized Debtors had received replies from the Brooklyn Landlord and the remainder of the claimants who timely filed Proofs of Claim for Rejection Damages; and

- Two weeks later, on December 6, 2024, the Reorganized Debtors made comprehensive settlement proposals to all of those claimants (including the Objecting Landlords).

14.  The essence of the Reorganized Debtors' settlement proposals to the Objecting Landlords was that, in exchange for withdrawing the relevant Guarantor Claim, the Debtors would satisfy in full the asserted amount of the applicable Primary-Obligor Claim (subject to the section 502(b)(6) cap) via monthly payments in accordance with the terms of the relevant leases. The Reorganized Debtors viewed these as fair proposals given that they would ensure that the

7

Objecting Landlords (like all other of the Debtors' landlords) do not receive duplicate recoveries on their claims, while also satisfying the Objecting Landlords' claims in full (subject to the section 502(b)(6) cap) in accordance with the terms of the Plan and the relevant lease.

15. However, the HQ Landlord rejected the settlement proposal with no explanation on December 9, 2024, and the Brooklyn Landlord rejected the settlement proposal with no explanation on December 12, 2024. The Reorganized Debtors immediately sought clarity from each of the Objecting Landlords as to its position but, rather than providing any explanation, each of the Objecting Landlords filed a Motion to Compel and a Case Closing Objection. Neither the HQ Landlord nor the Brooklyn Landlord mentioned a single time that it had any concerns with, or was considering objecting to, the Case Closing Motion.[5]

16. Had the Objecting Landlords done so, they would have learned that the proposed order attached to the Case Closing Motion already addresses their concern that the Case Closing Motion could be construed as substantively consolidating the Chapter 11 Cases. HQ Case Closing Objection, ¶ 4; Brooklyn Case Closing Objection, ¶ 2. In fact, the proposed order states that "[t]he Outstanding Claims and any Miscellaneous Matters shall be consolidated and transferred to the Lead Case for administration and resolution . . . all to the extent provided under the Plan." *See* Proposed Order, ¶ 3. And the Plan, in turn, provides that there is no substantive consolidation of any of the Debtors. *See* Plan, Art. IV.

---

[5] Unfortunately, the Reorganized Debtors are not surprised by the conduct of the HQ Landlord, as the relationship between the parties had begun to sour before the Chapter 11 Cases were even commenced. Prior to the Petition Date, on July 24, 2024, the Debtors and HQ Landlord executed an amendment to the HQ Lease that provided the HQ Landlord with a fee in exchange for the termination of the lease. The HQ Landlord's authority to enter into the amendment, however, was conditioned upon approval from its lender. After the Debtors filed the Chapter 11 Cases, the HQ Landlord claimed that the amendment was not effective because the lender declined to approve the HQ Landlord's entry thereto.

8

17.  Had the Objecting Landlords still requested that the Reorganized Debtors include even more explicit language that there is no substantive consolidation of the Chapter 11 Cases, the Reorganized Debtors would have been happy to accommodate the request.  In fact, despite the Objecting Landlords' recalcitrance, the Reorganized Debtors have filed a revised proposed order including such language [Docket No. 278].  The point of such language is to make it crystal clear that substantive consolidation is not the goal of the Case Closing Motion.  Rather, the goal is to promote efficient administration of the Chapter 11 Cases by closing all of them except the Lead Case and thereby reducing attendant United States Trustee fees.  Procedural consolidation of claims into the Debtor-Guarantor's Chapter 11 Case makes such closure feasible without prejudicing any claimants.

**B.    THE CASE CLOSING OBJECTIONS ARE WRONG ON THE LAW**

18.  The law does not support the Case Closing Objections either.  The crux of the Objecting Landlords' argument is that the Debtor-Tenants' Chapter 11 Cases should not be closed and consolidated with the Debtor-Guarantor's Chapter 11 Case because the Debtor-Tenants' Chapter 11 Cases are not fully administered.  In particular, the Objecting Landlords contend that the Reorganized Debtors failed to satisfy one of the six factors courts consider in determining whether an estate is fully administered under section 350(a) of the Bankruptcy Code—specifically, "whether all motions, contested matters, and adversary proceedings have been finally resolved." Fed. R. Bankr. P. 3022, Advisory Committee Note (1991 Amendment).  Although there was not a single motion, contested matter, or adversary proceeding in the Debtor-Tenants' Chapter 11 Cases when the Reorganized Debtors filed the Case Closing Motion, the Objecting Landlords contend that the filing of the Case Closing Objections and the Motions to Compel have created unresolved motions and contested matters.  HQ Case Closing Objection, ¶ 9.  The Objecting Landlords further

9

suggest that any objection the Reorganized Debtors file to the Primary-Obligor Claims will also create a contested matter. *Id.*

19. As an initial matter, the Case Closing Objections will inevitably be resolved prior to, or upon, entry of any order approving the Case Closing Motion. Moreover, the Committee Notes expressly state that "[t]he court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future." Fed. R. Bankr. P. 3022, Advisory Committee Note (1991 Amendment).

