Alissa M. Nann
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329
anann@foley.com

*Counsel to KCP Harkins Fee Owner, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., | Case No. 24-11279 (MEW) |
| Reorganized Debtor.[1] | (Jointly Administered) |
|  | Re: Docket No. 273 |

### KCP HARKINS FEE OWNER, LLC'S SUPPLEMENT TO MOTION TO COMPEL PAYMENT OF ITS CLAIMS AGAINST DEBTORS 2U, INC. AND 2U HARKINS ROAD LLC, AND FOR RELATED RELIEF

KCP Harkins Fee Owner, LLC ("KCP"), by its undersigned counsel, submits this supplement (this "Supplement") in support of *KCP Harkins Fee Owner, LLC's Motion to Compel Payment of Its Claims Against Debtors 2U, Inc. and 2U Harkins Road, LLC and for Related Relief* [Docket No. 273] (the "Motion")[2] and respectfully states as follows:

---

[1] The Reorganized Debtor in this case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is: 2U, Inc. (5939). The Reorganized Debtor's mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

1.      KCP files this Supplement in order to advise the Court that its Lender (defined below) has moved to appoint a receiver; without payment of the KCP Rejection Damages Claims, KCP risks losing control of the Premises.  By the Motion and this Supplement, KCP is requesting immediate payment of **$3,221,302.26** in partial satisfaction of the Tenant Claim, which reflects the damages accrued and owed to KCP by the Debtors from September 1, 2024 – February 28, 2025, pending resolution of the remaining balance of the Tenant Claim and Guarantor Claim.

2.      Such payment on the KCP Rejection Damages Claims is imperative in order to allow KCP to get current with its Lender and avoid the appointment of a receiver.

## **BACKGROUND**[3]

3.      KCP is owner of the Debtors' former headquarters in Lanham, Maryland, a 12-story commercial office building, that has been sitting vacant since the Debtors rejected the KCP Lease and vacated the Premises, effective as of August 31, 2024.

4.      The Debtors were the sole tenant at the Premises.  Despite its best efforts, including retention of CBRE as real estate broker to market the Premises, to date, KCP has been unable to relet the Premises (in whole or in part).  Accordingly, KCP has not had rental income since August 31, 2024.[4]

5.      There is a mortgage on the Premises and KCP is currently in default with its Lender, due to its inability to make its monthly mortgage payments, given the lack of any rental income at the Premises or payment on the KCP Rejection Damages Claims.

---

[3] A more fulsome discussion of the background of this matter can be found in the Motion.

[4] Other than drawing on the $2 million letter of credit the Debtors had provided as security for the KCP Lease.

4931-1195-2398.4

6.      The Debtors are aware of KCP's inability to pay its mortgage without a tenant and without payment of the KCP Rejection Damages Claims.

7.      KCP timely filed its KCP Rejection Damages Claims on October 10, 2024.

8.      In an effort to move the claims process forward, on December 9, 2024, KCP filed the Motion [Docket No. 273], seeking payment of the KCP Rejection Damages Claims or, in the alternative, a deadline for the Debtors[5] to file any objection to the KCP Rejection Damages Claims.

9.      On December 16, 2024, the Debtors filed their *Objection to the Claims Filed by KCP Harkins Fee Owner, LLC* [Dkt. No. 281] (the "Objection to Claims"). A hearing on the Objection to Claims is scheduled for February 4, 2025. KCP will file its opposition to the Objection to Claims on January 28, 2025.

10.     Despite the Parties good faith efforts to resolve this matter, to date, the Parties have not been able to reach an agreement but continue to engage in settlement discussions.  As such, KCP has not received any payment in connection with the KCP Rejection Damages Claims.

11.     On January 10, 2025, Wells Fargo Bank, National Association, not in its Individual Capacity, but Solely in its Capacity as Trustee for the Benefit of the Registered Holders of CCUBS Commercial Mortgage Trust 2017-C1, Commercial Mortgage Pass-Through Certificates, Series 2017-C1 (the "Lender"), acting by and through Midland Loan Services, a Division of PNC Bank, National Association, as Special Servicer filed a complaint (the "Lender's Complaint") against KCP, seeking the appointment of a receiver to take possession of KCP's assets including the

---

[5] The additional Debtors in these cases were: edX LLC (8554); 2U GetSmarter, LLC (9643); 2U Harkins Road LLC (N/A); 2U NYC, LLC (N/A); 2U KEIH Holdco, LLC (3837); CritiqueIt, Inc. (5532); edX Boot Camps LLC (8904); and 2U GetSmarter (US), LLC (9802).

