**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036
Attn: Tracy L. Klestadt
Tel: (212) 972-3000
Fax: (212) 972-2245
tklestadt@klestadt.com

**CHARLES E. BOULBOL, P.C.**
62 85th Street
Brooklyn, NY 11209
Tel: (212) 825-9457
rtrack@msn.com

*Attorneys for RFR/K 55 Prospect Owner LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| In Re: | Chapter 11 |
| 2U INC., et al., | Case No. 24-11279 (MEW) |
| Debtors. | (Jointly Administered) |

-------------------------------------------------------------X

## RESPONSE OF RFR/K 55 PROSPECT OWNERS LLC TO DEBTORS' OBJECTIONS TO CLAIMS

RFR/K 55 PROSPECT LLC ("Claimant" or "Landlord"), hereby files its Response to the Objections made by Debtors 2U, LLC ("Guarantor") and 2U NY, LLC ("Tenant") (collectively, "Debtors") to Proofs of Claim numbered 10046 (the "Tenant Claim") and 10047 (the "Guarantor Claim").

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

FACTS ........................................................................................................................................1

    I.    LANDLORD'S CLAIM AGAINST TENANT IS PROPERLY CALCULATED IN ACCORDANCE WITH THE LEASE, NEW YORK LAW AND BANKRUPTCY CODE SECTIONS 502(A)(B)......................................................6

    II.    LANDLORD'S CLAIM AGAINST GUARANTOR IS PROPERLY CALCULATED IN ACCORDANCE WITH THE GUARANTY, NEW YORK LAW AND BANKRUPTCY CODE SECTIONS 502(b)(6) ..................................9

# TABLE OF AUTHORITIES

*Cases:*

1 BLDG Co., Inc. v. Cheung, 137 A.D.3d 478 (lst Dep't 2016). ...................................................9

1140 LLC v. Meis Studio Inc., 225 A.D.3d 516 (lst Dep't 2024) ..................................................8

Bel-Ken Associates Ltd. v. Clark, 83 B.R. 357 (Bankr. D. Md. 1985) ............................10, 11, 12

Gallery at Fulton Street, LLC v. Wendnew LLC, 30 A.D.3d 221 (lst Dep't 2006) ......................8

Hall v. Goforth, 179 F.3d 390 (5th Cir. 1999)...............................................................................12

Holy Properties Limited, C.P. v. Kenneth Cole Productions Inc., 87 N.Y.2d 130 (1995)..............8

In re American Hardwoods, 885 F.2d 621 (9th Cir. 1989)............................................................10

In re Danrik, Ltd., 92 B.R. 964 (Bankr. N.D. Ga. 1988) ...................................................10, 11, 12

In re Diversity Building Corp., 86 F.2d 456 (7th Cir. 1936)..........................................................9

In re Dronbarger, 2011 Bankr. LEXIS 452, 2011 WL 350479 (Bankr. W.D. Tex 2011) .............12

In re Episode USA, 202 B.R. 691 (Bankr. S.D.N.Y. 1996) ..........................................................10

In re Highland Superstores, Inc., 154 F.3d 573 (6th Cir. 1998) .....................................................7

In re MDC Systems, Inc., 488 B.R. 74 (Bankr. E.D. Pa. 2013) .....................................................7

In re Modern Textile, Inc., 900 F.2d 1184 (8th Cir. 1990)............................................................10

Johnson v. Beck, 117 B.R. 461 (Bankr. D. Minn. 1990)...............................................................10

Madison Avenue I LLC v. Marecheau, 187 A.D.3d 683 (lst Dep't 2020) .....................................8

Raven Elevator Corp. v. Finkelstein, 223 A.D.2d 378 (lst Dep't 1996) .........................................9

Sunbeam Oster Company, Inc. v. Lincoln Liberty Avenue, Inc., 145 B.R. 823 (W.D. Pa. 1992)..9

