Hearing Date: April 4, 2025, 11:00 a.m. (Prevailing Eastern Time)

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey

*Counsel to the Reorganized Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 2U, Inc., *et al.*, | Case No. 24-11279 (MEW) |
| Reorganized Debtor.[1] | (Jointly Administered) |
| | **Related Docket Nos. 327 and 334** |

**REORGANIZED DEBTOR'S REPLY
IN SUPPORT OF THE REORGANIZED DEBTOR'S MOTION
FOR ENTRY OF A FINAL DECREE CLOSING THE CHAPTER 11 CASE OF 2U, INC.**

2U, Inc. (the "***Reorganized Debtor***") on behalf of itself and its reorganized debtor affiliates (collectively, the "***Debtors***" or the "***Reorganized Debtors***") in the above-captioned cases (the "***Chapter 11 Cases***") hereby files this reply (this "***Reply***"): (a) in support of the *Reorganized Debtor's Motion for Entry of a Final Decree Closing the Chapter 11 Case of 2U, Inc.* [Docket No. 327] (the "***Motion***"); and (b) to the *Limited Objection of Simmons University to Reorganized Debtor's Motion for Entry of a Final Decree Closing the Chapter 11 Case of 2U, Inc.* [Docket No.

---

[1] The Reorganized Debtor in this case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is: 2U, Inc. (5939). The Reorganized Debtor's mailing address is 2345 Crystal Drive, Suite 1100, Arlington, Virginia 22202.

334] (the "*Objection*") filed by Simmons University ("*Simmons*").[2] In support of this Reply and the Motion, the Reorganized Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Objection advances just two arguments: (a) there was not sufficient notice of the hearing on the Motion; and (b) the Lead Case should not be closed until the Debtors assume or reject their contracts with Simmons (collectively, the "*Simmons Contracts*"). The first argument is moot, as the Reorganized Debtor pushed the hearing four days to address the notice concern. And the second argument is baseless: it is neither backed by the law nor any practical or equitable considerations.

2. Simmons does not point to a single statute, case, or other authority for its position that a debtor must assume or reject all contracts for a case to be fully administered. This is not surprising. Nowhere does the Bankruptcy Code or case law support, let alone mandate, such a position.

3. Practical and equitable consideration dictate to the contrary. Leaving the Lead Case open imposes material costs upon the Reorganized Debtors at a time when they should be focusing on their reorganized business and moving on from chapter 11.

4. At the same time, leaving the Lead Case open does nothing for Simmons. As a preliminary matter, the Combined Order requires that Simmons seek to resolve its purported contract dispute with the Debtors ▪▪▪▪▪▪▪▪▪▪▪▪▪. The only other time Simmons has participated in the Chapter 11 Cases was when it reached out to the Debtors, on the eve of the confirmation hearing, asking to be included as a "Covered Partner" under

---

[2] Capitalized terms used, but not otherwise defined, herein shall have the meanings given to them in the Motion or the Debtors' plan of reorganization [Docket No. 90] (as amended or otherwise modified from time to time, the "*Plan*").

2

paragraph 46 of the Combined Order in light of the purported dispute. The Debtors agreed and, as a result, Simmons must "cooperate with the Reorganized Debtors to resolve such dispute in accordance with the applicable dispute resolution provisions of [the Simmons Contracts]." Combined Order ¶ 46. ███████████████████████████████████████████████████████████████████████████████████. Simmons has made no attempt to do so.

5. Moreover, if the parties cannot resolve the dispute ████████████████████████████████, then Simmons is free to seek to reopen the Lead Case and ask the Court to hear the dispute in accordance with paragraph 46 of the Combined Order. Although parties in interest have such a right to seek to reopen the Lead Case under section 350(b) of the Bankruptcy Code, the Reorganized Debtor nevertheless offered to incorporate Simmons in language in the revised proposed Final Decree [Docket No. 340] (the "**Proposed Final Decree**") that was negotiated and agreed to with two other university partners to allow the parties to continue resolving disputes among themselves, in accordance with the applicable agreements, and to reopen the Lead Case if that process fails. *See* Proposed Final Decree, ¶ 7.