20. That said, assuming for the sake of argument that there is an unresolved motion or contested matter, the Debtor-Tenants' Chapter 11 Cases should still be closed and administratively consolidated with the Debtor-Guarantor's Chapter 11 Case. The factors listed in the Committee Notes are merely guideposts and do not all need to be present for a case to be considered fully administered. *See In re Avaya Inc.*, 2020 WL 5051580, at *2 (S.D.N.Y. Apr. 30, 2020) (explaining that the "factors are probative to the fully administered inquiry, but none is dispositive or required"); *In re Endo Int'l PLC*, 2024 WL 4798828, at *3 (Bankr. S.D.N.Y. Nov. 14, 2024) ("No one factor is dispositive."); *In re Motors Liquidation Co.*, 625 B.R. 605 (Bankr. S.D.N.Y. 2021) ("All of the factors in the Committee Note need not be present before the Court will enter a final decree."); *see also In re Gould*, 437 B.R. 34, 37-38 (Bankr. D. Conn. 2010) (quoting Fed. R. Bankr. P. 3022 ed. cmt.) (Bankruptcy Rule 3022 "was amended to set forth a flexible Rule to permit the court to determine that an estate is fully administered and should be closed even though payments or other activities involving the debtor and its creditors might continue . . . As is evident by the Committee note, the Advisory Committee interprets 'fully administered' very loosely and encourages courts to use substantially more discretion in deciding whether to close a Chapter 11 case th[a]n Code § 350 and the Rule literally read."). Accordingly, courts have held that, if the

estate is otherwise fully administered, the presence of a motion, contested matter, or adversary proceeding should not delay the closing of the case. *See, e.g.*, *In re McClelland*, 377 B.R. 446, 453–54 (Bankr. S.D.N.Y. 2007), *aff'd*, 460 B.R. 397 (Bankr. S.D.N.Y. 2011) ("If the estate is otherwise fully administered, the Debtor's adversary proceeding against Grubb & Ellis should not delay closing of the case."); *In re Union Home & Indus., Inc.*, 375 B.R. 912, 918 (10th Cir. BAP Oct. 10, 2007) ("The continuation of an adversary proceeding . . . is insufficient by itself to keep a case from being considered 'fully administered.'"); *In re JMP–Newcor Int'l*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998) (entering a final decree even though all disbursements under the plan had not been made and an adversary proceeding against a former creditor of the debtor was still pending).

21. The estates of the Debtor-Tenants are otherwise fully administered. Almost all of the other factors listed in the Committee Notes are present and have been since the Effective Date. In fact, (a) the order confirming the Plan has been final since September 9, 2024, and has been non-appealable since September 23, 2024; (b) other than distribution on account of the Primary-Obligor Claims, all distributions contemplated by the Plan (including of the Amended and Restated Loans, rights to participate in the Rights Offering, and New Common Interests) have been completed; (c) the Reorganized Debtors emerged from chapter 11 on September 13, 2024, and have assumed the management of substantially all of the property dealt with by the Plan; and (d) all transactions, payments, and distributions required by the Plan have been or are being implemented by the Reorganized Debtors in a manner consistent with the Plan. It is, therefore, unsurprising that the United States Trustee did not oppose entry of a final decree after the Reorganized Debtors consulted with the United States Trustee.

11

22.     Oddly, the Objecting Landlords cite to the same orders that the Reorganized Debtors cited in the Case Closing Motion as support for their argument that the Debtors should not be allowed to close the Chapter 11 Cases because they have not spent months or years adjudicating claims. Indeed, the Objecting Landlords state that, "rather than having spent months (or years) post-confirmation administering, resolving and paying the majority of claims, as in the cases cited above, the Debtors here are asking the Court to consolidate and close cases where certain Debtors have - and always have had - ***only one claim*** to deal with, and have done nothing to resolve them, including 2U Harkins." HQ Case Closing Objection, ¶ 7 (emphasis added). Such reasoning is counterintuitive. Those orders do not show that the question of whether an estate has been fully administered hinges on how many claims a debtor has administered or how long such administration process lasted. To the contrary, the question hinges on how few claims are left to be administered and how little is left to be done with respect to the estate. *See, e.g.*, *Avaya Inc.*, 2020 WL 5051580, at *2 (granting the debtors' request for a final decree closing all cases where only two unresolved claims remained in the proceedings and the debtors were unnecessarily burdened by the payment of $250,000 each quarter to the United States Trustee); *In re Garrett Motion Inc.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y. July 30, 2021) [Docket No. 1414] (approving the reorganized debtors' motion [Docket No. 1352] for entry of an order (i) consolidating the administration of all outstanding claims and miscellaneous matters under Garrett Motion Inc. and (ii) entering a final decree closing certain chapter 11 cases where the reorganized debtors had to resolve about 700 remaining proofs of claim out of about 2,500 total proofs of claim filed in the chapter 11 cases).

23.     Here, there is, as the Objecting Landlords concede, only one pending claim against 2U Harkins Road and one pending claim against 2U NYC. Those claims will not be impacted by

12

the closing of the Chapter 11 Cases because they will be consolidated with the remaining open case where they will be preserved and can be resolved. *Endo* illustrates this point well. There, the Court denied the claimant's argument that certain of the debtors' chapter 11 cases should not be closed because the claims adjudication process was incomplete and concluded that "if the Court's intervention is necessary in connection with the claims adjudication process, the Remaining Cases will remain open at this time, and any open issue can be administered on the docket of the Remaining Cases without prejudice to the rights of any creditor." 2024 WL 4798828, at *5.

## **CONCLUSION**

24. For the reasons set forth herein, the Reorganized Debtors respectfully request the Court overrule the Case Closing Objections and enter the proposed order granting the relief requested in the Case Closing Motion and such other and further relief as may be just and proper.

13

**LATHAM & WATKINS LLP**

| | |
|---|---|
| Dated: December 16, 2024<br>New York, New York | By: /s/ *George A. Davis*<br>George A. Davis<br>George Klidonas<br>Anupama Yerramalli<br>Randall C. Weber-Levine<br>Scott Yousey<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: george.davis@lw.com<br>        george.klidonas@lw.com<br>        anu.yerramalli@lw.com<br>        randall.weber-levine@lw.com<br>        scott.yousey@lw.com<br><br>*Counsel to the Reorganized Debtors* |