Premises. The Lender further reserved its right to bring a foreclosure action. A copy of the Lender's Complaint without exhibits is attached hereto as **Exhibit A**.[6]

12.     Based on the summons issued in connection with the Lender's Complaint, an answer or response to the Lender Complaint is due from KCP by February 4, 2025.

13.     Accordingly, time is of the essence for KCP to resolve this contested matter and receive payment on the KCP Rejection Damaged Claims for damages incurred as a result of the Debtors' rejection of the KCP Lease, before KCP is permanently damaged by losing control of the Premises.

## SUPPLEMENT

14.     By the Motion and this Supplement, KCP is requesting that the Court order payment of **$3,221,302.26**, which reflects the damages accrued and owed to KCP by the Debtors from September 1, 2024 – February 28, 2025, pending resolution of the balance of the KCP Rejection Damages Claims.

15.     In the Objection to the Claims, the Debtors concede that KCP is entitled to at least $1,482,995.20 for damages incurred by KCP from September 1, 2024 through December 31, 2024. *See* Dkt. No. 281 at ¶46 and Ex. F. [7]

16.     There is no dispute that KCP is owed rents for the months of August 2024 through January 2025 and, as of the time of the hearing on this Motion, will also be owed rent for February 2025. The monthly amount for rent and additional rent in 2025 is $869,153.53 which brings the

---

[6] Due to the voluminous nature of the exhibits to the Lender's Complaint, KCP has not attached copies to this Supplement.

[7] The Debtors' calculation includes total damages for unpaid rent from Sept. 1 – Dec. 31, 2024, plus prepetition utilities and legal fees, in the amount of $3,482,995.20, minus the application of a $2 million letter of credit. See Dkt. No. 281, Exhibit F.

4

total to $3,221,302.26 for the five months of unpaid rent and other expenses, minus the application of the letter of credit. This amount is under the cap set forth under section 502(b)(6) of the Bankruptcy Code and should be paid in partial satisfaction of the Tenant Claim, pending resolution of the remaining balance of the Tenant Claim and Guarantor Claim, whether by settlement or order of the Court.

17.    Courts have the authority to compel immediate payment of an undisputed portion of a claim. *See In re Trinity River Res., LP*, 646 B.R. 438, 441 (Bankr. W.D. Tex. 2018) ("the motion to compel will be granted as to all undisputed amounts currently held by Trinity in reserve to cure the defaults under the joint operating agreements."); *see also In re Pac-West Telecomm, Inc.*, 377 B.R. 119, 126 (Bankr. D. Del. 2007) ("the Court grants the Landlord's request to compel payment of late charges totaling $ 10,081.07 in relation to the May 1 Electricity Bill, the June 1 Electricity Bill, the Unpaid May Rent, and the Reconciliation Amount.").

18.    Furthermore, there is no objection to the accrued portion of the Tenant Claim except for the Debtors' unfounded allegation that KCP *may* have breached a provision of a lease amendment negotiated pre-petition between KCP and the Debtors, which *may* give rise to "excuse the Reorganized Debtors' performance."[8] Objection to Claims at ¶ 50.  However, the lease amendment is *void ab initio* by its own terms due to the Debtors' rejection of the KCP Lease. Further, any argument relating to a so-called breach was waived by the Debtors' postpetition conduct, including filing and prosecuting its motion to reject the KCP Lease, sending multiple surrender letters to KCP, and failing to assert such an argument or attempt to enforce the lease

---

[8] KCP assumes the Debtors are suggesting this would excuse Debtors' performance under the terms of the lease amendment, but the Debtors have not performed under the lease amendment as it is not in effect.

5

amendment prior to entry of the Court's order approving the Debtors' rejection of the KCP Lease, effective as of August 31, 2024. *See* Order Approving Rejection of Leases at Dkt. 168.  KCP will further address this issue in its response to the Objection to Claims.

19.     Now that the Lender has moved to appoint a receiver to control the Premises, this Motion and the Supplement must be heard without delay, or KCP risks losing control of the Premises.  Further, KCP respectfully requests the Court to order an immediate payment of $3,221,302.26 to KCP pending resolution of the balance of the KCP Rejection Damages Claims, in order to allow KCP to get current with the Lender and avoid the appointment of a receiver.

**CONCLUSION**

WHEREFORE, KCP Harkins respectfully requests that this Court order immediate partial payment of the Tenant Claim in the amount of **$3,221,302.26**, and granting such other and further relief as may be just and proper under the circumstances.