Things Remembered, Inc. v. BGTV, Inc., 151 B.R. 827 (Bankr. N.D. Ohio 1993) .....................10

Union Carbide Corp. v. Newboles, 686 F.2d 593 (7th Cir. 1982)..................................................9

*Other Authorities:*

11 U.S.C. § 362(a) ................................................................................................................5

11 U.S.C. § 502(A)(B) ..........................................................................................................6

11 U.S.C. § 502(b)(6) .......................................................................................3, 9, 10, 11, 12

11 U.S.C. § 502(b)(7) ..........................................................................................................12

**PRELIMINARY STATEMENT**

Despite filing a Plan for Reorganization (the "Plan") which provides for a 100% payout to General Unsecured Creditors such as Landlord, and despite expressly stating in the preamble to the Plan that:

> Although proposed jointly for administrative purposes this Plan constitutes a separate Plan for each Debtor for the treatment and resolution of outstanding Claims against, and Interest in each Debtor pursuant to the Bankruptcy Code[,]

Debtor's objection to the Tenant Claim and the Guarantor Claim is predicated upon the fallacy that the Lease between Landlord and Tenant and the Guaranty between Landlord and Guarantor should be treated as one agreement and that Landlord is not entitled to any compensation whatsoever for Debtors' respective breaches of either the Lease or the Guaranty.

Debtor's objection to the Tenant Claim and the Guarantor Claim mischaracterizes the Debtors' obligations under both the Lease and the Guaranty, applicable New York State law and the Bankruptcy Code, and deprives Landlord of the compensation to which Landlord is entitled by reason of Debtor's breaches of the Lease and Guaranty as provided in the Plan.

As more fully stated herein, because "the Reorganized Debtors shall continue to exist as separate legal entities," Plan at page 30, Landlord's Proofs of Claim against both Tenant and Guarantor are properly made in accordance with the Plan and applicable law. Debtors' objections therefore should be denied.

**FACTS**

1. On July 25, 2024 (the "Petition Date"), the Debtors filed voluntary Petitions in this Court under Chapter 11 of the Bankruptcy Code.

2. Landlord and Tenant are parties to a Lease dated February 13, 2017 (the "Lease") for the entire 8th, 9th and 10th floors of the building known as and located at 55 Prospect Street, Brooklyn, New York 11201 (the "Premises").

3. The Lease does not expire by its own terms until May 31, 2030. The current monthly rent is $450,000.01. The rent due pursuant to the Lease for the balance of the term is approximately $32 million.

4. Tenant's obligations under the Lease were guaranteed by Guarantor pursuant to the terms of a Guaranty dated February 13, 2017 (the "Guaranty").

5. The Lease and Guaranty represent entirely separate and distinct legal obligations.

6. On the Petition Date, Tenant owed Landlord $385,107.39 in unpaid rent and additional rent.

7. On August 23, 2024, Debtors filed a Second Amended Joint Prepackaged Plan of Reorganization (the "Plan").

8. The Plan states:

> Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the treatment and resolution of outstanding Claims against, and Interest in each Debtor pursuant to the Bankruptcy Code. Each Debtor is a proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. This Plan does not contemplate substantive consolidation of any of the Debtors.

Plan, at 5.

9. The Plan further provides that "the Reorganized Debtors shall continue to exist as separate legal entities[.]" Plan, at 30.

10. By Order dated September 5, 2024, the Lease was deemed rejected as of the Petition Date.

2

11. On September 25, 2024, Landlord filed a Proof of Claim against Tenant (Claim No. 10046) for rejection damages in the amount of $5,868,747.39, comprised of pre-petition indebtedness totalling $385,107.39, plus Bankruptcy Code 502(b)(6) capped damages totalling $5,483,640.00.

12. On September 25, 2024, Landlord filed a Proof of Claim against Guarantor (Claim No. 10047) for rejection damages capped by Bankruptcy Code 502(b)(6) in the amount of $5,483,640.00.