6. Simmons, however, rejected the Reorganized Debtor's offer and instead insisted that the Simmons Contracts must be automatically rejected if the dispute is not resolved within sixty (60) days of entry of the Final Decree. That is not in accordance with the dispute resolution procedure set forth in the Simmons Contracts and, thus, violates the exact terms of the Combined Order in which Simmons asked to be included.

7. Against that backdrop, it is hard to view the Objection as anything other than an attempt to hold up the closing of the Lead Case to gain leverage in a contract dispute even though

3

that dispute must be resolved in an entirely different forum. For all these reasons, the Objection must be denied.

## REPLY

**A.    THERE IS NO LEGAL BASIS TO KEEP THE LEAD CASE OPEN**

8. The crux of the Objection is that the Lead Case should not be closed because the Lead Case is not fully administered until the Simmons Contracts are assumed or rejected. Simmons' argument is unfounded.

9. Courts consider the following factors in determining whether an estate is fully administered under section 350(a) of the Bankruptcy Code:

> (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

*See* Fed. R. Bankr. P. 3022, Advisory Committee Note (1991 Amendment).

10. Simmons has not even attempted to try to explain how any one of these factors is missing here. Nor could it. As set forth in the Motion, each of the above factors is present here.

11. Critically, not a single one of the above factors pertains to the assumption or rejection of contracts. This makes perfect sense. Nothing in the Bankruptcy Code requires assumption or rejection of a contract to be effective for a case to be fully administered.

12. In fact, the Bankruptcy Code does not even require that a contract be assumed or rejected at all. *See In re Texaco Inc.*, 254 B.R. 536, 556 (Bankr. S.D.N.Y. 2000) ("The Bankruptcy Code does not require all contracts and leases to be either assumed or rejected"). Instead, absent specific exceptions that are not present here, a debtor is permitted to assume or reject a contract under the Bankruptcy Code but need not do so. *See id.* at 557 ("Just as section 1123 does not

4

require a Chapter 11 plan to provide for assumption of executory contracts or unexpired leases, Section 365 contemplates that many contracts and leases will not be assumed by a debtor"); *In re JZ, LLC*, 357 B.R. 816, 820 (Bankr. D. Idaho 2006) (observing that Bankruptcy Code sections on assumption and rejection of executory contracts are permissive), *aff'd*, 371 B.R. 412 (9th Cir. B.A.P. 2007). Accordingly, when a contract or lease is neither assumed nor rejected, "the contract or lease passes through the bankruptcy unaffected." *Texaco*, 254 B.R. at 557; *see also In re Shoppers Paradise*, 8 B.R. 271, 278 (Bankr. S.D.N.Y. 1980) ("Until assumed or rejected, an executory contract or unexpired lease remains in force and if neither assumed nor rejected, passes with other property of the debtor to the reorganized corporation"); *JZ*, 357 B.R. at 821 ("Accordingly, when a debtor neither assumes nor rejects an executory contract, it is said to ride through the bankruptcy as though the bankruptcy had not happened") (internal citations and quotations omitted; *In re Reasor*, 2014 WL 1647142, at *3 (Bankr. D. Kansas Apr. 23, 2014) ("Unless § 365 contains an express statutory exception, the failure to assume or reject does not automatically result in assumption or rejection of contract; instead it 'rides through' as though the bankruptcy petition had not been filed").

13. Whether the Simmons Contracts have been assumed is, thus, irrelevant to whether the Reorganized Debtor's estate is fully administered. Simmons' argument is nothing but conjecture.

**B.    THERE IS NO PRACTICAL BASIS TO KEEP THE LEAD CASE OPEN**

14. The Objection is further doomed given that Simmons cannot identify a single reason as to why the Lead Case should remain open. Bankruptcy Court involvement is not needed whatsoever here. The Combined Order requires that the contract dispute be resolved pursuant to the dispute resolution provisions of the Simmons Contracts, which neither contemplate nor require

5

intervention from the Bankruptcy Court. As shown in <u>Exhibit A</u> attached hereto, Simmons requested to be treated as a "Covered Partner" under the Combined Order. As a Covered Partner, Simmons is required to "cooperate with the Reorganized Debtors to resolve [its contract] dispute in accordance with the applicable dispute resolution provisions of [the Simmons Contracts]." Combined Order ¶ 46.