Dated: January 21, 2025          **FOLEY & LARDNER LLP**
     New York, New York

                           */s/Alissa Nann*
                           Alissa M. Nann
                           90 Park Avenue
                           New York, New York 10016
                           Tel: (212) 682-7474
                           anann@foley.com

                           *Counsel to KCP Harkins Fee Owner, LLC*

4931-1195-2398.4

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

WELLS FARGO BANK, NATIONAL
ASSOCIATION, NOT IN ITS INDIVIDUAL
CAPACITY, BUT SOLELY IN ITS CAPACITY AS
TRUSTEE FOR THE BENEFIT OF THE
REGISTERED HOLDERS OF CCUBS
COMMERCIAL MORTGAGE TRUST 2017-C1,
COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2017-C1, acting by and
through Midland Loan Servicer, a Division of PNC
Bank, National Association, as Special Servicer under
the Pooling and Servicing Agreement, dated as of
November 1, 2017,

CIVIL ACTION FILE NO.
1:25-cv-264

Plaintiff,

v.

KCP HARKINS FEE OWNER, LLC,

Defendant.

## COMPLAINT

Wells Fargo Bank, National Association, not in its Individual Capacity
("*Trustee*"), but Solely in its Capacity as Trustee for the Benefit of the Registered Holders of
CCUBS Commercial Mortgage Trust 2017-C1, Commercial Mortgage Pass-Through
Certificates, Series 2017-C1 ("*Plaintiff*"), acting by and through Midland Loan Services, a
Division of PNC Bank, National Association, as Special Servicer ("*Special Servicer*") under the
Pooling and Servicing Agreement, dated as of November 1, 2017 (the "*PSA*"), states its
complaint as follows:

### PARTIES, JURISDICTION, AND VENUE

1.       Trustee is a national banking association with its designated main office
located in Sioux Falls, South Dakota.  As a national bank, Trustee is a citizen of South Dakota.
The Trustee acts as the trustee for the beneficiaries of the commercial mortgage-backed security

trust (the "***Trust***") known as the Registered Holders of CCUBS Commercial Mortgage Trust 2017-C1, Commercial Mortgage Pass-Through Certificates, Series 2017-C1.

2.     The Trustee is the duly appointed and presently serving "Trustee" under the PSA.

3.     The Trustee, not individually, but solely in its capacity as such Trustee under the PSA, acting by and through the Special Servicer, brings this action as Plaintiff.

4.     Defendant KCP Harkins Fee Owner, LLC ("***Defendant***") is a limited liability company organized under Delaware law. Defendant's sole member is KCP Harkins Holdco, LLC, which is a Delaware limited liability company. The members of KCP Harkins Holdco, LLC are KCP Harkins, LLC and Azul Acquisitions, LLC, which are both Delaware limited liability companies. KCP Harkins, LLC's sole member is KCP Harkins Holdings 1, LLC, which is a Delaware limited liability company. Based on an organizational chart provided by Defendant to Trustee, as of May 14, 2021, the sole member of KCP Harkins Holdings 1, LLC is KCP Harkins International 1, Ltd., a private limited company, i.e., a corporation, registered under the laws of the British Virgin Islands, which is a territory of the United Kingdom. *See JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 100 (2002) (holding that a corporation organized under the laws of the British Virgin Islands is a citizen of the United Kingdom for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)); *EMR (USA Holdings), Inc. v. Goldberg*, No. 18-cv-07849 (ER), 2019 WL 5537878, at *14 (S.D.N.Y. June 15, 2022) ("A UK private limited company is treated as a corporation for the purposes of diversity subject matter jurisdiction . . . and is deemed to be a citizen of the State or foreign state where it has its principal place of business."). Azul Acquisitions, LLC's members are Sherry Ezon, The EZ 18 Trust, Lorraine Betesh, and LBS Allied Trust. Based upon publicly available information, Sherry Ezon resides in and is a citizen of New York, and Lorraine Betesh resides in and is a citizen of New York. The trustee of The EZ 18 Trust is Jack Ezon, who, based upon

publicly available information, resides in and is a citizen of New York. Jack Ezon also is the trustee of LBS Allied Trust. Defendant, therefore, for jurisdictional purposes, is a citizen of the United Kingdom and New York.

5.      This dispute arises between citizens of different states and also arises between a citizen of the United States and a citizen of a foreign country, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Therefore, this Court has diversity-of-citizenship jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332(a)(1)&(3).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)&(d), based on the forum selection clause in the underlying loan agreement. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC*, 509 F. Supp. 3d 38, 50 (S.D.N.Y. 2020) (finding that parties were subject to a contractual forum selection clause and were "deemed to reside" in the Southern District of New York for the purpose of venue); *see* Section 17.2 of the Loan Agreement (as defined below) (consenting to venue in New York).

## FACTUAL BACKGROUND

### A.    <u>The Loan</u>

7.      By Loan Agreement dated as of October 17, 2017 (the "***Loan Agreement***"), Citi Real Estate Funding, Inc. (the "Original Lender"), Plaintiff's predecessor-in-interest, agreed to lend certain funds to Defendant (the "***Loan***"). A copy of the Loan Agreement is attached hereto as Exhibit 1.