13. To date, the Premises have not been relet. As of January 1, 2025, unpaid rent and additional rent due pursuant to the Lease totals $3,071,944.04 and the Deficiency, as that term is defined in the Lease, is increasing at the rate of $450,500.01 per month.

14. Tenant's Bankruptcy Petition and rejection of the Lease and Guaranty is a breach of the Lease and Guaranty. Pursuant to Article 15 of the Lease, Landlord's Remedies for Tenant's breach are:

> 15.2(a) (ii) **Landlord's Reletting.** Landlord at Landlord's option, may relet all or any part of the Premises from time to time, either in the name of the Landlord or otherwise, to such tenant or tenants, for any term ending before, on or after the Expiration Date, at such rental and upon such conditions (which may include concessions and free rent periods) as Landlord, in its sole discretion may determine. Landlord shall have no obligation to accept any tenant offered by Tenant and shall not be liable for failure to relet or, in the event of any such reletting, for failure to collect any rent due upon any such reletting; and no such failure shall relieve Tenant of, or otherwise affect, any liability under this Lease. Landlord, at Landlord's option, may make such alterations, decorations and other physical changes in and to the Premises as Landlord, in its sole discretion, considers advisable or necessary in connection with such reletting or proposed reletting without relieving Tenant of any liability under this Lease or otherwise affecting any such liability.

15. Landlord's entitlement to damages for Tenant's breach are governed by the provisions of Section 15.3, which provides:

3

 (a) **Amount of Damages**. If this Lease and the Term, or Tenant's right to possession of the Premises, terminate as provided in **Section 15.1**, then

  (i) Tenant shall pay to Landlord all items of Rent payable under this Lease by Tenant to Landlord;

  (ii) Landlord may retain all monies, if any, paid by Tenant to Landlord, whether as prepaid Rent, a security deposit or otherwise, which monies to the extent not otherwise applied to amounts due and owing to Landlord, shall be credited by Landlord against any damages payable by Tenant to Landlord;

  (iii) Tenant shall pay to Landlord, in monthly installments, on the days specified in this Lease for Payment of installments of Fixed Rent, any Deficiency (as hereinafter defined); it being understood that Landlord shall be entitled to recover the Deficiency from Tenant each month as the same shall arise, and no suit to collect the amount of the Deficiency for any month, shall prejudice Landor's right to collect the Deficiency for any subsequent month by a similar proceeding; and

16. The term "Deficiency" is defined in Exhibit B to the Lease as:

**Deficiency:** The difference between (a) the Fixed Rent and Additional Rent for the period which otherwise would have constituted the unexpired portion of the Term, and (b) the net amount, if any, of rents collected under any reletting effected pursuant to the provisions of the Lease for any part of such period (after first deducting from such rents all expenses reasonably incurred by Landlord in connection with the termination of this Lease, Landlord's re-entry upon the Premises and such reletting, including repossession costs, brokerage commissions, reasonable attorneys' fees and disbursements.

17. Landlord's right to seek the "maximum amount" due pursuant to the Lease from Tenant for its breach of the Lease is governed by Section 15.3(b), which provides:

Nothing contained in Article 15 shall be deemed to limit or preclude the recovery by Landlord from Tenant of the maximum amount allowed to be obtained as damages by any Requirements, or of any sums or damages to which Landlord may be entitled in addition to the damages set forth in this Section 15.3.

18. The rejection of the Lease by Tenant also triggered Guarantor's obligations under the Guaranty, which expressly provides at Sections 2, 3 and 5 as follows:

4

      2.      Guarantor hereby unconditionally and irrevocably guarantees to Landlord, its successors and/or assigns (i) the full and prompt payment of all Rent, including sums that would be due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a), (ii) the full and prompt performance of all other obligations owed by Tenant pursuant to the Lease, and (iii) all amounts, damages, costs and expenses arising from Tenant's default under the Lease, including, without limitation, the holding over by Tenant (or any person or entity claiming by, through or under Tenant) in the Premises (or any portion thereof), to the extent that such amounts, damages, costs and expenses are due and payable to Landlord pursuant to and subject to the terms and conditions of the Lease (the payment of rent and all other obligations referred to in clauses (i), (ii) and (iii) of this sentence are hereinafter referred to as the "Obligations". Guarantor agrees to pay and/or perform any and all Obligations as and when due or when required to be observed or performed, irrespective of any defense or any right of set-off, credit or claim that Guarantor may have against Landlord, Guarantor shall forthwith upon demand by Landlord pay or perform such Obligation.