15. Specifically, Section 14 of the Simmons Contracts, an excerpt of which is attached hereto as <u>Exhibit B</u>,[3] ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████. Accordingly, if Simmons engages in the dispute resolution process it agreed to under the Simmons Contracts and is required to follow pursuant to the Combined Order, this Court will have no role in the dispute—████████████████████████████████████ ████████████████████████████████████████. There is, therefore, no need for the Lead Case to remain open.

**C. THERE IS NO EQUITABLE BASIS TO KEEP THE LEAD CASE OPEN**

16. Finally, the Lead Case should be closed because keeping the Lead Case open harms the Reorganized Debtors but closing the Lead Case imposes no detriment upon Simmons. Indeed, the Reorganized Debtor will continue to incur significant United States Trustee fees absent the closing of the Lead Case. Simmons, on the other hand, is free to seek to reopen the Lead Case if for some reason the dispute mechanism under the Simmons Contracts does not prove adequate.

17. This inequity is amplified by the fact that, after Simmons has had virtually no involvement in the Chapter 11 Cases and taken minimal steps (if any) to resolve its dispute in accordance with resolution mechanism set forth in the Simmons Contracts or the Combined Order,

---

[3] Exhibit B is representative of the dispute resolution provision in each of the Simmons Contracts.

it now seeks to delay the closing of the cases in an attempt to exert pressure on the Reorganized Debtors in a wholly unrelated dispute. Simmons' participation in the Chapter 11 Cases was limited to a few email exchanges with the Debtors' counsel over six months apart: one day prior to the confirmation hearing and then once again after the Debtors filed the Motion. Notably, Simmons did not file any documents in the Chapter 11 Cases prior to the Objection, and its counsel has never appeared at any hearing. Its counsel only first filed a notice of appearance after filing the Objection. *See* Docket No. 335.

18. Moreover, the parties have only recently begun meeting to discuss the dispute and Simmons has not attempted to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ even though, as set forth above, the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Since Simmons' counsel first reached out to the Debtors on the eve of the confirmation hearing, the only action Simmons made towards a resolution of its dispute was the issuance of a demand letter to the Reorganized Debtors in December—over three months after the Plan went effective.[4] The Reorganized Debtor should not be held in purgatory as a result of Simmons' failure to comply with the Simmons Contracts and the Combined Order. As such, the Court should overrule the Objection.

D. **SIMMONS' NOTICE OBJECTION IS MOOT**

19. Simmons' objection that the Reorganized Debtor did not provide appropriate notice of the Motion is now moot. The Motion was served on all relevant parties on March 21, 2025. *See* Docket No. 333. The Reorganized Debtor acknowledged that service of the Motion was inadvertently delayed during a status conference before this Court on March 25, 2025, and, with

---

[4] The Reorganized Debtor has since responded to that letter and the parties are convening meetings this week to discuss the dispute.

7

permission of the Court, adjourned the hearing on the Motion to April 4, 2025. Notice of the adjournment was served shortly thereafter. *See* Docket No. 341. Consequently, service of the Motion on March 21, 2025—fourteen days before the hearing on the Motion—was proper under Local Rule 9006-1(c). Any argument concerning the adequacy of notice is, therefore, moot.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

20. For the reasons set forth herein, the Reorganized Debtor respectfully requests the Court overrule the Objection and enter the Proposed Final Decree granting the relief requested in the Motion and such other and further relief as may be just and proper.

**LATHAM & WATKINS LLP**

Dated: April 1, 2025
New York, New York

By: /s/ *George A. Davis*
George A. Davis
George Klidonas
Anupama Yerramalli
Randall C. Weber-Levine
Scott Yousey
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: george.davis@lw.com
george.klidonas@lw.com
anu.yerramalli@lw.com
randall.weber-levine@lw.com
scott.yousey@lw.com

*Counsel to the Reorganized Debtor*