8.      In connection with the Loan, Defendant executed and delivered several documents evidencing the Loan, including (1) Promissory Note A-1 dated October 17, 2017 payable to the Original Lender in the original principal amount of $34,000,000.00 (the "***A-1 Note***"); and (2) Promissory Note A-2 dated October 17, 2017 payable to the Original Lender in the original principal amount of $20,000,000.00 (the "***A-2 Note***"). The A-1 Note and A-2 Note

are referred to collectively as the "**Note**."  A copy of the Note is attached hereto as Exhibit 2.
The Note, the Loan Agreement, and other documents executed by Defendant evidencing the
Loan, including the Security Instrument (as defined below), are referred to collectively as the
"**Loan Documents.**"

9.      Pursuant to the terms of the Note and Loan Documents, Defendant, *inter
alia*, agreed to pay to the order of the Original Lender interest, i.e., "Monthly Debt Service
Payment Amount" in the amount of $277,569.49, which equals interest at a rate of 4.45% per
annum, on the specified "Monthly Payment Date."  Ex. 1 at 13 & § 2.6.  Such payments
commenced after the "Closing Date" of the transaction and would continue through the
"Maturity Date" of the Loan on November 6, 2027 (the "**Maturity Date**").  *See* Ex. 2 (Note) &
Ex. 1 (Loan Agreement) at 13 (defining "Maturity Date"), 24 (defining "Stated Maturity Date"),
13 (defining "Monthly Debt Service Payment Amount") and 14 (defining "Monthly Payment
Date").

**B.      The Collateral Securing the Loan**

10.     As collateral and security for the payment of the Note, Defendant
executed, acknowledged, and delivered to Susan Milne, as trustee for the benefit of the Original
Lender a Purchase Money Deed of Trust and Security Instrument (the "**Security Instrument**")
dated October 17, 2017 and recorded October 23, 2017 in Deed Book No. 40148, Page 70 in the
Land Records of the Circuit Court of Prince George's County, Maryland.  Pursuant to the
Security Instrument, Defendant, *inter alia*, granted the Original Lender a security interest in
certain real property commonly known as 7900 Harkins Road, Lanham, Maryland (the
"**Property**").  A true and correct copy of the Security Instrument, which includes a legal
description of the Property, is attached hereto as Exhibit 3.

11.     The Property is a 12-story high rise office building that contains
approximately 310,000 square feet of space.  The Property served as the headquarters of 2U, Inc.

("**2U**"), which is a global leader in online education, from approximately 2016 through August 31, 2024, when, as explained below, 2U filed for bankruptcy, rejected its lease, and vacated the Property. The Property was renovated for 2U to serve primarily as a single-tenant building, with 2U serving as the anchor tenant and leasing approximately 100% of the Property. There were a few additional smaller tenant spaces in the building. After 2U vacated the Property, Defendant began reconfiguring the Property into a multi-tenant space, but Defendant has been unable to relet the Property.

12.     Defendant also executed an Assignment of Leases and Rents ("**ALR**"), dated as of October 17, 2017. A true and correct copy of the ALR is attached hereto as Exhibit 4.

13.     Pursuant to Section 1.1(a)&(c) of the ALR, Defendant "absolutely and unconditionally assign[ed] and grant[ed] [the Original Lender] . . . property, rights, interests, and estates," including but not limited to property rights in Defendant's leases (the "**Leases**") at the Property and the rents (the "**Rents**") from the Property.

14.     Pursuant to the Security Instrument, Defendant, *inter alia*, also granted the Original Lender a security interest in all Leases and Rents (as those terms are defined in the foregoing documents) generated from the Property. Security Instrument, § 1.2.

15.     Section 1.1(f) of the Security Instrument broadly defines "Property" to include the leases, rents, and "all right, title and interest of Borrower . . . [in] . . . rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, . . . , and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower . . . from any and all sources arising from or attributable to the Property."

16.     Section 1.2 of the Security Instrument and Section 2.1 of the ALR also grant Defendant a revocable "license" to "(i) collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on

the Debt, for use in the payment of such sums, and (ii) enforce the terms of the Leases." *Id.*
§ 1.2.  Defendant's license was "automatically . . . revoked" upon the occurrence of an Event of
Default. *Id.* § 8.1(h).

**C.**     **Assignment of Loan**

17.     The Original Lender transferred and assigned its interest in the A-1 Note
and Loan Documents to Plaintiff, as evidenced by the Allonge, dated November 2017 and a
General Assignment, dated as of November 30, 2017 (collectively, the "***A-1 Allonge***").  A true
and correct copy of the A-1 Allonge is attached hereto as Exhibit 5.