      3.      This Guaranty is absolute, unconditional and irrevocable. Notwithstanding … (vii) any bankruptcy, insolvency, reorganization, arrangement, assignment for the benefit of creditors, receivership or trusteeship affecting Tenant or its successors or assigns whether or not notice thereof is given to Guarantor, Guarantor shall continue to be liable under this Guaranty and Guarantor hereby expressly consents to and approves all of the foregoing.

      5.      Guarantor agrees that its obligations hereunder shall not be affected by any circumstances which might otherwise constitute a legal or equitable discharge of a guarantor or surety.

19.      The Guaranty further provides at Sections 19(a) and (b) as follows:

Guarantor acknowledges and agrees that any interest on any portion of the Obligations which accrues after the commencement of any bankruptcy, reorganization or insolvency proceeding of or against Tenant or, if interest on any portion of the Obligations ceases to accrue by operation of law by reason of the commencement of said proceeding, such interest as would have accrued on such portion of the Obligations if said proceedings had not been commenced) shall be included in the Obligations because it is the intention of Guarantor and Landlord that the Obligations which are guaranteed by Guarantor pursuant to this Guaranty shall be determined without regard to any rule of law or order which may relieve Tenant of any portion of such Obligations. Guarantor will permit any trustee in bankruptcy, receiver, debtor in possession, assignee for the benefit of creditors or similar person to pay Landlord, or allow the claim of Landlord

5

> in respect of, any such interest accruing after the date on which such proceeding is commenced.
>
> Guarantor's obligations under this Guaranty shall be unaffected by any discharge or release of Tenant, its successors or assigns, or any of their debts, in connection with any bankruptcy, reorganization, or other insolvency proceeding or assignment for the benefit of creditors, any rejection or disaffirmation of the Lease in any bankruptcy, reorganization or other insolvency proceeding or assignment for the benefit of creditors, or any reduction, modification, impairment or limitation of the liability of Tenant, its successors or assigns, or of Landlord's remedies under the Lease, in connection with any bankruptcy, reorganization or other insolvency proceeding or any assignment for the benefit of creditors.

20. The Guaranty expressly provides at paragraph 24 that "Guarantor's obligations are … independent of Tenant's obligations."

### I. LANDLORD'S CLAIM AGAINST TENANT IS PROPERLY CALCULATED IN ACCORDANCE WITH THE LEASE, NEW YORK LAW AND BANKRUPTCY CODE SECTION 502(A)(B)

Tenant's objection to Landlord's claim is predicated upon the dubious proposition that it is theoretically possible for Landlord to re-let the Premises for "equivalent or higher rent," despite the fact that the Premises have not been re-let and Debtors know that the current asking rents for the Premises are well below the amounts due pursuant to the Lease.

Prior to filing the Petition, Tenant apparently tried to sublet the Premises, and it retained a broker to market the space. Tenant's broker found a potential user of part of the Premises who offered $35.00 per square foot ($28.00 per square foot less than what Tenant was paying) for 7,300 square feet of space, and was seeking 8 months of free rent. Neither Landlord nor Tenant accepted the offer. This offer alone represents a loss greater than the amount of Landlord's Proof of Claim against Tenant. As such, it calls into question the good faith basis upon which Tenant's objection to Landlord's Proof of Claim was made.