18.     The Original Lender transferred and assigned its interest in the A-2 Note
to Wilmington Trust, National Association as trustee for the benefit of the registered holder of
UBS Commercial Mortgage Trust 2017-C6 Commercial Mortgage Pass Through Certificates
Series 2017-C6 (the "***Note A-2 Holder***"), as evidenced by the Allonge dated November 7, 2017
(the "***A-2 Allonge***").  A true and correct copy of the A-2 Allonge is attached hereto as Exhibit 6.

19.     Plaintiff, through the Trustee, is the current legal owner and holder of the
A-1 Note and Loan Documents (other than the A-2 Note) and successor in interest to the
Original Lender of the Loan, and the Note A-2 Holder is the owner and holder of the A-2 Note.[1]

20.     To further document Plaintiff's interest in the Loan, the Security
Instrument, the ALR, and the other Loan Documents, the Original Lender executed an
Assignment of Assignment of Leases and Rents, executed as of November 30, 2017, and
recorded on January 10, 2018, in Deed Book No. 40468, Page 5 in the Land Records of the
Circuit Court of Prince George's County, Maryland to Plaintiff.  A true and correct copy of the
foregoing document is attached hereto as Exhibit 7.

---

[1]     Pursuant to the terms of a co-lending agreement, the Trustee also has authority to enforce the terms of the
Loan Documents on behalf of the Note A-2 Holder.

21.     The Original Lender also executed an Assignment of Purchase Money Deed of Trust and Security Agreement, effective as of November 30, 2017 ("**Assignment of Security Instrument**"), whereby the Original Lender assigned and transferred the Security Instrument to the Trustee.  A true and correct copy of the Assignment of Security Instrument is attached hereto as Exhibit 8.

**D.      2U's Lease, Bankruptcy, Rejection of the Lease, and Decision to Vacate the Property**

22.     On or about December 23, 2015, an affiliate of 2U, 2U Harkins Road LLC (the "**2U Tenant**"), entered into a lease (the "**2U Lease**") with Defendant, whereby 2U Tenant initially rented approximately 168,000 square feet at the Property and subsequently entered into lease amendments, expanding the size of the 2U Tenant's premises to cover almost the entire Property.  The 2U Lease and the expansion leases made 2U Tenant the anchor tenant of the Property from December 1, 2016 until it rejected the 2U Lease and vacated the Property in 2024. 2U guaranteed 2U Tenant's obligations under the 2U Lease.

23.     On July 24, 2024, 2U, 2U Tenant, and certain of their affiliates (collectively the "**2U Debtors**") filed for bankruptcy under Chapter 11 of Title 11 of the United States Code (also known as the Bankruptcy Code), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

24.     On September 5, 2024, the Bankruptcy Court entered an order rejecting the 2U Lease, effective August 31, 2024.  On September 9, 2024, the Bankruptcy Court entered its order confirming the 2U Debtors' plan of reorganization (the "**Bankruptcy Plan**").  Under the terms of the Bankruptcy Plan, general unsecured claims (including claims for lease rejection damages) are to be paid in full.  The Bankruptcy Plan became effective on September 13, 2024.

25.     As a result of the rejection of the 2U Lease, 2U Tenant is no longer paying any rent at the Property.  After drawing on a letter of credit posted in favor of Defendant,

Defendant's only recourse as landlord was to file proofs of claim in the 2U bankruptcy cases against 2U Tenant for damages arising out of the rejection of the 2U Lease and against 2U under 2U's guaranty of the 2U Lease.

26.     On October 10, 2024, Defendant filed a proof of claim (the "***Tenant Claim***") against 2U Tenant in 2U Tenant's bankruptcy case, asserting a general unsecured claim in the amount of $8,436,223.47 for damages arising out of 2U Tenant's rejection of the 2U Lease.

27.     On October 10, 2024, Defendant filed a proof of claim (the "***Guarantor Claim***", and together with the Tenant Claim, the "***2U Bankruptcy Claims***") against 2U, in 2U's bankruptcy case, asserting a general unsecured claim in the amount of $10,436,223.47 under 2U's guaranty of the 2U Lease.

28.     As of the date of the filing of this Complaint, the 2U Debtors have not allowed or paid the 2U Bankruptcy Claims, and the 2U Debtors' bankruptcy cases remain pending.