6

Tenant also posits that Landlord "only is entitled to recover liquidated damages in the amount by which the rent for the remainder of the term exceeds the fair and reasonable rental value of the Brooklyn Premises," despite the fact that the Lease expressly provides otherwise.

It is indisputable that as of the date hereof, Tenant already owes Landlord in excess of $3 million by reason of its rejection of the Lease. It also is indisputable that by May 2025 Tenant will owe Landlord in excess of the amount set forth in the Proof of Claim against Tenant.

It is indisputable that if Landlord miraculously was able to re-let the Premises today, it is theoretically impossible for Landlord to begin collecting rent prior to May 2025, and any "Deficiency" would exceed the amount demanded in the Proof of Claim. In these circumstances, there is no conceivable merit, and no legitimate basis whatsoever, for Tenant's objection to Landlord's Proof of Claim. Tenant, therefore, has utterly failed to establish a prima facie basis for its objection to Landlord's Proof of Claim.

Landlord's Proof of Claim is prima facie valid under the Bankruptcy Code. Tenant has the burden of proving that the claim should be reduced or disallowed. In re MDC Systems, Inc., 488 B.R. 74, 81 (Bankr. E.D. Pa. 2013). Tenant has wholly failed to meet that burden. Landlord's entitlement to damages pursuant to the Bankruptcy Code "first must be determined based upon the language contained in the . . . Lease and applicable state law . . . with the actual damages then being limited by application of 11 U.S.C. § 502(b)(6)." In re Highland Superstores, Inc., 154 F.3d 573, 581 (6th Cir. 1998).

In Highland Superstores, the Sixth Circuit rejected the proposition that the amount of a landlord's lease rejection claim should be discounted to present value, as urged by Tenant in this case. Id. at 581. Indeed, the Sixth Circuit noted that the discount to present value approach "had not been adopted by any court of law," and "flies in the face of settled contract law." Id., at 580.

7

Tenant's objection to Landlord's Proof of Claim is wholly predicated upon the supposition that the Premises could be re-let and that Landlord has a duty to do so. There is no duty to re-let a commercial lease under New York law. Holy Properties Limited, C.P. v. Kenneth Cole Productions Inc., 87 N.Y.2d 130 (1995).

Moreover, "[w]hen a tenant abandons a lease, the court may enter judgment in the amount of rent for the remainder of the lease term, less any rent received from new tenants." 1140 LLC v. Meis Studio Inc., 225 A.D.3d 516, 517 (lst Dep't 2024), citing, among other cases, Holy Properties.

Tenant's breach of the Lease by rejecting it does not release the tenant "from liability for the payment of rent and related expenses." Madison Avenue I LLC v. Marecheau, 187 A.D.3d 683 (lst Dep't 2020). Similarly, New York law does not obligate Landlord to reduce its damages to present value. As the Appellate Division, First Department stated in Gallery at Fulton Street, LLC v. Wendnew LLC, 30 A.D.3d 221 (lst Dep't 2006), when it reversed a Referee's reduction of Lease to present value of Landlord's damages for breach:

> However, the court improperly held that the referee must calculate plaintiff's damages pursuant to section 23.2 (b) (iii) of the lease. This provision permitted, but did not require, the landlord to accelerate future rents under the lease, using a formula essentially based on rent that should have been collected under the lease, minus the "rental value" of the property, discounted to present value. Plaintiff did not seek immediate payment of future rents under this provision, but sought payment of already accrued arrears under the other provisions of the lease, such as section 23.2 (a) (iv) and (b) (ii). All remedies under the lease for tenant's breach are in addition to, and not exclusive of, other remedies. That plaintiff terminated the lease upon defendants' breach does not render plaintiff's claims enforceable only under section 23.2 (b), which clearly states that those remedies were "in addition to" the landlord's other remedies. Moreover, although the termination ends the landlord-tenant relationship, the parties clearly contracted to make the defaulting tenant liable for rent after such termination (cf. Holy Props. v Cole Prods., 87 NY2d 130, 134, 661 NE2 694, 637 NYS2d 964 [1995]

8

Id., at 238-239.