29.     On December 9, 2024, Defendant filed a Motion to Compel Payment of Claims (the "***Motion to Compel Payment***"), seeking an order to compel 2U Debtors' payment of $18,872,446.94 in allowed rejection damages claims.  *See* Mot. to Compel Payment ¶ 18.  In its Motion, Defendant stated despite the confirmation of the debtors' plan of reorganization and the passage of nearly three months since its effective date, 2U Debtors have failed to pay or object to the claims, effectively enjoying an interest-free loan at Defendant's expense and creating unnecessary delay.  *See* Mot. to Compel Payment ¶ 21.  Defendant requested that the Bankruptcy Court either compel immediate payment or set a firm deadline for the debtors to pay or file objections.  *See* Mot. to Compel Payment ¶ 25.  A hearing on this Motion is scheduled for January 28, 2025.

30.     On December 16, 2024, the 2U Debtors filed their Reorganized Debtors'
Objection to the Claims Filed by KCP Harkins Fee Owner, LLC (the "***2U Claims Objection***").
In the 2U Claims Objection, among other things, the 2U Debtors asked the Bankruptcy Court (i)
to disallow the Guarantor Claim in its entirety, (ii) to disallow the Tenant Claim if the Defendant
is found to have breached the Lease and to pay any allowed portion of the Tenant Claim over an
extended period of time; and (iii) to deny the Motion to Compel Payment.  Any response to the
2U Claims Objection must be filed by Defendant no later than January 21, 2025.  A hearing on
the 2U Claims Objection is scheduled for January 28, 2025.

31.     Defendant has indicated that it does not have the financial resources to
respond to 2U's Tenant's objections and has asked the Trustee to advance funds for Defendant's
legal expenses in responding to any objections to the 2U Bankruptcy Claims.

32.     The Trustee is willing to advance funds if a receiver is appointed.

33.     If the 2U Bankruptcy Claims are allowed in full, Defendant will receive
Rents from 2U Tenant and 2U totaling not less than $18,872,446.92.  However, if the 2U Claims
are disallowed or only allowed in part, Defendant may receive a significantly smaller amount.
These funds are critical to meeting the ongoing financial obligations of the Property, such as
taxes, insurance, maintenance, and the expenses necessary to market and reposition the Property
from a single-tenant office space into a multi-tenant office building.

34.     Because the Property has lost its anchor tenant and is essentially a vacant
building, the value of the Property has diminished and continues to diminish.   Because
commercial office space is often valued under the income approach, the loss of an anchor tenant
in a property that was designed and occupied as a single-tenant building, creates an immediate
and significant impairment to the value of the Property as an ongoing enterprise and diminishes
the collateral securing the Loan.   Further, a landlord must incur significant expenses to

reconfigure such a property into a multi-tenant office space. The disallowance (or even partial disallowance) of the 2U Bankruptcy Claims would further impair the value of the Property.

**E.**     **The Default**

35.     Defendant defaulted on its obligations under the Loan Documents by, *inter alia*, failing to pay the Monthly Debt Service Payment due and owing on the Monthly Payment Date in September 2024 (the "***Default***").

36.     As a result, Plaintiff notified Defendant of its Default under the Loan Documents by letter dated September 16, 2024. A true and correct copy of the foregoing correspondence is attached hereto as Exhibit 9.

37.     As of the date of this complaint, Defendant has failed to satisfy its obligations under the Loan Documents despite demand. As a result, an unpaid principal balance is now due and owing to Plaintiff, plus accrued and unpaid interest at the rates set forth in the Note, together with such other amounts due and owing under the Loan Documents, including, without limitation, Plaintiff's reasonable attorneys' fees and costs.

**F.**     **Events Occurring After Default**

38.     The ad valorem taxes assessed on the Property by the Prince George's County Office of Finance for the 2024-25 fiscal year were $1,036,342.77. In spite of Defendant's Default, the Trustee made a protective advance and paid the taxes on September 24, 2024.

39.     On August 10, 2024, Defendant notified the Trustee that Defendant had issued a letter of intent to a prospective tenant and was waiting to receive the prospective tenant's signature to lease approximately two floors of the Property but was unable to fund the tenant improvement allowance. Based on this notice, the Lender approved a one month rent abatement to lease both floors. In addition, the Trustee approved payment of $5,250 in brokerage commissions in connection with Defendant's potential lease of the floors. In spite of

Defendant's Default, the Trustee authorized these payments by setting off a portion of the reserve fund for the Property.

40.     In September 2024, Defendant notified the Trustee that Defendant had received the annual insurance premium for the Property and that the premium was $43,949.48. In spite of Defendant's Default, the Trustee allowed the Borrower to offset the Letter of Credit Funds and paid the full premium.  In addition, the Lender allowed the Borrower to offset the Letter of Credit Funds to pay $270,847 in legal expenses required to file the Borrower's Proofs of Claim.