District Courts considering appeals from Bankruptcy Court Orders are in accord:

> In addition, the fact that the purpose of § 502(b)(6) is to provide a cap further supports the view that the rent reserved should not be reduced to its net present value. It might make sense to discount a total claim to present value. However, the cap imposed by § 502(b)(6) itself serves to limit the claim considerably.

Sunbeam Oster Company, Inc. v. Lincoln Liberty Avenue, Inc., 145 B.R. 823, 827 (W.D. Pa. 1992).

Tenant's objection to Landlord's Proof of Claim fails in all respects. Landlord's Proof of Claim against Tenant should be sustained.

## II. LANDLORD'S CLAIM AGAINST GUARANTOR IS PROPERLY CALCULATED IN ACCORDANCE WITH THE GUARANTY, NEW YORK LAW AND BANKRUPTCY CODE SECTION 502(b)(6)

Under applicable New York law, "the liability of the guarantor may be broader and exceed the scope of that of the principal where the guarantee, which is a separate undertaking, is, by its unqualified language, enforceable against the guarantor." Raven Elevator Corp. v. Finkelstein, 223 A.D.2d 378 (1st Dep't 1996) (citations omitted). See also 1 BLDG Co., Inc. v. Cheung, 137 A.D.3d 478 (1st Dep't 2016) ("Guaranties and leases are separate documents, the former impose obligations on the guarantors and the latter impose obligations on the landlord and the tenant.") (citations omitted).

Guarantors cannot seek to have their obligations modified based upon the bankruptcy of other insolvent parties. In re Diversity Building Corp., 86 F.2d 456, 458 (7th Cir. 1936). Landlord's assertion of a claim against Tenant does not preclude the assertion of a claim against Guarantor. Union Carbide Corp. v. Newboles, 686 F.2d 593, 595 (7th Cir. 1982).

9

Section 524(e) of the Bankruptcy Code provides that the "discharge of a debt of the debtor does not affect the liability of any other entity . . . on such debt."

In these circumstances, "the lessor's claim for breach survives the Trustee's rejection; thus, the lessor can still look to the person or entity that guaranteed the debtor's lease obligations. In other words, the liability of a guarantor for a debtor's lease obligations is not altered by the Trustee's rejection of the lease." In re Modern Textile, Inc., 900 F.2d 1184, 1191 (8th Cir. 1990); see also In re American Hardwoods, 885 F.2d 621, 625 (9th Cir. 1989) (same).

Payment of a 502(b)(6) claim by Tenant does not also discharge the Guarantor. Things Remembered, Inc. v. BGTV, Inc., 151 B.R. 827, 831 (Bankr. N.D. Ohio 1993). The attempt by Debtors to conflate the obligations of Tenant and Guarantor lacks "any specific authority in statute or caselaw." Johnson v. Beck, 117 B.R. 461, 471 (Bankr. D. Minn. 1990).

The competing considerations that have prompted some courts to limit guarantor's claims against debtors do not apply in a 100% payment case. Cf., In re Episode USA, 202 B.R. 691, 695-96 (Bankr. S.D.N.Y. 1996), in which the Bankruptcy Court noted that: (i) Bankruptcy Code § 502(b)(6) "neither includes nor excludes guarantors from its application," (ii) "at least two courts have refused to apply § 502(b)(6) to cap the unsecured claim of a lessor against a lease guarantor," and (iii) the defense of mitigation was inapplicable. It therefore appears that the guarantor's claim in Episode was limited solely as a matter of equity because the Plan in that case did not provide for a 100% payment to unsecured creditors.

The cases to which the Bankruptcy Court in Episode was referring to are Bel-Ken Associates Ltd. v. Clark, 83 B.R. 357 (Bankr. D. Md. 1985) and In re Danrik, Ltd., 92 B.R. 964 (Bankr. N.D. Ga. 1988), in which the debtors' attempts to limit guarantors' claims were rejected.