41.     As noted earlier, Defendant has been unsuccessful in its effort to relet the Property since 2U abandoned the building.  Defendant also has not paid operating expenses for the Property since that time or debt service for the Loan.

42.     Although Plaintiff has voluntarily refrained from exercising its remedies while the Defendant attempted to relet the Property, Defendant's prolonged inability to pay either debt service or operating expenses has exhausted Plaintiff's patience and has raised concerns about the Defendant's apparent insolvency, i.e., Defendant's inability to pay debts as they become due and Defendant's inability to pay fees necessary to relet the Property, including funding tenant improvements and brokerage commissions.

43.     In December 2024, Defendant asked Plaintiff to extend the deadline for paying operating expenses and represented that Defendant was negotiating with a potential tenant and would need funds to pay for tenant improvements if the parties could enter into a nonbinding letter of intent and subsequent lease.

44.     Plaintiff did not grant any extensions and notified Defendant that based on Plaintiff's concerns about Defendant's solvency and Defendant's apparent inability to fund operating expenses and necessary tenant improvements without additional advances from

Plaintiff or resolution of the 2U Bankruptcy Claims, Plaintiff would exercise its remedies under the Loan Documents.

**G.      Plaintiff's Remedies Under the Loan Documents**

45.      Pursuant to the express terms of Section 8.1(g) of the Security Instrument, after an Event of Default occurs, Plaintiff may "seek and obtain the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor under the Loan or any other Person liable for the payment of the Debt."

46.      The Security Instrument further provides that upon an Event of Default,

> the License granted to [each] Borrower . . . [to collect Leases and Rents] shall automatically be revoked and Lender may enter into or upon the Property . . . and take possession of all books, records and accounts relating thereto . . . and may . . . use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat. . . .

*See* Security Instrument, § 8.1(h).

47.      The Property, the Leases, the Rents, the books, records and other property relating to the ownership and operation of the Property (collectively, the "***Defendant's Assets***") are the sole assets of Defendant.

48.      Except for certain limited qualifications as set forth in the Loan Documents, Defendant has no personal liability for repayment of the Loan, and Plaintiff's sole recourse for repayment of the Loan is the collateral securing the Loan, including the Property and the Rents.

49.       Plaintiff is entitled to the immediate appointment of a receiver to take possession of and hold, subject to the discretion of this Court, Defendant's Assets, which primarily include the Property, the Leases, and the Rents.

50.      All conditions precedent have been performed or waived.

## COUNT I
### (Breach of Contract)

51.     Plaintiff realleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 50 of this Complaint.

52.     Plaintiff and Defendant are parties to the Loan Documents regarding the financing provided to Defendant.

53.     The Note and other Loan Documents are governed by New York law and constitute a contract under New York law.

54.     Defendant failed to pay its respected indebtedness to Plaintiff in accordance with the terms of each of the Loan Documents.

55.     Defendant's failures to pay such indebtedness constitute a breach of the Note and other Loan Documents.

56.     As the proximate result of Defendant's breaches, Events of Default have occurred under the Loan Documents, and Plaintiff is entitled to exercise its remedies under the Loan Documents, which include applying for the appointment of a receiver for the Defendant's Assets, including the Property, the Leases, and the Rents.

## COUNT II
### (Appointment of a Receiver)

57.     Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 through 50 of this Complaint.

58.     Defendant's Assets are the sole assets of Defendant.

59.     Except for certain limited qualifications as set forth in the Loan Documents, Defendant has no personal liability for repayment of the Loan, and Plaintiff's sole recourse for repayment of the Loan is the collateral securing the Loan, including the Property.

60.     Defendant has failed to pay to Plaintiff all amounts due under the Loan Documents in accordance with the terms of such documents.

61.     The Loan Documents expressly allow Plaintiff to seek the appointment of a receiver upon the occurrence of an Event of Default.

62.     Defendant and its agents are still in possession of Defendant's Assets, including the Property.

63.     Since the Event of Default, the Trustee has advanced or approved more than $1.68 million of expenses to protect the Property.  These protective advances include paying ad valorem taxes, insurance, monthly operating expenses, legal and brokerage fees.

64.     On September 5, 2024, the Bankruptcy Court entered an order rejecting 2U Tenant's lease with Defendant, effective August 31, 2024.  On December 16, 2024, the 2U Debtors filed the 2U Claims Objection, thereby objecting to the 2U Bankruptcy Claims.   The Defendant has until January 21, 2025 to respond to the 2U Claims Objection, and a hearing has been set on the 2U Claims Objection for January 28, 2025.

65.     These bankruptcy deadlines require immediate action so that the Trustee, as a secured creditor, can protect its interest in the Property, including the rents from the Property.