10

In <u>Bel-Ken</u>, the Bankruptcy Court held that debtor's attempt to limit the liability of a guarantor based upon tenant's rejection of a lease "contravenes the express and implied goals of the Bankruptcy Code". <u>Id.</u>, at 357. The <u>Bel-Ken</u> court, in reliance upon Section 524(e) of the Bankruptcy Code, held "that a guarantor's liability remains even after the [tenant] is released from liability." <u>Id.</u> at 358.

In applying Maryland law which, in respect of the inherent separateness of a lease and guaranty, is identical to New York law, the <u>Bel-Ken</u> court held:

> Finally, common sense dictates that the guarantor remain fully liable even when the principal debtor seeks relief under the Bankruptcy Code. After all, what good is a guaranteed lease if the guarantor escapes liability when the debtor does? Certainly, a guarantor's liability may be limited to prevent a landlord from recovering "disproportionately large claims," However, the guarantor's liability is not limited merely because the [tenant's] liability is reduced by the trustee in bankruptcy.

<u>Id.</u>, at 359 (internal citation omitted).

The possibility of recovering a "disproportionately large claim" does not come into play where, as in this case, the Tenant and Guarantor's liabilities and obligations under the Plan not only are separate and distinct, but also where unsecured creditors are being paid in full. <u>In re Danrik, Ltd.</u>, 92 B.R. 964 (Bankr. N.D. Ga. 1988).

The <u>Danrik</u> Court noted that those cases in which guarantor claims were limited did so by virtue of "equitable principles and findings that allowance of the claim in full would consume a substantial part of the property of the estate to the detriment of other creditors or that the full claim was disproportionately large compared to the damages suffered. This Court agrees that in most cases, the application of equitable principles would result in limited the allowable claim by a landlord against a bankruptcy guarantor pursuant to § 502(b)(6). However, the facts at bar are usual and it would be unfair to limit [Landlord's] claim by applying § 502(b)(6)." <u>Id.</u>, at 970-972.

11

Since Danrik and Bel-Ken were decided, another 100% payout case, In re Dronbarger, 2011 Bankr. LEXIS 452, 2011 WL 350479 (Bankr. W.D. Tex 2011), likewise rejected the proposition that a landlord was limited to "one recovery" against both a tenant and guarantor in accordance with Section 502(b)(6). See also Hall v. Goforth, 179 F.3d 390 (5th Cir. 1999), in which the Fifth Circuit held that Bankruptcy Code Section 502(b)(7) does not limit employee claims against a guarantor of an employment contract.

The Plan in this case expressly provides that it is a "separate Plan for each Debtor for the treatment and resolution of outstanding Claims." There is no basis under the Bankruptcy Code, New York law or principles of equity upon which to conflate Landlord's claims against Tenant and Guarantor. There is, therefore, no basis upon which Guarantor may object to Landlord's claim that is based upon the Guaranty. It is indisputable that Landlord's claims against Tenant and Guarantor are separate and distinct. It is indisputable that Landlord's contract damages will exceed the amounts demanded in the respective Proofs of Claim. In these circumstances, there is no merit whatsoever to Debtors' objections and their objections to Landlord's Proofs of Claim should be denied in all respects.

WHEREFORE, RFR/K 55 Prospect Owner, LLC respectfully requests that this Court deny the relief requested in Debtors' Objection and that this Court grant such other and further relief as may be just and proper.

Dated: New York, New York
January 28, 2025

                    KLESTADT WINTERS JURELLER
                    SOUTHARD & STEVENS, LLP

By: */s Tracy L. Klestadt*
      Tracy L. Klestadt
200 West 41 Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

          - and -

*/s/ Charles E. Boulbol*
Charles E. Boulbol
Charles E. Boulbol, P.C.
62 85th Street
Brooklyn, NY 11209
Tel: (212) 825-9457

*Attorneys for RFR/K 55 Prospect Owner LLC*