66.     Defendant has indicated that it does not have the financial resources to respond to the 2U Debtors' objection and previously asked the Trustee to advance funds for Defendant's legal expenses in responding to any objections to the 2U Bankruptcy Claims.

67.     The Trustee is willing to advance funds if a receiver is appointed.

68.     If the 2U Bankruptcy Claims are allowed in full, Defendant will receive Rents from 2U Tenant and 2U totaling not less than $18,872,446.92.  However, if the 2U Claims are disallowed or only allowed in part, the Defendant may receive a significantly smaller amount.  These funds are critical to meeting the ongoing financial obligations of the Property, such as taxes, insurance, maintenance, and the expenses necessary to market and reposition the Property from a single-tenant office space into a multi-tenant office building.

69.     Because commercial buildings, such as the Property, are valued based on a property's income stream from rental income, immediate action is needed to protect Trustee's interest in the collateral, especially because the Loan is primarily a non-recourse obligation, and the Property provides the only source of recovery for the Trustee.

70.     Based on the foregoing, Plaintiff, as an interested and secured party, is threatened with material losses and injuries, including the risk of the Defendant's Assets suffering continuing dissipation and diminution in value, if Defendant remains in control of Defendant's Assets, including the Property.

71.     Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, Defendant's Assets, including the Property, the Leases, and the Rents

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A.     That the Court grant Plaintiff the relief it seeks on all counts and appoint a receiver to take possession of, control and hold the Defendant's Assets that constitute collateral for the Loan, including the Property, the Leases, and the Rents;

B.     That Defendant and its agents charged with operating and/or managing the Property promptly render an accounting for all Rents and other income from the Property and all other revenue from Defendant's Assets received by Defendant from and after September 2024, and provide all such information and reports concerning the ownership, use, operation, management, repair, maintenance and leasing of the Property and the other Defendant's Assets as may be required by this Court to provide the receiver appointed by this Court with the information necessary to perform its obligations as receiver of the Property and the other Defendant's Assets;

-15-

C.      That the receiver appointed by this Court shall segregate, preserve, protect, collect and account for, and manage, operate, lease, maintain and preserve the Defendant's Assets, including the Property, the Leases, and the Rents;

D.      That Defendant promptly pay over to the receiver and cause Defendant's affiliates and the management companies currently managing the Property to promptly pay over to the receiver (1) all deposits by tenants of the Property and all Rents, revenues and other income from the Property and all other funds which are a part of Defendant's Assets that are currently in their possession or control; and (2) all such deposits, Rents, revenue and other income from the Property and other funds that are a part of Defendant's Assets, which are received by any of them from and after the appointment of the receiver;

E.      That the receiver pay to Plaintiff on a monthly basis any income and revenue from the Property in excess of that amount reasonably required to manage, operate, lease, maintain and preserve the Property and the other Defendant's Assets;

F.      That Plaintiff be permitted, at its sole election, and be authorized to make such advances to the receiver for the benefit and account of Defendant under the Loan Documents as may be necessary from time to time, in the exercise of Plaintiff's sole discretion, and as provided under the Loan Documents, to pay costs and expenses reasonably required to manage, operate, lease, maintain and preserve the Property to the extent that Rents, income and other revenue from Defendant's Assets, including the Property, are insufficient to pay such costs and expenses, all without Plaintiff becoming a mortgagee in possession or incurring any other liability to Defendant;

G.      That any such advances made by Plaintiff pursuant to the foregoing paragraph F of this prayer be additional indebtedness that is owed to Plaintiff under the Note and is secured by the Security Instrument and the other Loan Documents;

-16-

H.      That Plaintiff be permitted to commence and consummate, without further order of this Court, judicial and non-judicial foreclosure proceedings against all or any part of the Property under and pursuant to the power of sale granted by Defendant to Plaintiff in the Security Instrument and that the receiver be discharged immediately if and when the sale of the Property is consummated;

I.      That the receiver be authorized, upon request by Plaintiff, to list or otherwise advertise for sale and to solicit offers to purchase the Property and to sell the Property, on such terms as are acceptable and approved in writing prior to such sale by Plaintiff, by way of public or private sale or other disposition in accordance with the applicable provisions of 28 U.S.C. § 2001 and 2004, free and clear of all security interests, liens, claims and other interests with all valid security interests and liens to attach to the proceeds of such sale(s); and

J.      That this Court award such other and further relief as is just and proper.

Dated:  New York, New York
        January 10, 2025

KILPATRICK TOWNSEND & STOCKTON LLP
Counsel for Plaintiff

By: _/s/ Frederick L. Whitmer
    Frederick L. Whitmer
    3 Times Square
    New York, NY 10036
    (212) 775-8700
    fwhitmer@ktslaw.com